# EXHIBIT 1

## WELLS FARGO & COMPANY
### 401(k) PLAN

**(As Amended and Restated Effective January 1, 2020)**

### ARTICLE I

### GENERAL

**Sec. 1.1  Name of Plan.**  The name of this plan is "Wells Fargo & Company 401(k) Plan" and is referred to in this document as the "Plan."  For information regarding the former name of the Plan, see Section 1.1 of the Prior Plan Document.

**Sec. 1.2  Purpose.**  The Plan has been established for the purpose of providing eligible employees with a share in the profits of the Participating Employers, encouraging employees to adopt a regular savings program, and providing employees with an opportunity to acquire an ownership interest in the Company.

**Sec. 1.3  History of Plan.**  The Plan was originally adopted by Northwest Bancorporation and certain affiliated corporations effective for the year 1953.  For a complete history of the Plan, see Section 1.3 of the Prior Plan Document.

**Sec. 1.4  Construction and Applicable Law.**  The Plan is intended to meet the requirements for qualification under Code section 401(a), the requirements for a qualified cash or deferred arrangement under Code section 401(k), and in the case of the portion of the Plan invested in Company Stock, the requirements for a stock bonus plan under Code section 401(a) and for the Wells Fargo ESOP Fund, the requirements for an employee stock ownership plan under Code section 4975(e)(7), which is designed to invest primarily in qualifying employer securities meeting the requirements of Code sections 4975(e)(8) and 409(l).  The Plan shall be administered and construed consistent with said intent.  It shall also be construed and administered according to the laws of the State of Minnesota to the extent that such laws are not preempted by the laws of the United States of America.  All controversies, disputes, and claims arising hereunder shall be submitted to the United States District Court for the District of Minnesota, except as otherwise provided in the Trust Agreement.

**Sec. 1.5  Benefits Determined Under Provisions in Effect at Termination of Employment.**  Except as may be specifically provided herein to the contrary, with respect to a Participant or former Participant whose Termination of Employment has occurred, benefits under the Plan attributable to service prior to the Termination of Employment shall be determined and paid in accordance with the provisions of the Plan as in effect on the date the Termination of Employment occurred unless he or she again becomes an Active Participant after said date and such active participation causes a contrary result under the provisions hereof.  For the sake of clarity, however, notwithstanding the preceding, with respect to certain operational, investment and administrative matters, including, without limitation, claims procedures, investment choices, management of funds and plan administration, the current provisions of the Plan shall apply with respect to a Participant or former Participant whose Termination of Employment has occurred.

**Sec. 1.6  Effective Date of Document.**  Unless a different date is specified for some purpose in this document, the provisions of this Plan document are generally effective as of January 1, 2020.  However, any provision necessary to comply with a requirement of federal legislation or a Treasury regulation, which requirement has an earlier effective date, shall be effective retroactively to the date required by the applicable law or regulation.  In addition, any provision of this Plan or of an amendment of this Plan, which is necessary to bring a plan that has been merged into this Plan into compliance with a

WFC002540

requirement of federal legislation or a Treasury regulation, and which has an effective date prior to the date such other plan was merged into this Plan, shall be applicable to the merged plan as of the required effective date as if the merged plan had been specifically amended to include the required provision.

WFC002541

# ARTICLE II

## MISCELLANEOUS DEFINITIONS

**Sec. 2.1  Account.**  "Account" means a Participant's or Beneficiary's interest in the Trust Fund of any of the types described in Sec. 7.1.  Where more than one Account of any type has been established for a Participant or Beneficiary, references to "Account" shall include each Account of that type, except where the context clearly indicates to the contrary.

**Sec. 2.2  Active Participant.**  An employee is an "Active Participant" only while the employee is both a "Participant" and a "Qualified Employee".

**Sec. 2.3  Affiliate.**  "Affiliate" means any trade or business entity under Common Control with a Participating Employer or under Common Control with a Predecessor Employer while it is such.

**Sec. 2.4  Alternate Payee.**  "Alternate Payee" means a Participant's Spouse, former Spouse, child or other dependent who is recognized by a QDRO as having a right to receive all or a portion of the benefits payable under the Plan with respect to such Participant.

**Sec. 2.5  Before-Tax Contributions.**  "Before-Tax Contributions" are Salary Deferral Contributions made by a Participant that are excludable from gross income of the Participant for federal income tax purposes at the time of deferral in accordance with Code section 402(e)(3).

**Sec. 2.6  Beneficiary.**  A "Beneficiary" is one or more individuals, trusts, estates or charitable organizations designated by a Participant to receive any benefit payable under the Plan in the event of the Participant's death.  A Participant who has designated a Beneficiary may, without the consent of such Beneficiary, alter or revoke such designation.  To be effective, any such designation, alteration, or revocation shall be in such form as the Plan Administrator may prescribe, and shall be filed with the Plan Administrator or its agent prior to the Participant's death.

(a)  If at the time of a Participant's death the Plan Administrator or its designated agent is not in possession of a fully effective designation of his Beneficiary, or if the designated Beneficiary does not survive the Participant, the Participant's Beneficiary shall be the person or persons surviving in the first of the following classes in which there is a survivor, share and share alike:

(1)  The Participant's Spouse or Domestic Partner.

(2)  The Participant's biological and adopted children, except that if any of his or her children predecease the Participant but leave descendants surviving the Participant, such descendants shall take by right of representation the share their parent would have taken if living.

(3)  The Participant's parents.

(4)  The Participant's brothers and sisters.

(5)  The Participant's estate.

-3-

WFC002542

(b)   Notwithstanding the foregoing, if a Participant is married at the time of his or her death, the Beneficiary shall be the Participant's Spouse unless the Spouse has consented in writing to the designation of a different Beneficiary; the Spouse's consent acknowledges the effect of such designation; and the Spouse's consent is witnessed by a representative of the Plan or a notary public.  The previous sentence shall not apply if it is established to the satisfaction of the Plan Administrator that such consent cannot be obtained because there is no Spouse, because the Spouse cannot be located, or because of such other circumstances as may be prescribed by federal regulations.

> (1)   Any such consent shall be valid only with respect to the Spouse who signed the consent, or in the case of a deemed consent, the designated Spouse.  The Participant may revoke a prior election at any time without the consent of the Spouse.  The number of such revocations shall not be limited.  Any consent by a Spouse cannot be revoked by the Spouse.

> (2)   Any designation of a Beneficiary or a form of benefits, which has received spousal consent, may be changed without spousal consent only if the consent by the Spouse expressly permits subsequent designations by the Participant without any requirement of further consent by the Spouse.

(c)   Determination of the identity of the Beneficiary in each case shall be made by the Plan Administrator.

(d)   Notwithstanding anything in the Participant's Beneficiary designation to the contrary, if (i) the Participant has a Frozen Transferred Account, which is subject to the qualified joint and survivor and preretirement survivor annuity requirements of Code sections 401(a)(11) and 417, (ii) the Participant's Spouse has consented to a designation of a different person as a primary Beneficiary, (iii) such consent was given both prior to the first day of the Plan Year in which the Participant would reach age 35 and prior to the Participant's Termination of Employment, and (iv) the Participant is married on the first day of the Plan Year in which the Participant reaches age 35, then the Participant's Spouse shall be the sole primary Beneficiary with respect to the Participant's entire Account commencing on the first day of the Plan Year in which the Participant reaches age 35, unless the Participant files a new Beneficiary designation form that complies with the spousal consent requirements of this section on or after the first day of said Plan Year (or after the Participant's Termination of Employment, if earlier).

(e)   _Disclaimers_.  A Beneficiary entitled to all or a portion of a deceased Participant's Accounts may disclaim his or her interest therein, subject to the following:

> (1)   To be eligible to disclaim, the Beneficiary must not have received a distribution of all or any portion of the Participant's Accounts and must have attained at least age 21 at the time such disclaimer is signed and delivered. A disclaimer shall state that the Beneficiary's entire interest in the Participant's Accounts is disclaimed or shall specify what portion thereof is disclaimed. The Plan Administrator shall be the sole judge of the content, interpretation and validity of a purported disclaimer.

> (2)   Any disclaimer must be in writing and must be signed by the Beneficiary making the disclaimer and acknowledged by a notary public. The Plan Administrator may establish rules for the use of electronic signatures and acknowledgements. Until such rules are established, electronic signatures and acknowledgements shall not be effective. To be

-4-

WFC002543

effective, an original signed copy of the disclaimer must be actually delivered to the Plan Administrator after the date of the Participant's death but not later than nine months after the date of the Participant's death. A disclaimer shall be irrevocable when delivered to the Plan Administrator. A disclaimer shall be considered to be delivered to the Plan Administrator only when actually received by the Plan Administrator.

(3) Upon the filing of a valid disclaimer, the Beneficiary shall be considered not to have survived the Participant as to the interest disclaimed. A disclaimer shall not be considered to be a transfer of an interest in violation of the provisions of Sec. 10.12, and shall not be considered to be an assignment or alienation of benefits in violation of any federal law prohibiting the assignment or alienation of benefits under this Plan.

(4) No form of attempted disclaimer that does not meet the requirements of this subsection will be recognized by the Plan Administrator.

(f) An Alternate Payee or a Beneficiary, who is entitled to a benefit under the Plan, may designate a beneficiary to receive such benefit or portion of such benefit, in the event of his or her death, subject to the terms of this Sec. 2.6 (but substituting the Alternate Payee or Beneficiary, as applicable, for each reference to the Participant), but without regard to subsections (a), (b) and (d). If the Alternate Payee or a Beneficiary does not have a valid beneficiary designation on file at the time of Alternate Payee's or Beneficiary's death, the remaining benefit shall be paid to the Alternate Payee's or Beneficiary's estate in accordance with the terms of the Plan.

**Sec. 2.7 Board.** The "Board" is the board of directors of the Company, and includes any executive committee thereof authorized to act for such body.

**Sec. 2.8 Catch-up Contributions.** "Catch-up Contributions" are deferrals made by a Participant in accordance with Code section 414(v) pursuant to Sec. 4.3(g).

**Sec. 2.9 Certified Compensation.** "Certified Compensation" of a Participant for a particular calendar quarter, Plan Year or other specified period shall include all of the items of compensation described in subsection (a) that are paid to the Participant by a Participating Employer during that period for services as an Active Participant and shall not include any of the items of compensation described in subsection (b).

(a) Included items of compensation:

(1) The Participant's wages, salaries, fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Company and its Affiliates to the extent that the amounts are includible in gross income (or to the extent amounts would have been received and includible in gross income but for an election under Code section 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k) or 457(b)). Certified Compensation shall include, but is not limited to sales commissions, compensation for services on the basis of a percentage of profits, commissions on insurance premiums and bonuses.

(2) The value of a nonstatutory stock option (i.e., a stock option not described in Treasury Regulation §1.421-1(b)) granted to the Participant by the Company or an Affiliate, but only to the extent that the value of the stock option is includible in the gross income of the Participant for the taxable year in which granted.

-5-

WFC002544

      (3)    The amount includible in the gross income of a Participant upon making the election described in Code section 83(b).

      (4)    Amounts that are includible in the gross income of a Participant under the rules of Code section 409A or section 457(f)(1)(A) or because the amounts are constructively received by the Participant.

(b)    Excluded items of compensation:

      (1)    Contributions (other than elective contributions described in Code sections 402(e)(3), 408(k)(6), 408(p)(2)(A)(i), or 457(b)) made by the Company or an Affiliate to a plan of deferred compensation (including a simplified employee pension described in Code section 408(k) or a simple retirement account described in Code section 408(p), and whether or not qualified) to the extent that the contributions are not includible in the Participant's gross income for the taxable year in which contributed. In addition, any distributions from a plan of deferred compensation (whether or not qualified) are not considered Certified Compensation, regardless of whether such amounts are includible in the Participant's gross income when distributed.

      (2)    Amounts realized from the exercise of a nonstatutory option or when restricted stock or other property held by the Participant either becomes freely transferable or is no longer subject to a substantial risk of forfeiture (as described in Code section 83 and the regulations promulgated thereunder).

      (3)    Amounts realized from the sale, exchange, or other disposition of stock acquired under a statutory stock option (as defined in Treasury Regulation §1.421-1(b)).

      (4)    Other amounts that receive special tax benefits, such as premiums for group-term life insurance (but only to the extent that the premiums are not includible in the Participant's gross income and are not salary reduction amounts that are described in Code section 125).

      (5)    Other items of remuneration that are similar to any of the items listed in paragraphs (1) through (4) above.

      (6)    All of the following items (even if includible in the Participant's gross income): reimbursements or other expense allowances, fringe benefits (cash and non-cash), moving expenses, deferred compensation and welfare benefits.

      (7)    Retention and recruiting bonuses and loan agreements, as specified in administrative procedures adopted by the Plan Administrator pursuant to subsection (e).

(c)    Effective for the Plan Year beginning on the Effective Date, Certified Compensation of a Participant for a Plan Year shall not exceed $285,000, adjusted for each Plan Year to take into account any increase provided for that year in accordance with the Code and regulations prescribed by the Secretary of the Treasury.

(d)    The following additional rules shall apply in determining Certified Compensation:

      (1)    Certified Compensation does not include any compensation paid to the Participant following the pay date for the bi-weekly pay period in which (a) the Participant incurs a

WFC002545

Termination of Employment, or (b) the Participant ceases to be a Qualified Employee pursuant to Sec. 2.42.

(2)　For purposes of making Salary Deferral Contributions under Article IV, Certified Compensation includes only compensation within the meaning of this section that is paid on or after the Entry Date or other date specified in Sec. 4.1 on which the individual becomes an Active Participant eligible to make such contributions, subject to the following:

(A)　Certified Compensation includes any such compensation related to service performed during the entire pay period containing the date on which the individual became an Active Participant.

(B)　Any such compensation related to service performed during a pay period that ended prior to the date on which the individual became an Active Participant that is paid on the bi-weekly pay date for that pay period will not be treated as Certified Compensation for this purpose, even if the compensation for that pay period is paid on or after the date the individual became an Active Participant.

(3)　For purposes of determining contributions under Sections 5.1, 5.2, and 5.3, Certified Compensation recognized for a particular calendar quarter or Plan Year includes only compensation within the meaning of this section that is paid during, and on or after the first day of such calendar quarter or Plan Year. However, if a former Active Participant becomes an Active Participant again during a calendar quarter or Plan Year, any compensation that is excluded from Certified Compensation under paragraph (2), above, will also be disregarded in determining the contributions under Sections 5.1, 5.2, and 5.3.

(4)　The Certified Compensation of an Active Participant who is at any time simultaneously in the employ of more than one Participating Employer shall be the sum of such earnings received by the Active Participant from all such Participating Employers. Reference herein to Certified Compensation with respect to any period of time shall mean the total Certified Compensation, as defined in the preceding paragraphs, of an Active Participant for such period.

(e)　The Plan Administrator may take such actions as it determines to be appropriate and administratively practicable for purposes of applying the provisions of this section. If the Plan Administrator has notice from the Company that any amounts previously paid to or reported as includible in the income of a Participant should not have been paid or reported as includible in income, the Plan Administrator shall make such adjustments as it deems appropriate.

**Sec. 2.10　Code.** "Code" means the Internal Revenue Code of 1986, as from time to time amended.

**Sec. 2.11　Common Control.** A trade or business entity (whether corporation, partnership, sole proprietorship or otherwise) is under "Common Control" with another trade or business entity (i) if both entities are corporations that are members of a controlled group of corporations as defined in Code section 414(b), (ii) if both entities are trades or businesses (whether or not incorporated) that are under common control, as defined in Code section 414(c), (iii) if both entities are members of an "affiliated service group," as defined in Code section 414(m), or (iv) if both entities are required to be aggregated

-7-

WFC002546

pursuant to regulations under Code section 414(o). Service for all entities under Common Control shall be treated as service for a single employer to the extent required by the Code, provided, however, that an individual shall not be a Qualified Employee by reason of this section. In applying the preceding sentence for purposes of Sec. 6.3, the provisions of subsections (b) and (c) of Code section 414 are deemed to be modified, as provided in Code section 415(h).

Sec. 2.12 **Company.** The "Company" is Wells Fargo & Company, a Delaware corporation, and any Successor Employer thereof.

Sec. 2.13 **Company Representative.** The "Company Representative" means the Director of Human Resources of the Company, the Director of Compensation and Benefits of the Company, or their authorized delegates, each of whom may act individually or jointly in performing actions that are authorized under the Plan for them to perform on behalf of the Company.

Sec. 2.14 **Company Stock.** "Company Stock" means common or preferred stock of the Company, including any preferred stock that is convertible into common stock. The provisions of this Plan shall be applied separately to different types or classes of Company Stock, or to shares acquired on different dates or pursuant to different Exempt Loans, to the extent the Plan Administrator determines that such treatment is appropriate.

Sec. 2.15 **Disabled or Disability.** A Participant is "Disabled" or has incurred a "Disability" if the Plan Administrator determines, based on medical evidence satisfactory to the Plan Administrator, that the Participant has become unable due to injury or illness to perform the duties of any occupation for which the Participant is qualified and such condition is expected to last for at least 12 months or to result in death. A Participant who is determined to be eligible for Social Security disability benefits and/or is eligible to receive long-term disability benefits under a long-term disability plan maintained by the Company, (unless the Participant is actively working a partial schedule while receiving long-term disability benefits), will be deemed to be Disabled for purposes of this Plan.

Sec. 2.16 **Domestic Partner.** "Domestic Partner" means a person who is not the Spouse of the Participant, but who at the relevant time is the Participant's significant other (together referred to as "partners") with whom the Participant lives and shares financial responsibility. A Domestic Partner may be the same gender as the Participant or of opposite gender. A person will be considered a Domestic Partner of the Participant if the person and the Participant are joined in a civil union (or other similar formal relationship) that is recognized as creating some or all of the rights of marriage under the laws of the state or country in which the union was created, but which is not denominated or recognized as marriage under the laws of that state or country. A person will be considered a Domestic Partner of the Participant if the Participant or other person can provide a domestic partnership certificate to the Plan Administrator from a city, county, state or country that offers the ability to register a domestic partnership. A person who is not joined in civil union (or similar formal relationship) and is not registered in a domestic partnership with the Participant will not be considered a Domestic Partner unless the Participant and/or Domestic Partner provides sufficient evidence to the Plan Administrator that all of the following requirements are satisfied:

(1) The partners share a single, intimate, committed relationship of mutual caring and intend to remain in the relationship indefinitely.

(2) The partners reside together in the same residence and live in a spouse-like relationship.

(3) The partners are not related by blood or a degree of closeness, which would prohibit marriage under the law of the state in which they reside.

WFC002547

(4)  Neither partner is married to another person under either federal, state, or common law, and neither has another Domestic Partner or is a member of another domestic partnership.

(5)  Each partner is mentally competent to consent or contract.

(6)  Both partners are at least 18 years of age.

(7)  The partners are financially interdependent, are jointly responsible for each other's basic living expenses, and, if requested, are able to provide documents proving at least three of the following situations to demonstrate such financial interdependence:

    (A)  Joint ownership of real property or a common leasehold interest in real property.

    (B)  Common ownership of an automobile.

    (C)  Joint bank or credit accounts.

    (D)  A will that designates the other as primary beneficiary.

    (E)  A beneficiary designation form for a retirement plan or life insurance policy signed and completed to the effect that one partner is a beneficiary of the other.

    (F)  Designation of one partner as holding power of attorney for health care decisions for the other.

**Sec. 2.17  Early Participant.**  An "Early Participant" is an Active Participant who is ineligible to receive an Employer Matching Contribution for a calendar year pursuant to Sec. 5.1 because such Active Participant has not completed a year of Vesting Service.

**Sec. 2.18  Effective Date.**  The effective date of this amendment and restatement of the Plan is January 1, 2020.

**Sec. 2.19  Employee Benefit Review Committee.**  The "Employee Benefit Review Committee" is the committee designated under the Plan to exercise authority with respect to the assets of the Plan and to perform certain other responsibilities specified in the Plan.

**Sec. 2.20  Employer Discretionary Contributions.**  "Employer Discretionary Contributions" are Employer Discretionary Profit Sharing Contributions made pursuant to Section 5.2 and Employer Discretionary Share Award Contributions described in Section 5.3 of the Prior Plan Document.

**Sec. 2.21  Employer Matching Contributions.**  "Employer Matching Contributions" are contributions made pursuant to Sec. 5.1.

**Sec. 2.22  Employment Commencement Date.**  "Employment Commencement Date" is defined in Sec. 3.1.

**Sec. 2.23  Entry Date.**  "Entry Date" means the first day of each calendar month and such other dates, as may be established by the Plan Administrator in connection with acquisitions by the Company, a Participating Employer or an Affiliate.

WFC002548

Sec. 2.24 **ERISA.** "ERISA" means the Employee Retirement Income Security Act of 1974, as from time to time amended.

Sec. 2.25 **Excess Deferrals.** "Excess Deferrals" are those amounts described in Sec. 6.2(a).

Sec. 2.26 **Exempt Loan.** An "Exempt Loan" is a loan described in Sec. 16.1.

Sec. 2.27 **Frozen Transferred Account.** A "Frozen Transferred Account" shall have the meaning set forth in Section 7.1(e) hereof.

Sec. 2.28 **Highly Compensated Employee.** "Highly Compensated Employee" for any calendar year means an individual described as such in Code section 414(q).

(a)   Unless otherwise provided in Code section 414(q), each employee who meets one of the following requirements is a Highly Compensated Employee:

  (1)   The employee at any time during the current or prior year was a more than 5-percent owner, as defined in Code section 414(q)(2).

  (2)   The employee received compensation from the employer in excess of $130,000 for the prior year (such dollar amount shall be adjusted for subsequent calendar years in accordance with the Code or Treasury regulations).

(b)   The dollar amount specified in paragraph (2) of subsection (a) shall be indexed for cost of living adjustments for each calendar year after 2010, as provided in the applicable Treasury regulations.

(c)   For purposes of this section, "employer" includes all Participating Employers and all Affiliates, and "employee" includes Leased Employees.

(d)   For purposes of this section, "compensation" means the amount defined as such under Sec. 6.3(d)(2).

Sec. 2.29 **Hours of Service.** The term "Hours of Service" is defined in Sec 3.2.

Sec. 2.30 **Investment Fund.** "Investment Fund" means a separate investment fund maintained pursuant to the terms of the Plan (as in the case of the Wells Fargo ESOP Fund) or at the direction of the Employee Benefit Review Committee.

Sec. 2.31 **Leased Employee.** "Leased Employee" means any person defined as such by Code section 414(n). In general, a Leased Employee is any person who is not otherwise an employee of a Participating Employer or an Affiliate (referred to collectively as the "recipient") and who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Code section 414(n)(6)) on a substantially full-time basis for a period of at least one year and such services are performed under primary direction or control by the recipient. For purposes of the requirements listed in Code section 414(n)(3), any Leased Employee shall be treated as an employee of the recipient, and contributions or benefits provided by the leasing organization, which are attributable to services performed for the recipient, shall be treated as provided by the recipient. However, if Leased Employees constitute less than 20% of the Participating Employers' non-highly compensated work force within the meaning of

-10-

WFC002549

Code section 414(n)(5)(C)(ii), those Leased Employees covered by a plan described in Code section 414(n)(5) shall be disregarded. Notwithstanding the foregoing, no Leased Employee shall be a Qualified Employee or a Participant in this Plan unless specifically provided to the contrary herein.

Sec. 2.32 **Named Fiduciary.** The following are "Named Fiduciaries" of the Plan within the meaning of Section 402 of ERISA: (1) the Plan Administrator, which shall have authority to control or manage the operation and administration of the Plan, and (2) the Employee Benefit Review Committee, which shall have authority to control or manage the assets of the Plan. The Plan Administrator may from time to time designate a Named Fiduciary to act in connection with the employee stock ownership provisions described in Article XVI and in connection with the voting, tender, or exchange of shares of Company Stock.

Sec. 2.33 **Non-Highly Compensated Employee.** "Non-Highly Compensated Employee" means an employee of the Participating Employer who is not a Highly Compensated Employee.

Sec. 2.34 **Normal Retirement Age.** "Normal Retirement Age" is age 65.

Sec. 2.35 **Participant.** A "Participant" is an individual described as such in Article IV.

Sec. 2.36 **Participating Employer.** The Company is a Participating Employer in the Plan. Any entity that is under Common Control with the Company shall become a Participating Employer in the Plan upon being designated as such by the Company, by written action of a Company Representative. The Participating Employer's participation in the Plan shall be effective as of the date specified in such written action. With the consent of the Company, by action of the Board, any employer, which is not under Common Control with the Company, may also become a Participating Employer in the Plan effective as of a date specified by it in its adoption of the Plan. The Plan Administrator shall maintain the official list of the Participating Employers currently covered by the Plan and the effective date of each such employer's participation, and shall update that list annually during December of each year and at such other times as may be appropriate.

Sec. 2.37 **Plan Administrator.** The "Plan Administrator" of the Plan for purposes of ERISA §3(16)(A) is the Director of Human Resources and the Director of Compensation and Benefits of the Company, each of whom may act individually or jointly as the Plan Administrator.

Sec. 2.38 **Plan Year.** A "Plan Year" is a calendar year.

Sec. 2.39 **Predecessor Employer.** Any corporation, partnership, firm, or individual (referred to in this section as an "entity") is a "Predecessor Employer" if assets and/or employees of the entity are acquired by a Participating Employer, an Affiliate, or another Predecessor Employer and if the entity is so designated by written action of a Company Representative. Said action may be in the form of the adoption of an Appendix to the Plan recognizing service with the Predecessor Employer for one or more purposes, subject to any conditions and limitations with respect thereto imposed by this section or an applicable Appendix. However, an entity may be named as a Predecessor Employer only if all of its employees, who become employees of the acquiring employer at the time of the acquisition, are treated uniformly and the use of service with it does not produce discrimination in favor of officers, shareholders, or highly compensated employees. Service with such a Predecessor Employer shall be recognized to the extent provided in the Appendix applicable to the entity or other provisions of the Plan that are applicable to rehired employees and that are required by applicable law or regulation to recognize service with a

WFC002550

Predecessor Employer. Any other employer shall be a Predecessor Employer, if so required by regulations prescribed by the Secretary of the Treasury.

Sec. 2.40  **Prior Plan Document.**  The "Prior Plan Document" is the Plan document, as amended and restated as of January 1, 2010, and as subsequently amended prior to the amendment and restatement of the Plan document that was effective as of January 1, 2013.

Sec. 2.41  **QDRO.**  A "QDRO" is a qualified domestic relations order within the meaning of Section 206(d)(3) of ERISA and Code section 414(p).

Sec. 2.42  **Qualified Employee.**  "Qualified Employee" generally means any employee of a Participating Employer, who is classified as a regular employee or a part-time employee. An employee shall be deemed to be a Qualified Employee during a period of absence from active service that does not result from a Termination of Employment, provided the employee is a Qualified Employee at the commencement of such period of absence. Notwithstanding anything herein to the contrary, a person shall not be considered a Qualified Employee in the following circumstances:

(a)  An employee is not a Qualified Employee prior to the date as of which his or her employer becomes a Participating Employer.

(b)  A nonresident alien is not a Qualified Employee either (i) while not receiving earned income (within the meaning of Code section 911(d)(2)) from a Participating Employer, which constitutes income from sources within the United States (within the meaning of Code section 861(a)(3)), or (ii) if his or her services are performed outside the continental United States (including Alaska) or Hawaii, and the principal base of operations to which the employee frequently returns is outside the continental United States (including Alaska) or Hawaii, provided, however, that such an individual shall be a Qualified Employee if the Plan Administrator designates in writing that nonresident aliens employed by the individual's Participating Employer are eligible for this Plan commencing as of the date specified in such written action and subject to any limitations contained in such written action regarding the location of the employment, the citizenship of the individuals to be covered, the covered job classifications, or the type or amount of compensation paid to such an individual that will be recognized as Certified Compensation.

(c)  A United States citizen or resident alien is not a Qualified Employee unless his or her services are performed within the continental United States (including Alaska) or Hawaii, or the principal base of operations to which the employee frequently returns is within the continental United States (including Alaska) or Hawaii, provided, however, that such an individual employed outside the United States shall be a Qualified Employee if the Plan Administrator designates in writing that such persons employed by the individual's Participating Employer are eligible for this Plan commencing as of the date specified in such written action and subject to any limitations contained in such written action regarding the location of the employment, the covered job classifications, or the type or amount of compensation paid to such an individual that will be recognized as Certified Compensation.

(d)  Eligibility of employees in a collective bargaining unit to participate in the Plan shall be subject to negotiations with the representative of that unit. During any period in which an employee is covered by the provisions of a collective bargaining agreement between a Participating Employer and such representative, the employee shall not be considered a Qualified Employee for purposes of this Plan unless such agreement expressly so provides.

WFC002551

(e)    An employee who is classified by a Participating Employer as a flexible employee is not a Qualified Employee during the period while so classified. A "flexible employee" is an employee who may work any number of hours on given projects, may fill in when needed regardless of hours, is on call, may work only certain times of the month or year, or works regularly in a flexible schedule, and is not classified as a part-time or regular employee by a Participating Employer.

(f)    Notwithstanding anything herein to the contrary, an individual is not a Qualified Employee during any period during which the individual is classified by a Participating Employer as an independent contractor or as any other status in which the person is not treated as a common law employee of a Participating Employer for purposes of withholding of taxes, or is treated as an employee of another entity who is leased to a Participating Employer, regardless of the correct legal status of the individual. The previous sentence applies to all periods of such service of an individual, who is subsequently reclassified as an employee of a Participating Employer, whether the reclassification is retroactive or prospective.

(g)    A Participant who is on a leave of absence that is classified by his or her Participating Employer as a salary continuation leave of absence is not a Qualified Employee during any period during which the employee is on the salary continuation leave of absence.

**Sec. 2.43  Rollover Contributions.** "Rollover Contributions" are the amounts described in Sec. 7.3(d).

**Sec. 2.44  Roth Catch-up Contributions.** "Roth Catch-up Contributions" are Catch-up Contributions that are included in gross income of the Participant for federal income tax purposes at the time of deferral in accordance with Code section 402A.

**Sec. 2.45  Roth Contributions.** "Roth Contributions" are Salary Deferral Contributions made by a Participant that are included in gross income of the Participant for federal income tax purposes at the time of deferral in accordance with Code section 402A.

**Sec. 2.46  Salary Deferral Contributions.** "Salary Deferral Contributions" are described in Sec. 4.1 and 4.3 of the Plan and are contributions to the Plan made by the Employer on the Participant's behalf in an amount deferred from salary, as elected by each Participant, either as Before-Tax Contributions or as Roth Contributions described in Sec. 4.3(h), or a combination thereof. Such contributions are held in the Participant's Before-Tax Account or Roth 401(k) Account, as applicable.

**Sec. 2.47  Spouse.** "Spouse" means a person to whom the Participant is legally married at the relevant time under the law of any U.S. or foreign jurisdiction having the legal authority to sanction marriages, including the common law spouse of a Participant in a legally recognized common law marriage. The term "Spouse" does not include an individual who has entered into a registered domestic partnership, civil union or other similar formal relationship with a Participant recognized under the law of any U.S. or foreign jurisdiction that is not denominated as a marriage under the laws of that U.S. or foreign jurisdiction. Notwithstanding any provision of this Plan to the contrary, this provision shall be construed in accordance with Federal law.

**Sec. 2.48  Successor Employer.** A "Successor Employer" is any entity that succeeds to the business of a Participating Employer through merger, consolidation, acquisition of all or substantially all

WFC002552

of its assets, or any other means, and which elects before or within a reasonable time after such succession, by appropriate action evidenced in writing, to continue the Plan, provided, however, that in the case of such succession with respect to any Participating Employer other than the Company, the acquiring entity shall be a Successor Employer only if consent thereto is granted by the Company, by action of the Board.

Sec. 2.49  **Termination of Employment.**  The "Termination of Employment" of an employee for purposes of the Plan shall be deemed to occur upon resignation, discharge, retirement, death, failure to return to active work at the end of an authorized leave of absence, or the authorized extension or extensions thereof, failure to return to work when duly called following a temporary layoff, or upon the happening of any other event or circumstance which, under the policy of a Participating Employer, Affiliate, or Predecessor Employer, as in effect from time to time, results in the termination of the employer-employee relationship, provided, however, that a Termination of Employment shall not be deemed to occur upon a transfer between any combination of Participating Employers, Affiliates, and Predecessor Employers.  The date of an employee's Termination of Employment shall be the date recorded in the payroll system of the Participating Employer, Affiliate or Predecessor Employer, as applicable.

(a)  A Participant who has had a "severance from employment" for purposes of Code section 401(k)(2)(B)(i)(I) shall be deemed to have had a Termination of Employment for purposes of entitlement to distribution of benefits from this Plan, unless the Participant's Accounts have been transferred to a separate plan pursuant to Sec. 13.2 or Sec. 13.7.

(b)  If a Participant is placed on a leave of absence that is classified by his or her Participating Employer as a salary continuation leave of absence, the Participant's Termination of Employment shall not occur until the end of the leave, and shall occur at that time only if the Participant does not return to work for a Participating Employer at the end of the leave.

Sec. 2.50  **Trust Agreement.**  "Trust Agreement" means the agreement referred to in Sec. 11.2 between the Company and the Trustee as in effect from time to time.

Sec. 2.51  **Trust Fund.**  The "Trust Fund" is the fund or funds provided for in Sec. 11.1.

Sec. 2.52  **Trustee.**  The "Trustee" is Wells Fargo Bank, National Association, a national banking association with its principal place of business at Minneapolis, Minnesota, and any duly appointed successor trustee.

Sec. 2.53  **Unallocated Reserve.**  An "Unallocated Reserve" consists of amounts held pursuant to Sec. 16.2.  Separate Unallocated Reserves may be maintained for each Exempt Loan.

Sec. 2.54  **Valuation Date.**  "Valuation Date" means the date on which the Investment Funds and Accounts are valued, as provided in Article VII.  Each business day on which the New York Stock Exchange is open for trading is a Valuation Date.

Sec. 2.55  **Vesting Service.**  "Vesting Service" is defined in Sec. 3.3.

WFC002553

# ARTICLE III

## SERVICE DEFINITIONS

**Sec. 3.1  Employment Commencement Date.**  "Employment Commencement Date" means the date on which an employee first performs an Hour of Service for a Participating Employer (whether before or after the Participating Employer becomes such), an Affiliate, or a Predecessor Employer.

**Sec. 3.2  Hours of Service.**  "Hours of Service" are determined according to the following subsections with respect to each applicable computation period.  The Plan Administrator may round up the number of Hours of Service at the end of each computation period or more frequently as long as a uniform practice is followed with respect to all employees, who the Plan Administrator determines are in the same, or a similar, job classification, reasonably defined.

(a)  Hours of Service are computed only with respect to service with Participating Employers (for service both before and after the Participating Employer becomes such), Affiliates, and Predecessor Employers and are aggregated for service with all such employers.

(b)  For any portion of a computation period during which a record of hours is maintained for an employee, Hours of Service shall be credited as follows:

(1)  Each hour for which the employee is paid or entitled to payment, for the performance of duties for his or her employer during the applicable computation period is an Hour of Service.

(2)  Each hour for which the employee is paid, or entitled to payment, by his or her employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty, or leave of absence, is an Hour of Service.  No more than 501 Hours of Service shall be credited under this paragraph for any single continuous period (whether or not such period occurs in a single computation period).  Hours of Service shall not be credited under this paragraph with respect to payments under a plan maintained solely for the purpose of complying with applicable workers' compensation, unemployment compensation, or disability insurance laws or with respect to a payment that solely reimburses the individual for medical or medically related expenses incurred by the employee.

(3)  Each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the employer is an Hour of Service.  Such Hours of Service shall be credited to the computation period or periods to which the award or agreement for back pay pertains, rather than to the computation period in which the award, agreement, or payment is made.  Crediting of Hours of Service for back pay awarded or agreed to with respect to periods described in paragraph (2) shall be subject to the limitations set forth therein.

(4)  Hours under this subsection shall be calculated and credited pursuant to section 2530.200b-2 of the Department of Labor Regulations, which are incorporated herein by this reference.

WFC002554

(5)   The Plan Administrator may use any records to determine Hours of Service that it considers an accurate reflection of the actual facts.

(c)   For any portion of a computation period during, which an employee is within a classification for which a record of hours for the performance of duties is not maintained, the employee shall be credited with 190 Hours of Service for each month for which the employee would otherwise be credited with at least one Hour of Service under subsection (b).

(d)   Nothing in this section shall be construed as denying an employee credit for an Hour of Service if credit is required by any federal law other than ERISA. The nature and extent of such credit shall be determined under such other law.

(e)   In no event shall duplicate credit as an Hour of Service be given for the same hour.

Sec. 3.3   **Vesting Service.**   An individual's "Vesting Service" is equal to the aggregate time elapsed between his or her Employment Commencement Date and most recent Termination of Employment or any other date as of which a determination of Vesting Service is to be made, expressed in years and days (with 365 days constituting one year), subject to the following:

(a)   If the individual has a Termination of Employment and then is reemployed by a Participating Employer, an Affiliate or a Predecessor Employer within 12 months, the period of severance is required to be taken into account as Vesting Service. If the individual has a Termination of Employment and was not reemployed by a Participating Employer, an Affiliate or a Predecessor Employer within 12 months, the period of time from the Termination of Employment until the date he or she next performs an Hour of Service shall be subtracted from the individual's Vesting Service. If an individual remains absent from service without pay for a period of one year or more for any reason other than quit, retirement, discharge or death (such as sickness, disability, leave of absence or layoff), the Termination of Employment for purposes of this subsection (a) shall be deemed to occur not later than the first anniversary of the first day of the period of absence, notwithstanding the definition of Termination of Employment in Sec. 2.49 hereof as it relates to Participants who are Disabled. The previous sentence does not apply to a leave of absence that is classified by the Participant's Participating Employer as a salary continuation leave of absence.

(b)   Unless otherwise provided in an Appendix to this Plan, an individual's service with a Predecessor Employer shall be taken into account for purposes of determining Vesting Service. In the case of acquisitions occurring prior to January 1, 2001, any service prior to the earlier of (i) the year in which the individual's Participating Employer first maintained the Plan or a predecessor plan, or (ii) the earliest year in which any trade or business entity at that time under Common Control with the Participating Employer first maintained the Plan or a predecessor plan, shall be disregarded for purposes of determining Vesting Service, unless otherwise provided in an Appendix to this Plan.

(c)   For purposes of determining Vesting Service, service before January 1, 1976 shall be disregarded if such service would have been disregarded under the provisions of the Plan with regard to breaks in service, as in effect from time to time prior to said date, whether or not such provisions were expressly designated as relating to "breaks in service".

(d)   If the Participant has had a break in service of at least 12 months duration ending prior to January 1, 1985, or a break in service of at least 60 months duration ending on or after that

-16-

date, for purposes of determining the vested percentage of his or her Employer Contribution Accounts attributable to employer contributions that accrued before such break, any Vesting Service after the break in service shall not be taken into account.

(1)    For purposes of this subsection (d), a "break in service" is a period beginning on the earlier of (i) the Participant's Termination of Employment, or (ii) the first anniversary of the first day of a period of absence from service without pay for any reason other than quit, retirement, discharge or death (such as sickness, disability, leave of absence or layoff), and ending on the date on which the individual next performs an Hour of Service.

(2)    If an individual is absent for maternity or paternity reasons, a break in service under paragraph (1) shall not commence until the first anniversary of the first day of such absence.  For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence that began on or after January 1, 1985 (i) by reason of the pregnancy of the individual, (ii) by reason of the birth of a child of the individual, (iii) by reason of the placement of a child with the individual in connection with the adoption of such child by such individual, or (iv) for purposes of caring for such child for a period beginning immediately following such birth or placement.

Sec. 3.4  **Service With Wells Fargo Financial.**  If an employee of Wells Fargo Financial, Inc. (formerly named Norwest Financial, Inc., and before that named Dial Corporation) is transferred to employment with a Participating Employer as a Qualified Employee prior to July 1, 2006, and if the employee's service with Wells Fargo Financial includes a period of service before Dial Corporation became an Affiliate hereunder, the employee shall be credited with service as a Qualified Employee, as if Dial Corporation had been an Affiliate during that period.

Sec. 3.5  **Periods of Military Service.**  Notwithstanding any provision of this Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Code section 414(u).

WFC002556

**ARTICLE IV**

**SALARY DEFERRALS AND OTHER EMPLOYEE CONTRIBUTIONS**

**Sec. 4.1  Eligibility for Participation in Salary Deferral Contributions.**

(a)     An employee of a Participating Employer shall become a Participant in the Plan eligible to have Salary Deferral Contributions made on his or her behalf on the earliest Entry Date following completion of one full calendar month of service, on or after the effective date of the Plan with respect to the employee's Participating Employer, provided that the employee is a Qualified Employee on that Entry Date.

(b)     An Active Participant shall be eligible to have Salary Deferral Contributions made on his or her behalf commencing on the Entry Date on which the individual becomes a Participant or on any subsequent Entry Date, provided that the individual has submitted the proper applications to the Plan Administrator or its agent prior to the Entry Date pursuant to procedures established by the Plan Administrator.

(c)     Rehired and transferred employees shall enter or reenter the Plan as follows:

(1)     If a former Participant is rehired as a Qualified Employee, he or she shall become a Participant again on the date of reemployment, and shall be eligible to make Salary Deferral Contributions again, as soon as administratively feasible, following the entry of reemployment information in the records of the Plan and the employee making an election for Salary Deferral Contributions pursuant to procedures established by the Plan Administrator.

(2)     If a former employee who was not previously a Participant is rehired as a Qualified Employee and would have met the requirements of this Article on a prior Entry Date but for the fact that the employee was not a Qualified Employee on such Entry Date, he or she shall become a Participant for purposes of this section on the date of rehire, and shall be eligible to make Salary Deferral Contributions, as soon as administratively feasible, following the entry of reemployment information in the records of the Plan and the employee making an election for Salary Deferral Contributions pursuant to procedures established by the Plan Administrator.

(3)     If an employee of a Participating Employer or Affiliate who is neither a Participant nor a Qualified Employee is transferred to a position in which he or she is a Qualified Employee, and if the employee would have met the eligibility requirements of this Article on the Entry Date preceding the transfer had he or she been a Qualified Employee on that Entry Date, the employee shall become a Participant for purposes of this section on the date of the transfer and shall be eligible to make Salary Deferral Contributions on the first Entry Date following the entry of transfer information in the records of the Plan and the employee making an election for Salary Deferral Contributions pursuant to procedures established by the Plan Administrator, or as soon as administratively feasible thereafter.

(4)     If a rehired employee of a Participating Employer did not become a Participant in accordance with subsection (a) before his or her Termination of Employment, upon his or her rehire the employee must meet the requirements of subsection (a) to become a

WFC002557

Participant and any service performed before his or her date of rehire shall not be taken into account in determining whether the conditions of subsection (a) have been satisfied.

(d)     If an employee becomes or resumes being an Active Participant eligible to make Salary Deferral Contributions under this Section 4.1, Salary Deferral Contributions will be made from the Certified Compensation earned during the entire pay period containing the date on which the employee's election to make Salary Deferral Contributions is effective.

(e)     A Participant who ceases to be an Active Participant because he or she ceases to be a Qualified Employee is no longer eligible to make Salary Deferral Contributions. The Salary Deferral Contributions for such a Participant will terminate at the commencement of the next pay period following the pay period in which the Participant ceases to be an Active Participant; however, in the case of a Participant who ceases to be an Active Participant effective as of the first day of a pay period, his or her Salary Deferral Contributions will cease on that date.  A Participant who again becomes a Qualified Employee shall be eligible to make Salary Deferral Contributions again, as soon as administratively feasible, following the entry of the individual's change of classification information in the records of the Plan and the Participant making an election for Salary Deferral Contributions pursuant to procedures established by the Plan Administrator.

**Sec. 4.2  Duration of Participation.**  A Participant shall continue to be such until the later of (i) his or her Termination of Employment, or (ii) the date all benefits, if any, to which the Participant is entitled hereunder have been distributed from the Trust Fund.

**Sec. 4.3  Amount of Salary Deferral Contributions.**  Each Active Participant who meets the requirements of Sec. 4.1 may elect to have his or her Certified Compensation reduced by any whole percentage from 1% to 50%.  However, the Plan Administrator may from time to time in its sole discretion limit or reduce the maximum reduction percentage for the year for those Participants who are Highly Compensated Employees with respect to that year (or for a specified subset of such Participants) to a percent that is less than the maximum percent permitted under the previous sentence.  The Participant's Participating Employer shall make a Salary Deferral Contribution to the Plan equal to the amount by which the Participant's Certified Compensation is reduced.

(a)     The salary reduction election shall be made in any form that complies with procedures established by the Plan Administrator, and shall apply only to Certified Compensation that is payable after the election becomes effective.  The agreement shall irrevocably designate whether the contributions will be Before-Tax Contributions, Roth Contributions, or a combination thereof.  In the absence of an affirmative designation by a Participant, the Participant's contributions will be treated irrevocably as Before-Tax Contributions.

(b)     An Active Participant may elect to increase or decrease the rate of Salary Deferral Contributions made on his or her behalf to any rate permitted by this Sec. 4.3 and/or to change the tax designation of future contributions from Before-Tax to Roth or vice versa, or may elect to discontinue such contributions at any time.  Such change will be effective as of a payroll date that is as soon as administratively feasible following receipt of the Participant's election. An Active Participant who has elected to contribute less than 12% of Certified Compensation may also elect to have the contribution percent automatically increased by 1% annually, generally in March, following the date the election is filed (provided such election is filed with the Plan Administrator or its agent by the deadline established for the annual 1% increase). Such automatic increases shall continue until the Participant's contribution percent reaches

-19-

WFC002558

12% of Certified Compensation, the Participant files a new election discontinuing such increases, or designates a contribution percent of 12% of Certified Compensation or more.

(c)  To be effective, an election to begin, change or discontinue Salary Deferral Contributions must be made in the form and according to the procedures prescribed by the Plan Administrator and must be submitted to the Plan Administrator or its agent prior to the payroll cut-off date established by the Plan Administrator for the Participant's Participating Employer.

(d)  If the Participant ceases to be a Qualified Employee, all Salary Deferral Contributions shall automatically be discontinued, as provided in Section 4.1(e). If a Participant who ceased to be a Qualified Employee again becomes an Active Participant, no Salary Deferral Contributions shall be made until the Participant makes a new salary deferral election in accord with Section 4.1(d) and the procedures of this Section.

(e)  Effective with the calendar year beginning on the Effective Date, Salary Deferral Contributions by a Participant for any calendar year may not exceed $19,500, as adjusted for any calendar years to take into account any increase provided for that year in accordance with Section 402(g) of the Code or regulations issued by the Secretary of the Treasury. In the case of a Participant who is age 50 or older by the end of a calendar year, the dollar limitation described in the preceding sentence shall be increased by the amount of the annual limit in effect for such year under Code section 414(v)(2) or applicable Treasury regulations thereunder.

(f)  Salary Deferral Contributions shall be paid to the Trustee not later than the 15th business day of the month following the month containing the payroll date to which they relate.  Salary Deferral Contributions for a calendar year shall be allocated to a Before-Tax Account or Roth 401(k) Account, in accordance with subsection (h) of this section, not later than as of the last day of such year and shall be reflected in such Accounts, as provided in Article VII within a reasonable period of time, as determined by the Plan Administrator, following the payroll date to which they relate.  However, Salary Deferral Contributions that are deposited with the Trustee after the end of the calendar year to which they relate may instead be treated by the Plan Administrator as being Salary Deferral Contributions for the year in which they are deposited to the extent necessary to satisfy the requirements of Sec. 6.1.

(g)  Each Participant who (i) is eligible to make Salary Deferral Contributions under this section during a calendar year, and (ii) will have attained age 50 on or before the last day of that year, may make Catch-up Contributions in accordance with and subject to the limitations of Code section 414(v) and any applicable Treasury regulations or IRS Notices or Announcements. "Catch-up Contributions" shall mean Salary Deferral Contributions (including elective deferrals made by the Participant under an arrangement under Code section 401(k) or Code section 403(b) in which the Participant participates or participated during the calendar year) that exceed the Code section 402(g) limit (without regard to the increase provided for in the last sentence of Section 4.3(e)) for the calendar year. A Participant who is eligible to make Catch-up Contributions under this section is not required to make a separate election in order to make Catch-up Contributions; instead, the Participant will be deemed to have elected to make Catch-up Contributions by electing to make Salary Deferral Contributions that exceed the Code section 402(g) limit (without regard to the increase provided for in the last sentence of Section 4.3(e)) for the calendar year. Catch-up Contributions by a Participant shall be limited to the annual limit as in effect from time to time under Code section 414(v)(2) or applicable Treasury regulations thereunder, as adjusted for subsequent calendar years in accordance with the Code or Treasury regulations.

-20-

WFC002559

(1)  All such Catch-up Contributions made by a Participant shall be disregarded for purposes of determining the Employer Matching Contributions for the Participant under Sec. 5.1, except to the extent that a Participant has not received Employer Matching Contributions for a calendar year equal to the lesser of the Participant's Salary Deferral Contributions for the calendar year or 6% of the Participant's Certified Compensation for the calendar year.

(2)  Such Catch-up Contributions shall be disregarded for purposes of the limitations under Code sections 401(a)(30) and 415(c), and for purposes of applying Sections 4.3(e), 6.1, and 6.3 of this Plan. The Plan shall not be treated as failing to satisfy the requirements of Code sections 401(a)(4), 401(k)(3), 410(b) or 416, Sec. 6.1 or Article XV of this Plan, or any other provision of this Plan implementing said Code provisions, by reason of the making of such Catch-up Contributions.

(3)  Catch-up Contributions shall be made pursuant to such rules and procedures as the Plan Administrator may establish from time to time, which shall be consistent with the Code and any applicable regulations. Except as otherwise specifically provided in this subsection (g), Catch-up Contributions shall be treated the same as Salary Deferral Contributions for purposes of applying the provisions of this Plan. Catch-up Contributions will be treated as Before-Tax Catch-up Contributions, Roth Catch-up Contributions, or a combination of both, in accordance with the Participant's election pertaining to Salary Deferral Contributions.

(h)  Each Participant who is eligible to make Salary Deferral Contributions under this section may elect to make all or a portion of those contributions as Roth Contributions in accordance with, and subject to the limitations of, Code section 402A and any applicable Treasury regulations or IRS guidance. Part or all of any Catch-up Contributions under subsection (g) may also be designated as Roth Contributions in accordance with the Participant's election pertaining to Salary Deferral Contributions. Roth Contributions are Salary Deferral Contributions that are included in gross income of the Participant for federal income tax purposes at the time of deferral in accordance with Code section 402A. Roth Contributions pursuant to this subsection (h) will be allocated to a separate Account maintained for such deferrals, called a Roth 401(k) Account. All other contributions pursuant to this Sec. 4.3 will be allocated to a separate Account maintained for such deferrals that are not otherwise designated as Roth Contributions will be designated (or otherwise deemed) Before-Tax Contributions, excludable from income in accordance with Code section 402(e)(3), and will be allocated to a separate Account maintained for such deferrals, called a Before-Tax Account.

WFC002560

## ARTICLE V

## EMPLOYER CONTRIBUTIONS

**Sec. 5.1 Employer Matching Contributions.** Salary Deferral Contributions shall be matched as follows:

(a) Employer Matching Contributions shall be allocated to the Non-Safe Harbor Match Account or the Safe Harbor Matching Account (collectively, the "Matching Contribution Accounts") of Participants who meet the requirements of this Sec. 5.1 for each calendar quarter. Employer Matching Contributions for a Participant made on or after January 1, 2010 shall be allocated to the Participant's Safe Harbor Matching Account. Employer Matching Contributions shall be made in the form of Company Stock available under Sec. 16.5. The amount so allocated to a particular Participant's Matching Contribution Accounts shall have a value equal to 100% of the Participant's Salary Deferral Contributions that are contributed with respect to the calendar quarter, disregarding (i) any Salary Deferral Contributions to the extent they exceed 6% of the Participant's Certified Compensation for the quarter (subject to the modification described in subsection (c) below), and (ii) any Catch-up Contributions under Sec. 4.3(g), except to the extent, as of the last day of the calendar year, the Participant has not received Employer Matching Contributions for a calendar year equal to the lesser of the Participant's Salary Deferral Contributions for the calendar year or 6% of the Participant's Certified Compensation for the calendar year. Additional matching allocations to the Participant's Matching Contribution Accounts may occur, as provided in Sec. 16.5(e).

(b) Each Participant who is credited with at least one year of Vesting Service as of the first day of a particular calendar quarter shall be eligible to receive Employer Matching Contributions from his or her Participating Employer for that calendar quarter, provided that the Participant (i) must have been an Active Participant at some time during the calendar quarter, and (ii) must have made a Salary Deferral Contribution on one or more payroll dates occurring during the calendar quarter.

(c) If a Participant is eligible to receive an Employer Matching Contribution in a calendar year and, due to the 6% limit on Employer Matching Contributions described in subsection (a) above, the Participant has not received the full Employer Matching Contribution with respect to the Participant's Salary Deferral Contributions for any previous quarter during that calendar year for which the Participant is eligible to receive an Employer Matching Contribution, then for subsequent quarters of that calendar year in which the Participant is eligible to receive Employer Matching Contributions, the Participant shall receive Employer Matching Contributions with respect to the Participant's Salary Deferral Contributions that did not receive the full Employer Matching Contribution during those previous calendar quarters. Notwithstanding the foregoing, the Participant's total Employer Matching Contributions for such calendar year shall not exceed 6% of the Participant's Certified Compensation for that calendar year (disregarding any Certified Compensation for calendar quarters before the Participant was eligible to receive Employer Matching Contributions).

(d) No Employer Matching Contribution shall be made with respect to any amount by which the Participant's Salary Deferral Contributions must be reduced pursuant to Sec. 6.1 or Sec. 6.2.

(e) The Participating Employers shall pay Employer Matching Contributions to the Trustee not later than the due date for the Company's federal income tax return (including extensions) for

-22-

WFC002561

the Plan Year to which the contributions relate, subject to the provisions of Sec. 6.3 and Article XVI. The amount paid, together with the amount paid pursuant to Sec. 5.2(d), shall be sufficient to make all payments and allocations provided under Article XVI, after taking into account credits under Sec. 6.4 and Sec. 7.2(i), if any.

(f)     It is intended that the contributions under this Sec. 5.1 will satisfy the alternative safe harbor method of meeting nondiscrimination requirements under Code sections 401(k)(12) and 401(m)(11) based on the treatment of the Employer Matching Contributions under the first sentence of this section as "matching contributions" that satisfy Code section 401(k)(12)(B)(i)(I). Therefore, no discrimination testing under Code section 401(k)(3)(A)(ii) or 401(m)(2) will be required for the contributions under Sec. 4.3 and 5.1, except for Early Participants, as described in Sec. 6.1. The Company will comply with the notice requirement under Code section 401(k)(12)(D) and any other applicable requirements for satisfying the safe harbor provisions.

**Sec. 5.2  Employer Discretionary Profit Sharing Contribution.** The Participating Employers may make an Employer Discretionary Profit Sharing Contribution on behalf of eligible Participants in accordance with the following provisions:

(a)     For each calendar year, the Human Resources Committee of the Board will determine whether the Participating Employers will make a contribution under this section for that year. If such a contribution is to be made for a particular year, the Human Resources Committee will determine the percentage up to 4% of Certified Compensation for the year to be contributed for each eligible Participant.

(b)     To be eligible for an allocation of Employer Discretionary Profit Sharing Contributions under this section for a particular calendar year, the Participant must meet all of the following requirements:

(1)     be an Active Participant on December 31st of that year, unless during that calendar year the Participant had a Termination of Employment (A) due to the Participant's retirement upon or after attaining age 65, (B) following the Participant's having become Disabled, or (C) on account of the Participant's death, without regard to whether the Participant was on a leave of absence when any one of these events occurred (such as a salary continuation leave); and

(2)     be credited with at least one year of Vesting Service prior to the first day of the calendar year or becomes credited with at least one year of Vesting Service during the calendar year.

(c)     A Participant who is not credited with at least one year of Vesting Service prior to January 1st of a calendar year for which an Employer Discretionary Profit Sharing Contribution is made but who completes one year of Vesting Service during such year shall receive an Employer Discretionary Profit Sharing Contribution for the calendar year, provided that the Employer Discretionary Profit Sharing Contribution shall be based only on the Participant's Certified Compensation for the period commencing the first day of the calendar quarter that follows the date on which the Participant completed one year of service, through December 31st of that year.

(d)     Contributions for a Participant under this section for Plan Year 2018 or prior shall be allocated to the Participant's Discretionary Profit Sharing Account, as provided in Sec. 7.1.

-23-

WFC002562

Contributions for a Participant under this section for Plan Year 2019 or later shall be allocated to the Participant's Discretionary Profit Sharing Post 2018 Account, as provided in Sec. 7.1. The Discretionary Profit Sharing Accounts and Discretionary Profit Sharing Post 2018 Accounts are referred to collectively as the "Employer Discretionary Contribution Accounts." The Employer Discretionary Profit Sharing Contribution may be made at the discretion of the Company in cash or in the form of Company Stock of equivalent value as of the date of transfer to the Trustee, including Company Stock available under Sec. 16.5. The Participating Employers shall pay Employer Discretionary Profit Sharing Contributions for a calendar year to the Trustee not later than the due date for the Company's federal income tax return (including extensions) for that year, subject to the provisions of Sec. 6.3. The amount paid, together with the amount paid pursuant to Sec. 5.1(e), shall be sufficient to make all payments and allocations provided under Article XVI, after taking into account credits under Sec. 6.4 and Sec. 7.2(i), if any.

**Sec. 5.3  Qualified Nonelective Contributions.**  The Company may in its sole discretion determine that the Participating Employers will make Qualified Nonelective Contributions to the Plan for a particular Plan Year in order to enable the Plan to satisfy the requirements of Sec. 6.1 and avoid refunds, or reduce the amounts to be refunded, to Participants under Sec. 6.1(d) for that Plan Year.  If Qualified Nonelective Contributions are to be made for a Plan Year, the Company will determine in its sole discretion the amount of such contributions to be made.

(a)   Any Qualified Nonelective Contributions that are allocated to a Participant for a Plan Year will be included in Sec. 6.1(a)(1) for purposes of calculating the Participant's deferral percentage for the Plan Year, except to the extent the Plan Administrator elects instead to include part or all of such contributions for a Plan Year in Sec. 6.3(a)(1) for purposes of calculating the Participant's contribution percentage for the Plan Year.  For Plan Years commencing on or after January 1, 2006, such contributions will be included in Sec. 6.1(a)(1) only to the extent they comply with the requirements of Treasury Regulation § 1.401(k)-2(a)(6).  Any such contributions will be credited to a separate QNEC Account for the Participant.  Any Qualified Nonelective Contributions must be contributed to the Plan within 12 months following the end of the Plan Year to which they relate.

(b)   The Qualified Nonelective Contribution for a Plan Year will be allocated among those Participants (i) who are Active Participants included in the testing under Sec. 6.1 for the Plan Year (whether or not the individual remains an Active Participant at the time the contribution is allocated), (ii) who are Non-Highly Compensated Employees for the Plan Year, and (iii) who are Qualified Employees on December 31 of the Plan Year.  The allocation to each such Participant for a Plan Year will be in the proportion that the Certified Compensation of such Participant for the Plan Year bears to the total Certified Compensation of all Participants who meet the requirements of the previous sentence for that Plan Year.

(c)   If Sec. 6.1 is being applied for the Plan Year by disaggregating the Plan into separate plans pursuant to Sec. 6.1(g), the Company will determine the amount of Qualified Nonelective Contributions (if any) to be made for each disaggregated plan, and the allocations under subsection (b) will be done separately for purposes of each disaggregated plan.

(d)   Any QNEC Account established for a Participant pursuant to this section shall be treated the same as the Participant's Before-Tax Account for all purposes under the Plan.  All QNEC Accounts are 100% vested and nonforfeitable at all times.  A Participant may not make withdrawals while he or she is an employee of a Participating Employer or an Affiliate from any QNEC Account pursuant to Sec. 10.7 or Sec. 10.9.

-24-

WFC002563

(e)     In addition to the reasons described above, the Company may make other Qualified Nonelective Contributions for any other reason determined by the Plan Administrator. Such Qualified Nonelective Contributions (i) shall be allocated the Employer Qualified Non-Elective Contribution Accounts of those Participants identified by the Company, (ii) shall be in an amount determined by the Company, (iii) shall be 100% vested and nonforfeitable at all times and (iv) shall be subject to the distribution restrictions described in Section 10.9(b).

WFC002564

## ARTICLE VI

## CONTRIBUTION ADJUSTMENTS AND LIMITATIONS

**Sec. 6.1**  **Adjustment of Salary Deferral Contributions.**  If necessary to satisfy the requirements of Code section 401(k) and the regulations thereunder with respect to Early Participants, Salary Deferral Contributions of Early Participants shall be adjusted in accordance with the following.

(a)    Each calendar year, the "deferral percentage" will be calculated for each Early Participant. Each Early Participant's deferral percentage is calculated by dividing the amount referred to in paragraph (1) by the amount referred to in paragraph (2):

(1)    The total Salary Deferral Contributions (including Excess Deferrals of Highly Compensated Employees distributed under Sec. 6.2, but excluding Excess Deferrals of Non-Highly Compensated Employees that arise solely from contributions made under plans of the Participating Employers or Affiliates, and also excluding any Catch-up Contributions under Sec. 4.3(g)), if any, allocated to the Early Participant's Accounts with respect to the year.  The amount under this paragraph (1) also includes any Qualified Nonelective Contributions allocated to the Early Participant's QNEC Account pursuant to Sec. 5.3 with respect to the year, but only to the extent that such amount complies with the requirements of Treasury Regulation § 1.401(k)-2(a)(6).

(2)    The Early Participant's compensation with respect to the calendar year.  For purposes of this section, an Early Participant's "compensation" for the year means compensation determined according to a definition selected by the Plan Administrator for that year, which satisfies the requirements of Code section 414(s).  The same definition of compensation shall be used for all Early Participants for a particular year, but different definitions may be used for different years.  The Plan Administrator shall also determine whether compensation includes or does not include the Salary Deferral Contributions to this Plan and any contributions made pursuant to a salary reduction agreement by or on behalf of the Early Participant to any other plan, which meets the requirements of Code sections 125, 132(f)(4), 401(k), 402(h)(1)(B), or 403(b), and whether or not it includes amounts paid prior to the date an individual became a Participant.  Compensation shall be subject to the limit provided under Sec. 2.9(c).

(b)    Each calendar year, the average deferral percentage for Early Participants, who are Highly Compensated Employees, and the average deferral percentage for Early Participants who are Non-Highly Compensated Employees, will be calculated.  A separate average deferral percentage shall be calculated for Early Participants in all collective bargaining units who are required to be disaggregated pursuant to Treasury Regulation §§ 1.401(k)-1(b)(4)(iv) and 1.410(b)-7(c).  Such Early Participants shall be disregarded in calculating the average deferral percentage for Early Participants, who are not in such collective bargaining units.

(1)    In each case, the average is the average of the percentages calculated under subsection (a) for each of the employees in the particular group.  The deferral percentage for each Early Participant and the average deferral percentage for a particular group of employees shall be calculated to the nearest one-hundredth of one percent.

WFC002565

(2)    The average deferral percentage for Early Participants, who are Non-Highly Compensated Employees that is used in applying this section for a particular calendar year shall be the percentage determined for the current year.

(c)    If the requirements of either paragraph (1) or (2) are satisfied, then no further action is needed under this section:

(1)    The average deferral percentage for Early Participants, who are Highly Compensated Employees, is not more than 1.25 times the average deferral percentage for Early Participants, who are Non-Highly Compensated Employees.

(2)    The excess of the average deferral percentage for Early Participants, who are Highly Compensated Employees, over the average deferral percentage for Early Participants, who are Non-Highly Compensated Employees, is not more than two percentage points, and the average deferral percentage for such Highly Compensated Employees is not more than 2 times the average deferral percentage for such Non-Highly Compensated Employees.

The requirements of this subsection (c) shall be applied separately with respect to Early Participants in collective bargaining units who are required to be disaggregated pursuant to Treasury Regulation §§ 1.401(k)-1(b)(4)(iv) and 1.410(b)-7(c).

(d)    If neither of the requirements of subsection (c) is satisfied, then the Salary Deferral Contributions with respect to Early Participants, who are Highly Compensated Employees, shall be reduced under the method set forth below.

(1)    Determine the Total Reduction Amount, which, for purposes of this subsection, shall mean, with respect to any calendar year, the excess of the aggregate amount of Salary Deferral Contributions actually taken into account in computing the deferral percentages of such Highly Compensated Employees for such year, over the maximum amount of such contributions permitted under subsection (c) (determined by hypothetically reducing Salary Deferral Contributions made on behalf of such Highly Compensated Employees in order of the deferral percentages, beginning with the highest of such percentages).

(2)    Reduce the Salary Deferral Contributions of such Highly Compensated Employee(s) with the greatest dollar amount of Salary Deferral Contributions to the dollar amount of such Highly Compensated Employee(s) with the next greatest dollar amount of Salary Deferral Contributions, unless a lesser reduction will be sufficient to equal the remaining Total Reduction Amount.

(3)    Repeat paragraph (2) until the Salary Deferral Contributions of the Early Participants, who are Highly Compensated Employees, have been reduced by an amount equal to the Total Reduction Amount.

For purposes of this subsection, the "greatest dollar amount" is determined after distribution of any Excess Deferrals under Sec. 6.2.

(e)    At any time during the calendar year, the Plan Administrator may make an estimate of the amount of Salary Deferral Contributions by Early Participants, who are Highly Compensated Employees, that will be permitted under this section for the year and may reduce the percent specified in Sec. 4.3 for such Early Participants, or for a specified subset of such Early

-27-

WFC002566

Participants, to the extent the Plan Administrator determines in its sole discretion to be necessary to satisfy at least one of the requirements in subsection (c).

(f)    If Salary Deferral Contributions with respect to an Early Participant, who is a Highly Compensated Employee, are reduced pursuant to subsection (d), the excess Salary Deferral Contributions shall be distributed, subject to the following:

    (1)    For purposes of this subsection, "excess Salary Deferral Contributions" mean the amount by which Salary Deferral Contributions for Early Participants, who are Highly Compensated Employees, have been reduced under subsection (d).

    (2)    Excess Salary Deferral Contributions (adjusted for income or losses allocable thereto as specified in paragraph (3), if any) shall be distributed to Early Participants on whose behalf such excess contributions were made for the calendar year no later than December 31st of the following year.  Furthermore, the Plan Administrator shall attempt to distribute such amount by March 15th of the year following the year for which the excess contributions were made to avoid the imposition on the Participating Employers of an excise tax under Code section 4979.

    (3)    Income or losses allocable to excess Salary Deferral Contributions shall be equal to the amount of income or loss allocable to such excess amount for the year for which such amount was contributed.  The amount of such allocable income or loss shall be determined for all affected Early Participants for each year using a reasonable method selected by the Plan Administrator, which satisfies the requirements of Treasury Regulation § 1.401(k)-2(b)(2)(iv) and any other applicable regulations.

    (4)    The amount of excess Salary Deferral Contributions and income or losses allocable thereto, which would otherwise be distributed pursuant to this subsection, shall be reduced, in accordance with regulations, by the amount of Excess Deferrals and income or losses allocable thereto previously distributed to the Early Participant pursuant to Sec. 6.2 for the calendar year.

    (5)    Notwithstanding the foregoing provisions of this subsection (f), if the Early Participant was eligible to make Catch-up Contributions pursuant to Sec. 4.3(g) for the calendar year for which the excess Salary Deferral Contributions were made, but did not otherwise make the maximum Catch-up Contribution permitted for that year, the Early Participant's excess Salary Deferral Contributions (or, if less, the portion of such excess equal to the amount by which the Early Participant's actual Catch-up Contributions for the year are below the maximum Catch-up Contribution allowed for the year) shall instead be treated as Catch-up Contributions for the year and retained in the Early Participant's Account.  The portion of any income or losses that are allocable under paragraph (3) above, to the excess Salary Deferral Contributions that are treated as Catch-up Contributions, shall also be retained in the Early Participant's Account.

(g)    The deferral percentage for any Early Participant, who is a Highly Compensated Employee for the calendar year, and who is eligible to participate in two or more plans with cash or deferred arrangements described in Code section 401(k) to which any Participating Employer or Affiliate contributes, shall be determined pursuant to applicable Treasury regulations.

WFC002567

(h)    If two or more plans, which include cash or deferred arrangements, are considered as one plan for purposes of Code section 401(a)(4) or Code section 410(b), the cash or deferred arrangements shall be treated as one for the purposes of applying the provisions of this section, unless mandatorily disaggregated pursuant to regulations under Code section 401(k).

(i)    If the entire Account balance of an Early Participant, who is a Highly Compensated Employee, has been distributed during the calendar year in which an excess arose, the distribution shall be deemed to have been a corrective distribution of the excess, and income attributable thereto to the extent that a corrective distribution would otherwise have been required under subsection (f) of this section or Sec. 6.2.

(j)    A corrective distribution of excess contributions under subsection (f) of this section or Excess Deferrals under Sec. 6.2 may be made without regard to any notice or Participant or spousal consent required under Article VIII or X.

(k)    In the event of a complete termination of the Plan during the Plan Year in which an excess arose, any corrective distribution under subsection (f) of this section shall be made as soon as administratively feasible after the termination, but in no event later than 12 months after the date of termination.

**Sec. 6.2   Distribution of Excess Deferrals.** Notwithstanding any other provisions of the Plan, Excess Deferrals for a calendar year, and income or losses allocable thereto, shall be distributed no later than the following April 15 to Participants, who claim such Excess Deferrals, subject to the following:

(a)    For purposes of this section, "Excess Deferrals" means the amount of Salary Deferral Contributions for a calendar year that the Participant claims pursuant to the procedure set forth in subsection (b) because the total amount deferred for the calendar year exceeds the annual limit as in effect from time to time under Code section 402(g) or applicable Treasury regulations thereunder, as adjusted for subsequent calendar years in accordance with the Code or Treasury regulations, increased, if applicable, by the dollar limit on Catch-up Contributions under Code section 414(v).

(b)    Excess Deferrals will be distributed to a Participant, only if the Participant makes a request to receive such a distribution, consistent with procedures established by the Plan Administrator. The Participant's request, specifying the amount of the Participant's Excess Deferral for any calendar year, must be submitted to the Plan Administrator no later than the April 1 following such calendar year. The request shall include the Participant's written statement that if such amounts are not distributed, such Excess Deferrals, when added to amounts deferred under other plans or arrangements described in Code section 401(k), 403(b), or 408(k), exceed the limit imposed on the Participant by Code section 402(g) for the year in which the deferral occurred (increased, if applicable, by the dollar limit on Catch-up Contributions under Code section 414(v)). A Participant shall be deemed to have submitted such a request to the extent the Participant has Excess Deferrals for the calendar year taking into account only contributions under this Plan and any other plan maintained by a Participating Employer or an Affiliate.

(c)    Excess Deferrals distributed to a Participant with respect to a calendar year shall be adjusted to include income or losses allocable thereto using the same method specified for excess Salary Deferral Contributions under Sec. 6.1(f)(3).

WFC002568

(d)   The amount of Excess Deferrals and income allocable thereto, which would otherwise be distributed pursuant to this section, shall be reduced, in accordance with applicable regulations, by the amount of excess Salary Deferral Contributions and income allocable thereto previously distributed to the Participant pursuant to Sec. 6.1 for the calendar year, and by the amount of any deferrals properly distributed as excess annual additions under Sec. 6.3.

**Sec. 6.3  Limitation on Allocations.**  Notwithstanding the foregoing provisions of this Article V, allocations to Participants shall not exceed the limits provided under Code section 415.  For purposes of the preceding sentence:

(a)   The Annual Additions with respect to a Participant for any Plan Year shall not exceed the lesser of:

(1)   The annual limit provided in Code section 415(c)(1) or applicable Treasury regulations thereunder, as adjusted for each subsequent Plan Year to reflect cost of living increases for that Plan Year provided under Code section 415(d) or published by the Secretary of the Treasury.  However, for any year that the requirements of subsection (e) are met, the limitation in this paragraph shall be increased, as provided by Code section 415(c)(6).

(2)   100% of the Compensation of such Participant.  This paragraph (2) shall not apply to any contribution for medical benefits after separation from service within the meaning of Code sections 401(h) or 419A(f)(2) which is otherwise treated as an Annual Addition.

(b)   All defined contribution plans of the Company or of any trade or business entity under Common Control with the Company shall be treated as one defined contribution plan for purposes of applying the limitations of this section.  If a limitation on the contributions to be allocated to a Participant's Accounts hereunder for a calendar year is required because of contributions or forfeitures under another such plan, the allocations under this Plan and each such other plan shall be reduced pro rata to the end that the limitation shall not be exceeded, except that reductions to the extent necessary shall be made in allocations under profit sharing and stock bonus plans before any reductions in allocations are made under money purchase pension plans.

(c)   If for any calendar year the limitations described in subsection (a) would otherwise be exceeded with respect to any Participant, the Company shall correct the Participant's Annual Additions as permitted under the Internal Revenue Service's Employee Plan Compliance Resolution System (or any other applicable guidance issued by the Internal Revenue Service or the Treasury Department).

(d)   The following definitions shall be applicable for purposes of this section:

(1)   "Annual Additions" means the sum of the following amounts allocated to a Participant:

(A)   Employer contributions, including Salary Deferral Contributions, Employer Discretionary Contributions made under this Plan.  Excess Salary Deferral Contributions, and excess Employer Matching Contributions, which are distributed under the provisions of this Article VI, are included in Annual Additions, but Excess Deferrals which are distributed under Sec. 6.2 are not included in Annual Additions.

-30-

WFC002569

(B)   The portion of the Employer Matching Contribution that is allocated to the Participant under Sec. 5.1.

(C)   Principal payments made on an ESOP loan under Article XVI, to the extent such payments result in allocation of Company Stock to the Participant's Matching Contribution Accounts.

(D)   Employer contributions, employee contributions, and forfeitures, if any, under any other qualified defined contribution plan maintained by a Participating Employer.

(E)   For any year that the requirements of subsection (e) are not met, interest on Exempt Loans shall be an Annual Addition.

(F)   Amounts attributable to medical benefits, as described in Code sections 415(1)(2) and 419A(d)(2).

An Annual Addition with respect to a Participant's Accounts shall be deemed credited thereto with respect to a year if it is allocated to the Participant's Accounts under the terms of the Plan as of any date within that year.  Annual Additions do not include any rollover contributions as defined in Code sections 402(c), 403(a)(4), 403(b)(8) or 457(e)(16), or in any other provision of the Code, which may allow rollover contributions to be made to this Plan from time to time. Any Catch-up Contributions under Code section 414(v) shall be disregarded in determining Annual Additions.

(2)   "Compensation" means a Participant's earned income, wages, salaries, fees for professional services and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Participating Employers or an Affiliate (including, but not limited to sales commissions, compensation for services on the basis of a percentage of profits, commissions on insurance premiums and bonuses) to the extent that the amounts are includible in gross income (or to the extent the amount would have been received and includible in gross income but for an election under Code sections 125(a), 132(f)(4), 402(e)(3), 402(h)(1)(B), 402(k), or 457(b)), subject to the following:

(A)   "Compensation" for purposes of this section specifically includes, but is not limited to:

(i)   Amounts paid after the Participant's Termination of Employment that constitute regular pay for services during the Participant's regular working hours, or pay for services outside the Participant's regular working hours, (such as overtime or shift differential), commissions, bonuses, or other similar payments, but only to the extent the payments would have been paid to the Participant if the Termination of Employment had not occurred. Such pay or amounts are Compensation only if paid by the later of (1) 2 ½ months after the Participant's Termination of Employment, or (2) the end of the Plan Year that includes the date of the Participant's Termination of Employment.

(ii)   Amounts paid after the Participant's Termination of Employment that constitute (1) payments of unused accrued bona fide sick, vacation or other leave, but only if the Participant would have been able to use the leave if

-31-

WFC002570

employment had continued, and (2) distributions from a plan of deferred compensation in the year received by the Participant, but only to the extent the payments would have been paid to the Participant at the same time if the Termination of Employment had not occurred and only to the extent the amounts are includible in the Participant's gross income.  Such pay or amounts are Compensation only if paid by the later of (i) 2 ½ months after the Participant's Termination of Employment, or (ii) the end of the Plan Year that includes the date of the Participant's Termination of Employment, and only if those amounts would have been included in the definition of Compensation if they were paid prior to the Participant's Termination of Employment.

    (iii)    Amounts awarded by an administrative agency or court pursuant to a bona fide agreement by the Company or an Affiliate to compensate the Participant for lost wages, to the extent such payments represent wages, and such compensation that would otherwise be included in "Compensation," as defined under this section.

(B)    Except as provided in subparagraph (A), "Compensation" for purposes of this section specifically excludes all other amounts paid after the Participant's Termination of Employment, such as severance pay, parachute payments within the meaning of Code section 280G, and post-severance payments under a nonqualified unfunded deferred compensation plan, unless the payments would have been paid at that time without regard to the Participant's Termination of Employment.

(C)    "Compensation" for purposes of this section specifically excludes all of the following items:

    (i)    Contributions (other than elective contributions described in Code sections 402(e)(3), 408(k)(6), 408(p)(2)(A)(i), or 457(b)) made by the Company or an Affiliate to a plan of deferred compensation (including a simplified employee pension described in Code section 408(k) or a simple retirement account described in Code section 408(p), and whether or not qualified) to the extent that the contributions are not includible in the Participant's gross income for the taxable year in which contributed.  In addition, any distributions from a plan of deferred compensation (whether or not qualified) are not considered Certified Compensation, regardless of whether such amounts are includible in the Participant's gross income when distributed.

    (ii)    Amounts realized from the exercise of a nonstatutory option, or when restricted stock or other property held by the Participant either becomes freely transferable or is no longer subject to a substantial risk of forfeiture (as described in Code section 83 and the regulations promulgated thereunder).

    (iii)    Amounts realized from the sale, exchange, or other disposition of stock acquired under a statutory stock option (as defined in Treasury Regulation §1.421-1(b)).

WFC002571

(iv)    Other amounts that receive special tax benefits, such as premiums for group-term life insurance (but only to the extent that the premiums are not includible in the Participant's gross income and are not salary reduction amounts that are described in Code section 125).

(v)    Other items of remuneration that are similar to any of the items listed in paragraphs (i) through (iv) above.

(D)    Notwithstanding anything in this section to the contrary, "Compensation" for any Plan Year will not exceed the amount permitted to be taken into account for that Plan Year under Code section 401(a)(17).

(e)    The requirements of this subsection (e) are met with respect to a particular year if no more than one third of the allocations to Matching Contribution Accounts under Sec. 16.5 for that year are allocated to Matching Contribution Accounts of Highly Compensated Employees.

**Sec. 6.4  Forfeitures Credited Against Employer Contributions.**  Forfeitures arising during a calendar year under the provisions of Sec. 9.2(d), which have not previously been applied to reinstate Accounts pursuant to Sec. 9.2(e), shall be applied not later than the last day of the year as a credit against the Employer Matching Contributions or Employer Discretionary Profit Sharing Contributions to be made for the current year by the Participating Employers, to pay expenses of the Plan or to make corrective adjustments to Accounts, each as determined by the Plan Administrator in its sole discretion (including the manner of allocating forfeitures as a credit among Participating Employers).  Such forfeitures shall thereafter be treated hereunder as contributions by the Participating Employers.

WFC002572

# ARTICLE VII

## INDIVIDUAL ACCOUNTS

**Sec. 7.1  Accounts for Participants.**  The following Accounts may be established under the Plan for a Participant:

(a)  A Before-Tax Account and a Roth 401(k) Account shall be maintained for each Participant, who elects to have Before-Tax Contributions or Roth Contributions, as applicable, made on his or her behalf pursuant to Sec. 4.1 and Sec. 4.3, including Salary Deferral Contributions made on or after January 1, 2020 in excess of the Code section 402(g) limit (without regard to the increase provided for in the last sentence of Section 4.3(e)) for Participants who will be age 50 or older by the end of the calendar year. Prior to January 1, 2020, a Catch-Up Contribution Account (Pre-2020 Catch-Up Account) and a Roth Catch-Up Account (Pre-2020 Roth Catch-Up Account) were maintained for each Participant, who elected to have Catch-up Contributions and Roth Catch-up Contributions, as applicable, made on his or her behalf pursuant to Sec. 4.1 and Sec 4.3. These Accounts are subject to the Participant's investment directions pursuant to Sec. 8.4 and Sec. 8.5.

(b)  An Employee After-Tax Account shall be maintained for each Participant who made such contributions under provisions of the Plan previously in effect. These Accounts are subject to the Participant's investment directions pursuant to Sec. 8.4 and Sec. 8.5.

(c)  The following Employer Contribution Accounts shall be established for Participants:

(1)  Matching Contribution Accounts shall be maintained for each Participant, who has any Employer Matching Contributions made under the provisions of the Plan, now or previously in effect, that are required to be initially invested in the Wells Fargo ESOP Fund. Employer Matching Contributions received by a Participant on or after January 1, 2010 are held in a Safe Harbor Matching Account. These Accounts are subject to the Participant's investment directions, as provided in Sec. 8.6.

(2)  Employer Discretionary Contribution Accounts shall be maintained for each Participant, who receives any allocation of Employer Discretionary Profit Sharing Contributions under Sec. 5.2. Employer Discretionary Profit Sharing Contributions received by a Participant for Plan Year 2018 or prior are held in the Discretionary Profit Sharing Account. Employer Discretionary Profit Sharing Contributions received by a Participant for Plan Year 2019 or later are held in the Discretionary Profit Sharing Post 2018 Account. These Accounts are subject to the Participant's investment directions, as provided in Sec. 8.5 and 8.6; provided, however, that if the Employer Discretionary Contribution is made in the form of Company Stock (including Company Stock available under Sec. 16.5), the amount of that contribution shall be initially invested in the Wells Fargo ESOP Fund, and thereafter, shall be subject to the Participant's investment directions, as provided in Sec. 8.6.

(3)  A Share Award Account shall be maintained for each Participant, who received an allocation of Employer Discretionary Share Award Contributions, as described in Section 5.3 of the Prior Plan Document. No such contributions shall be made on or after January 1, 2013.

-34-

WFC002573

(d)    A Rollover Account, a Roth Rollover Account and/or an After-Tax Rollover Account shall be established, as provided in Sec. 7.3, for any Participant who makes a Rollover Contribution, or as provided in Sec. 7.4, for any Participant, who makes certain types of transfers from other plans.  A Rollover Account shall be established for any Participant who makes a Rollover Contribution of before-tax contributions.  A Roth Rollover Account shall be established for any Participant who makes a Rollover Contribution of amounts described in Section 7.3(e). An After-Tax Rollover Account shall be established for any Participant who makes a Rollover Contribution of after-tax contributions. Such Accounts are subject to the Participant's investment directions, as provided in Sec. 8.4 and Sec. 8.5.

(e)    An Account or the portion of an Account of a Participant who was a participant in a plan of an employer listed in Sec. 14.10 that has been merged into this Plan to hold any account under the merged plan subject to optional settlements, joint and survivor annuity requirements, or other features required to be preserved under the Code or ERISA will be identified with a special code applicable to such grandfathered benefit options.  An Account or the portion of an Account that has been so identified is referred to herein as a "Frozen Transferred Account." Such Accounts are subject to the Participant's investment directions, as provided in Sec. 8.4 and Sec. 8.5.

(f)    More than one of any of the above types of Accounts may be established for a Participant, if required by the Plan, or if considered advisable by the Plan Administrator, in the administration of the Plan, including more than one type of Frozen Transferred Account. Except where a Frozen Transferred Account is required by an applicable Appendix, each account of a Participant under any plan that has been merged into this Plan shall be held in the most comparable type of Account under this Plan.  Except as expressly provided herein to the contrary, the Trust Fund shall be held and invested on a commingled basis; Accounts shall be for bookkeeping purposes only; and the establishment of Accounts shall not require any segregation of Trust Fund assets.

(g)    An Employer Qualified Non-Elective Contribution Account shall be maintained for any Participant, who has any "qualified nonelective contributions," which were made under prior provisions of the Plan, or which were made under the plan of another employer listed in Sec. 14.10 that was merged into this Plan, or amounts contributed under Sec. 5.3.

(h)    A Qualified Voluntary Elective Contribution Account shall be maintained for any Participant, who has any "qualified voluntary elective contributions," which were made under prior provisions of the Plan, or which were made under the plan of another employer listed in Sec. 14.10 that was merged into this Plan.

(i)    A Reinstatement of Funds Account shall be maintained for any amounts that were to be distributed to a Participant, Beneficiary or Alternate Payee from the Plan, but which were not in fact distributed for the reasons described in Sec. 10.19 (including pursuant to a rollover in accordance with Section 10.17, but not including amounts described in subsection (j) below).

(j)    A Reinstatement of Roth Rollover Account shall be maintained for any amounts credited to a Roth 401(k) Account, Pre-2020 Roth Catch-Up Account or Roth Rollover Account that were to be directly rolled over by a distributee (as defined in Sec. 10.17(b)(3)) in accordance with Sec. 10.17, but which were not in fact directly rolled over for the reasons described in Sec. 10.19.

WFC002574

**Sec. 7.2  Valuation of Accounts.**  As of each Valuation Date, the value of each Account shall be adjusted to reflect the effect of distributions, transfers, withdrawals, income, realized and unrealized profits and losses, contributions, and all other transactions with respect to the Trust Fund since the next preceding Valuation Date, as follows:

(a)    In accordance with a method consistently followed and uniformly applied, the Trustee shall determine the fair market value of each Investment Fund.  The Trustee shall advise the Plan Administrator of the values.  If fair market value of an asset is not available, the value of such asset shall be deemed to be its fair value as determined in good faith by the Trustee.

(b)    From the value of each Account determined as of the next preceding Valuation Date, there shall be deducted the amount of all distributions and withdrawals, if any, made from the Account since the preceding Valuation Date.

(c)    The fair market value of each Investment Fund determined as of the Valuation Date by the Trustee pursuant to subsection (a) shall be adjusted by adding the amount allocated to the Investment Fund from any contribution of a Participating Employer for a year that ended prior to the Valuation Date (which contribution has not been paid to the Trust as of the Valuation Date).

(d)    The value of each Account as determined in subsection (b) above shall be adjusted pro rata so that the aggregate value of the Accounts invested in each Investment Fund equals the fair market value of the Investment Fund as adjusted in subsection (c) above.

(e)    Following adjustment pursuant to subsection (d), there shall be added to the value of each Account (other than Matching Contribution Accounts or Employer Discretionary Contribution Accounts described in subsection (f) to the extent such Account has been allocated an amount pursuant to Sec. 16.5), the amount of any contributions made on the Participant's behalf, which were allocated to the Participant's Account during the period subsequent to the preceding Valuation Date and ending on the current Valuation Date.

(f)    To Matching Contribution Accounts and Employer Discretionary Contribution Accounts of each Participant employed by a Participating Employer that can participate in an employer stock ownership plan, there shall be added all amounts allocated thereto pursuant to Sec. 16.5.

(g)    Any transfers between the various Investment Funds pursuant to Sec. 8.5 and Sec. 8.6 shall then be made, and Accounts shall be adjusted accordingly.

(h)    If a Participant's Termination of Employment occurred at a time when the Participant was not 100% vested in one or more of his or her Employer Contribution Accounts, the unvested portion of the respective Account that is treated as a forfeiture pursuant to Sec. 9.2 shall continue to be allocated to the specific Account to which such amount was allocated immediately prior to the Participant's Termination of Employment, until applied pursuant to Sec. 6.4.

(i)    In the event that amounts are accumulated in the Trust Fund, which are not allocable to the Accounts of particular Participants, such amounts (and any earnings on those amounts) may be applied by the Plan Administrator to restore Accounts to conform to Participant investment designations, to make other restorative allocations, or to pay expenses chargeable to the Trust Fund.  Any such amounts remaining in the Trust Fund, as of the last day of the Plan Year,

-36-

WFC002575

which have not been so applied shall be allocated among the Investment Funds established under Sec. 8.1, as additional investment earnings in proportion to the balance of each Investment Fund, as soon as administratively feasible in the following Plan Year.

**Sec. 7.3  Rollover Contributions.**  With the consent of the Plan Administrator, which shall be granted in its sole discretion and only if it is certain that the amount to be transferred constitutes a Rollover Contribution, a Qualified Employee may transfer to the Trust Fund an amount that constitutes a Rollover Contribution.  Notwithstanding any provisions of the Plan to the contrary, the following shall apply with respect to a Rollover Contribution:

(a)    A Rollover Account, a Roth Rollover Account and/or an After-Tax Rollover Account, as appropriate, shall be established pursuant to Sec. 7.1(d) for each individual, who makes a Rollover Contribution.  From the date the assets of the Rollover Contribution are transferred to the Trust Fund through the first Valuation Date following such transfer, the account to which such contribution is transferred shall be valued at the fair market value of said assets on the date of such transfer.

(b)    No employer contributions shall ever be added to a Rollover Account, a Roth Rollover Account or an After-Tax Rollover Account and the Participant shall always be 100% vested in such an account.

(c)    The individual shall be treated the same as a Participant hereunder from the time of the transfer, but shall not actually be a Participant and shall not be eligible to receive an allocation of employer contributions until he or she has satisfied the requirements of Article IV.

(d)    For purposes of this section, "Rollover Contribution" means a contribution of an amount that may be rolled over to this Plan pursuant to Code section 401(a)(31), 402(c), 403(a)(4), or 408(d)(3), or pursuant to Code section 403(b)(8) or 457(e)(16).  Prior to January 1, 2010, no Rollover Contribution was permitted to this Plan to the extent it consisted of after-tax contributions.

(e)    The Plan may accept transfer to the Trust Fund of distributions from a designated Roth account described in Code section 402A(b)(2), as provided below:

(1)    A direct rollover pursuant to Code section 401(a)(31) of an amount that is all or part of an eligible rollover distribution from a designated Roth account, provided that the Plan Administrator receives from the plan administrator of the distributing plan prior to the transfer a statement in a form acceptable to the Plan Administrator either (A) indicating that the distribution is a qualified distribution within the meaning of Code section 402A(d)(2) or (B) specifying the first year for which the individual made a Roth contribution under Code section 402A to the distributing plan and the amount of the distribution attributable to the investment in the contract (i.e., the "basis") under the distributing plan versus the income on the contract within the meaning of Code section 72(e). The Plan Administrator shall rely on such statement received from the plan administrator of the distributing plan, and assumes no obligation or responsibility with respect to the accuracy of such information.

(2)    The Plan will not accept an indirect rollover that is part of an eligible rollover distribution from a designated Roth account.

WFC002576

If the eligible rollover distribution is not a qualified distribution under Code section 402A(d)(2), and less than the full amount of the distribution is transferred in a direct rollover to this Plan, the rollover will be deemed to consist first of the portion of the distribution that is attributable to income on the contract within the meaning of Code section 72(e). A Roth Rollover Account shall be established for each individual, who makes a Rollover Contribution described in this subsection (e). Except as specifically provided herein, the Roth Rollover Account shall be treated in all respects the same as a Rollover Account.

Sec. 7.4 <u>Transfers from Other Plans</u>. With the consent of the Plan Administrator, which shall be granted in its sole discretion and only if it determines that the transfer is consistent with the provisions of the Code, the Plan may accept a direct transfer from another plan of assets credited to a Qualified Employee under such other plan (provided such plan is a qualified plan under Code section 401 to which the survivor annuity requirements of Code section 401(a)(11) do not apply).

(a)    Any assets so received that are attributable to employer contributions (other than under Code section 401(k)) shall be placed in a Rollover Account for the individual, any assets attributable to employer contributions made pursuant to an employee's salary deferral election under Code section 401(k) shall be placed in an individual's Rollover Account or Roth Rollover Account, based on whether such contributions were deferred on a before-tax basis or Roth after-tax basis, and any assets attributable to employee after-tax contributions shall be placed in an After-Tax Rollover Account. Thereafter, the assets transferred shall be treated in all respects as the corresponding type of contributions under this Plan. However, no additional contributions shall ever be credited to any account established under this section, and Sec. 10.7(b) shall apply to any such account.

(b)    The individual shall be treated the same as a Participant from the time of the transfer but shall not be eligible to share in employer contributions until he or she actually becomes a Participant by satisfying the requirements of Article IV.

WFC002577

**ARTICLE VIII**

**INVESTMENT OF FUNDS**

Sec. 8.1  **Investment Funds.**  The following Investment Funds shall be maintained for the investment of contributions by Participants and Participating Employers described in Articles IV and V. Investment directions by Participants will be subject to such rules, procedures and limits as may be established by the Plan Administrator from time to time.

(a)    <u>Wells Fargo ESOP Fund</u>.  The Wells Fargo ESOP Fund shall consist primarily of shares of Company Stock.  Purchases or sales of such shares shall be made from time to time by the Trustee through brokers or from securities dealers or by private purchase or sale from or to the Company or other seller or purchaser at such prices and in such amounts as the Trustee may determine in its absolute and uncontrolled discretion, provided, however, that no commissions may be charged to the Plan for the private purchase or sale of such shares, and no private purchase of shares of Company Stock shall be made at a total cost greater than the total cost of purchasing such shares on the New York Stock Exchange at the closing price on the date of such private purchase or, if shares of Company Stock are not traded on such date, the next previous date on which such shares are traded.  Any rights, warrants, or options issued with respect to Company Stock held in the Trust Fund shall be exercised or sold as the Trustee may determine.  The Trustee may, in its discretion, limit the daily volume of its purchases or sales of shares of Company Stock to the extent such action is deemed by it to be in the best interest of the Participants.

(1)    Contributions under the Plan by Participating Employers may consist of shares of Company Stock valued at the closing price thereof on the New York Stock Exchange on the date of delivery of such shares to the Trustee or, if shares of Company Stock are not traded on such date, the next previous date on which shares of Company Stock are traded.  Shares of Company Stock contributed by the Company may either be authorized but previously unissued shares or shares held by the Company as treasury shares.

(2)    It is contemplated that from time to time the Trustee may hold funds in the Wells Fargo ESOP Fund temporarily awaiting investment in shares of Company Stock.  Such funds may, pending such investment, be invested in short term securities issued or guaranteed by the United States of America or any agency or instrumentality thereof, or any other investment of a short term nature, including collective funds, mutual funds, corporate obligations or participations therein.

(3)    The "closing price" for purposes of this subsection (b) is the closing price on the New York Stock Exchange only on the relevant trading date, as reported by the New York Stock Exchange as the "NYSE Only Close."

(4)    Notwithstanding anything in the Plan to the contrary, the Trustee may account for the Fund in terms of units rather than in terms of shares of stock and interests in other investments held in the Fund.

(b)    In addition to the Wells Fargo ESOP Fund (which is required to be maintained under the Plan in accordance with the foregoing paragraphs), the Employee Benefit Review Committee shall have the authority to establish or select other Investment Funds, as it deems appropriate, to be made available to Participants under the Plan.  The Employee Benefit Review Committee shall

-39-

WFC002578

establish or select at least three other Investment Funds. Any such Investment Fund established or selected by the Employee Benefit Review Committee may be maintained through investment in any common or collective fund maintained by the Trustee or other financial institution for the investment of funds of qualified retirement plans, which has the appropriate investment objectives. The Employee Benefit Review Committee may at any time establish or select new Investment Funds, terminate, suspend, merge or consolidate Investment Funds that it established or selected, change the specific categories of investments held in an Investment Fund, or take any other action necessary for the operation and administration of the Investment Funds it establishes or selects. If additional Investment Funds are created within a category as replacements of one or more existing Investment Funds, the assets of the existing Investment Funds and future contributions to such Investment Funds shall be divided equally among the new Investment Funds, unless the Employee Benefit Review Committee establishes a different allocation or the Participant selects a different investment designation pursuant to Sections 8.4 and 8.5. If an Investment Fund that was established or selected by the Employee Benefit Review Committee is eliminated, the Employee Benefit Review Committee shall determine the disposition of its assets, subject to Participant investment designations under Sections 8.4 and 8.5.

(c)     The Plan is intended to be a "Section 404(c) plan" under ERISA, and Participants are responsible for the investment elections and deemed investment elections they make regarding their Accounts. The Plan's fiduciaries, the Company and its Affiliates are not responsible and will not be liable for any adverse results or losses from a Participant's (or a former Participant's) investment elections or deemed investment elections. The Plan Administrator will maintain procedures to protect the confidentiality of information relating to the purchase, holding, and sale of a Participant's investment in the Wells Fargo ESOP Fund, and the exercise of voting, tender and similar rights with respect to such investments, except to the extent necessary to comply with Federal law or state laws not preempted by ERISA. The Beneficiary of a deceased Participant or an alternate payee under a QDRO for whom a separate account has been established shall have the same rights with respect to direction of investments and voting and tender as are available to Participants under this Article VIII. An investment change elected by a Participant cannot be reversed at the request of a Participant once it has been transacted in the Plan.

      **Sec. 8.2  Reinvestment.**  Income on and proceeds of sales of investments of each Investment Fund shall be reinvested by the Trustee in the same Fund, except to the extent that dividends paid on Company Stock in the Wells Fargo ESOP Fund are paid directly to Participants or their beneficiaries pursuant to Sec. 10.18 hereof.

      **Sec. 8.3  Uninvested Cash.**  The Trustee may, in its discretion maintain in cash, without obligation to credit interest thereon, such part of the assets of each Investment Fund as it considers necessary or desirable for the proper administration of such Fund and may deposit any uninvested funds with itself or other banks.

      **Sec. 8.4  Investment Fund Designations.**  Amounts allocated to a Participant's Accounts, other than any Matching Contribution Accounts, Employer Discretionary Contribution Accounts or Share Award Account, shall be invested in one or more of the Investment Funds pursuant to the Participant's direction. A Participant may direct that 100% of such contributions be invested in any one of said Funds, or may direct that such contributions be apportioned between two or more Funds in multiples of 1%. Each Qualified Employee as a part of the application for participation shall designate the allocation applicable to such contributions to be made on his or her behalf. In addition, a Participant may designate, pursuant to

-40-

procedures established by the Plan Administrator, that the Participant's investment directions and investment allocation be automatically adjusted generally on a periodic basis consistent with an allocation among the Investment Funds that has been specified in advance by the Participant, provided, however, that no Participant who is a beneficial owner, director, or officer subject to the restrictions of Section 16(b) of the Securities Exchange Act of 1934 may participate in this automatic adjustment arrangement.

**Sec. 8.5  Change in Investment Fund Designation.**  An Active Participant may change the designation of the Investment Funds in which future contributions on his or her behalf (other than amounts initially allocated to a Matching Contribution Account, Employer Discretionary Contribution Account or Share Award Account) shall be invested effective as soon as possible after the change is requested by the Active Participant pursuant to procedures established by the Plan Administrator.  The new designation must be from among those described in Sec. 8.4, and the apportionment between the Investment Funds must be in multiples of 1%.

Effective as of any Valuation Date, a Participant may also direct that all or part of the funds held in his or her Accounts (other than amounts outstanding as a loan to the Participant), which are invested in any of the Investment Funds, shall be transferred to one or more of said Funds.  The amount to be transferred may be designated by the Participant in multiples of 1% or by specified dollar amount.

Any direction by the Participant under this section must be received by and on record with the Plan Administrator or its agent prior to the cut-off date and time established by the Plan Administrator for the effective date of the direction.

**Sec. 8.6  ESOP Diversification.**  Participants may elect to change the investment of amounts allocated to their Matching Contribution Accounts, Employer Discretionary Contribution Accounts and Share Award Account (and any other Accounts) as follows:

(a)    Each Participant may elect that all or a portion of the Participant's Account that is invested in the Wells Fargo ESOP Fund shall instead be invested in Investment Funds other than the Wells Fargo ESOP Fund.  Such an election may be effective as of a Valuation Date that occurs as soon as administratively feasible after the date amounts allocated to the Account are invested in the Wells Fargo ESOP Fund, or as of any subsequent Valuation Date.  After any such election has been implemented, the Participant may thereafter elect to change the investment of that portion of the Account to any other Investment Fund, including the Wells Fargo ESOP Fund, pursuant to Sec. 8.5 and in accordance with such rules as the Plan Administrator may establish from time to time.

(b)    Elections under this section shall be made, as provided in Sec. 8.5.  However, a separate record of such elections by the Participant shall be made under procedures established by the Plan Administrator.  This section shall be administered in accordance with Code section 401(a)(35) and applicable Treasury Regulations thereunder.

**Sec. 8.7  Voting of Company Common Stock.**  Before each annual or special meeting of the stockholders of the Company, the Plan Administrator shall cause to be sent to each Participant a copy of the proxy solicitation material therefor, together with a form requesting confidential instructions to be sent to a third party designated by the Plan Administrator (which may but need not be the Trustee) on how the Trustee is to vote the shares of Company Stock held in the Trust Fund.  Instructions received from Participants shall be held in the strictest confidence and shall not be divulged or released to any person, including officers or employees of the Company.

WFC002580

The Trustee shall vote all shares of Company Stock held in the Wells Fargo ESOP Fund, and the Unallocated Reserve in proportion to "votes" cast by Participants, as follows:

(a)     The number of votes the Participant may cast shall be the total number of shares allocated to the Participant's Accounts in the Wells Fargo ESOP Fund.

(b)     The Trustee shall determine the number of votes for and against each proposition and shall vote, in person or by proxy, all of the shares of Company Stock held in the Wells Fargo ESOP Fund and the Unallocated Reserve in proportion to the votes received.

The determinations in (a) shall be as of a Valuation Date selected by the Plan Administrator, which is not more than 90 days preceding the record date for the meeting.  It is intended that by reason of the foregoing provisions, unallocated shares held in the Unallocated Reserve, and allocated shares held for the benefit of Participants, who do not give voting instructions, will be voted by the Trustee in proportion to the instructions actually received.  Any non-voting shares of Company Stock held in the Trust Fund shall be disregarded for purposes of applying this section.

**Sec. 8.8  Tender or Exchange Offers Regarding Company Stock.**  As soon as practicable after the commencement of a tender or exchange offer (an "Offer") for shares of Company Stock, the Plan Administrator shall use its best efforts to cause each Participant to be advised in writing of the terms of the Offer, and to be provided with forms that the Participant may return to a third party designated by the Plan Administrator, which may or may not be the Trustee, instructing the Trustee, or revoking such instruction, to tender or exchange shares of Company Stock, to the extent permitted under the terms of such Offer.  The Trustee shall follow the directions of each Participant.  In advising Participants of the terms of the Offer, the Plan Administrator may include statements from the Board setting forth its position with respect to the Offer.  The giving of instructions by a Participant to tender or exchange shares, and the tender or exchange thereof, shall not be deemed a withdrawal or suspension from the Plan solely by reason of the giving of such instructions and the Trustee's compliance therewith.  Instructions by Participants pursuant to this section shall apply both to allocated shares held in the Wells Fargo ESOP Fund  and to unallocated shares held in the Unallocated Reserve.  The number of shares as to which a Participant may provide instructions shall be determined as follows:

(a)     The Participant may provide instructions on the offer with respect to the total number of shares of Company Stock allocated to the Participant's Accounts in the Wells Fargo ESOP Fund.  If the Participant directs tender or exchange of the shares for which the Participant may provide instructions, the Trustee shall follow that instruction.  The Trustee shall not tender or exchange the shares, for which a Participant may provide instructions, if the Participant (i) directs against their tender or exchange, or (ii) gives no direction.  The Trustee shall tender or exchange shares of Company Stock held in the Unallocated Reserve in proportion to the number of shares held in the Wells Fargo ESOP Fund for which the Trustee receives instructions from Participants to tender or exchange.

(b)     Said determination shall be as of the close of business on the day preceding the date on which the Offer is commenced or such earlier date as shall be designated by the Plan Administrator as the Plan Administrator, in its sole discretion, deems appropriate for reasons of administrative convenience.  Any securities received by the Trustee as a result of a tender or exchange of shares of Company Stock shall be held, and any cash so received shall be invested, in short-term investments pending any reinvestment by the Trustee, as it may deem appropriate, consistent with the purposes of the Plan.

WFC002581

**Sec. 8.9  Certain Administrative Matters.**  Notwithstanding anything in the Plan to the contrary:

(a)     The Plan Administrator may establish rules and procedures delaying the effective date of investment elections, loans, withdrawals while employed, distributions or other transactions, or establishing blackout periods during which such elections or transactions will not be processed, as the Plan Administrator determines is advisable for the administration of the Plan.

(b)     If the Plan Administrator determines that one or more Participants or Beneficiaries have been engaging in, or could engage in, investment transactions, which are having, or could potentially have, an adverse impact on other Participants or on the Plan as a whole, the Plan Administrator may in its sole discretion establish rules and procedures to restrict or preclude such transactions, including but not limited to delaying the implementation of investment elections, limiting the dollar amount of, or the number of shares or units that may be acquired in, permitted transactions, restricting the number of elections that can be made within a specified period, or requiring that elections be made a certain period prior to the occurrence of specified events.  Any such rules and procedures may apply to all Participants and Beneficiaries, to specific groups of individuals, or to individuals who engage in particular types of transactions.

(c)     The Plan Administrator shall give effect to, and shall administer the Plan consistently with, such reasonable restrictions, redemption fees or other limitations or conditions that an Investment Fund established pursuant to Sec. 8.1 may impose, or require to be imposed, on transactions by Participants and Beneficiaries with respect to investments in shares or units in such Investment Fund.  An Investment Fund's restrictions, redemption fees or other limitations on trading shall be considered terms of the Plan while the fund is established as an Investment Fund pursuant to Sec. 8.1.

**Sec. 8.10  Blackout Notice.**  Pursuant to Department of Labor Regulation § 2520.101-3(c)(3), the Plan Administrator is designated as the person to receive the notice required to be provided to the Company pursuant to Section 101(i)(2)(E) of ERISA.

**Sec. 8.11  Rights of Beneficiaries and Alternate Payees.**  The Beneficiary of a deceased Participant or an Alternate Payee under a QDRO for whom a separate account has been established shall have the same rights with respect to direction of investments and voting and tender as are available to Participants under this Article VIII.

WFC002582

## ARTICLE IX

## BENEFIT REQUIREMENTS

**Sec. 9.1  Benefit Upon Retirement or Disability.**  Each Participant shall become 100% vested if the Participant either (i) attains Normal Retirement Age while employed by a Participating Employer or an Affiliate, or (ii) is determined to have incurred a Disability while employed by a Participating Employer or an Affiliate.  If a Participant's Termination of Employment occurs (for a reason other than death) on or after the date the Participant attains Normal Retirement Age, or if the Participant has incurred a Disability while employed by a Participating Employer or Affiliate, the Participant shall be entitled to a benefit equal to 100% of the value of all of his or her Accounts.  Benefits under this section shall be paid at the times and in the manner determined under Article X.

**Sec. 9.2  Other Termination of Employment.**  If a Participant's Termination of Employment occurs (for any reason other than death), and the Participant is not entitled to a benefit under Sec. 9.1, the Participant shall be entitled to a benefit equal to 100% of the value of his or her Employee After-Tax Account, Rollover Accounts, Before-Tax Account, Roth 401(k) Account, Pre-2020 Catch-Up Account, Pre-2020 Roth Catch-Up Account, Matching Contribution Accounts and Share Award Account and also a benefit equal to the vested percentage of the value of the Participant's Employer Discretionary Contribution, subject to the following:

(a)     The vested portion of the Participant's Employer Discretionary Contribution Accounts, pursuant to Article X, shall be the vested percentage determined according to the number of the Participant's years of Vesting Service prior to the Termination of Employment, as follows:

| Full Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 3 years | 0% |
| 3 years or more | 100% |

(b)     Notwithstanding the foregoing:

(1)     A Frozen Transferred Account containing employer contributions will be subject to the above vesting schedule unless otherwise provided in the applicable Appendix.  However, the Participant's vested percentage in a Frozen Transferred Account shall not be less than the vested percentage that would have been determined under the provisions of the merged plan, from which the Frozen Transferred Account originated, as in effect immediately prior to the merger had such provisions continued in effect.

(2)     If the Participant (i) was employed on June 30, 1999 on a payroll that covered a location that was a Wells Fargo & Company location on the closing date of the merger of Norwest Corporation and Wells Fargo & Company, and (ii) was in a job classification that was considered an "eligible employee" classification under the Wells Fargo and Company Tax Advantage and Retirement Plan on June 30, 1999, the vested percentage shall be 100% (except as otherwise provided in the applicable Appendix for a Frozen Transferred Account that was a "Retirement Account" under the Wells Fargo & Company Tax Advantage and Retirement Plan).

(3)     If the Participant's Termination of Employment occurred between January 1, 2007 and December 31, 2009, the vested portion of the Participant's Share Award Account shall

-44-

WFC002583

be the vested percentage determined according to the number of the Participant's years of Vesting Service prior to the Termination of Employment, as follows:

| Full Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 1 year | 0% |
| 1 but less than 2 years | 25% |
| 2 but less than 3 years | 50% |
| 3 but less than 4 years | 75% |
| 4 years or more | 100% |

If the Participant's Termination of Employment occurs prior to January 1, 2007, the vested portion of the Participant's Share Award Account shall be the vested percentage determined according to the number of the Participant's years of Vesting Service prior to the Termination of Employment, as follows:

| Full Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 5 years | 0% |
| 5 years or more | 100% |

(4)   If the Participant's Termination of Employment occurs prior to January 1, 2010, the benefit to which the Participant shall be entitled from his or her Employer Matching Account shall be the vested percentage of the value of the Participant's Employer Matching Account determined in accordance with the following schedule, subject to adjustment under subsection (c) of this section if withdrawals have been made by the Participant from his or her Employer Matching Account, provided, however, if the Participant is reemployed on or after January 1, 2010, and entitled to reinstatement of forfeiture amounts pursuant to subsection (e) of this section, such amount shall be reinstated to the Participant's Non-Safe Harbor Match Account, and the Participant will be 100% vested in any amount so reinstated.

| Full Years of Vesting Service | Vested Percentage |
|---|---|
| Less than 1 year | 0% |
| 1 but less than 2 years | 25% |
| 2 but less than 3 years | 50% |
| 3 but less than 4 years | 75% |
| 4 years or more | 100% |

(5)   The vested percentage of a Participant or Beneficiary in his or her Plan Account may be increased in connection with a Participating Employer's discontinuation of participation in the Plan or another event, as described in Exhibit III.

(c)   If, pursuant to Article X, the Participant has made one or more withdrawals from Employer Contribution Accounts that is not 100% vested at the time of such withdrawal, the vested portion of the respective Account shall be determined as follows:

(1)   There shall be added to the value of the Account the aggregate amount of withdrawals made from that Account.

-45-

WFC002584

(2)    The amount determined under paragraph (1) shall be multiplied by the vested percentage determined in subsections (a), (b)(3) or (b)(4), as relevant.

(3)    The amount determined under paragraph (2) shall be reduced by the amount added to the value of the Account under paragraph (1). The result (but not less than zero in any case) shall be the vested portion of the Account.

(d)    The portion of each Employer Contribution Account that is not vested shall be designated as a forfeiture amount as of the Valuation Date coincident with or next following the Participant's Termination of Employment, as provided in Sec. 7.2. The amount accounted for as a forfeiture amount in each Account shall be forfeited on the Valuation Date coincident with or next following the earlier of (i) the date the Participant's entire vested benefit has been distributed or (ii) the first day of the calendar quarter beginning after the date the Participant incurs a break in service as defined in subsection (f), provided, however, that for a Participant whose Termination of Employment occurs prior to January 1, 2010, but whose entire vested benefit has not been distributed prior to that date, notwithstanding the provisions of the Plan in effect at the time of the Participant's Termination of Employment, the unvested portion of the Participant's Non-Safe Harbor Match Account at the time of such Termination of Employment shall become a forfeiture on the Valuation Date coincident with or next following the date the Participant incurs a break in service as defined in subsection (f). If a Participant's vested total Account balance (including the Participant's Before-Tax Account and Roth 401(k) Account) is $0 upon his or her Termination of Employment, the Participant shall be deemed to have received an immediate lump sum distribution of the Participant's entire vested interest. The forfeiture shall then be applied to reinstate Accounts pursuant to subsection (e)(2)(A) of this section, to credit against Employer Matching Contributions or Employer Discretionary Profit Sharing Contributions for the year in which the forfeiture occurred, as provided in Sec. 6.4, or to pay expenses of the Plan.

(e)    If the Participant is reemployed and completes an Hour of Service before a break in service, as defined in subsection (f), occurs, the respective forfeiture amount shall be reinstated as a separate Non-Safe Harbor Match Account, Employer Discretionary Contribution Accounts and/or Share Award Account (corresponding to the original contribution source of the forfeiture amount) to which the Participant shall be entitled, in accordance with the provisions of this Article IX, upon a subsequent Termination of Employment. The reinstated forfeiture shall be invested in the Wells Fargo ESOP Fund.

(1)    The reinstatement shall occur as soon as reasonably possible after the Participant's reemployment, but not later than December 31st of the year following the calendar year in which the Participant completed the Hour of Service after the reemployment. If the forfeiture amount has become a forfeiture under subsection (d), the amount of the reinstatement shall be equal to the forfeiture amount as of the date that it became a forfeiture. Otherwise, the forfeiture amount shall be reinstated to the Participant.

(2)    The amount required for the reinstatement of a forfeited amount pursuant to this subsection shall be provided from the following sources in the priority indicated:

(A)    Amounts that have become forfeitures under subsection (d) and are available to be allocated on the date the reinstatement is to occur.

-46-

(B)    Additional contributions by the Participant's present Participating Employer, in amounts specified by the Plan Administrator.

(3)    If the Participant is not 100% vested in such Accounts upon the subsequent Termination of Employment, the benefit to which he or she shall be entitled therefrom shall be determined as of the Valuation Date coincident with or next following such Termination of Employment, as follows:

(A)    To the value of the Account determined as of said Valuation Date, there shall be added the amount of the benefit from the respective prior Account to which the Participant became entitled, as a result of the prior Termination of Employment valued as of the Valuation Date coincident with or next following that Termination of Employment.

(B)    The applicable vested percentage from subsection (a), (b)(3) or (b)(4), as relevant, shall be applied to such sum.

(C)    From the result obtained in (B), there shall be subtracted the amount added in (A).

(f)    For purposes of this section, a "break in service" means a period of at least 60 months duration ending on or after January 1, 1985, which meets the requirements of Sec. 3.3(d)(1) and (2).

(g)    The benefit under this section shall be paid at the times and in the manner determined under Article X.

**Sec. 9.3  Death.**  If a Participant's Termination of Employment is the result of the Participant's death, or the Participant dies while performing "qualified military service" within the meaning of Code section 414(u), the Participant's Account shall become fully vested, and the Beneficiary shall be entitled to a benefit equal to 100% of the value of all of the Participant's Accounts.  If a Participant's death occurs after Termination of Employment, the Beneficiary shall be entitled to whatever benefit the Participant would have been entitled to receive if the Participant had lived.  Such benefits shall be paid at the times and in the manner determined under Article X.

**Sec. 9.4  Loans to Participants.**  In accordance with procedures adopted by the Plan Administrator, a Participant who is an employee may borrow from the Plan, subject to the requirements of this Section 9.4.  Only an individual, who has satisfied the eligibility requirements of Article IV, may borrow from the Plan.

(a)    Amount.  The minimum amount of any loan shall be $500.  The maximum amount of any loan (when added to the outstanding balance of all other loans made by the Participant from the Plan) shall not exceed the lesser of:

(1)    $50,000 reduced by the excess (if any) of (A) the highest outstanding balance of loans from the Plan to the Participant during the one-year period ending on the day before the date on which the loan is made, over (B) the outstanding balance of loans from the Plan to the Participant on the date on which the loan is made, or

(2)    One-half of the value of the Participant's vested Account balance on the date on which the loan is made.

-47-

WFC002586

For purposes of this Section 9.4(a), the date on which a loan is made will be the date on which the Plan Administrator processes the loan application pursuant to which the loan is made.  Loans under any other qualified plan sponsored by the Company or an Affiliate shall be aggregated with loans under the Plan in determining whether or not the limitation stated herein has been exceeded.

(b)     Terms.  Each loan shall be evidenced by a promissory note payable to the Trustee and shall bear a reasonable rate of interest.  Pursuant to the Servicemembers' Civil Relief Act of 2003, as amended, if a Participant incurs a loan before entering a period of military service, then the interest rate of that loan shall not exceed six percent (6%) during the period of military service.

(c)     Segregated Loan Account and Security.  Each loan made to a Participant shall be credited to a segregated loan account, which shall be established on the date on which a loan is first made to a Participant, and which shall not share in the income or losses of the Trust Fund.  Principal payments made by the Participant shall be charged against the segregated loan account.  The value of a segregated loan account as of each Valuation Date shall be the amount of the outstanding principal of any loans credited to such account.  Loans shall be secured by the Participant's segregated loan account and shall be held as direct investments of the Participant's Account.

(d)     Procedures.  All loans shall be made in accordance with such written procedures as may be established by the Plan Administrator from time to time in furtherance of the provisions of this Section 9.4, which shall include, but not be limited to procedures for (1) applying for loans, (2) the maximum number of loans permitted, (3) the terms for loan repayment, and (4) the events constituting default and the steps that will be taken to preserve Plan assets.

WFC002587

**ARTICLE X**

**DISTRIBUTION OF BENEFITS**

**Sec. 10.1  Time and Method of Payment.**  The benefit to which a Participant or Beneficiary may become entitled under Article IX shall be distributed as described in this section.  Distributions may commence at any time after the Participant or Beneficiary has become entitled to a benefit, subject to the following provisions:

(a)  Distributions to Participants.  Participants shall be entitled to receive distributions from their Accounts (i) after Termination of Employment or (ii) after incurring a Disability while employed by a Participating Employer or Affiliate.  Distributions shall be paid in a single lump sum or in one or more partial lump sum payments, as elected by the Participant (except for certain Frozen Transferred Accounts, which are distributable in the manner described in subsection (m) of this section, and installment payments described in subsection (d) of this section).  A distribution shall be made as soon as administratively feasible following the Participant's election for such distribution, except that distribution must be made no later than the date specified in paragraph (1) of this subsection.  Distribution elections shall be made in accordance with procedures established by the Plan Administrator.

(1)  Distribution to a Participant shall be made by April 1 following the later of (i) the calendar year in which the Participant attains age 70½, or (ii) the calendar year in which the Participant's Termination of Employment occurs (the "Required Beginning Date").  If a Participant has a vested Account balance under the Plan immediately prior to his or her Required Beginning Date and such vested Account balance is not payable in installment payments pursuant to subsection (d) or in the form of an annuity pursuant to subsection (m) of this section, the Participant's entire vested Account balance shall be paid in a single lump sum payment no later than the Required Beginning Date.  In the case of installment payments described in subsection (d) and annuity payments described in subsection (m) of this section, such payments must commence by the Required Beginning Date and shall be paid as provided in those subsections.  Clause (ii) of the first sentence of this paragraph (1) does not apply to any Participant who is a 5-percent owner of the Participating Employers (as defined in Code section 416) with respect to the Plan Year ending in the calendar year in which the Participant attains age 70½.

(2)  If the Participant selects a partial lump sum, the Participant may designate that the partial lump sum distribution be made only from one or more of the following groups of vested Accounts.

(A)  Taxable Accounts Only.  Distribution from the Participant's taxable vested Accounts, in the following order of priority:

(1)  The Participant's Rollover Account.

(2)  The Participant's Qualified Voluntary Elective Contribution Account.

(3)  The Participant's Non-Safe Harbor Match Account.

(4)  The Participant's Safe Harbor Matching  Account.

-49-

WFC002588

(5)     The Participant's Share Award Account.

(6)     The Participant's Discretionary Profit Sharing Account.

(7)     The Participant's Discretionary Profit Sharing Post 2018 Account.

(8)     The Participant's Before-Tax Account.

(9)     The Participant's Pre-2020 Catch-Up Account.

(10)    Prior Employer Account.

(11)    TAP Company Plus Account.

(12)    The Participant's Employer Qualified Non-Elective Contribution Account.

(B)     Roth Accounts Only.  Distribution from the Participant's Roth vested Accounts, in the following order of priority:

(1)     The Participant's Roth 401(k) Account.

(2)     The Participant's Pre-2020 Roth Catch-Up Account.

(3)     The Participant's Roth Rollover Account.

(4)     The Participant's Reinstatement of Roth Rollover Account.

(C)     After-Tax Accounts Only.  Distribution from the Participant's after-tax vested Accounts, in the following order of priority:

(1)     Any pre-1987 employee after-tax contributions held in the Participant's Employee After-Tax Account.

(2)     The remaining balance in the Participant's Employee After-Tax Account, including post-1986 contributions and earnings on all contributions.

(3)     The Participant's After-Tax Rollover Account.

If the Participant does not designate that the partial distribution be made only from one of the foregoing groups of Account, then the distribution will be made in accordance with the order of priority described in Sec. 10.5(b).

(b)     Distributions to Beneficiaries.  Beneficiaries shall receive payment of benefits after the death of the Participant as follows:

(1)     If a Participant began to receive payments in installments over a period-certain pursuant to subsection (d), and then died after the date distributions were required to commence pursuant to subsection (a)(1), the remaining payments shall be made to the Beneficiary, at least as rapidly as under the method of distribution selected by the Participant.  The Beneficiary may elect to receive any payment earlier than the date it otherwise would

-50-

WFC002589

have been paid, or to receive a full or partial lump sum distribution of the remaining vested Account balances, by submitting a request to the Plan Administrator or its agent pursuant to such procedures and prior to such deadlines, as the Plan Administrator may establish. The minimum amount that must be distributed to the Beneficiary for each distribution calendar year after the year of the Participant's death is determined under subsection (d).

(2)    If the Participant died while employed by a Participating Employer, or died after Termination of Employment but before the date distributions were required to commence pursuant to subsection (a)(1) (whether or not the Participant had begun to receive distributions), the Participant's remaining vested Account balances shall be distributed to the Beneficiary in a single lump sum or in one or more partial lump sums not later than December 31st of the year containing the fifth anniversary of the Participant's death.

(3)    If a Beneficiary who survived the Participant and was receiving installment payments under subsection (d) dies before receiving all of the installment payments, the remaining benefit shall be paid to the Beneficiary's beneficiary determined under Sec. 2.6(f) in installments at least as rapidly as under the method of distribution selected by the Participant, subject to any earlier distribution permitted or required by Sec. 10.1(b)(1), (d) and (e), and by applicable regulations.

(4)    If a Beneficiary who survived the Participant and was entitled to a benefit under Sec. 10.1(b)(2) dies before receiving the entire benefit to which the Beneficiary was entitled, the remaining benefit shall be paid to the Beneficiary's beneficiary determined under Sec. 2.6(f). If the Beneficiary was the surviving Spouse of the Participant, the distribution to the Beneficiary's beneficiary shall be completed by December 31st of the fifth calendar year following the year in which the Beneficiary's death occurred. If the Beneficiary was not the surviving Spouse of the Participant, the distribution to the Beneficiary's beneficiary shall be completed by the later of (i) December 31st of the fifth calendar year following the year in which the Participant's death occurred, or (ii) December 31st of the calendar year following the year in which the Beneficiary's death occurred.

(c)    <u>Mandatory Cash-Outs</u>. Notwithstanding anything in subsection (a), (b) or (m) to the contrary, if the value of the entire vested Account of a Participant (or of a Beneficiary following the Participant's death) is $1,000 or less, as determined by the valuation related to the distribution, the individual shall receive a lump sum distribution of the individual's entire vested Account as soon as administratively feasible, but in no event later than one year following the Participant's Termination of Employment (or death, if applicable). If a Participant (or a Beneficiary) has received or has begun to receive distribution of his or her vested Account (other than a portion of his or her Account that is subject to the special requirements described in subsection (m) below), and there is a remaining vested Account balance that does not exceed $1,000, as determined as of any measurement date following commencement of distribution, the remaining vested Account balance shall be paid in a single lump sum as soon as administratively feasible following the applicable measurement date. The measurement dates shall be established in the discretion of the Plan Administrator. Mandatory cash-out distributions described herein shall be subject to the direct rollover requirements of Section 10.17

-51-

WFC002590

(d)　Installment Distributions.  Prior to January 1, 2010, Participants could elect to receive distributions in a series of annual, semi-annual, quarterly or monthly installment payments.  If distributions are made in installments to a Participant, the amount to be distributed each year, beginning with the first year for which payments are required to be made under subsection (a)(1), must be at least equal to the quotient obtained by dividing the entire interest of the individual on the preceding December 31st by the number of years of life expectancy which remain, determined as provided in subsection (e).

(1)　Any installment method under this section shall specify the method for determining life expectancies under subsection (e).  The installment method shall be irrevocable after the date payments are required to commence under subsection (a)(1), except that the individual entitled to payments may thereafter elect to receive a full lump sum distribution of his or her remaining vested Account balances.  A Participant who had elected installment payments may also elect to receive a partial lump sum distribution of his or her remaining vested Accounts or to increase the amount of the remaining installments.  The balance remaining following a partial lump sum distribution will continue to be distributed in installments according to the individual's existing election.  An election to increase the amount of the remaining installments cannot be revoked, but subsequent elections to further increase the amount are allowed.

(2)　Prior to the date payments are required to commence under subsection (a)(1), an individual who has elected installment payments may elect to increase or decrease the amount of the installments, to stop or restart installments, to change the frequency of installments, or to receive a full or partial lump sum distribution.  An individual making such a change must also make any election related to the change regarding withholding of income taxes, which is required by applicable regulations.

(3)　For purposes of determining the amount that must be distributed in any year, excess Salary Deferral Contributions, Excess Employer Matching Contributions and Excess Deferrals distributed in accordance with Article VI (including income on such amounts) shall be disregarded.

(4)　For purposes of this section, the "first distribution calendar year" is the year preceding the calendar year that contains the Participant's Required Beginning Date (as defined in Sec. 10.1(a)(1)).

(e)　Determination of Life Expectancies. For purposes of subsection (d), life expectancies are determined as follows:

(1)　If distributions to the Participant beginning with respect to the first distribution calendar year are made in installments, life expectancies used to calculate the minimum amount to be distributed during the Participant's lifetime and after the Participant's death shall be determined in accordance with the following:

(A)　The minimum amount to be distributed during the Participant's lifetime for each distribution calendar year, beginning with the first distribution calendar year, is determined by using whichever of the following numbers is applicable:

(I)　In the case of distributions to a Participant whose designated Beneficiary for the distribution calendar year is not solely the Participant's Spouse, the

-52-

WFC002591

number equal to the distribution period in the Uniform Lifetime Table set forth in Treasury Regulation § 1.401(a)(9)-9, using the Participant's age as of the Participant's birthday in the distribution calendar year.

(II)   In the case of distributions to a Participant whose sole designated Beneficiary for the distribution calendar year is the Participant's Spouse, the number equal to the greater of (i) the distribution period in the Uniform Lifetime Table set forth in Treasury Regulation § 1.401(a)(9)-9, using the Participant's age as of the Participant's birthday in the distribution calendar year, or (ii) if the Spouse is more than 10 years younger than the Participant, the number in the Joint and Last Survivor Table set forth in Treasury Regulation § 1.401(a)(9)-9, using the Participant's and Spouse's attained ages as of the Participant's and Spouse's birthdays in the distribution calendar year.

(B)   If the Participant dies on or after the date required distributions begin, and there is a designated Beneficiary for purposes of Code section 401(a)(9), the minimum amount to be distributed to the designated Beneficiary for each distribution calendar year after the year of the Participant's death is determined by using whichever of the following numbers is applicable:

(I)   In the case of distributions to a designated Beneficiary who is not the Participant's surviving Spouse, the number equal to the greater of (i) the Participant's remaining life expectancy, calculated from the Single Life Table in Treasury Regulation § 1.401(a)(9)-9 using the age of the Participant in the year of death and reduced by one for each subsequent year, or (ii) the remaining life expectancy of the designated Beneficiary, calculated from the Single Life Table in Treasury Regulation § 1.401(a)(9)-9 using the age of the designated Beneficiary in the year following the year of the Participant's death and reduced by one for each subsequent year.

(II)   In the case of distributions to a Beneficiary, who is the Participant's only designated Beneficiary, and is the Participant's surviving Spouse, the number equal to the greater of (i) the Participant's remaining life expectancy, calculated from the Single Life Table in Treasury Regulation § 1.401(a)(9)-9 using the age of the Participant in the year of death and reduced by one for each subsequent year, or (ii) the remaining life expectancy of the surviving Spouse, calculated for each distribution calendar year after the year of the Participant's death from the Single Life Table in Treasury Regulation § 1.401(a)(9)-9 using the surviving Spouse's age as of the Spouse's birthday in that year, provided, that for distribution calendar years after the year of the Spouse's death, the remaining life expectancy of the surviving Spouse is calculated using the age of the surviving Spouse as of the Spouse's birthday in the calendar year of the Spouse's death and reduced by one for each subsequent calendar year.

(C)   If the Participant dies on or after the date distributions begin, and there is no designated Beneficiary for purposes of Code section 401(a)(9) as of September 30th of the year after the year of the Participant's death (for example, if the Beneficiary is a trust), the minimum amount to be distributed to the Beneficiary

WFC002592

for each distribution calendar year after the year of the Participant's death is determined by using the Participant's remaining life expectancy, calculated from the Single Life Table in Treasury Regulation § 1.401(a)(9)-9 using the age of the Participant in the year of death and reduced by one for each subsequent year.

(2)   If the Participant dies before the Participant's Required Beginning Date (as defined in Sec. 10.1(a)(1)), life expectancies for purposes of distributions to the Beneficiary shall be computed by use of the Single Life Table in Treasury Regulation § 1.401(a)(9)-9 in accordance with the following:

     (A)   If the Beneficiary is the Participant's surviving Spouse, the remaining life expectancy of the surviving Spouse is calculated for each distribution calendar year using the surviving Spouse's age as of the Spouse's birthday in that year, provided, that for distribution calendar years after the year of the Spouse's death, the remaining life expectancy of the surviving Spouse is calculated using the age of the surviving Spouse as of the Spouse's birthday in the calendar year of the Spouse's death and reduced by one for each subsequent calendar year.

     (B)   If the Beneficiary is not the Participant's surviving Spouse, the remaining life expectancy of the designated Beneficiary is calculated using the age of the designated Beneficiary in the year following the year of the Participant's death and reduced by one for each subsequent year.

(f)   <u>Requests for Distributions</u>.  The Participant (or Beneficiary, where applicable) must submit all requests or elections relating to distributions under this section to the Plan Administrator or its agent pursuant to such procedures and prior to such deadlines preceding the date on which a lump sum is to be paid or any other election is to take effect, as the Plan Administrator may establish.

(g)   <u>Distributions from Multiple Accounts or Investment Funds</u>.  Installment distributions or partial lump sum distributions shall be withdrawn from Accounts in the order of priority specified in Sec. 10.5(b) and shall be made pro rata from the Investment Funds in which the Accounts being distributed are invested, based on the investment in each Investment Fund as of the most recent Valuation Date for which the valuation has been completed.

(h)   <u>Beneficiaries</u>.  For purposes of this section, "designated Beneficiary" means any individual who (i) is a Beneficiary pursuant to Sec. 2.6, and (ii) is the designated beneficiary under Code section 401(a)(9) and Treasury Regulation § 1.401(a)(9)-1.  If more than one Beneficiary is entitled to benefits following the Participant's death, the interest of each Beneficiary shall be segregated pro rata into separate Accounts for purposes of applying this section, and this section shall thereafter be applied separately to each Beneficiary without regard to other Beneficiaries.

(i)   <u>Compliance with Code Requirements</u>.  Notwithstanding the foregoing, distributions required by this section will be made in accordance with Code section 401(a)(9), including subparagraph (G) of that section, and the regulations thereunder.  No distribution option otherwise permitted under this Plan will be available to a Participant or Beneficiary if such distribution option does not meet the requirements of Code section 401(a)(9).

WFC002593

(j)    <u>Compliance with Minimum Required Distribution Regulations</u>. With respect to distributions under this section made for calendar years beginning on or after January 1, 2003, the Plan will apply the minimum distribution requirements of Code section 401(a)(9) in accordance with the final regulations that were published on April 17, 2002, notwithstanding any provision of the Plan that may permit smaller distributions or distributions over a longer period. Notwithstanding anything in the foregoing provisions of this subsection to the contrary, nothing in this subsection in any way modifies or expands the methods of payment permitted under subsection (a), (d) or (m), or in any way expands the provisions of subsection (b) regarding payments to Beneficiaries, and a Participant who has designated a trust as the Beneficiary shall be treated as having no designated Beneficiary following the Participant's death for purposes of determining the period over which payments will be made to the Beneficiary. Installment distributions which commenced prior to January 1, 2004 and which are at least equal to the minimum amounts required by said final regulations will not be adjusted unless and until the recipient specifically elects to have the installments redetermined pursuant to this section as amended effective January 1, 2003.

(k)    <u>Certain Pre-1984 Elections</u>. Notwithstanding the foregoing, distributions may be made to any Participant or Beneficiary pursuant to any designation made prior to January 1, 1984 which satisfied all the requirements of Section 242(b)(2) of the Tax Equity and Fiscal Responsibility Act of 1982, as in effect on January 1, 1984, and the regulations thereunder.

(l)    <u>Transfers Among Affiliates</u>. Under the definition of Termination of Employment in Sec. 2.49, a Participant's transfer of employment between any combination of Participating Employers, Affiliates (whether or not such Affiliate is a Participating Employer), or Predecessor Employers is not a Termination of Employment for purposes of this Article X and will not entitle the Participant to a distribution of his or her benefit from the Plan.

(m)    <u>Special Rules for Certain Frozen Transferred Accounts</u>. The following additional requirements shall apply to any Participant who has a Frozen Transferred Account:

    (1)    If a Frozen Transferred Account attributable to a merged plan holds any assets that were transferred, directly or indirectly, from a defined benefit plan or a money purchase pension plan, and therefore is subject to the qualified joint and survivor annuity requirements of Code sections 401(a)(11) and 417, any distribution from any portion of the Participant's Account shall be made in compliance with such requirements. In any case where such a Frozen Transferred Account is subject to the qualified joint and survivor annuity requirements, the following shall apply to distributions from the Participant's entire Account commencing on or after July 1, 2001, subject to any specific rules specified in the Appendix related to the Participant's Frozen Transferred Account.

        (A)    The Spouse of the Participant must consent to the election of any payment from the Participant's Account in a form other than by purchase of a qualified joint and survivor annuity or a qualified optional survivor annuity to the extent required by the Code or ERISA. The Plan Administrator will provide such notices and explanations of the qualified joint and survivor annuity and the qualified optional survivor annuity, and the rights of the Participant and the Spouse as may be required by applicable Treasury regulations, subject to any provisions of law or regulations permitting waiver of a notice period. However, spousal consent is not required in any case where the form of distribution elected by the Participant is

-55-

WFC002594

purchase of a qualified joint and survivor annuity or a qualified optional survivor annuity.

(B) Notwithstanding any provision of the applicable Appendix or of a merged plan to the contrary, the only forms of distribution (in addition to the methods permitted under the preceding subsections of this Sec. 10.1) available with respect to the Participant's Account subject to this paragraph (1) shall be (i) in the case of the Participant, purchase of a life-only annuity, a qualified joint and survivor annuity, or a qualified optional survivor annuity, and those methods identified in sub-paragraph (D) below, and (ii) in the case of a Beneficiary who is the Participant's surviving Spouse, purchase of a life-only annuity.

(C) For purposes of this paragraph (1), a "qualified joint and survivor annuity" is an annuity payable to the Participant for life with a survivor annuity for the remainder of the life of the Participant's surviving Spouse in an amount equal to 50% of the amount the Participant was receiving prior to his or her death, and a "qualified optional survivor annuity" is an annuity payable to the Participant for life with a survivor annuity for the remainder of the life of the Participant's surviving Spouse in an amount equal to 75% of the amount the Participant was receiving prior to his or her death.

(D) For purposes of this paragraph (1), Participants who have a Frozen Transferred Account attributable to (a) the Wells Fargo & Company Tax Advantage & Retirement Plan, (b) the First Commerce Profit Sharing and Thrift Plan and Trust, (c) the Pacific Northwest Bancorp Employee Stock Ownership Plan and Trust, or (d) the Wachovia Savings Plan, shall, for distributions from the Participant's Account subject to this paragraph (1) commencing on or after September 1, 2017, such Participants shall, in addition to those methods of distribution noted in sub-paragraphs (B) and (C) above, be entitled to receive distributions in the form of an annuity payable to the Participant for life with a five, ten, or fifteen year period certain, and an annuity payable to the Participant for life with a survivor annuity for the remainder of the life of the Participant's surviving Spouse in an amount equal to 100% of the amount the Participant was receiving prior to his or her death. For clarity, the intent of this sub-paragraph (D) is to provide that participants who have a Frozen Transferred Account that is subject to the qualified joint and survivor annuity requirements of Code sections 401(a)(11) and 417, be entitled to the same annuity methods of distribution effective for distributions commencing on or after September 1, 2017, in order to simplify the administration surrounding these annuity methods of distribution.

(2) Distributions commencing on and after July 1, 2001 from any Frozen Transferred Account which existed on January 1, 2001 and which is not described in paragraph (1) of this subsection (m) shall be made only in the methods permitted under the preceding subsections of this Sec. 10.1, and any contrary provisions of any applicable Appendix or of a merged plan shall be disregarded.

(3) If a Frozen Transferred Account is established on or after January 1, 2001, the Plan will make available any optional form of settlement for distributions from such Frozen Transferred Account which may be required by Code section 411(d)(6).

WFC002595

(A)    The merged plan shall be automatically amended on the date it is merged into this Plan by virtue of this paragraph (3) to delete all additional optional forms of settlement that existed under the merged plan prior to the merger which are permitted to be deleted by regulations under Code section 411(d)(6).  Such amendment shall be effective with respect to distributions to Participants (and to Beneficiaries of deceased Participants) commencing after the merger date.

(B)    Commencing on the effective date determined under subparagraph (A), any distributions from a Participant's Account that includes a Frozen Transferred Account subject to the requirements of paragraph (1) shall be made in accordance with the provisions of this Sec. 10.1 as modified by paragraph (1).  Distributions from a Participant's Account that does not include a Frozen Transferred Account subject to the requirements of paragraph (1) shall be made in accordance with subsections of this Sec. 10.1 other than subsection (m).  Following said effective date, any contrary provisions of the merged plan or any applicable Appendix shall be disregarded.

(n)    <u>Election Periods</u>.  In general, except as provided in subsection (a)(1), the distribution to a Participant shall not occur, or installments shall not commence, until at least 30 days after the Participant has been given all notices and other information required by applicable regulations.  However, except in the case of a distribution from any portion of a Frozen Transferred Account that is subject to the requirements of Code sections 401(a)(11) and 417, the distribution may occur or commence less than 30 days after the notice required under Treasury Regulation §1.411(a)-11(c) and any other applicable notices are given, provided that:

(1)    The Plan Administrator clearly informs the Participant that the Participant has a right to a period of at least 30 days after receiving the notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option), and

(2)    The Participant, after receiving the notice, affirmatively elects a distribution.

In the case of a distribution from a Participant's Account that includes a Frozen Transferred Account that is subject to the requirements of Code sections 401(a)(11) and 417, the Participant may elect (with any applicable spousal consent) to waive the applicable 30-day periods pursuant to Code section 417(a)(7)(B) provided that the distribution occurs or commences more than seven days after the explanation required under subsection (m) is provided and all other requirements of applicable Treasury regulations are met.

**Sec. 10.2  <u>Form of Payment</u>.**  All distributions and withdrawals under this Article X shall be made in cash, except as follows:

(a)    The Participant (or Beneficiary following the Participant's death) may elect that distributions from the portion of the Participant's (or Beneficiary's) Accounts invested in Company Stock shall be in full shares of Company Stock, with the value of any remaining fractional share paid in cash.  In the case of distributions in installments, any election under this subsection to receive Company Stock must be made prior to the date installments commence, and is irrevocable thereafter.

(b)    In kind distributions of notes pursuant to Sec. 9.4 shall occur as provided therein.

WFC002596

**Sec. 10.3  Accounting Following Termination of Employment.**  Following the Participant's Termination of Employment, the undistributed portion of any Account shall continue to be revalued as of each Valuation Date as provided in Article VII.  Distributions under Sec. 10.1 shall be based on the Account values determined as of a Valuation Date (determined under procedures established by the Plan Administrator), which is after the date the distribution request is received by the Plan Administrator or its agent, and shall be paid to the Participant as soon as reasonably possible following the completion of the valuation for that Valuation Date.

**Sec. 10.4  Reemployment; Cessation of Disability.**  Except as provided to the contrary in Sec. 10.1, distributions from the Trust Fund shall cease upon reemployment of a Participant in any position with a Participating Employer or an Affiliate, or upon the Participant's ceasing to be Disabled and return to active employment in any position with a Participating Employer or an Affiliate.  Upon a subsequent Termination of Employment or incurrence of a Disability, the Participant may elect distribution to be made in the forms described in Sec. 10.1(a) (lump sum or partial lump sum).

**Sec. 10.5  Withdrawals From Accounts While Employed—General Rules.**  A Participant, who is an employee of a Participating Employer or an Affiliate, may request a withdrawal from his or her vested Accounts of any of the types of withdrawal described in Sec. 10.6 through Sec. 10.9, subject to the following:

(a)  A request for a withdrawal while employed shall be made pursuant to applicable rules and regulations adopted by the Plan Administrator and shall be submitted to the Plan Administrator or its agent in such manner as the Plan Administrator prescribes for this purpose.  A withdrawal shall be paid from the Trust Fund as soon as reasonably possible after the Participant's request based on a Valuation Date (determined under procedures established by the Plan Administrator) following the date the request is received by the Plan Administrator or its agent (referred to in this section as the "applicable Valuation Date").  For purposes of Article VII, the withdrawal shall be deemed to have been made on the applicable Valuation Date.

(b)  Subject to any specific rules provided in Sec. 10.6 through 10.9, the amount to be withdrawn shall be charged against the Participant's various Accounts as of the applicable Valuation Date in the following order of priority:

(1)  Any pre-1987 employee after-tax contributions held in the Participant's Employee After-Tax Contribution Account.

(2)  The remaining balance in the Participant's Employee After-Tax Contribution Account, including post-1986 contributions and earnings on all contributions.

(3)  The Participant's After-Tax Rollover Account.

(4)  The Participant's Rollover Account.

(5)  The Participant's Qualified Voluntary Elective Contribution Account.

(6)  The Participant's Non-Safe Harbor Match Account.

(7)  The Participant's Safe Harbor Matching Account.

-58-

WFC002597

(8)    The Participant's Share Award Account.

(9)    The Participant's Discretionary Profit Sharing Account.

(10)   The Participant's Before-Tax Account.

(11)   The Participant's Pre-2020 Catch-Up Account.

(12)   TAP Company Plus Account.

(13)   The Participant's Employer Qualified Non-Elective Contribution Account.

(14)   The Participant's Roth 401(k) Account.

(15)   The Participant's Pre-2020 Roth Catch-Up Account.

(16)   The Participant's Roth Rollover Account.

(17)   The Prior Employer Account

(18)   The Participant's Reinstatement of Funds Account.

(19)   The Participant's Reinstatement of Roth Rollover Account.

However, no withdrawal may be made under Sections 10.6 through 10.9 (i) from the portion of any Account attributable to an outstanding loan under Sec. 9.4, or (ii) from any Account or portion of an Account that is attributable to amounts transferred to this Plan from a money purchase pension plan or a defined benefit pension plan.

(c)    There is no limit on the number of withdrawals that may be made under Sections 10.6 through 10.9, or any combination of those sections, during any calendar year or other period.

(d)    If a withdrawal is to be made from an Account that is invested in more than one Investment Fund, the amount of the withdrawal shall be made up of pro rata amounts withdrawn from each Investment Fund.  Payments shall be made in cash or Company Stock, as provided in Sec. 10.2.

(e)    For purposes of this Sec. 10.5 and Sec. 10.6 through 10.9, if an individual ceases to be an employee of a Participating Employer as a result of the sale or discontinuance of some or all of the operations of such employer, or as a result of the sale of the Company's interest (direct or indirect) in such Participating Employer, and if the Plan Administrator determines that the individual is not eligible to receive a distribution of his or her Plan benefit under the applicable law, regulations or IRS rulings as a result of the termination of the individual's employment, the individual shall be deemed to continue as an "Active Participant" for purposes of making in-service withdrawals during the period while the individual continues to be employed by the applicable buyer or successor.

(f)    Notwithstanding the foregoing and any provision of Sec. 10.6 through Sec. 10.9, a Participant may request a "qualified reservist distribution," as defined in Code section 72(t)(2)(G)(iii) and as permitted under Code section 401(k)(2)(B)(i)(V).

WFC002598

**Sec. 10.6  <u>Withdrawals While Employed—After-Tax.</u>** A Participant, who is an employee of a Participating Employer or an Affiliate, may make a withdrawal of all or part of the following amounts, subject to the general rules in Sec. 10.5:

(a)     The Participant's pre-1987 employee after-tax contributions and post-1986 after-tax contributions and earnings held in the Participant's Employee After-Tax Account.

(b)     Amounts credited to the Participant's After-Tax Rollover Account.

**Sec. 10.7  <u>Withdrawals While Employed—Regular In-Service Withdrawals.</u>** A Participant, who is an employee of a Participating Employer or an Affiliate, may make a regular in-service withdrawal under this section from his or her vested Accounts, subject to the general rules in Sec. 10.5 and the following:

(a)     Withdrawal may be made under this section only from the following vested Accounts in the following order of priority:

    (1)     The Participant's Employee After-Tax Account.

    (2)     The Participant's After-Tax Rollover Account.

    (3)     The Participant's Rollover Account.

    (4)     The Participant's Qualified Voluntary Elective Contribution Account.

    (5)     The Participant's Non-Safe Harbor Match Account.

    (6)     The Participant's Share Award Account.

    (7)     The Participant's Discretionary Profit Sharing Account.

    (8)     The Participant's Reinstatement of Funds Account.

    (9)     The Participant's Reinstatement of Roth Rollover Account.

Notwithstanding the foregoing, no withdrawals under this section may be made from any separate Employer Contribution Account or other Account of amounts attributable to contributions that were used to calculate deferral percentages under Sec. 6.1 and earnings attributable to such contributions.

(b)     If the Participant has not completed five years of active participation in the Plan (measured from the Participant's Entry Date), the amount that may be withdrawn from the Participant's Non-Safe Harbor Match Account, Share Award Account or Employer Discretionary Contribution Accounts shall be limited so that immediately after the withdrawal the value of said Account is not less than the amount allocated to said Account from employer contributions received by the Trustee during the 24 months prior to the withdrawal.  Such limitation shall not apply if the Participant has completed five years of active participation in the Plan.  Active participation for this purpose shall be measured from the Entry Date on which the Participant commenced participation in the Plan, as described in Section 4.1.

WFC002599

**Sec. 10.8 <u>Withdrawals While Employed—After Age 59½</u>.**  A Participant, who is an employee of a Participating Employer or an Affiliate, and who is age 59½ or older may make a withdrawal of all or part of his or her vested Accounts, except certain portions of a Frozen Transferred Account, subject to the general rules in Sec. 10.5 and the following:

(a)   <u>All Available Accounts</u>.   If the Participant does not designate that the withdrawal be made from taxable Accounts only under subsection (b) below or from Roth Accounts only under subsection (c) below, the withdrawal will be made from the following vested Accounts in the following order of priority:

    (1)   The Participant's Employee After-Tax Account (pre-1987 employee after-tax contributions and post-1986 after-tax contributions and earnings).

    (2)   The Participant's After-Tax Rollover Account.

    (3)   The Participant's Rollover Account.

    (4)   The Participant's Qualified Voluntary Elective Contribution Account.

    (5)   The Participant's Non-Safe Harbor Match Account.

    (6)   The Participant's Safe Harbor Matching Account.

    (7)   The Participant's Share Award Account.

    (8)   The Participant's Discretionary Profit Sharing Account.

    (9)   The Participant's Discretionary Profit Sharing Post 2018 Account.

    (10)   The Participant's Before-Tax Account.

    (11)   The Participant's Pre-2020 Catch-Up Account.

    (12)   TAP Company Plus Account.

    (13)   The Participant's Employer Qualified Non-Elective Contribution Account.

    (14)   The Participant's Roth 401(k) Account.

    (15)   The Participant's Pre-2020 Roth Catch-Up Account.

    (16)   The Participant's Roth Rollover Account.

    (17)   The Participant's Reinstatement of Funds Account.

    (18)   The Participant's Reinstatement of Roth Rollover Account.

(b)   <u>Taxable Accounts Only</u>.  If designated by the Participant, the withdrawal will be made from the following vested taxable Accounts in the following order of priority:

    (1)   The Participant's Rollover Account.

WFC002600

(2)    The Participant's Qualified Voluntary Elective Contribution Account.

(3)    The Participant's Non-Safe Harbor Match Account.

(4)    The Participant's Safe Harbor Matching Account.

(5)    The Participant's Share Award Account.

(6)    The Participant's Discretionary Profit Sharing Account.

(7)    The Participant's Discretionary Profit Sharing Post 2018 Account.

(8)    The Participant's Before-Tax Account.

(9)    The Participant's Pre-2020 Catch-Up Account.

(10)   TAP Company Plus Account.

(11)   The Participant's Employer Qualified Non-Elective Contribution Account.

(c)    <u>Roth Accounts Only</u>.  If designated by the Participant, the withdrawal will be made from the following vested Roth Accounts in the following order of priority:

(1)    The Participant's Roth 401(k) Account.

(2)    The Participant's Pre-2020 Roth Catch-Up Account.

(3)    The Participant's Roth Rollover Account.

(4)    The Participant's Reinstatement of Roth Rollover Account.

**Sec. 10.9  <u>Withdrawals While Employed—Financial Hardship</u>.** A Participant, who is an employee of a Participating Employer or an Affiliate, may make a withdrawal from the Participant's vested Accounts to meet a financial hardship, subject to the general rules in Sec. 10.5 and the following additional requirements:

(a)    A hardship withdrawal will be permitted only if the Plan Administrator determines that both of the following requirements are met:

(1)    The withdrawal must be made on account of one of the following reasons:

(A)    Expenses for (or necessary to obtain) medical care that would be deductible by the Participant under section 213(d) of the Code (without regard to whether the expenses exceed 7.5% of adjusted gross income).

(B)    Costs directly related to the purchase of the principal residence of the Participant (excluding mortgage payments).

-62-

WFC002601

(C)   Payment of tuition, related educational fees, and room and board expenses, for up to the next 12 months of post-secondary education for the Participant, or for the Participant's Spouse, children, or dependents (as defined in section 152 of the Code, but without regard to section 152(b)(1), (b)(2) and (d)(1)(B)).

(D)   The need to prevent the eviction of the Participant from his or her principal residence or foreclosure on the mortgage of the Participant's principal residence.

(E)   Expenses for the funeral or burial of the Participant's parent, Spouse, child, grandchild or other descendant of a child, or dependent (as defined in section 152 of the Code, but without regard to section 152(d)(1)(B)).

(F)   Expenses for the repair of damage to the Participant's principal residence that would qualify for the casualty deduction under section 165 of the Code (determined without regard to section 165(h)(5) of the Code or whether the loss exceeds 10% of adjusted gross income).

(G)   Expenses and losses (including loss of income) incurred by the Participant on account of a disaster declared by the Federal Emergency Management Agency (FEMA) under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, Public Law 100-707, provided that the Participant's principal residence or principal place of employment at the time of the disaster was located in an area designated by FEMA for individual assistance with respect to the disaster.

(2)   All of the following requirements must be satisfied:

(A)   The amount of the withdrawal cannot exceed the amount of the immediate and heavy financial need of the Participant.  The Participant must provide to the Plan Administrator a representation in writing (including by using an electronic medium permitted under the Treasury regulations), or in such other form as may be prescribed by the IRS and permitted under the Plan's procedures, that he or she has insufficient cash or other liquid assets reasonably available to satisfy the need. The Plan Administrator may rely on the Participant's representation provided it does not have actual knowledge that is contrary to the representation.  However, the amount of the withdrawal may include any amounts determined by the Plan Administrator to be necessary to pay any federal, state or local income taxes or penalties reasonably expected to result from the withdrawal.

(B)   The Participant must have obtained all distributions, other than hardship withdrawals, and all nontaxable loans currently available under this Plan and all other plans maintained by the employer.  For purposes of this paragraph (2), "employer" includes all Participating Employers and any entity under Common Control with a Participating Employer.

(C)   With respect to hardship withdrawals distributed before January 1, 2020, the Participant's elective contributions and employee contributions under the Plan and all other qualified and nonqualified plans of deferred compensation maintained by the employer will be suspended pursuant to the terms of the plan or an otherwise legally enforceable agreement for at least six months after the receipt of the hardship distribution (the "Hold-Out Period").  A Participant who experiences a

-63-

WFC002602

Termination of Employment and is then rehired before his or her Hold-Out Period expires shall continue to be subject to suspension of contributions after rehire pursuant to this Sec. 10.9 until expiration of the Hold-Out Period. In the case of any hardship withdrawal occurring on or after January 1, 2005, any dividends on Company Stock held in the Plan, which are allocated to the vested portion of the Accounts of the Participant during the six-month period after the receipt of the hardship withdrawal, will be distributed in cash to the Participant, as provided in Sec. 10.18, notwithstanding any election by the Participant or any provision of Sec. 10.18, which would otherwise cause such dividends to be credited to the Participant's Accounts and reinvested in Company Stock. Effective for hardship withdrawals distributed on or after January 1, 2020, the foregoing provisions of this Sec. 10.9(a)(2)(C) shall not apply.

(D)   Notwithstanding the foregoing provisions of this paragraph (2), this paragraph (2) will be satisfied if the IRS issues a regulation, revenue ruling, notice, or other document of general applicability that establishes an alternative method under which distributions will be deemed to be necessary to satisfy an immediate and heavy financial need and all of the requirements of such alternative method are met.

(E)   The Participant shall not be permitted to make more than two (2) hardship withdrawals under this Sec. 10.9 during any Plan Year, provided that this requirement in this section (E) shall not apply to the extent a hardship withdrawal is made in accordance with Section 10.9(a)(1)(G) or "Disaster Relief," as described in Section 10.20 below.

(b)   Withdrawal may be made under this section only from the following vested Accounts in the following order of priority:

(1)   The Participant's Employee After-Tax Account, including pre-1987 contributions and post 1986 contributions and earnings.

(2)   The Participant's After-Tax Rollover Account.

(3)   The Participant's Rollover Account.

(4)   The Participant's Qualified Voluntary Elective Contribution Account.

(5)   The Participant's Non-Safe Harbor Match Account.

(6)   The Participant's Share Award Account.

(7)   The Participant's Discretionary Profit Sharing Account.

(8)   The Participant's Discretionary Profit Sharing Post 2018 Account.

(9)   TAP Company Plus Account.

(10)   The Participant's Before-Tax Account.

WFC002603

(11)   The Participant's Pre-2020 Catch-Up Account.

(12)   The Participant's Roth 401(k) Account.

(13)   The Participant's Pre-2020 Roth Catch-Up Account.

(14)   The Participant's Roth Rollover Account.

(15)   The Participant's Reinstatement of Funds Account.

(16)   The Participant's Reinstatement of Roth Rollover Account.

With respect to any such hardship withdrawal, earnings credited after December 31, 1988 to the Participant's Before-Tax Account or Pre-2020 Catch-Up Account, or to any portion of a Frozen Transferred Account that is attributable to elective deferrals subject to Code section 401(k), cannot be withdrawn under this section. In addition, no withdrawals under this section may be made from the Participant's Employer Qualified Non-Elective Contribution Account (see Section 7.1(g)) or from any other Account which is attributable to contributions that were used to calculate deferral percentages under Sec. 6.1, and earnings attributable to such contributions.

Sec. 10.10  **Source of Benefits.**  All benefits to which persons become entitled hereunder shall be provided only out of the Trust Fund and only to the extent that the Trust Fund is adequate therefor.  No benefits are provided under the Plan, except those expressly described herein.

Sec. 10.11  **Incompetent Payee.**  If, in the opinion of the Plan Administrator, a person entitled to payments hereunder is disabled from caring for his or her affairs because of mental condition, physical condition, or age, payment due such person may be made to such person's guardian, conservator, or other legal personal representative upon furnishing the Plan Administrator with evidence satisfactory to the Plan Administrator of such status.  Prior to the furnishing of such evidence, the Plan Administrator may cause payments due the person under disability to be made, for such person's use and benefit, to any person or institution then, in the opinion of the Plan Administrator, caring for or maintaining the person under disability.  The Plan Administrator shall have no liability with respect to payments so made.  The Plan Administrator shall have no duty to make inquiry as to the competence of any person entitled to receive payments hereunder.

Sec. 10.12  **Benefits May Not Be Assigned or Alienated.**  Except as otherwise expressly permitted by the Plan or required by law, the interests of persons entitled to benefits under the Plan may not in any manner whatsoever be assigned or alienated, whether voluntarily or involuntarily, or directly or indirectly, subject to the following:

(a)   The Plan shall comply with the provisions of any court order entered on or after January 1, 1985, which the Plan Administrator determines is a qualified domestic relations order, as defined in Code section 414(p).  Notwithstanding any provisions in the Plan to the contrary, an individual who is entitled to payments from the Plan as an "Alternate Payee" pursuant to a qualified domestic relations order may receive a lump sum payment from the Plan as soon as administratively feasible after the Valuation Date coincident with or next following the date of the Plan Administrator's determination that the order is a qualified domestic relations order, unless the order specifically provides that payment is to be made at a later time.

-65-

WFC002604

(b)    The procedures for determining whether an order is a qualified domestic relations order are contained in Exhibit I of this Plan.  Exhibit I can be amended at any time by written action of any of the officers listed in Sec. 13.1 or by any other person to whom that responsibility has been delegated by such an officer.

(c)    Any expense related to the review of a purported qualified domestic relations order, or to the administration of such an order which has been determined to be qualified, which is not paid by the Company shall be charged against the Accounts of the Participant and/or the Alternate Payee.  The expense shall be allocated among such Accounts in such proportions as the Plan Administrator determines in its discretion, unless an allocation of expenses between those parties is specified in the court order.

(d)    A Participant's benefits provided under this Plan may be offset against an amount that the Participant is ordered to pay to the Plan if the order or requirement to pay arises under a judgment of conviction for a crime involving the plan, under a civil judgment (including a consent order or decree) entered by a court in an action brought in connection with a violation (or alleged violation)of part 4 of subtitle B of title I of ERISA, or pursuant to a settlement agreement between the Participant and the Secretary of Labor or the Pension Benefit Guaranty Corporation, and the judgment, order, decree or settlement agreement meets the requirements of Code section 401(a)(13)(C).

(e)    The Plan shall comply with any federal tax levy made in accordance with Code section 6331.

**Sec. 10.13  <u>Payment of Taxes</u>.**  The Trustee may pay any estate, inheritance, income, or other tax, charge, or assessment attributable to any benefit payable hereunder which in the Trustee's opinion it shall be or may be required to pay out of such benefit.  The Trustee may require, before making any payment, such release or other document from any taxing authority and such indemnity from the intended payee as the Trustee shall deem necessary for its protection.

**Sec. 10.14  <u>Conditions Precedent</u>.**  No person shall be entitled to a benefit hereunder until the person's right thereto has been finally determined by the Plan Administrator nor until the person has submitted to the Plan Administrator relevant data reasonably requested by the Plan Administrator, including, but not limited to, proof of date of birth or death.

**Sec. 10.15  <u>Plan Administrator Directions to Trustee</u>.**  The Plan Administrator shall issue such directions to the Trustee as are necessary to accomplish distributions to the Participants and Beneficiaries in accordance with the provisions of the Plan.

**Sec. 10.16  <u>Effect on Unemployment Compensation</u>.**  For purposes of any unemployment compensation law, a distribution hereunder in one sum attributable to an Employer Contribution Account shall be considered to be a severance payment and shall be allocated over a period of weeks equal to the one sum payment divided by the employee's regular weekly pay while employed by the Participating Employers, which period shall commence immediately following the employee's Termination of Employment.

**Sec. 10.17  <u>Transfers and Direct Rollovers to Other Plans</u>.**  To the extent required by Code section 401(a)(31), this Sec. 10.17 applies to distributions made on or after January 1, 1993.

(a)    Notwithstanding any provision of the Plan to the contrary that would otherwise limit a distributee's election under this section, a distributee may elect, at the time and in the manner

WFC002605

prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

(b)    For purposes of this section:

    (1)    An "eligible rollover distribution" is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include any distribution that is one of a series of substantially equal periodic payments (not less frequently than annually) made over the life expectancy of the distributee or the joint life expectancies of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Code section 401(a)(9); and the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities). A distribution under Sec. 10.18(a) of any dividends subject to Code section 404(k) is not an eligible rollover distribution.

        (A)    Any withdrawal from any of the Participant's Accounts due to financial hardship prior to age 59½ pursuant to Sec. 10.9 is not an eligible rollover distribution.

        (B)    A portion of a distribution shall not fail to be an eligible rollover distribution merely because the portion consists of after-tax employee contributions which are not includible in gross income. However, such portion may be transferred only to an individual retirement account or annuity described in Code section 408(a) or (b), to a qualified trust described in Code section 401(a) or 403(a), or to an annuity contract described in Code section 403(b), that provides for separate accounting for the amounts so transferred (and earnings thereon), including separately accounting for the portion of such distribution which is includible in gross income and the portion of such distribution which is not so includible.

    (2)    An "eligible retirement plan" is an individual retirement account described in Code section 408(a), an individual retirement annuity described in Code section 408(b), an annuity plan described in Code section 403(a), or a qualified trust described in Code section 401(a) with respect to a defined contribution plan, that accepts the distributee's eligible rollover distribution. An eligible retirement plan also means an annuity contract described in Code section 403(b) and an eligible plan under Code section 457(b) which is maintained by a state, a political subdivision of a state, or any agency or instrumentality of a state or political subdivision of a state, and which agrees to account separately for amounts transferred into such plan from this Plan. For distributions on or after January 1, 2008, an eligible retirement plan also means a Roth IRA described in Code section 408A; provided that the Participant or Beneficiary electing a direct rollover to a Roth IRA is solely responsible for determining whether he or she is eligible to make such a rollover and for determining the tax consequences of any such rollover. For distributions after December 18, 2015, an eligible retirement plan also means a SIMPLE IRA, as described in and subject to the requirements of Code section 408(p)(1)(B).

    (3)    A "distributee" includes an employee or former employee. In addition, the employee's or former employee's surviving Spouse and the employee's or former employee's Spouse or former Spouse who is the Alternate Payee under a qualified domestic

WFC002606

relations order, as defined in Code section 414(p), are distributees with regard to the interest of the Spouse or former Spouse.

    (4)    A "direct rollover" is a payment by the Plan to the eligible retirement plan specified by the distributee.

(c)    Following the death of a Participant, a Beneficiary who is not a "distributee" under subsection (b)(3) above, but is a "designated beneficiary" under Code section 401(a)(9)(E), may elect, at the time and in the manner prescribed by the Plan Administrator, to have all or any portion of the Beneficiary's Accounts attributable to the Participant paid directly to an individual retirement account or annuity described in Code section 408, consistent with Code section 402(c)(11). The Beneficiary electing such a transfer is solely responsible for determining the tax consequences of the transfer, including the amount eligible for transfer and the satisfaction of any minimum distribution requirements with respect to the Beneficiary's benefit.

**Sec. 10.18  Payment of Dividends on Company Stock to Participants.** To the extent permitted by and consistent with Code section 404(k), any dividends on the Company Stock held in the Wells Fargo ESOP Fund which are allocated to the vested portion of the Accounts of a Participant will, pursuant to the election of the Participant (i) be credited to the Participant's Accounts and reinvested in additional shares of Company Stock, or (ii) be either paid in cash to the Participant or paid to the Plan and distributed in cash to the Participant, as determined by the Plan Administrator.

(a)    Pursuant to procedures established by the Plan Administrator from time to time, a Participant may file with the Plan Administrator or its designated agent an election to reinvest dividends or to receive cash payment of dividends, or to change such an election made previously, any time prior to the end of the "dividend record" date for each dividend. Any such election shall remain in effect for subsequent dividends until the Participant files a different election prior to the applicable deadline.

    (1)    If no such election has been filed by the Participant at any time on or prior to the record date for a particular dividend, that dividend will be credited to the Participant's Accounts and reinvested in additional shares of Company Stock; provided, however, that if such a Participant had received cash payment of any dividend prior to May 1, 2003 under the provisions of the Plan in effect prior to that date due to failure to make an election, that Participant shall be deemed to have elected to receive cash payment of future dividends until the Participant files an election to reinvest dividends pursuant to this section.

    (2)    Following the Participant's death, each Beneficiary will have the same rights to elect the treatment of dividends on Company Stock allocated to the Beneficiary's Accounts as the Participant had prior to death. If no such election is filed by a Beneficiary, dividends credited to the Beneficiary's Account will be treated in the same manner as specified in paragraph (1) above.

(b)    Notwithstanding the foregoing:

    (1)    If the amount of a dividend that would be paid to a Participant or Beneficiary is less than $5.00, the dividend shall instead be credited to the applicable Accounts of the individual and reinvested in Company Stock.

WFC002607

(2)     Any dividend that would be payable during the period between the date the Plan Administrator receives notice of a Participant's death and the date Accounts are established in the name of the Participant's Beneficiary or Beneficiaries pursuant to Sec. 10.1 shall be credited to the applicable Accounts of the Participant for reinvestment in Company Stock, and shall not be distributed pursuant to this Sec. 10.18.

(c)     Notwithstanding anything in the foregoing provisions of this section to the contrary, any dividends on Company Stock held in the Plan which are allocated to the vested portion of the Accounts of the Participant during the six-month period described in Sec. 10.9(a)(2)(C) after the receipt of a hardship withdrawal, and which are not required to be reinvested in Company Stock pursuant to subsection (b), above, will be distributed in cash to the Participant.

**Sec. 10.19  Uncashed Checks or Inability to Locate Distributee.**  The following provisions apply if a Participant, Beneficiary or Alternate Payee fails to cash a check, or cannot be located after a check has been issued or after becoming entitled to a distribution from the Plan.

(a)     Uncashed Checks.  If all or part of the benefit of a Participant, Beneficiary or Alternate Payee has been distributed pursuant to the provisions of the Plan to the individual entitled to the benefit but the check representing such distribution remains uncashed on the January 1 or July 1 occurring six or more months following the date the check was issued and after such steps to contact the distributee have been taken as the Plan Administrator determines to be reasonable under the circumstances (pursuant to administrative procedures developed under subsection (c) below), the uncashed check  shall be disposed of as follows:

(1)     If the distributee is a terminated Participant, Beneficiary or Alternate Payee who still has one or more fully or partially vested Accounts remaining in the Plan, the amount of the uncashed check shall be deposited into the Plan's Trust and allocated  to an Account or Accounts established or maintained for such individual under the Plan, without any adjustment for gains, losses or interest for the period between the date the  check was issued and the date the Plan Administrator allocates the amount of the uncashed check to the individual's Account or Accounts.   The amount allocated shall be reinvested pursuant to the individual's most recent investment election in effect, or if no investment election is in effect, pursuant to administrative procedures developed under subsection (c) below.  If the individual has been issued a Form 1099-R reporting the check as taxable income, the allocation shall be made into a separate Account that shall be treated as an Employee After-Tax Account.  Notwithstanding the foregoing provisions of this paragraph (1), if the check is cashed after an allocation occurs under this paragraph, the amount of the uncashed check that was allocated to the individual's Account or Accounts shall be cancelled, and any earnings credited with respect to that amount shall be treated as a forfeiture and applied as provided in paragraph (2) of this subsection.

(2)     If the distributee is a terminated Participant, Beneficiary or Alternate Payee who has no vested Accounts remaining in the Plan, the uncashed check shall become a forfeiture as of a date the Plan Administrator selects that is on or after the applicable January 1 or July 1 pursuant to administrative procedures developed under subsection (c) below.  The forfeiture shall then be applied either to reinstate Accounts pursuant to Sec. 9.2(e)(2)(A), or else as a credit against Employer Matching Contributions or Employer Discretionary Profit Sharing Contributions for the year in which the forfeiture occurred, as provided in Sec. 6.4.  In the event the individual comes forward requesting distribution after a forfeiture has occurred under this paragraph, the individual's

-69-

WFC002608

forfeited benefit shall be restored to its value on the date the uncashed check was issued, without any investment gains or losses, interest or other adjustments for the period following the date the uncashed check was issued and the date the benefit is restored.

(3)  If the distributee is a Participant employed by the Company or an Affiliate, the uncashed check shall be deposited into the Plan's Trust and allocated to an Account or Accounts established or maintained for such Participant under the Plan, without any investment gains or losses, interest or other adjustments for the period between the date the uncashed check was issued and the date the Plan Administrator allocated the amount of the uncashed check to the Participant's Account or Accounts.  The amount allocated shall be reinvested pursuant to the Participant's most recent investment election in effect, or if no investment election is in effect, pursuant to administrative procedures developed under subsection (c) below.  If the Participant has been issued a Form 1099-R reporting the check as taxable income, the allocation shall be made into a separate Account that shall be treated as an Employee After-Tax Account.   Notwithstanding the foregoing provisions of this paragraph (3), if the check is cashed after a restoration occurs under this paragraph, the amount of the uncashed check that was allocated to the Participant's Account or Accounts shall be cancelled, and any earnings credited with respect to that amount shall be treated as a forfeiture and applied as provided in paragraph (2) of this subsection.

(b)  <u>Missing Distributees</u>.  If all or any portion of the Accounts of a Participant, Beneficiary or Alternate Payee cannot be distributed because of the inability of the Plan Administrator to determine the whereabouts of the distributee, after mailing a letter by first class mail to the last known address of the distributee, and after such further diligent efforts as the Plan Administrator determines are appropriate (pursuant to administrative procedures developed pursuant to subsection (c) below), and either (i) the Participant has attained age 65 or has had a break in service of at least 60 months duration as described in Sec. 3.3(d), or has died, or (ii) the benefit is distributable pursuant to Sec. 10.1 without the consent of the distributee, the benefit that cannot be distributed on account of the failure to locate the distributee shall be forfeited.  The forfeiture shall occur as of the January 1 or July 1 occurring six or more months after the date the event occurred, as described in clause (i) or (ii) of the previous sentence, or as of the date the Plan Administrator determines the distributee cannot be located, if later.  The forfeiture shall then be applied either to reinstate Accounts pursuant to Sec. 9.2(e)(2)(A), or else as a credit against Employer Matching Contributions or Employer Discretionary Profit Sharing Contributions for the year in which the forfeiture occurred as provided in Sec. 6.4. In the event the distributee is located after a forfeiture has occurred under this subsection, the individual's Accounts shall be restored to its value on the date the forfeiture occurred, without any investment gains or losses, interest or other adjustments for the period following the forfeiture and prior to the date the Accounts are restored.

(c)  <u>Administrative Procedures</u>.  The Plan Administrator may adopt such procedures as it deems to be appropriate and administratively practicable for purposes of applying the provisions of this Section 10.19, which may include certain exceptions to subsections (a) and (b) above.

**Sec. 10.20  <u>Hurricane and Other Disaster Relief Provisions</u>.**  The provisions of this Plan regarding hardship withdrawals, loans and distributions shall be deemed to be modified by, and shall incorporate by reference, any provision of the Code or ERISA, or any notice, ruling, announcement or other guidance issued by the Treasury Department or the Internal Revenue Service that provides relief with respect to Code Section 401(a) qualified retirement plans for Participants affected by a hurricane or other

WFC002609

disaster ("Disaster Relief"), subject to administrative procedures adopted by the Plan Administrator.  The Plan shall be administered in accordance with such Disaster Relief to the fullest extent provided therein, unless otherwise explicitly provided in this Plan or in administrative procedures adopted by the Plan Administrator.  The Plan Administrator may require a Participant to provide such information, and make such attestations, as the Plan Administrator determines in its discretion to be necessary or appropriate to administer the Plan in accordance with Disaster Relief.  The Plan Administrator shall be entitled to rely on information provided by the Participant to the extent permissible under such Disaster Relief.

WFC002610

## ARTICLE XI

## MANAGEMENT OF FUNDS

**Sec. 11.1 <u>Trust Fund</u>.** All sums of money and all securities and other property contributed by the Participating Employers and employees from time to time in support of the Plan, together with all investments made therewith, the proceeds thereof and all earnings and accumulations thereon, and the part thereof from time to time remaining, shall be held and administered, without distinction between principal and income, in one or more funds herein collectively referred to as the "Trust Fund," in trust, in accordance with the terms and provisions hereof.

**Sec. 11.2 <u>Trustee and Trust Agreement</u>.** The Trust Fund shall be held under a trust agreement between the Company and Wells Fargo Bank, National Association, as Trustee, or any successor Trustee duly appointed by a Company Representative. It is anticipated that a co-Trustee will be appointed to carry out certain duties in connection with Company Stock acquired or held by the Plan. Said duties shall be specified in a trust agreement between the Company and said co-Trustee; provided, however, that said provisions shall not be inconsistent with the provisions of the Plan.

**Sec. 11.3 <u>Compensation and Expenses of Trustee</u>.** The Trustee and any co-trustee shall be entitled to receive such reasonable compensation for services as may be agreed upon with the Plan Administrator. The Trustee and any co-trustee shall also be entitled to reimbursement for all reasonable and necessary costs, expenses, and disbursements incurred by it in the performance of its services. Such compensation and reimbursements shall be paid directly by the Participating Employers in such proportions as the Plan Administrator shall determine, except to the extent that any such item of compensation or reimbursement is included in an embedded fee which the Plan Administrator determines can be properly paid directly or indirectly by the Trust Fund.

**Sec. 11.4 <u>Funding Policy</u>.** The Employee Benefit Review Committee shall adopt a procedure, and revise it from time to time as it shall consider advisable, for establishing and carrying out a funding policy and method consistent with the objectives of the Plan and the requirements of ERISA. It shall advise the Trustee of the funding policy in effect from time to time.

**Sec. 11.5 <u>No Diversion</u>.** The Trust Fund shall be for the exclusive purpose of providing benefits to Participants under the Plan and their beneficiaries and defraying reasonable expenses of administering the Plan. Such expenses may include premiums for the bonding of Plan officials required by ERISA. No part of the corpus or income of the Trust Fund may be used for, or diverted to, purposes other than for the exclusive benefit of employees of the Participating Employers or their beneficiaries. Notwithstanding the foregoing:

(a) If any contribution or portion thereof is made by a Participating Employer by a mistake of fact, the Trustee shall, upon written request of the Plan Administrator, return such contribution to the Participating Employer within one year after the payment of the contribution to the Trustee. However, earnings attributable to such contribution or portion thereof shall not be returned to the Participating Employer but shall remain in the Trust Fund, and the amount returned to the Participating Employer shall be reduced by any losses attributable to such contribution or portion thereof.

(b) Contributions by a Participating Employer are conditioned upon initial qualification of the Plan as to such Participating Employer under Code section 401(a). If the Plan receives an adverse determination letter from the Internal Revenue Service with respect to such initial

WFC002611

qualification in response to an application for determination that was filed by the due date of the tax return of the Participating Employer for the year in which the Plan was adopted by the Participating Employer, the Trustee shall, upon written request of the Plan Administrator, return the amount of such contribution to the Participating Employer within one year after the date of denial of qualification of the Plan. For this purpose, the amount to be so returned shall be the contributions actually made, adjusted for the investment experience of, and any expenses chargeable against, the portion of the Trust Fund attributable to the contributions actually made.

(c)   Contributions by a Participating Employer are conditioned upon the deductibility of each contribution under Code section 404. To the extent the deduction is disallowed, the Trustee shall return such contribution (to the extent disallowed) to the Participating Employer within one year after the disallowance of the deduction. However, earnings attributable to such contribution (or disallowed portion thereof) shall not be returned to the Participating Employer but shall remain in the Trust Fund, and the amount returned to the Participating Employer shall be reduced by any losses attributable to such contribution (or disallowed portion thereof).

In the case of any such return of contribution the Plan Administrator shall cause such adjustment to be made to the Accounts of Participants as it considers fair and equitable under the circumstances resulting in the return of such contribution.

WFC002612

# ARTICLE XII

## ADMINISTRATION OF PLAN

Sec. 12.1 **Plan Administration.** Except as expressly otherwise provided herein, the Plan Administrator shall control and manage the operation and administration of the Plan and make all decisions and determinations incident thereto. The Plan Administrator shall have sole discretionary authority to interpret and construe the terms of the Plan, to determine all factual and legal questions under the Plan, and to make any determinations required in the administration of the Plan. Action on behalf of the Plan Administrator may be taken by:

(a)    The Director of Human Resources or the Director of Compensation and Benefits of the Company, either in an individual or joint capacity.

(b)    Any person or persons, natural or otherwise, or committee to whom responsibilities for the operation and administration of the Plan are allocated by either of the officers designated in subsection (a), but action of such person or persons or committee shall be within the scope of said allocation.

Sec. 12.2 **Certain Fiduciary Provisions.** For purposes of the Plan:

(a)    Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan.

(b)    A Named Fiduciary, or a fiduciary designated by a Named Fiduciary pursuant to the provisions of the Plan, may employ one or more persons to render advice with regard to any responsibility such fiduciary has under the Plan.

(c)    To the extent permitted by an applicable trust agreement or group annuity contract, the Employee Benefit Review Committee may appoint an investment manager or managers, as defined in ERISA, to manage (including the power to acquire and dispose of) any assets of the Plan.

(d)    A person who is a fiduciary with respect to the Plan, including a Named Fiduciary, shall be recognized and treated as a fiduciary only with respect to the particular fiduciary functions as to which such person has responsibility.

(e)    A Named Fiduciary may designate persons other than Named Fiduciaries to carry out any or all of their fiduciary responsibilities; provided, however, that such designation shall not include any responsibility, if any, in a trust agreement to manage or control the assets of the Plan other than a power under the trust agreement to appoint an investment manager, as defined in ERISA. Such designation shall be in writing.

Each Named Fiduciary, each other fiduciary, each person employed pursuant to subsection (b) above, and each investment manager shall be entitled to receive reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred in the performance of their duties with the Plan and to payment from the Trust Fund if not paid directly by the Participating Employers in such proportions as the Plan Administrator shall determine. Notwithstanding the foregoing, no person so serving may receive compensation from the Plan for fiduciary services if such person, natural or otherwise, is affiliated with the Company, and no person so serving who already receives pay from any Participating

WFC002613

Employer or Affiliate shall receive compensation from the Plan, except for reimbursement of expenses properly and actually incurred.

  **Sec. 12.3  Specific Powers and Duties of the Plan Administrator**.  In addition to any other powers and duties provided elsewhere in this Plan, the Plan Administrator shall have the following express discretionary authorities and responsibilities:

  (a) To adopt and enforce such rules and regulations and prescribe the use of such forms as may be deemed necessary to carry out the provisions of the Plan;

  (b) To maintain and preserve records relating to Participants, former Participants, and their Beneficiaries and Alternate Payees;

  (c) To prepare and furnish to Participants, Beneficiaries and Alternate Payees all information and notices required under federal law or the provisions of this Plan;

  (d) To prepare and file or publish with the Secretary of Labor, the Secretary of the Treasury, their delegates and all other appropriate government officials all reports and other information required under law to be so filed or published;

  (e) To determine all questions of the eligibility of employees to participate in the Plan and of the status of rights of Participants, Beneficiaries and Alternate Payees, and to determine eligibility for, entitlement to, and the amount and form of benefits;

  (f) To engage assistants and professional advisers;

  (g) To arrange for bonding, if required by law;

  (h) To retain records on elections and waivers by Participants, their Spouses and their Beneficiaries and Alternate Payees;

  (i) To establish rules and procedures to be followed by the Participants and Beneficiaries in filing applications for benefits and for furnishing and verifying proofs necessary to establish age, and any other matters required in order to establish their rights to benefits in accordance with the Plan;

  (j) To determine the Plan benefits which are to be paid and give the Trustee instructions for the payment of the benefits from the Trust Fund;

  (k) To determine the Plan expenses which are to be paid from the Trust Fund and shall give the Trustees written directions and authorization for the payment of such expenses, unless paid or reimbursed by the Participating Employers; and

  (l) To review and determine whether the Plan should enter into settlements relating to Investment Funds or other assets of the Plan, and to determine (as appropriate) the method for allocating or otherwise disposing of proceeds received by the Plan in connection with such settlements.

  **Sec. 12.4  Discrimination Prohibited.**  No person or persons in exercising discretion in the operation and administration of the Plan shall discriminate in favor of shareholders, officers, or highly compensated employees of any Participating Employer.

WFC002614

Sec. 12.5 **Evidence.** Evidence required of anyone under this Plan may be by certificate, affidavit, document, or other instrument which the person acting in reliance thereon considers to be pertinent and reliable and to be signed, made, or presented to the proper party.

Sec. 12.6 **Correction of Errors.** It is recognized that in the operation and administration of the Plan certain mathematical and accounting errors may be made or mistakes may arise by reason of factual errors in information supplied to the Plan Administrator or Trustee. The Plan Administrator shall have power to cause such equitable adjustments to be made to correct for such errors as the Plan Administrator in its discretion considers appropriate, including but not limited to the power to recover any overpayment from the person who received it. Such adjustments shall be final and binding on all persons.

Sec. 12.7 **Records.** Each Participating Employer, each fiduciary with respect to the Plan, and each other person performing any functions in the operation or administration of the Plan or the management or control of the assets of the Plan shall keep such records as may be necessary or appropriate in the discharge of their respective functions hereunder, including records required by ERISA or any other applicable law. Records shall be retained as long as necessary for the proper administration of the Plan and at least for any period required by said Act or other applicable law.

Sec. 12.8 **General Fiduciary Standard.** Each fiduciary shall discharge his or her duties with respect to the Plan solely in the interests of Participants and their beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

Sec. 12.9 **Prohibited Transactions.** A fiduciary with respect to the Plan shall not cause the Plan to engage in any prohibited transaction within the meaning of ERISA.

Sec. 12.10 **Claims Procedure.** The Plan shall have a claims procedure consistent with the requirements of ERISA. Such claims procedure shall provide adequate notice in writing to any Participant or beneficiary whose claim for benefits under the Plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the claimant and shall afford a reasonable opportunity to a claimant whose claim for benefits has been denied for a full and fair review by the appropriate Named Fiduciary of the decision denying the claim. The claims procedure currently in effect is contained in Exhibit II of this Plan.

Sec. 12.11 **Bonding.** Plan personnel shall be bonded to the extent required by ERISA. Premiums for such bonding may, in the sole discretion of the Plan Administrator, be paid in whole or in part from the Fund. Such premiums may also be paid in whole or in part by the Participating Employers in such proportions as the Plan Administrator shall determine. The Plan Administrator may provide by agreement with any person that the premium for required bonding shall be paid by such person.

Sec. 12.12 **Waiver of Notice.** Any notice required hereunder may be waived by the person entitled thereto.

Sec. 12.13 **Agent For Legal Process.** The Plan Administrator and the Corporate Secretary of the Company shall be the agents for service of legal process with respect to any matter concerning the Plan, unless and until the Plan Administrator designates some other person as such agent.

Sec. 12.14 **Indemnification.** In addition to any other applicable provisions for indemnification, the Participating Employers jointly and severally agree to indemnify and hold harmless, to

-76-

WFC002615

the extent permitted by law, each member of the governing body, each officer, and each employee of the Participating Employers against any and all liabilities, losses, costs, or expenses (including legal fees) of whatsoever kind and nature which may be imposed on, incurred by, or asserted against such person at any time by reason of such person's services as a fiduciary in connection with the Plan, but only if such person did not act dishonestly, or in bad faith, or in willful violation of the law or regulations under which such liability, loss, cost, or expense arises.

       **Sec. 12.15  <u>No Additional Benefit</u>.**  Any Participant, Beneficiary or Alternate Payee entitled to any payment or benefit from the Plan shall not be entitled to receive any payment or benefit in excess of his or her vested Account balance, as determined pursuant to the terms of the Plan.  Once a Participant, Beneficiary or Alternate Payee has received payment of his or her vested Account balance (in the form requested or specified under the terms of the Plan), the Participant, Beneficiary or Alternate Payee shall have no further rights under the Plan.

WFC002616

## ARTICLE XIII

## AMENDMENT, TERMINATION, MERGER

**Sec. 13.1  Amendment.**  Subject to the non-diversion provisions of Sec. 11.5, the Company, by action of the Board or by action of the Human Resources Committee of the Board, may amend the Plan at any time and from time to time.  The Board and the Human Resources Committee are expressly permitted to delegate such amendment authority to a Company Representative or other person or persons pursuant to written resolutions of the Board or the Human Resources Committee, and subject to the terms and conditions of such written resolutions.

All such amendments shall be binding on all Participating Employers.  No amendment of the Plan shall have the effect of changing the rights, duties, and liabilities of the Trustee without its written consent.  Also, no amendment shall divest a Participant or Beneficiary of Accounts accrued prior to the amendment.  Promptly upon adoption of any amendment to the Plan the Plan Administrator shall furnish a copy of the amendment to the Trustee.  If an amendment to the Plan changes the vesting schedule of the Plan, each Participant having not less than three years of service shall be permitted to elect to have his or her vested percentage computed under the Plan without regard to such amendment.  However, no election need be provided for any Participant whose vested percentage under the Plan, as amended, cannot at any time be less than the vested percentage determined without regard to such amendment.

**Sec. 13.2  Discontinuance of Joint Participation in Plan by a Participating Employer.**  The Company, by written action of a Company Representative may discontinue the joint participation in the Plan by another Participating Employer.  Discontinuance of joint participation in the Plan by a Participating Employer shall also be effected if it fails to make contributions required pursuant to the provisions of the Plan, if at any time it ceases to be affiliated with the Company, if substantially all of its assets are disposed of and it discontinues active business operations, if it is adjudicated a bankrupt, or if a trustee or receiver of all of substantially all of its assets is appointed.

(a)  If the Plan Administrator determines in its sole discretion to spin off the portion of the Plan attributable to the withdrawing employer, the Plan Administrator shall cause a determination to be made of the equitable part of the Trust Fund assets held on account of Participants of the withdrawing employer and their Beneficiaries.  The Plan Administrator shall direct the Trustee to transfer assets representing such equitable part to a separate fund for the plan of the withdrawing employer.  Such withdrawing employer may thereafter exercise, in respect of such separate fund, all the rights and powers reserved to the Company with respect to the Trust Fund.  The plan of the withdrawing employer shall, until amended by the withdrawing employer, continue with the same terms as the Plan herein, except that with respect to the separate plan of the withdrawing employer the words "Participating Employer", "Participating Employers", and "Company" shall thereafter be considered to refer only to the withdrawing employer.  If the foregoing provisions of this subsection (a) do not apply, the Accounts of Participants of the withdrawing employer and their Beneficiaries shall continue to be held in the Plan for distribution in accordance with the provisions hereof.

(b)  Any discontinuance of participation by a Participating Employer shall be effected in such manner that each Participant or Beneficiary would (if the Plan and the plan of the withdrawing employer then terminated) receive a benefit immediately after such discontinuance of participation which is equal to or greater than the benefit he or she would have been entitled to receive immediately before such discontinuance of participation if the Plan had then terminated.  No transfer of assets pursuant to this section shall be effected until such

WFC002617

statements with respect thereto, if any, required by ERISA to be filed in advance thereof have been filed.

(c)  Participating Employers that discontinue participation in the Plan, and the vesting treatment of the Plan Accounts of Participants or Beneficiaries affected by such discontinuation of Plan participation, are described in Exhibit III.

**Sec. 13.3  Reorganizations of Participating Employers.**  In the event two or more Participating Employers are consolidated or merged or in the event one or more Participating Employers acquires the assets of another Participating Employer, the Plan shall be deemed to have continued, without termination and without a complete discontinuance of contributions, as to all the Participating Employers involved in such reorganization and their employees.  In such event, in administering the Plan the corporation resulting from the consolidation, the surviving corporation in the merger, or the employer acquiring the assets shall be considered as a continuation of all of the Participating Employers involved in the reorganization.

**Sec. 13.4  Permanent Discontinuance of Contributions.**  The Company, by action of the Board, may completely discontinue contributions in support of the Plan by all Participating Employers.  In such event, notwithstanding any provisions of the Plan to the contrary, no employee shall become a Participant after such discontinuance, and the Accounts of each Participant in the employ of the Participating Employers at the time of such discontinuance shall be nonforfeitable.  Subject to the foregoing, all of the provisions of the Plan shall continue in effect, and upon entitlement thereto distributions shall be made in accordance with the provisions of Article X.

**Sec. 13.5  Termination.**  The Company, by action of the Board, may terminate the Plan as applicable to all Participating Employers and their employees.  After such termination, no employee shall become a Participant, and no further contributions shall be made.  The Accounts of each Participant in the employ of the Participating Employers at the time of such termination shall be nonforfeitable, and the Participant shall be entitled to a benefit equal to the value of those Accounts determined as of the Valuation Date coincident with or next following the termination of the Plan.  Forfeitures shall be allocated as though said Valuation Date were the last day of a Plan Year.  Distributions shall be made to Participants and Beneficiaries promptly after the termination of the Plan, but not before the earliest date permitted under the Code and applicable regulations, and subject to the Plan Administrator's right to delay distributions until receipt of a favorable determination letter from the Internal Revenue Service with respect to the termination.  The Plan and any related trust agreement or group annuity contract shall continue in force for the purpose of making such distributions.

**Sec. 13.6  Partial Termination.**  If there is a partial termination of the Plan either by operation of law, by amendment of the Plan, or for any other reason, which partial termination shall be confirmed by the Company, by written action of a Company Representative, the Accounts of each Participant with respect to whom the partial termination applies shall be nonforfeitable. Subject to the foregoing, all of the provisions of the Plan shall continue in effect as to each such Participant, and upon entitlement thereto distributions shall be made in accordance with the provisions of Article X.

**Sec. 13.7  Merger, Consolidation, or Transfer of Plan Assets.**  In the case of any merger or consolidation of the Plan with any other plan, or in the case of the transfer of assets or liabilities of the Plan to any other plan, provision shall be made so that each Participant and Beneficiary would (if such other plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the Plan had then terminated).

WFC002618

(a)    No such merger, consolidation, or transfer shall be effected until such statements with respect thereto, if any, required by ERISA to be filed in advance thereof have been filed.

(b)    Notwithstanding any provisions of this Plan to the contrary, to the extent that any optional form of benefit under this Plan permits a distribution prior to the Participant's retirement, death, disability, or severance from employment, and prior to Plan termination, the optional form of benefit is not available with respect to benefits attributable to assets (including the post-transfer earnings thereon) and liabilities that are transferred, within the meaning of Code section 414(l), to this Plan from a money purchase pension plan qualified under Code section 401(a) (other than any portion of those assets and liabilities attributable to voluntary employee contributions.)

Sec. 13.8  **Deferral of Distributions.**  Notwithstanding any provisions of the Plan to the contrary, in the case of a complete discontinuance of contributions to the Plan by a Participating Employer or of a complete or partial termination of the Plan with respect to a Participating Employer, the Plan Administrator or the Trustee may defer any distribution of benefit payments to Participants and Beneficiaries with respect to which such discontinuance or termination applies until after the following have occurred:

(a)    Receipt of a final determination from the Treasury Department or any court of competent jurisdiction regarding the effect of such discontinuance or termination on the qualified status of the Plan under Code section 401(a).

(b)    Appropriate adjustment of Accounts to reflect taxes, costs, and expenses, if any, incident to such discontinuance or termination.

WFC002619

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

**Sec. 14.1 <u>Discontinuance of Employment</u>.** The establishment and maintenance of this Plan shall not be construed to confer any right upon any person to a continuation of employment, nor shall it interfere with the right of a Participating Employer to dismiss any employee and to treat the employee without regard to the effect such treatment might have upon his or her status under the Plan.

**Sec. 14.2 <u>Insurance Company Not Responsible for Validity of Plan</u>.** No insurance company that issues a contract under the Plan shall have any responsibility for the validity of the Plan. An insurance company to which an application may be submitted hereunder may accept such application and shall have no duty to make any investigation or inquiry regarding the authority of the applicant to make such application or any amendment thereto or to inquire as to whether a person on whose life any contract is to be issued is entitled to such contract under the Plan.

**Sec. 14.3 <u>Headings</u>.** Headings at the beginning of articles and sections hereof are for convenience of reference, shall not be considered a part of the text of the Plan, and shall not influence its construction.

**Sec. 14.4 <u>Capitalized Definitions</u>.** Capitalized terms used in the Plan shall have their meaning, as defined in the Plan, unless the context clearly indicates to the contrary.

**Sec. 14.5 <u>Gender</u>.** Any references to the masculine gender include the feminine and vice versa.

**Sec. 14.6 <u>Use of Compounds of Word "Here"</u>.** Use of the words "hereof", "herein", "hereunder", or similar compounds of the word "here" shall mean and refer to the entire Plan unless the context clearly indicates to the contrary.

**Sec. 14.7 <u>Construed as a Whole</u>.** The provisions of the Plan shall be construed as a whole in such manner as to carry out the provisions thereof and shall not be construed separately without relation to the context.

**Sec. 14.8 <u>Reliance on Data and Consents</u>.** The Company, the Trustee, the Plan Administrator, all fiduciaries with respect to the Plan, and all other persons or entities associated with the operation of the Plan, the management of its assets, and the provision of benefits thereunder, may reasonably rely on the truth, accuracy and completeness of any data provided by any Participant, Beneficiary, Alternate Payee or representatives of such persons, including, without limitation, representations as to age, health, and marital status. Furthermore, the Company, the Trustee, the Plan Administrator and all fiduciaries with respect to the Plan may reasonably rely on all consents, elections, and designations filed with the Plan or those associated with the operation of the Plan and the Trust Fund by any Participant, Spouse, Beneficiary, Alternate Payee, or the representatives of such persons without duty to inquire into the genuineness of any such consent, election or designation. None of the aforementioned persons or entities associated with the operation of the Plan, its assets and the benefits provided under the Plan shall have any duty to inquire into any such data, and all may rely on such data being current to the date of reference, it being the duty of the Participants, Spouses, Beneficiaries, and Alternate Payees to advise the appropriate parties of any change in such data.

-81-

**Sec. 14.9  Address for Mailing**.  Each Participant, Beneficiary, and Alternate Payee or the representative of such persons shall be responsible for furnishing the Plan Administrator with the current and proper address for mailing of notices, reports, and benefit payments.  Any notice required or permitted to be given shall be deemed given if directed to the person to whom addressed at such address and mailed by regular United States mail, first-class, and prepaid.  This provision shall not be construed as requiring the mailing of any notice or notification if the regulations issued under ERISA deem sufficient notice to be given by the posting of notice in appropriate places, or by any other publication device.

**Sec. 14.10  Benefits Under Certain Appendices.**  The benefit of a Participant previously employed by the employers listed below shall be subject to provisions applicable to the Participant under the Appendix to this Plan that applies to that employer.  A reference in an Appendix to a provision of the Plan means the provision in effect on the date the Appendix was effective unless the Appendix has subsequently been amended to revise such cross-reference.

| Name of Employer | Effective Date of Appendix | Page |
| --- | --- | --- |
| Norwest Bank Ottumwa, N.A. (First National Bank of Ottumwa) | January 28, 1977 | A-1 |
| Northwest Growth Fund, Inc. and Cascade Capital Corporation | April 1, 1977 | A-3 |
| Norwest Bank Fort Dodge, N.A. (First National Bank, Fort Dodge) | January 1, 1978 | A-5 |
| Norwest Bank Sioux Falls, N.A. (Northwestern National Bank of Sioux Falls, Springfield Branch) | December 15, 1979 | A-7 |
| Norwest American Bank, S.A., London Representative Office (Canadian American Bank S.A.) | January 1, 1982 | A-9 |
| Bankshares of Nebraska, Inc. (and subsidiaries) | July 1, 1984 | A-10 |
| Toy National Bank | January 1, 1988 | A-11 |
| Norwest Bank Arizona, N.A. (Ranch National Bank) | July 1, 1988 | A-12 |
| Norwest Bank Cedar Rapids, N.A. (Peoples Bank and Trust Company) | July 29, 1988 | A-13 |
| The Bank Group, Inc. and subsidiaries | July 1, 1989 | A-14 |
| Norwest Equipment Finance, Inc. (Crestwood Capital Corp. and Crestwood Financial Corp.) | January 1, 1990 | A-15 |
| First National Bank of Bellevue | January 1, 1990 | A-16 |
| First Interstate Corporation of Wisconsin (and subsidiaries) | January 1, 1990 | A-17 |
| Crop Hail Management | July 1, 1990 | A-18 |
| First Interstate Bank of Northern Indiana, N.A. and subsidiaries | January 1, 1991 | A-19 |
| First Illini Bancorp, Inc. | January 1, 1991 | A-20 |
| First Minnesota Savings Bank, F.S.B. | January 1, 1991 | A-21 |
| United Banks of Colorado, Inc. and Subsidiaries | January 1, 1991 | A-22 |
| ANK Agency, Inc. | January 1, 1991 | A-23 |
| American Land Title Co. Inc. | January 1, 1991 | A-24 |
| First National Bank in Anoka and Chalfen Bankshares, Inc. | April 1, 1991 | A-25 |
| Yankton Savings and Loan Association | April 1, 1991 | A-26 |
| Wyoming National Bancorporation and Subsidiaries | April 1, 1991 | A-27 |
| Norwest Mortgage, Inc. | April 1, 1991 | A-28 |
| Peoples Bank and Trust Company of Waterloo | July 1, 1991 | A-29 |
| MIG Insurance Brokers, Inc. | January 1, 1992 | A-30 |

WFC002621

| | | |
|---|---|---|
| Davenport Bank and Trust Company | February 1, 1992 | A-31 |
| Community Bank of Nebraska | April 1, 1992 | A-32 |
| U.S. Recognition, Inc. | July 1, 1992 | A-33 |
| Vistar Bank | January 1, 1993 | A-34 |
| Merchants and Miners State Bank of Hibbing | February 1, 1993 | A-35 |
| Bank of Aspen | April 1, 1993 | A-36 |
| Boris Systems, Inc. | April 1, 1993 | A-37 |
| University Bank | April 1, 1993 | A-38 |
| Lincoln Financial Corporation | April 1, 1993 | A-39 |
| Citibank-Arizona, Citibank Investment Services, Inc., and Citibank Investment Services, Inc.-Minnesota | September 1, 1993 | A-40 |
| First State Bank of Spring Lake Park | October 1, 1993 | A-41 |
| First Nationwide Bank and Columbia Investment Services, Inc. | October 1, 1993 | A-42 |
| FirstAmerican Bank, N.A. | November 1, 1993 | A-43 |
| Ralston Bank | January 1, 1994 | A-44 |
| Farmers State Bank | January 1, 1994 | A-45 |
| St. Cloud National Bank and Trust Company and St. Cloud Metropolitan Agency, Inc. | January 1, 1994 | A-46 |
| Forest Lake State Bank | March 1, 1994 | A-47 |
| First National Bank of Arapahoe County, First National Bank of Lakewood, and First National Bank of Southeast Denver | March 1, 1994 | A-48 |
| United New Mexico Financial Corporation and Subsidiaries | April 1, 1994 | A-49 |
| Ford Bank Group, Inc. and Subsidiaries | April 1, 1994 | A-50 |
| United Title Company of Arizona | May 1, 1994 | A-51 |
| First National Bank of Detroit Lakes | June 1, 1994 | A-52 |
| Bank of Montana Systems and Subsidiaries | July 1, 1994 | A-53 |
| First Nationwide Bank, a Federal Savings Bank | July 1, 1994 | A-54 |
| La Porte Bank and Trust Company | January 1, 1995 | A-55 |
| American National Bank of Silver City | January 1, 1995 | A-56 |
| Bank of Scottsdale | January 1, 1995 | A-57 |
| First National Bank of Kerrville | January 1, 1995 | A-58 |
| Texas National Bank of Midland | January 1, 1995 | A-59 |
| Community State Bank | January 1, 1995 | A-60 |
| American Republic Bankshares | February 1, 1995 | A-61 |
| Caliber Bank | April 1, 1995 | A-62 |
| Directors Mortgage Loan Corporation, Directors Insurance Company and Stan Shaw Corporation | April 1, 1995 | A-63 |
| BarclaysAmerican/Mortgage Corporation | April 1, 1995 | A-64 |
| Fridley State Bank | May 1, 1995 | A-65 |
| Goldenbanks of Colorado | July 1 1995 | A-66 |
| New Braunfels Bancshares | July 1, 1995 | A-67 |
| Ryland Mortgage Company - Institutional Financial Services | July 1, 1995 | A-68 |
| First National Bank of Tulia | July 1, 1995 | A-69 |
| First American National Bank (Chandler, Arizona) | August 1, 1995 | A-70 |
| Comfort State Bank | September 1, 1995 | A-71 |
| Liberty Bank and Trust, N.A. (Dickinson, N.D.) | September 1, 1995 | A-72 |
| Beacon Business Credit, Inc. | December 1, 1995 | A-73 |
| State National Bank (El Paso, Texas) | January 1, 1996 | A-74 |
| The Foothill Group, Inc. | January 1, 1996 | A-75 |
| American Federal Savings Bank | February 1, 1996 | A-76 |

WFC002622

| | | |
|---|---|---|
| Bank of Robstown (TX) | February 1, 1996 | A-78 |
| Canton State Bank (IL) | March 1, 1996 | A-79 |
| Farmers State Bank (Irene, SD) | March 1, 1996 | A-80 |
| Henrietta Bancshares and Subsidiaries (TX) | May 1, 1996 | A-81 |
| Prudential Home Mortgage Company | June 1, 1996 | A-82 |
| Victoria Bankshares, Inc. | July 1, 1996 | A-83 |
| Benson Financial Corporation (San Antonio, TX) | July 1, 1996 | A-84 |
| AmeriBank (MN) | July 1, 1996 | A-85 |
| Regional Bank of Colorado, N.A. | July 1, 1996 | A-86 |
| First State Bank (Bandera, Texas) | August 1, 1996 | A-87 |
| PriMerit Bank, Federal Savings Bank | August 1, 1996 | A-88 |
| Union National Bank of Texas | October 1, 1996 | A-89 |
| National Business Finance, Inc. | October 1, 1996 | A-90 |
| American Bank Moorhead | November 1, 1996 | A-91 |
| Texas Bancorporation, Inc. (Odessa, Texas) | January 1, 1997 | A-92 |
| Franklin Federal Bankcorp | January 1, 1997 | A-93 |
| West Columbia National Bank | January 1, 1997 | A-94 |
| Central Bancorporation | April 1, 1997 | A-95 |
| Statewide Mortgage Company | April 1, 1997 | A-96 |
| Farmers National Bank of Geneseo | May 1, 1997 | A-97 |
| The First National Bankshares, Inc. | August 1, 1997 | |
| American Bank | December 16, 1997 | |
| Continental State Bank | January 1, 1998 | |
| First Valley Bancorporation | January 1, 1998 | |
| Packers Bank | January 1, 1998 | |
| International Bancorporation | January 1, 1998 | |
| JLJ Financial Services Corporation | January 1, 1998 | |
| Heritage Trust Company | April 1, 1998 | |
| Founders Trust Company | April 1, 1998 | |
| Fidelity Bancshares, Inc. (and subsidiaries) | April 1, 1998 | |
| WMC Mortgage Company | May 1, 1998 | |
| Spring Mountain Escrow Company | June 1, 1998 | |
| First Bank Katy, N.A. | July 1, 1998 | |
| EMJAY Corporation | July 1, 1998 | |
| Maier/Hauswirth Investment Advisors, L.L.C. | July 1, 1998 | |
| First Bank of Grants, N.A. | July 1, 1998 | |
| The Bank of New Mexico Holding Company and Subsidiaries | July 2, 1998 | |
| Charter Bancorporation, Inc. and Subsidiary | July 2, 1998 | |
| MidAmerica Insurance Agency South, Inc. | July 2, 1998 | |
| Minnesota Bancshares, Inc. and Subsidiary | July 2, 1998 | |
| First Bancshares of Valley City and Subsidiaries | August 1, 1998 | |
| Bancdata Processing Corporation | August 1, 1998 | |
| MidAmerica Bancshares, Inc. and Subsidiaries | August 1, 1998 | |
| Mountain Bancshares, Inc. and Subsidiary | August 1, 1998 | |
| Wisconsin Bancshares, Inc. and Subsidiaries | August 1, 1998 | |
| First National Bank of Monticello | October 1, 1998 | |
| First State Bank, Austin, Texas | October 1, 1998 | |
| Franklin Bancshares Inc. | January 1,1999 | |
| First National Bank of Missouri City | January 1, 1999 | |
| Community Bank of Parker | March 1, 1999 | |
| Mercantile Bank | April 1, 1999 | |
| Riverton State Bank | April 1, 1999 | |
| Wells Fargo & Company (Tax Advantage and Retirement Plan) | July 1, 1999 | |

-84-

WFC002623

A-98
A-99
A-100
A-101
A-102
A-103
A-104
A-105
A-106
A-107
A-108
A-109
A-110
A-111
A-112
A-113
A-114

A-115
A-116
A-117
A-118
A-119
A-120
A-121
A-122
A-123
A-124
A-125
A-126
A-127
A-128
A-129
A-130

A-134
A-135
A-136
A-137
A-138
A-139
A-140
A-141
A-142
A-143
A-144
A-145
A-146
A-147
A-148
A-149

WFC002624

| | | |
|---|---|---|
| GMAC Commercial Finance | May 1, 2010 | A-227 |
| Kinney Agency, Inc. | July 1, 2010 | A-228 |
| Britt/Paulk Insurance Agency, Inc. | January 1, 2011 | A-229 |
| A.G. Edwards, Inc. | July 1, 2011 | A-230 |
| Castle Pines Capital LLC | July 1, 2011 | A-231 |
| Edify, LLC | July 1, 2011 | A-232 |
| Foreign Currency Exchange Corporation | August 1, 2011 | A-233 |
| Stetson – Beemer & Co. | September 1, 2011 | A-234 |
| LaCrosse Global Fund Services, LLC | December 1, 2011 | A-235 |
| EverKey Global Management LLC | January 1, 2012 | A-236 |
| BNP Paribas | April 21, 2012 | A-237 |
| Merlin Securities, LLC | August 1, 2012 | A-238 |
| Doherty Employment Group, Inc. | January 1, 2013 | A-239 |
| Helm Financial Corporation | April 16, 2014 | A-240 |
| General Electric Capital Corporation (GE Rail) | January 1, 2016 | A-241 |
| General Electric Capital Corporation | March 1, 2016 | A-242 |
| Analytic Investors, LLC | October 1, 2016 | A-243 |
| Golden Capital Management, LLC | July 1, 2017 | A-244 |

WFC002625

**ARTICLE XV**

**TOP-HEAVY PLAN PROVISIONS**

      **Sec. 15.1  Key Employee Defined.**  "Key Employee" means any employee or former employee who at any time during the Plan Year or any of the preceding four Plan Years is an officer of a Participating Employer or is deemed to have an ownership interest in a Participating Employer and who is within the definition of key employee in Code section 416(i) and the regulations thereunder in effect for the particular Plan Year.  "Non-key Employee" means any Participant who is not a Key Employee.

      **Sec. 15.2  Determination of Top-Heavy Status.**  The top-heavy status of the Plan shall be determined according to the following standards and definitions:

(a)    The Plan is a Top-Heavy Plan if it is not part of a required aggregation group and the top-heavy ratio for this Plan exceeds 60 percent, or if this Plan is part of a required aggregation group of plans and the top-heavy ratio for the group of plans exceeds 60 percent. However, the Plan is not a Top-Heavy Plan with respect to a Plan Year if it is part of a permissive aggregation group of plans for which the top-heavy ratio does not exceed 60 percent.

(b)    The "top-heavy ratio" shall be determined as follows:

    (1)    If the ratio is being determined only for this Plan, or if the aggregation group only includes defined contribution plans, the top-heavy ratio is a fraction, the numerator of which is the sum of the present values of the account balances of all Key Employees under the Plan or plans as of the determination date (including any part of any account balance distributed in the five-year period ending on the determination date), and the denominator, of which is the sum of the account balances (including any part of any account balance distributed in the five-year period ending on the determination date) of all employees under the Plan or plans as of the determination date.  (The "plans" referred to in the preceding sentence are the plans in the required or permissive aggregation group.)

    (2)    If the determination is being made for a required or permissive aggregation group, which includes one or more defined benefit plans, the top-heavy ratio is a fraction, the numerator of which is the sum of account balances of all Key Employees under the defined contribution plans and the present value of accrued benefits under the defined benefit plans for all Key Employees as of the determination date (including any part of any account balance or accrued benefit distributed in the five-year period ending on the determination date), and the denominator, of which is the sum of the account balances under the defined contribution plans for all employees and the present value of accrued benefits under the defined benefit plans for all employees as of the determination date (including any part of any account balance or accrued benefit distributed in the five-year period ending on the determination date).  (The "plans" referred to in the preceding sentence are the plans in the required or permissive aggregation group.)  Both the numerator and denominator of the top-heavy ratio shall be adjusted to reflect any contribution due but unpaid as of the determination date.

    (3)    For purposes of paragraphs (1) and (2), the value of account balances and the present value of accrued benefits will be determined as of the most recent valuation date that

WFC002626

falls within the 12-month period ending on the determination date. The account balances and accrued benefits of an employee who is not a Key Employee but who was a Key Employee in a prior year will be disregarded. The calculation of the top-heavy ratio and the extent to which distributions, rollovers, and transfers are taken into account will be made in accordance with Code section 416 and the regulations thereunder. When aggregating plans, the value of account balances and accrued benefits will be calculated with reference to the determination dates that fall within the same calendar year.

(4)     Any distribution due to separation from service, death or disability, which was made prior to the one-year period ending on the determination date, shall be disregarded for purposes of applying this subsection (b). Paragraphs (1) and (2) of this subsection shall also apply to distributions under a terminated plan which, had it not been terminated, would have been aggregated with this Plan under Code section 416(a)(2)(A)(i).

(c)     "Required aggregation group" means (i) each qualified plan of a Participating Employer or an Affiliate in which at least one Key Employee participates, and (ii) any other qualified plan of such employers that enables a plan described in (i) to meet the requirements of Code sections 401(a)(4) or 410.

(d)     "Permissive aggregation group" means the required aggregation group of plans plus any other plan or plans of such employers which, when consolidated as a group with the required aggregation group, would continue to satisfy the requirements of Code sections 401(a)(4) and 410.

(e)     "Determination date" for any Plan Year means the last day of the preceding Plan Year.

(f)     The "determination period" for a Plan Year is the Plan Year in which the applicable determination date occurs and the four preceding Plan Years.

(g)     The "valuation date" is the last day of each Plan Year and is the date, as of which account balances or accrued benefits are valued for purposes of calculating the top-heavy ratio.

(h)     For purposes of establishing the "present value" of benefits under a defined benefit plan to compute the top-heavy ratio, any benefit shall be discounted only for mortality and interest based on the interest rate and mortality table specified in the defined benefit plan for this purpose.

(i)     If an individual has not performed any services for the employer at any time during the five-year period ending on the determination date with respect to a Plan Year commencing prior to 2002, or during the one-year period ending on the determination date with respect to a Plan Year commencing in 2002 or later, any account balance or accrued benefit for such individual shall not be taken into account for such Plan Year.

**Sec. 15.3  Minimum Contribution Requirement.**  For any Plan Year, with respect to which the Plan is a Top-Heavy Plan, the employer contributions allocated to each Non-Key Employee whose Termination of Employment has not occurred prior to the end of such Plan Year shall not be less than that percentage of the Participant's compensation (as defined in Sec. 6.3(d)) for the Plan Year, which is the smaller of:

(a)     3 percent.

WFC002627

(b)     The percentage which is the largest percentage of compensation allocated to any Key Employee from employer contributions for such Plan Year.

However, this section shall not apply to any Participant who is covered under any other plan of the employer under which the minimum contribution or minimum benefit requirement applicable to Top-Heavy Plans will be satisfied.  For purposes of this section, any employer contribution attributable to a salary reduction or similar arrangement shall be taken into account.  Any employer contribution attributable to a salary reduction or similar arrangement (including Salary Deferral Contributions under this Plan) may not be used to satisfy the minimum amount of employer contributions which must be allocated under this section.  However, Employer Matching Contributions under this Plan (and employer matching contributions under any other plan whose contributions are to be used to satisfy the requirements of this section) may be used to satisfy the minimum amount of employer contributions which must be allocated under this section.  Employer Matching Contributions that are used to satisfy this section shall be treated as employer matching contributions for purposes of the actual contribution percentage test and other requirements of Code section 401(m).

**Sec. 15.4  <u>Exception For Collective Bargaining Unit</u>.**  Section 15.3 shall not apply with respect to any employee included in a unit of employees covered by an agreement which the Secretary of Labor finds to be a collective bargaining agreement between employee representatives and one or more employers if there is evidence that retirement benefits were the subject of good faith bargaining between such employee representative and such employer or employers.

WFC002628

**ARTICLE XVI**

**EMPLOYEE STOCK OWNERSHIP PROVISIONS**

**A. Acquisitions of Company Stock**

**Sec. 16.1 Exempt Loan.** An "Exempt Loan" means a direct or indirect extension of credit to the Plan that is not prohibited by Code section 4975, subject to the following:

(a)     An Exempt Loan may be made or guaranteed by either a party in interest (as defined in section 3(14) of ERISA) or a disqualified person (as defined in Code section 4975).

(b)     The proceeds of an Exempt Loan must be used solely, and within a reasonable time after their receipt, to acquire Company Stock for an Unallocated Reserve, or to repay such Exempt Loan, or to repay a prior Exempt Loan, or for any combination of the foregoing purposes.

(c)     An Exempt Loan must be without recourse against the Trust Fund except that:

(1)     The Company Stock acquired with the proceeds of an Exempt Loan may be pledged or otherwise used to secure repayment of such Exempt Loan (but for no other purpose), and

(2)     Any Company Stock which was acquired with the proceeds of a prior Exempt Loan which was repaid with the proceeds of an Exempt Loan may be pledged or otherwise used to secure repayment of another Exempt Loan, and

(3)     Any employer contributions made to the Plan in cash that are made for the purpose of satisfying the Plan's obligations under an Exempt Loan may be pledged or otherwise used to secure repayment of such Exempt Loan, and

(4)     The earnings of the Company Stock acquired with the proceeds of an Exempt Loan and which continue to be pledged or otherwise used as security for such Exempt Loan may be pledged or otherwise used as security for such Exempt Loan.

(d)     An Exempt Loan must provide for principal payments and interest to be payable over a specific term.

(e)     Except as provided below in subsection (f), shares of Company Stock held in an Unallocated Reserve shall be released from encumbrance (and from such Unallocated Reserve) as the principal and interest payments on an Exempt Loan are paid. The number of shares which shall be so released from encumbrance (and from an Unallocated Reserve) shall be equal to the total number of shares of Company Stock held in that Unallocated Reserve multiplied by a fraction with a numerator equal to the principal and interest payments made on the applicable Exempt Loan from the total employer contribution for the calendar year (including any credits under Sec. 6.4 or Sec. 7.2(i)) and a denominator equal to the total principal and interest to be paid under the Exempt Loan for the current year and all subsequent years. The number of future years for which principal and interest are payable under an Exempt Loan must be definitely ascertainable and must be determined without taking into account any possible extensions or renewal periods. If the interest rate under the loan is variable, the amount of

WFC002629

future interest payable shall be calculated by using the interest rate in effect on December 31 of the current year.

(f)    In lieu of the method described in subsection (e), shares of Company Stock held in an Unallocated Reserve may be released from encumbrance (and from an Unallocated Reserve) with reference to principal payments only, provided all of the following conditions are met.

(1)    Each Exempt Loan provides for principal and interest payments at a cumulative rate that is not less rapid at any time than level annual payments of such amounts for ten years.

(2)    If an Exempt Loan constitutes a renewal, extension or refinancing of a prior Exempt Loan, the sum of the expired duration of the prior Exempt Loan, the renewal period, the extension period, and the duration of the new Exempt Loan does not exceed ten years.

(3)    Shares of Company Stock held in an Unallocated Reserve shall be released from encumbrance (and from such Unallocated Reserve) as the principal amount of the Exempt Loan is paid. The number of shares to be released from encumbrance (and from an Unallocated Reserve) must equal the total number of shares of Company Stock held in that Unallocated Reserve multiplied by a fraction the numerator of which equals the amount of the principal payments made with respect to the applicable Exempt Loan for the current calendar year, and the denominator of which equals the total principal payments to be paid over the remaining term of the Exempt Loan (including the principal payments for the current year).

(4)    For the purposes of this subsection (f), the amount of interest included in any payment is disregarded only to the extent that it would be determined to be interest under standard loan amortization tables.

(g)    The rate of interest (which may be fixed or variable) on an Exempt Loan must not be in excess of a reasonable rate of interest considering all relevant factors including (but not limited to) the amount and duration of the loan, the security given, the guarantees involved, the credit standing of the Plan, the Company, and the guarantors, and the generally prevailing rates of interest.

(h)    In the event of default upon an Exempt Loan, the fair market value of Company Stock and other assets, which can be transferred in satisfaction of the loan, must not exceed the amount of the loan. If the lender is a party in interest (as defined in ERISA) or disqualified person (as defined in the Code), the loan must provide for a transfer of Plan assets upon default only upon, and to the extent of, the failure of the Plan to satisfy the payment schedule of an Exempt Loan.

**Sec. 16.2  Unallocated Reserve.**  An "Unallocated Reserve" means that portion of the Trust Fund which consists of shares of Company Stock (and dividends thereon) acquired with the proceeds of an Exempt Loan and which are held in suspense pending allocation to Participants' Accounts pursuant to this Article XVI. Separate Unallocated Reserves may be maintained for Company Stock acquired with the proceeds of separate Exempt Loans.

**Sec. 16.3  Leveraged Acquisitions.**  The Trustee, with the prior concurrence of the President, Vice Chairman, any Executive Vice President or any Senior Vice President of the Company (acting singly),

-91-

WFC002630

is authorized to enter into Exempt Loans.  The proceeds of any Exempt Loan shall be applied as provided in Sec. 16.1(b).  All shares of Company Stock acquired with the proceeds of an Exempt Loan shall be credited to the applicable Unallocated Reserve until such time as they are released pursuant to subsections (e) or (f) of Sec. 16.1.

## B.  Repayment of Exempt Loan

**Sec. 16.4  Repayment of Exempt Loans.**  The Trustee shall repay any outstanding Exempt Loan as provided in subsection (e) or (f) of Sec. 16.1 and may, in its discretion, determine the order in which the Exempt Loan(s) will be repaid and the portion of any payment which is applied to a particular Exempt Loan.  Such payments shall be from the following sources in the order of priority determined by the Company for each Plan Year.

    (a)    Dividends (other than dividends in the form of shares of Company Stock or dividends which employees are to receive in cash pursuant to Sec. 10.18) on all shares of Company Stock held in the Unallocated Reserves and in Matching Contributions Accounts and Employer Discretionary Contribution Accounts (to the extent such Accounts are invested in the Wells Fargo ESOP Fund) to the extent allowed by Code section 404(k)(2)(A)(iii).

    (b)    Employer contributions not less than the amount, if any, by which any required payments of principal and interest exceed the amount of dividends available for such payments, subject to the provisions of Sec. 5.1(e) and 5.2(d).

Any such dividends or contributions in excess of the amount of required loan payments may be used to make additional principal payments on any outstanding Exempt Loan, as determined by the Company in its discretion.  For purposes of this section, determinations by the Company may be made by the President, Vice Chairman, any Executive Vice President or any Senior Vice President of the Company (acting singly).

## C.  Allocation and Disposition of ESOP Stock

**Sec. 16.5  Allocation of Company Stock.**  As payments on an Exempt Loan are made, Company Stock shall be released from the applicable Unallocated Reserve as provided in Sec. 16.1(e) or (f), as applicable.  The released Company Stock shall be allocated among Participants' Accounts, subject to the following:

    (a)    If dividends paid on Company Stock held in Participants' Matching Contribution Accounts and Employer Discretionary Contribution Accounts are used to make payments on an Exempt Loan pursuant to Section 16.4(a), there shall be allocated to such Matching Contribution Accounts and Employer Discretionary Contribution Accounts, on the Valuation Date coincident with or next following the dividend payment date, an amount of Company Stock having a value on the dividend payment date equal to the amount of dividends so used.

    (b)    Any remaining Company Stock released from the Unallocated Reserves shall be allocated pursuant to Sec. 5.1, for each calendar quarter, up to the limits specified in Sec. 5.1, and pursuant to Sec. 5.2 (or pursuant to Sec. 5.3 of the Plan as in effect prior to January 1, 2010 with respect to Employer Discretionary Profit Sharing Contributions for the 2009 Plan Year).

    (c)    If the amount of Company Stock released from Unallocated Reserves and available for allocation on a particular Valuation Date is less than the amount required to complete all allocations required on that Valuation Date under subsections (a) and (b), the Participating Employers shall make an additional contribution of cash, Company Stock, or a combination

WFC002631

thereof.  The aggregate value of said additional contributions shall be sufficient to cover the remaining amount required to complete all allocations under subsections (a) and (b).

(d)    If the value of the Company Stock available for allocation, as of any Valuation Date prior to the end of a calendar year, exceeds the amount required for the allocations referred to in subsections (a) and (b), the remaining amount shall be held for allocations under subsections (a) or (b), as of subsequent Valuation Dates within that calendar year.

(e)    If at the end of a calendar year all allocations under subsections (a) and (b) have been completed and there is Company Stock which has been released from Unallocated Reserves and which remains unallocated, said Company Stock shall be allocated among the Matching Contribution Accounts of all individuals who are Active Participants on December 31 of said calendar year in the ratio that each such Participant's Salary Deferral Contributions for the year bears to the total Salary Deferral Contributions of all such Participants for the year, disregarding any Salary Deferral Contribution to the extent it exceeds 6% of the Participant's Certified Compensation.

WFC002632

**WELLS FARGO & COMPANY 401(k) PLAN**


**Appendix Applicable to Norwest Bank Ottumwa, N.A.**
**(formerly known as First National Bank of Ottumwa)**


Sec. 1  Background.  Effective January 28, 1977, the First National Bank of Ottumwa (the "Bank") adopted the Northwest Bancorporation Savings Investment Plan (the "Basic Plan").  Effective as of the same date, the First National Bank of Ottumwa Employees Profit Sharing Plan (the "Ottumwa Profit Sharing Plan") was merged into the Basic Plan.  First National Bank of Ottumwa has changed its name to Norwest Bank Ottumwa, N.A.  The provisions of this Appendix shall apply only to employees of the Bank on and after January 28, 1977 who were participants in the Ottumwa Profit Sharing Plan prior to January 28, 1977.

Sec. 2  Definitions.  Definitions contained in the Basic Plan shall apply to the text of this Appendix.  In addition, the following terms used in this Appendix shall have the meanings set forth below:

(a)  "Bank" refers to Norwest Bank Ottumwa, N.A. (formerly known as First National Bank of Ottumwa), a national banking association.

(b)  "Basic Plan" means the Norwest Corporation Savings Investment Plan, except that this Appendix and any comparable appendix not applicable to all Participating Employers shall not be deemed to be part of the "Basic Plan".

(c)  "Ottumwa Profit Sharing Plan" means the First National Bank of Ottumwa Employees Profit Sharing Plan.

(d)  "Profit Sharing Regular Account" means a Participant's account in the Trust Fund based on employer contributions under the Ottumwa Profit Sharing Plan.

(e)  "Profit Sharing Voluntary Deposit Account" means a Participant's account in the Trust Fund based on voluntary contributions made by him under the Ottumwa Profit Sharing Plan.

(f)  "Profit Sharing Accounts" means either of the types of accounts in the Trust Fund described above.

Sec. 3  Commencement of Participation.  Notwithstanding Article IV of the Basic Plan to the contrary, any person who was a participant in the Ottumwa Profit Sharing Plan on January 27, 1977 and who is an employee of the Bank on January 28, 1977 shall continue as a Participant hereunder.  However, if the employee has not attained age 24 prior to April 1, 1977, he shall not be eligible to participate hereunder until the first Entry Date following his attainment of age 24.

Sec. 4  Beneficiary Designations.  The provisions of the Basic Plan respecting designation of a Participant's Beneficiary shall govern with respect to benefits described in this Appendix.

Sec. 5  Investment of Profit Sharing Accounts.  In addition to the Investment Funds described in Article VIII of the Basic Plan, there shall be an Investment Fund (referred to as the "Profit Sharing Fund") comprising the portion of the Trust Fund allocable to the Participants' Profit Sharing Accounts. The Profit Sharing Fund shall be invested as a part of the Trust Fund pursuant to the Trust Agreement.  A

A-1

WFC002633

Participant may not designate the type of investments in which his Profit Sharing Accounts shall be invested.

Sec. 6  <u>Withdrawals from Accounts</u>.  An Active Participant may make cash withdrawals from his Profit Sharing Accounts as provided in Article X of the Basic Plan.

Sec. 7  <u>Benefit Upon Termination of Employment</u>.  If a Participant's Termination of Employment occurs under such circumstances that he (or his Beneficiary, as the case may be) is entitled to a benefit under Sections 9.1 or 9.3 of the Basic Plan, he (or his Beneficiary) shall be entitled to a benefit equal to the value of all of his Profit Sharing Accounts.  Benefits under this section shall be paid at the times and in the manner determined under Article X of the Basic Plan.

If a Participant's death occurs after his Termination of Employment, distribution of the balance of his Profit Sharing Accounts shall be made to his Beneficiary in accordance with the provisions of Article X of the Basic Plan.

Sec. 8  <u>Coordination with Basic Plan Provisions</u>.  This Appendix is a part of the Norwest Corporation Savings Investment Plan and, as such, is subject to the provisions of the Basic Plan except as specifically provided to the contrary in this Appendix.  The provisions of this Appendix shall be interpreted and administered by the Plan Administrator in a manner consistent with its administration of the Basic Plan.

WFC002634

**WELLS FARGO & COMPANY 401(k) PLAN**


**Appendix Applicable to Norwest Growth Fund, Inc.**
**(formerly known as Northwest Growth Fund, Inc.)**
**and former employees of Cascade Capital Corporation**


Sec. 1  Background.  Effective April 1, 1977, Northwest Growth Fund, Inc. and Cascade Capital Corporation (the "Adopting Corporations") adopted the Northwest Bancorporation Savings Investment Plan (the "Basic Plan").  Effective as of the same date, the Northwest Growth Fund, Inc. Retirement Plan (the "Growth Fund Plan") was merged into the Basic Plan.  Northwest Growth Fund, Inc. has changed its name to Norwest Growth Fund, Inc. and Cascade Capital Corporation has been merged into Norwest Venture Capital Management, Inc.  The provisions of this Appendix shall apply only to employees of the Adopting Corporations on and after April 1, 1977 (and of the successors of the Adopting Corporations) who were participants in the Growth Fund Plan prior to April 1, 1977.

Sec. 2  Definitions.  Definitions contained in the Basic Plan shall apply to the text of this Appendix.  In addition, the following terms used in this Appendix shall have the meanings set forth below:

(a)   "Adopting Corporation" refers to Northwest Growth Fund, Inc. (a Minnesota corporation) and Cascade Capital Corporation (an Oregon corporation).

(b)   "Basic Plan" means the Norwest Corporation Savings Investment Plan, except that this Appendix and any comparable appendix not applicable to all Participating Employers shall not be deemed to be part of the "Basic Plan".

(c)   "Growth Fund Plan" means the Northwest Growth Fund, Inc. Retirement Plan.

(d)   "Pension Account" means a Participant's account in the Trust Fund based on employer contributions under the Growth Fund Plan.

Sec. 3  Beneficiary Designations.  The provisions of the Basic Plan respecting designation of a Participant's Beneficiary shall govern with respect to benefits described in this Appendix.

Sec. 4  Investment of Pension Accounts.  In addition to the Investment Funds described in Article VIII of the Basic Plan, there shall be an Investment Fund (referred to as the "Money Purchase Pension Fund") comprising the portion of the Trust Fund allocable to the Participants' Pension Accounts. The Money Purchase Pension Fund shall be invested as a part of the Trust Fund pursuant to the Trust Agreement.  A Participant may not designate the type of investments in which his Pension Account shall be invested.

Sec. 5  Withdrawals from Accounts.  No cash withdrawal or other form of distribution may be made from a Participant's Pension Account prior to his Termination of Employment.

Sec. 6  Benefit Upon Termination of Employment.  If a Participant's Termination of Employment occurs under such circumstances that he (or his Beneficiary, as the case may be) is entitled to a benefit under Sections 9.1 or 9.3 of the Basic Plan, he (or his Beneficiary) shall also be entitled to a benefit equal to the value of his Pension Account.  Benefits under this section shall be paid at the times and in the manner determined under Article X of the Basic Plan.

A-3

WFC002635

If a Participant's death occurs after his Termination of Employment, distribution of the balance of his Pension Account shall be made to his Beneficiary in accordance with the provisions of Article X of the Basic Plan.

Sec. 7  <u>Coordination with Basic Plan Provisions</u>.  This Appendix is a part of the Norwest Corporation Savings Investment Plan and, as such, is subject to the provisions of the Basic Plan except as specifically provided to the contrary in this Appendix.  The provisions of this Appendix shall be interpreted and administered by the Plan Administrator in a manner consistent with its administration of the Basic Plan.

A-4

WFC002636

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Norwest Bank Fort Dodge, N.A.
### (formerly known as First National Bank, Fort Dodge, Iowa)

Sec. 1 <u>Background</u>. Effective January 1, 1978, the First National Bank, Fort Dodge, Iowa (the "Bank") adopted the Northwest Bancorporation Savings Investment Plan (the "Basic Plan"). Effective as of the same date, the First National Bank, Fort Dodge, Iowa Profit Sharing Plan (the "Fort Dodge Profit Sharing Plan") was merged into the Basic Plan. First National Bank, Fort Dodge, Iowa has changed its name to Norwest Bank Fort Dodge, N.A. The provisions of this Appendix shall apply only to employees of the Bank on and after January 1, 1978 who were participants in the Fort Dodge Profit Sharing Plan prior to January 1, 1978.

Sec. 2 <u>Definitions</u>. Definitions contained in the Basic Plan shall apply to the text of this Appendix. In addition, the following terms used in this Appendix shall have the meanings set forth below:

(a) "<u>Bank</u>" refers to Norwest Bank Fort Dodge, N.A. (formerly known as First National Bank, Fort Dodge, Iowa), a national banking association.

(b) "<u>Basic Plan</u>" means the Norwest Corporation Savings Investment Plan, except that this Appendix and any comparable appendix not applicable to all Participating Employers shall not be deemed to be part of the "Basic Plan".

(c) "<u>Fort Dodge Profit Sharing Plan</u>" means the First National Bank, Fort Dodge, Iowa Profit Sharing Plan.

(d) "<u>Profit Sharing Regular Account</u>" means a Participant's account in the Trust Fund based on employer contributions under the Fort Dodge Profit Sharing Plan.

(e) "<u>Profit Sharing Voluntary Deposit Account</u>" means a Participant's account in the Trust Fund based on voluntary contributions made by him under the Fort Dodge Profit Sharing Plan.

(f) "<u>Profit Sharing Accounts</u>" means either of the types of accounts in the Trust Fund described above.

Sec. 3 <u>Commencement of Participation</u>. Notwithstanding Article IV of the Basic Plan to the contrary, any person who was a participant in the Fort Dodge Profit Sharing Plan on December 31, 1977 and who is an employee of the Bank of January 1, 1978 shall continue as a Participant hereunder; provided, however, that if the employee has not attained age 24 prior to January 1, 1978, he shall not be eligible to participate hereunder until the first Entry Date following his attainment of age 24.

Sec. 4 <u>Beneficiary Designations</u>. The provisions of the Basic Plan respecting designation of a Participant's Beneficiary shall govern with respect to benefits described in this Appendix.

Sec. 5 <u>Investment of Profit Sharing Accounts</u>. In addition to the Investment Funds described in Article VIII of the Basic Plan, there shall be an Investment Fund (referred to as the "Profit Sharing Fund") comprising the portion of the Trust Fund allocable to the Participants' Profit Sharing Accounts. The Profit Sharing Fund shall be invested as a part of the Trust Fund pursuant to the Trust Agreement. A

A-5

WFC002637

Participant may not designate the type of investments in which his Profit Sharing Accounts shall be invested.

Sec. 6  Withdrawals from Accounts.  An Active Participant may make cash withdrawals from his Profit Sharing Accounts as provided in Article X of the Basic Plan.

Sec. 7  Vesting of Profit Sharing Accounts.  If a Participant's Termination of Employment occurs for any reason after January 1, 1978, in addition to any benefit to which he (or his Beneficiary, as the case may be) may be entitled under Article IX of the Basic Plan, he (or his Beneficiary) shall be entitled to a benefit equal to 100% of the value of his Profit Sharing Accounts.  Benefits under this section shall be paid at the times and in the manner determined under Article X of the Basic Plan.

If a Participant's death occurs after his Termination of Employment, distribution of the balance of his Profit Sharing Accounts shall be made to his Beneficiary in accordance with the provisions of Article X of the Basic Plan.

Sec. 8  Coordination with Basic Plan Provisions.  This Appendix is a part of the Norwest Corporation Savings Investment Plan and, as such, is subject to the provisions of the Basic Plan except as specifically provided to the contrary in this Appendix.  The provisions of this Appendix shall be interpreted and administered by the Plan Administrator in a manner consistent with its administration of the Basic Plan.

WFC002638

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Norwest Bank Sioux Falls, N.A.**
**(formerly known as Northwestern National Bank of**
**Sioux Falls, Springfield Branch)**

Sec. 1 <u>Background</u>. Effective December 15, 1979, Springfield State Bank was merged into Northwestern National Bank of Sioux Falls. Employees of Springfield State Bank thereupon became employees of Northwestern National Bank of Sioux Falls and eligible to participate in the Northwest Bancorporation Savings Investment Plan (the "Basic Plan"). Effective as of January 1, 1980, the Springfield State Bank Profit Sharing Plan was merged into the Basic Plan. Northwestern National Bank of Sioux Falls has changed its name to Norwest Bank Sioux Falls, N.A. The provisions of this Appendix shall apply only to persons who were employees of Northwestern National Bank of Sioux Falls on or after January 1, 1980 and who were participants in the Springfield State Bank Profit Sharing Plan prior to January 1, 1980.

Sec. 2 <u>Definitions</u>. Definitions contained in the Basic Plan shall apply to the text of this Appendix. In addition, the following terms used in this Appendix shall have the meanings set forth below:

(a)   "<u>Bank</u>" refers to Norwest Bank Sioux Falls, N.A. (formerly known as Northwestern National Bank of Sioux Falls), a national banking association.

(b)   "<u>Basic Plan</u>" means the Norwest Corporation Savings Investment Plan, except that this Appendix and any comparable appendix not applicable to all Participating Employers shall not be deemed to be part of the "Basic Plan".

(c)   "<u>Profit Sharing Regular Account</u>" means a Participant's account in the Trust Fund based on employer contributions under the Springfield State Bank Profit Sharing Plan.

(d)   "<u>Profit Sharing Voluntary Deposit Account</u>" means a Participant's account in the Trust Fund based on voluntary contributions made by him under the Springfield State Bank Profit Sharing Plan.

(e)   "<u>Profit Sharing Accounts</u>" means either of the types of accounts in the Trust Fund described above.

Sec. 3 <u>Beneficiary Designations</u>. The provisions of the Basic Plan respecting designation of a Participant's Beneficiary shall govern with respect to benefits based on his Profit Sharing Accounts.

Sec. 4 <u>Investment of Profit Sharing Accounts</u>. In addition to the Investment Funds described in Article VIII of the Basic Plan, there shall be an Investment Fund (referred to as the "Profit Sharing Fund") comprising the portion of the Trust Fund allocable to the Participants' Profit Sharing Accounts. The Profit Sharing Fund shall be invested as a part of the Trust Fund pursuant to the Trust Agreement. A Participant may not designate the type of investments in which his Profit Sharing Accounts shall be invested.

Sec. 5 <u>Withdrawals from Accounts</u>. An Active Participant may make cash withdrawals from his Profit Sharing Accounts as provided in Article X of the Basic Plan.

WFC002639

Sec. 6  <u>Vesting of Profit Sharing Accounts</u>.  If a Participant's Termination of Employment occurs for any reason after January 1, 1980, in addition to any benefit to which he (or his Beneficiary, as the case may be) may be entitled under Article IX of the Basic Plan, he (or his Beneficiary) shall be entitled to a benefit equal to 100% of the value of his Profit Sharing Accounts determined as of the Valuation Date coincident with or next following his Termination of Employment.  Benefits under this section shall be paid at the times and in the manner determined under Article X of the Basic Plan.

If a Participant's death occurs after his Termination of Employment, distribution of the balance of his Profit Sharing Accounts shall be made to his Beneficiary in accordance with the provisions of Article X of the Basic Plan.

Sec. 7  <u>Coordination with Basic Plan Provisions</u>.  This Appendix is a part of the Norwest Corporation Savings Investment Plan and, as such, is subject to the provisions of the Basic Plan except as specifically provided to the contrary in this Appendix.  The provisions of this Appendix shall be interpreted and administered by the Plan Administrator in a manner consistent with its administration of the Basic Plan.

A-8

WFC002640

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Norwest American Bank, S.A.,**
**London Representative Office**
**(formerly known as Canadian American Bank S.A.)**

The Norwest Corporation Savings Investment Plan, as applicable to Norwest American Bank, S.A., London Representative Office (formerly known as Canadian American Bank S.A.) (the "Bank") and its employees, is modified as follows:

1.

Section 2.30(a) shall not apply to any employee of the Bank.

2.

Section 2.30(b) and (c) shall not apply to the following employee of the Bank:

Henri deCrouy-Chenel

A-9

WFC002641

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Bankshares of Nebraska, Inc.
### and subsidiaries

Effective as of July 1, 1984, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Bankshares of Nebraska, Inc., First National Bank of Grand Island, Bankshares of Nebraska Life Insurance Company, Inc., and First Savings Companies of Grand Island, Hastings and Kearney (collectively referred to herein as "BON"), is modified as follows:

If immediately after 11:59 p.m. on May 31, 1984, an individual was an employee of a Participating Employer or a former subsidiary of Bankshares of Nebraska, Inc., the individual's continuous service with BON prior to 11:59 p.m. on May 31, 1984, shall be treated as if it were service for a Participating Employer in determining his/her Hours of Service for purposes of this Plan and in determining his/her vested percentage in benefits under this Plan.

July 1, 1984 shall be the first Entry Date on which an individual described in the previous paragraphs may become a Participant in this Plan.

A-10

WFC002642

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Toy National Bank

Effective as of January 1, 1988, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Toy National Bank, is modified as follows:

If an individual became an employee of Norwest Bank Sioux City, N.A. on December 1, 1987 as a result of its purchase of assets of Toy National Bank, his continuous service with Toy National Bank preceding that date shall be treated as if it were service for Norwest Bank Sioux City in determining his Hours of Service for purposes of this Plan.

A-11

WFC002643

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Ranch National Bank**
**(now known as Norwest Bank Arizona, N.A.)**


Effective as of July 1, 1988, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Ranch National Bank, is modified as follows:

If an individual became an employee of Norwest Bank Arizona, National Association on July 1, 1988, as a result of the consolidation of Ranch National Bank with Norwest Capital Management & Trust Co., Arizona, under the title of Norwest Bank Arizona, National Association, his/her continuous service with Ranch National Bank prior to July 1, 1988, shall be treated as if it were service for a Participating Employer in determining his/her Hours of Service for purposes of this Plan.

A-12

WFC002644

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Peoples Bank and Trust Company
### (now known as Norwest Bank Cedar Rapids, N.A.)

Effective as of July 29, 1988, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Peoples Bank and Trust Company, is modified as follows:

If on July 29, 1988, an individual was an employee of Peoples Bank and Trust Company, which became an indirect subsidiary of Norwest Corporation on said date as a result of Norwest Corporation's acquisition of P B Bancorp of Cedar Rapids, Inc., his/her continuous service with Peoples Bank and Trust Company prior to July 29, 1988, shall be treated as if it were service for a Participating Employer in determining his/her Hours of Service for purposes of this Plan.

Employees of Peoples Bank and Trust Company, who are at least age 21 and have 1000 Hours of Service during an Eligibility Computation Period, as of October 1, 1988, shall become a Participant as of October 1, 1988, and may elect pay conversion contributions effective on that date.

A-13

WFC002645

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to The Bank Group, Inc. and subsidiaries

Effective as of July 1, 1989, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by The Bank Group, Inc. and its subsidiaries, is modified as follows:

If immediately after 11:59 p.m. on April 30, 1989, an individual was an employee of a Participating Employer, The Bank Wayzata, The Bank North, The Bank Excelsior or The Bank information Services, Inc., the individual's continuous service with The Bank Group, Inc. or any of its subsidiaries prior to 11:59 p.m. on April 30, 1989, shall be treated as if it were service for a Participating Employer in determining his/her Hours of Service for purposes of this Plan.

The earliest date that an individual described in the previous paragraph may become a Participant in this Plan is July 1, 1989.

In addition to methods of distribution permitted under Sec. 10.1(a) of the Plan, any Participant may elect to receive distribution from his Accounts by payment in a series of annual or more frequent installments or by purchase of a non-transferable period-certain annuity contract providing substantially non-increasing payments.  However, these additional methods of distribution are available only to contributions made to The Bank Group, Inc. 401-K Plan prior to June 30, 1989.  If a Participant chooses distribution by purchase of a period-certain annuity contract, Secs. 10.1(h) and (i) of The Bank Group, Inc. 401-K Plan in effect on June 30, 1989 will control such distribution.

WFC002646

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Norwest Equipment Finance, Inc.
### (formerly known as Crestwood Capital Corp. and
### Crestwood Financial Corp.)

Effective as of January 1, 1990, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Crestwood Capital Corp. and Crestwood Financial Corp., is modified as follows:

If an individual was an employee of Norwest Equipment Finance, Inc. on October 12, 1989, the individual's continuous service with Crestwood Capital Corp. and Crestwood Financial Corp. prior to October 12, 1989, shall be treated as if it were service for a Participating Employer in determining the individual's Hours of Service for purposes of this Plan.

The earliest date that an individual described in the previous paragraph (other than an individual who was employed by a Participating Employer prior to employment with Crestwood) may become a Participant in this Plan is January 1, 1990.

A-15

WFC002647

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First National Bank of Bellevue

Effective as of January 1, 1990, the Norwest Corporation Savings Investment Plan, as applicable to persons employed by First National Bank of Bellevue, is modified as follows:

The continuous service with First National Bank of Bellevue prior to January 1, 1990, of an individual who became an employee of Norwest Corporation or any of its subsidiaries as a result of the merger of First Bellevue Bancshares Co. into Norwest Corporation on December 31, 1989, shall be treated as if it were service for a Participating Employer in determining his/her Hours of Service for purposes of this Plan.

The earliest date that an individual described in the previous paragraph may become a Participant in this Plan is January 1, 1990.

A separate account or accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the First National Bank of Bellevue 401(k) Plan ("Bellevue Plan") into this Plan effective January 1, 1991. Each such transferred account shall be treated as though it were the corresponding type of account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred account.

WFC002648

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to First Interstate Corporation of Wisconsin

Effective as of January 1, 1990, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Interstate Corporation of Wisconsin or its subsidiaries (other than employees of First Interstate Bank of Northern Indiana, N.A. and subsidiaries and First Illini Bancorp, Inc. and subsidiaries) (hereinafter called "FIWI"), is modified as follows:

If immediately after 11:59 p.m. on April 30, 1990, an individual was an employee of a Participating Employer or a former subsidiary of Norwest Corporation that succeeded to the operations of FIWI, the individual's continuous service with FIWI prior to 11:59 p.m. on April 30, 1990, shall be treated as if it were service for a Participating Employer in determining the individual's Hours of Service for purposes of this Plan.

If any individual (a) was an employee of FIWI on September 17, 1989, (b) became an employee of a Participating Employer before 11:59 p.m. on April 30, 1990, and (c) was continuously employed by either FIWI or a Participating Employer during said interim period, then the individual's continuous service with FIWI shall be treated as if it were service for a Participating Employer in determining the individual's Hours of Service for purposes of this Plan.

May 1, 1990 shall be an Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.  An individual who becomes a Participant on that date may elect to begin making Salary Deferral Contributions, as of that date.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the FIWI 401(K) Plan (formerly First Interstate Corporation of Wisconsin Incentive Savings Plan) into this Plan effective January 1, 1992.  Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under Sec. 10.1(a) of the FIWI 401(K) Plan in effect on December 31, 1991 for distribution of the benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-17

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Crop Hail Management

Effective as of July 1, 1990, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Crop Hail Management is modified as follows:

If immediately after 11:59 p.m. on May 31, 1990, an individual was an employee of Crop Hail Management, the individual's continuous service with Crop Hail Management prior to 11:59 p.m. on May 31, 1990, shall be treated as if it were service for a Participating Employer in determining his/her Hours of Service for purposes of this Plan.

July 1, 1990 shall be an Entry Date on which an individual described in the previous paragraphs may become a Participant in this Plan. An individual who becomes a Participant on that date may elect to begin making Salary Deferral Contributions, as of that date.

A-18

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to First Interstate Bank of
### Northern Indiana, N.A. and subsidiaries

Effective as of January 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Interstate Bank of Northern Indiana, N.A. and its subsidiaries (herein called "FINI") is modified as follows:

If immediately after 11:59 p.m. on December 31, 1990, an individual was an employee of FINI, which became a Participating Employer in this Plan on May 1, 1990, the individual's continuous service with FINI prior to 11:59 p.m. on December 31, 1990, shall be treated as if it were service for a Participating Employer in determining the individual's Hours of Service for purposes of this Plan.

January 1, 1991 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan. An individual who becomes a Participant on that date may elect to begin making Salary Deferral Contributions, as of that date.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the FINI 401K Plan (formerly First Interstate Bank of Northern Indiana, N.A. Employees' Profit Sharing Plan) into this Plan effective January 1, 1992. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under Sec. 10.1(a) for distribution of the benefits from any such transferred Account (subject, however, to Sec. 10.1(c) if the total value of the Participant's Accounts is $1,000 or less).

WFC002651

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to First Illini Bancorp, Inc.**

Effective as of January 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Illini Bancorp, Inc. and its subsidiaries (herein called "FIB") is modified as follows:

If immediately after 11:59 p.m. on December 31, 1990, an individual was an employee of FIB which became a Participating Employer in this Plan on May 1, 1990, the individual's continuous service with FIB prior to 11:59 p.m. on December 31, 1990, shall be treated as if it were service for a Participating Employer in determining the individual's Hours of Service for purposes of this Plan.

January 1, 1992 shall be an Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan. An individual who becomes a Participant on that date may elect to begin making Salary Deferral Contributions, as of that date.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the FIB 401K Plan (formerly First Illini Bancorp 401(k) Savings Plan) into this Plan effective January 1, 1992. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under Sec. 10.1(a) of the FIB 401K Plan for distribution of the benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002652

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to First Minnesota Savings Bank, F.S.B.

Effective as of January 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Minnesota Savings Bank, F.S.B. (hereinafter called "First Minnesota"), is modified as follows:

If immediately after 11:59 p.m. on December 14, 1990, an individual was an employee of a Participating Employer, the individual's continuous service with First Minnesota prior to 11:59 p.m. on December 14, 1990, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

January 1, 1991 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

WFC002653

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to United Banks of Colorado, Inc.
and Subsidiaries**

Effective as of January 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by United Banks of Colorado, Inc. and its subsidiaries (herein collectively called "UBC") is modified as follows:

If immediately after 11:59 p.m. on April 19, 1991, an individual was an employee of Norwest Corporation that succeeded to the operations of UBC, the individual's continuous service with UBC prior to 11:59 p.m. on April 19, 1991 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan, to the extent that such service was recognized for purposes of eligibility and vesting under the terms of the Profit Sharing Thrift Plan of United Banks of Colorado, Inc. in effect on April 19, 1991.

May 1, 1992 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan. An individual who becomes a Participant on that date may elect to begin making Salary Deferral Contributions, as of that date.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the UBC 401K Plan (formerly Profit Sharing Plan of United Banks of Colorado, Inc.) into this Plan effective July 1, 1992. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under Sec. 10.1(a) for distribution of the benefits from any such transferred Account (subject, however, to Sec. 10.1(c) if the total value of the Participant's Accounts is $1,000 or less).

WFC002654

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to ANK Agency, Inc.

Effective January 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Abrahamson-Nault-Kreager-Oas Agency, inc. (hereinafter called "ANK"), is modified as follows:

If immediately after 11:59 p.m. on September 29, 1990, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of ANK, the individual's continuous service with ANK prior to 11:59 p.m. on September 28, 1990 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

January 1, 1991 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

WFC002655

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to American Land Title Co. Inc.

Effective January 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by American Land Title Co. Inc. (hereinafter called "ALT"), is modified as follows:

If immediately after 11:59 p.m. on November 16, 1990, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that purchased the assets of ALT, the individual's continuous service with ALT prior to 11:59 p.m. on November 16, 1990 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

January 1, 1991 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

WFC002656

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to First National Bank in Anoka
and Chalfen Bankshares, Inc.**

Effective as of April 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First National Bank in Anoka and Chalfen Bankshares, Inc. (hereinafter collectively called "First Anoka"), is modified as follows:

If an individual was an employee of Chalfen Bankshares, Inc. immediately prior to 11:59 p.m. on February 1, 1991 or was an employee of First National Bank in Anoka immediately prior to 11:59 p.m. on March 14, 1991, and was an employee of First National Bank in Anoka or a Participating Employer immediately after 11:59 p.m. on the applicable date shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1991 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

A-25

WFC002657

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Yankton Savings and Loan Association

Effective as of April 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Yankton Savings and Loan Association is modified as follows:

If immediately after 11:59 p.m. on February 13, 1991, an individual became an employee of Norwest Bank South Dakota, N.A. as a result of its succession to the operations of Yankton Savings and Loan Association, the individual's continuous service with Yankton Savings and Loan Association prior to 11:59 p.m. on February 13, 1991 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1991 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Yankton Savings and Loan Association Profit Sharing Plan ("Yankton Plan") into this Plan effective May 1, 1991. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant or Beneficiary may elect any method of payment permitted under the Yankton Plan in effect on April 30, 1991 for distribution of the benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) if the total value of the Participant's Accounts is $1,000 or less).

WFC002658

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Wyoming National Bancorporation
and Subsidiaries**

Effective as of April 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Wyoming National Bancorporation or its subsidiaries (herein collectively called "WNB") is modified as follows:

If immediately after 11:59 p.m. on January 28, 1991, an individual became an employee of a subsidiary of Norwest Corporation as a result of its succession to the operations of WNB, the individual's continuous service with WNB prior to 11:59 p.m. on January 28, 1991 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1991 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the WNB 401K Plan (formerly Profit Sharing Retirement Plan for Employees of the Affiliated Bancorporation of Wyoming and of its Subsidiary Banks) into this Plan effective July 1, 1992. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under Sec. 10.1(a) for distribution of the benefits from any such transferred Account (subject, however, to Sec. 10.1(c) if the total value of the Participant's Accounts is $1,000 or less).

WFC002659

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Norwest Mortgage, Inc.

       Effective as of April 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Norwest Mortgage, Inc. and subject to Sec. 13.2(c) of this Plan is modified as follows:

       One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Norwest Mortgage, Inc. Thrift and Profit Sharing Plan into this Plan effective October 1, 1991. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under Sec. 10.1(a) of the Norwest Mortgage, Inc. Thrift and Profit Sharing Plan as it existed on September 30, 1991 for distribution of the benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002660

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Peoples Bank and Trust Company of Waterloo

Effective as of July 1, 1991, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Peoples Bank and Trust Company of Waterloo (herein called "Peoples") is modified as follows:

If immediately after 11:59 p.m. on January 19, 1992, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of Peoples, the individual's continuous service with Peoples prior to 11:59 p.m. on January 29, 1991, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

July 1, 1991 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Peoples Bank and Trust Company 401K Plan ("Peoples Bank Plan") into this Plan effective January 1, 1992. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under the Peoples Bank Plan in effect on December 31, 1991 for distribution of the benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) if the total value of the Participant's Accounts is $1,000 or less).

WFC002661

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to MIG Insurance Brokers, Inc.**

Effective as of January 1, 1992, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by MIG Insurance Brokers, Inc. is modified as follows:

If immediately after 11:59 p.m. on November 27, 1991, an individual became an employee of Norwest Corporation as a result of its succession to the operations of MIG Insurance Brokers, Inc., the individual's continuous service with MIG Insurance Brokers, Inc. prior to 11:59 p.m. on November 27, 1991, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

January 1, 1992 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the MIG Insurance Brokers, Inc. 401K Plan ("MIG Plan") into this Plan effective April 1, 1992. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under Sec. 7.2 of the MIG Plan as it existed on March 31, 1992 for distribution of the benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-30

WFC002662

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Davenport Bank and Trust Company

Effective as of February 1, 1992, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Davenport Bank and Trust Company is modified as follows:

If immediately after 11:59 p.m. on January 19, 1992, an individual was an employee of the subsidiary of Norwest Corporation that succeeded to the operations of Davenport Bank and Trust Company, the individual's continuous service with Davenport Bank and Trust Company prior to 11:59 p.m. on January 19, 1992, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

February 1, 1992 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Davenport Bank and Trust Investment Savings Plan ("Davenport Plan") into this Plan effective July 1, 1992. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under Article VI of the Davenport Plan as it existed on June 30, 1992 for distribution of the benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002663

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Community Bank of Nebraska

Effective April 1, 1992, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Community Bank of Nebraska (hereinafter called "Community Bank"), is modified as follows:

If immediately after 11:59 p.m. on February 29, 1992, an individual was an employee of a subsidiary of Norwest Corporation that purchased the assets of Community Bank, the individual's continuous service with Community Bank prior to 11:59 p.m. on February 29, 1992 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1992 shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

WFC002664

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to U.S. Recognition, Inc.

Effective July 1, 1992, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by U.S. Recognition, Inc. ("USR") is modified as follows:

If immediately after 11:59 p.m. on April 30, 1992, an individual was an employee of Norwest Mortgage, Inc., the individual's continuous service with USR prior to 11:59 p.m. on April 30, 1992 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan.

July 1, 1992 shall be an Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan. An individual who becomes a Participant on that date may elect to begin making Salary Deferral Contributions, as of that date.

If a Participant was employed by U.S. Recognition, Inc. at 12:01 a.m. on November 1, 1996, the Participant's Vested Percentage under Sec. 9.1(a) shall be 100%. Each Participant described in this paragraph shall be eligible to receive a distribution of his or her Accounts pursuant to Code section 401(k)(10).

A-33

WFC002665

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Vistar Bank

Effective January 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Vistar Bank (hereinafter called "Vistar"), is modified as follows:

If immediately after 11:59 p.m. on October 2, 1992, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of Vistar, the individual's continuous service with Vistar prior to 11:59 p.m. on October 2, 1992 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1993 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

If any individual who was an employee of Vistar immediately prior to 11:59 p.m. on October 2, 1992 and who, on October 3, 1992 became an employee of Norwest Mortgage, Inc., a Participating Employer in the Plan, the individual's continuous service with Vistar prior to 11:59 p.m. on October 2, 1992 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. October 3, 1993 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Vistar Bank 401(k) Plan ("Vistar Plan") into this Plan effective January 1, 1993. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of account under this Plan, except that (i) the Participant shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant or Beneficiary may elect any method of payment permitted under the Vistar Plan in effect on December 31, 1992 for distribution of the benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's account is $1,000 or less).

A-34

WFC002666

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Merchants and Miners State Bank of Hibbing

Effective February 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Merchants and Miners State Bank of Hibbing (hereinafter called "M and M Bank"), is modified as follows:

If immediately after 11:59 p.m. on February 1, 1993, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of M and M Bank, the individual's continuous service with M and M Bank prior to 11:59 p.m. on February 1, 1993 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

February 1, 1993 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Merchant's and Miners State Bank 401K Retirement Plan ("M and M Bank Plan") into this Plan effective February 1, 1993. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the M and M Bank Plan in effect on January 31, 1993 for the distribution of benefits from any such Frozen Transferred Account (subject however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002667

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Bank of Aspen

Effective as of April 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Bank of Aspen (hereinafter called "Aspen") is modified as follows:

If immediately after 11:59 p.m. on January 8, 1993, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of Aspen, the individual's continuous service with Aspen prior to 11:59 p.m. on January 8, 1993 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1993 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Bank of Aspen Employees Retirement Savings Plan ("Bank of Aspen Plan") into this Plan effective April 1, 1993. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such Frozen Transferred Account.

WFC002668

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Boris Systems, Inc.

Effective as of April 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Boris Systems, Inc. (hereinafter called "Boris") is modified, as follows:

If immediately after 11:59 p.m. on February 1, 1993, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of Boris, the individual's continuous service with Boris prior to 12:01 a.m. on February 1, 1993 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1993 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

If a Participant was employed by Boris Systems, Inc. at 12:01 a.m. on October 1, 1996, or if the Participant's employment with a Participating Employer terminated on that date as the result of the sale of certain stock and assets to Moore Business Forms, Inc. pursuant to the Purchase Agreement dated September 27, 1996, the Participant's Vested Percentage under Sec. 9.1(a) shall be 100%. Each Participant described in this paragraph shall be eligible to receive a distribution of his or her Accounts pursuant to Code section 401(k)(10).

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Boris System, Inc. Employees 401(k) Plan ("Boris Plan") into this Plan effective April 1, 1993. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Boris Plan in effect on March 31, 1993 for the distribution of benefits from any such Frozen Transferred Account (subject however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-37

WFC002669

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to University Bank

Effective as of April 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by University Bank (hereinafter called "University Bank") is modified, as follows:

If immediately after 12:01 a.m. on April 1, 1993, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of University Bank, the individual's continuous service with University Bank prior to 12:01 a.m. on April 1, 1993 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1993 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the University Bank 401K Profit Sharing Plan ("University Bank Plan") into this Plan effective April 1, 1993. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the University Bank Plan in effect on March 31, 1993 for the distribution of benefits from any such Frozen Transferred Account (subject however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002670

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Lincoln Financial Corporation

Effective as of April 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Lincoln Financial Corporation (hereinafter called "LFC") is modified, as follows:

If immediately after 11:59 p.m. on February 9, 1993, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of LFC, the individual's continuous service with LFC prior to 11:59 p.m. on February 9, 1993 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  April 1, 1993 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

If any individual who was an employee of LFC on August 20, 1992 and February 9, 1993 and who, on or before April 1, 1993 became an employee of Norwest Corporation or any direct or indirect subsidiary of Norwest Corporation (a "Norwest Employee") which was a Participating Employer in the Plan on the date the employee became a Norwest Employee, the individual's continuous service with LFC prior to 11:59 p.m. on February 9, 1993 or the date on which the individual became a Norwest Employee, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. Individuals described in this paragraph shall enter the Plan as a Participant, as of the date which he or she became a Norwest Employee, which date, in any case, shall not be later than April 1, 1993.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Lincoln Financial Corporation Thrift and Profit Sharing Plan ("Lincoln Profit Sharing Plan") into this Plan effective April 1, 1993.  Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Lincoln Profit Sharing Plan in effect on March 31, 1993 for the distribution of benefits from any such Frozen Transferred Account (subject however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002671

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Employees of
### Citibank-Arizona, Citibank Investment Services, Inc.
### and Citibank Investment Services, Inc.-Minnesota

Effective September 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Citibank-Arizona, Citibank Investment Services, Inc. or Citibank Investment Services, Inc.-Minnesota is modified as follows:

If on and after September 1, 1993, an individual was an employee of a subsidiary of Norwest Corporation that purchased certain assets of Citibank-Arizona, the individual's continuous service with Citibank-Arizona prior to September 1, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

If on and after July 10, 1993, an individual was an employee of a subsidiary of Norwest Corporation that purchased certain assets of Citibank Investment Services or Citibank Investment Services, Inc.-Minnesota, the individual's continuous service with those entities prior to July 10, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

September 1, 1993, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-40

WFC002672

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Employees of
### First State Bank of Spring Lake Park

Effective October 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First State Bank of Spring Lake Park (hereinafter called "Spring Lake Park") is modified as follows:

If immediately after 12:01 a.m. on October 1, 1993, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of First State Bank of Spring Lake Park, the individual's continuous service with Spring Lake Park prior to 12:01 a.m. on October 1, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

October 1, 1993, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-41

WFC002673

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to
Employees of First Nationwide Bank and Columbia Investment Services, Inc.**

Effective October 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Nationwide Bank and Columbia Investment Services, Inc. (herein, collectively," First Nationwide/Columbia") is modified as follows:

If immediately after 11:59 p.m. on September 10, 1993, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that purchased certain assets of First Nationwide/Columbia, the individual's continuous service with First Nationwide/Columbia prior to 11:59 p.m. on September 10, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

October 1, 1993, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-42

WFC002674

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to**
**Employees of FirstAmerican Bank, N.A.**

Effective November 1, 1993, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by FirstAmerican Bank, N.A. (herein called "FirstAmerican") is modified as follows:

If immediately after 11:59 p.m. on October 29, 1993, an individual was an employee of FirstAmerican, the individual's continuous service with FirstAmerican prior to 11:59 p.m. on October 29, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

November 1, 1993, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002675

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to
### Employees of Ralston Bank

Effective January 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Ralston Bank is modified as follows:

If immediately after 11:59 p.m. on October 7, 1993, an individual was an employee of Ralston Bank, the individual's continuous service with Ralston Bank prior to 11:59 p.m. on October 7, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

January 1, 1994, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Ralston National Bank 401(k) Profit Sharing Plan ("Ralston Bank Plan") into this Plan effective January 1, 1994. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Ralston Bank Plan in effect on December 31, 1993 for the distribution of benefits from any such Frozen Transferred Account (subject however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-44

WFC002676

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to
### Employees of Farmers State Bank

Effective January 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Farmers State Bank is modified as follows:

If immediately after 11:59 p.m. on December 10, 1993, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of Farmers State Bank, the individual's continuous service with Farmers State Bank prior to 11:59 p.m. on December 10, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

January 1, 1994, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Farmers State Bank Employee Profit Sharing Plan ("Farmers Bank Plan") into this Plan effective January 1, 1994. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Farmers Bank Plan in effect on December 31, 1993 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-45

WFC002677

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Employees of
### St. Cloud National Bank and Trust Company and
### St. Cloud Metropolitan Agency, Inc.

Effective January 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by St. Cloud National Bank and Trust Company (herein, "St. Cloud Bank") and St. Cloud Metropolitan Agency, Inc. (herein, "St. Cloud Agency") is modified as follows:

If immediately after 12:01 a.m. on January 1, 1994, an individual was an employee of St. Cloud Bank, the individual's continuous service with St. Cloud Bank prior to 12:01 a.m. on January 1, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1994, shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

If immediately after 12:01 a.m. on January 3, 1994, an individual was an employee of St. Cloud Agency, the individual's continuous service with St. Cloud Agency prior to 12:01 a.m. on January 3, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1994, shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A-46

WFC002678

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to
Employees of Forest Lake State Bank**

Effective March 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Forest Lake State Bank (herein, "Forest Lake") is modified as follows:

If immediately after 11:59 p.m. on February 2, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Forest Lake, the individual's continuous service with Forest Lake prior to 11:59 p.m. on February 2, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

March 1, 1994, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002679

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Employees of
First National Bank of Arapahoe County,
First National Bank of Lakewood, and
First National Bank of Southeast Denver**


Effective March 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First National Bank of Arapahoe County, First National Bank of Lakewood, and First National Bank of Southeast Denver (herein, collectively, "First National Banks") is modified as follows:

If immediately after 11:59 p.m. on February 2, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of First National Banks, the individual's continuous service with First National Banks prior to 11:59 p.m. on February 2, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

March 1, 1994, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the First National Bank of Southeast Denver Employee Profit Sharing Plan ("First National Profit Sharing Plan") into this Plan effective April 1, 1994. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the First National Profit Sharing Plan in effect on March 31, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-48

WFC002680

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Employees of
### United New Mexico Financial Corporation and Subsidiaries

Effective April 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by United New Mexico Financial Corporation and its Subsidiaries (herein, collectively, "United New Mexico") is modified as follows:

If immediately after 11:59 p.m. on January 14, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of United New Mexico, the individual's continuous service with United New Mexico prior to 11:59 p.m. on January 14, 1994, shall be treated as if it were service for a Participating Employer, to the extent so treated under the terms of the United New Mexico Financial Corporation Thrift Plan, in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1994, shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

If any individual who was an employee of United New Mexico immediately prior to 11:59 p.m. on January 14, 1994, and who, on or after January 15, 1994 but prior to April 1, 1994 became an employee of Norwest Mortgage, Inc., or Norwest Investment Services, Inc., Participating Employers in the Plan, the individual's continuous service with United New Mexico prior to 11:59 p.m. on January 14, 1994 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 15, 1994 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the United New Mexico Financial Corporation 401(k) Plan ("United Plan") into this Plan effective April 1, 1994. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the United Plan in effect on March 31, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002681

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Employees of
Ford Bank Group, Inc. and Subsidiaries**

Effective April 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Ford Bank Group, Inc. and its Subsidiaries (herein, collectively, "Ford Bank Group") is modified as follows:

If immediately after 11:59 p.m. on January 14, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Ford Bank Group, the individual's continuous service with Ford Bank Group prior to 11:59 p.m. on January 14, 1994, shall be treated as if it were service for a Participating Employer, to the extent so treated under the terms of the Ford Bank Group, Inc. Savings Plan, in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

April 1, 1994, shall be the first Entry Date on which an individual described in the previous paragraph may become a Participant in this Plan.

If any individual who was an employee of Ford Bank Group immediately prior to 11:59 p.m. on January 14, 1994, and who, on or after January 15, 1994 but prior to April 1, 1994 became an employee of Norwest Mortgage, Inc., or Norwest Investment Services, Inc., Participating Employers in the Plan, the individual's continuous service with Ford Bank Group prior to 11:59 p.m. on January 14, 1994 shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 15, 1994 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Ford Bank Group, Inc. Savings Plan ("Ford Bank Plan") into this Plan effective May 1, 1995. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002682

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to
United Title Agency of Arizona, Inc.**

Effective May 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by United Title Agency of Arizona, Inc. (hereinafter called "United Title") is modified as follows:

If immediately after 11:59 p.m. on April 29, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of United Title, the individual's continuous service with United Title prior to 11:59 p.m. on April 29, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. May 1, 1994, shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

If any individual who was an employee of United Title immediately prior to 11:59 p.m. on December 15, 1993, and who, prior to April 29, 1994 became an employee of Norwest Mortgage, Inc., a Participating Employer in the Plan, the individual's continuous service with United Title prior to 11:59 p.m. on December 15, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1994 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the US Life Title Company of Arizona Employees' Savings Plan ("United Title Plan") into this Plan effective July 1, 1994. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the United Title Plan in effect on June 30, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan).

WFC002683

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to**
**First National Bank of Detroit Lakes**

Effective June 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First National Bank of Detroit Lakes (hereinafter called "First National") is modified as follows:

If immediately after 11:59 p.m. on April 28, 1994, an individual was an employee of a subsidiary of Norwest Corporation that succeeded to the operations of First National, the individual's continuous service with First National prior to 11:59 p.m. on April 28, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. June 1, 1994, shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the First National Bank of Detroit Lakes and Family Partners Limited Employees' 401(k) Plan ("First National Bank Plan") into this Plan effective July 1, 1994. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the First National Bank Plan in effect on June 30, 1994 for the distribution of benefits from any such frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-52

WFC002684

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to
### Bank of Montana System and Subsidiaries

Effective July 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Bank of Montana System and Subsidiaries (hereinafter called "BMS") is modified as follows:

If immediately after 11:59 p.m. on April 15, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of BMS, the individual's continuous service with BMS prior to 11:59 p.m. on April 15, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1994, shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

If any individual who was an employee of BMS immediately prior to 11:59 p.m. on July 29, 1993 and who, prior to April 15, 1994 became an employee of a direct or indirect subsidiary of Norwest Corporation which was a Participating Employer in the Plan, the individual's continuous service with BMS prior to 11:59 p.m. on July 29, 1993, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1994 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Bank of Montana System Cash or Deferred Profit Sharing Plan ("Bank of Montana Plan") into this Plan effective July 1, 1994. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Bank of Montana Plan in effect on June 30, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participants Accounts is $1,000 or less).

WFC002685

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to
First Nationwide Bank, a Federal Savings Bank**


Effective July 1, 1994, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Nationwide Bank, a Federal Savings Bank (hereinafter called "First Nationwide") is modified as follows:

If immediately after 11:59 p.m. on May 13, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that acquired certain assets of First Nationwide, the individual's continuous service with First Nationwide prior to 11:59 p.m. on May 13, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1994, shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002686

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to La Porte Bank And Trust Company

Effective January 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by LaPorte Bank and Trust Company (hereinafter called "LaPorte") is modified as follows:

If immediately after 11:59 p.m. on September 15, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of LaPorte, the individual's continuous service with LaPorte prior to 11:59 p.m. on September 15, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the LaPorte Bank and Trust Company 401(k) Profit Sharing Plan ("LaPorte Bank Plan") into this Plan effective January 1, 1995. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the LaPorte Bank Plan in effect on December 31, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002687

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to The American National Bank of Silver City

Effective January 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by The American National Bank of Silver City (hereinafter called "Silver City") is modified as follows:

If immediately after 11:59 p.m. on October 3, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Silver City, the individual's continuous service with Silver City prior to 11:59 p.m. on October 3, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the American National Bank of Silver City 401(k) Plan ("American Bank Plan") into this Plan effective January 1, 1995. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the American Bank Plan in effect on December 31, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002688

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Bank of Scottsdale

Effective January 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Bank of Scottsdale (hereinafter called "Scottsdale") is modified as follows:

If immediately after 11:59 p.m. on October 21, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Scottsdale, the individual's continuous service with Scottsdale prior to 11:59 p.m. on October 21, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Bank of Scottsdale 401(k) Profit Sharing Plan ("Scottsdale Plan") into this Plan effective January 1, 1995. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Scottsdale Plan in effect on December 31, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002689

# NORWEST CORPORATION SAVINGS-INVESTMENT PLAN

## Appendix Applicable to First National Bank of Kerrville

Effective January 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First National Bank of Kerrville (hereinafter called "Kerrville") is modified as follows:

If immediately after 11:59 p.m. on December 9, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Kerrville, the individual's continuous service with Kerrville prior to 11:59 p.m. on December 9, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the First National Bank of Kerrville 401(k) Plan ("Kerrville Bank Plan") into this Plan effective January 1, 1995.  Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Kerrville Bank Plan in effect on December 31, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002690

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Texas National Bank of Midland

Effective January 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Texas National Bank of Midland (hereinafter called "Texas National") is modified as follows:

If immediately after 11:59 p.m. on December 2, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Texas National, the individual's continuous service with Texas National prior to 11:59 p.m. on December 2, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Texas National Bank of Midland 401(k) Plan ("Texas National Plan") into this Plan effective January 1, 1995. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Texas National Plan in effect on December 31, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002691

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Community State Bank

Effective January 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Community State Bank (hereinafter called "Community") is modified as follows:

If immediately after 11:59 p.m. on December 9, 1994, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Community, the individual's continuous service with Community prior to 11:59 p.m. on December 9, 1994, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Community State Bank Profit Sharing Plan ("Community Bank Plan") into this Plan effective January 1, 1995. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Community Bank Plan in effect on December 31, 1994 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002692

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to
### American Republic BancShares, Inc. and Subsidiaries

Effective February 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by American Republic BancShares, Inc. and its Subsidiaries (hereinafter called "ARBI") is modified as follows:

If immediately after 11:59 p.m. on January 6, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of ARBI, the individual's continuous service with Community prior to 11:59 p.m. on January 6, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. February 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the American Republic BancShares, Inc. Profit Sharing 401(k) Plan into this Plan effective February 1, 1995. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

WFC002693

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Caliber Bank

Effective April 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Caliber Bank (hereinafter called "Caliber") is modified as follows:

If immediately after 11:59 p.m. on February 12, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Caliber, the individual's continuous service with Caliber prior to 11:59 p.m. on February 12, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Caliber Bank 401(k) Savings Plan into this Plan effective April 1, 1995. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002694

## WELLS FARGO & COMPANY 401(k) PLAN

**Appendix Applicable to
Directors Mortgage Loan Corporation,
Directors Insurance Company,
and Stan-Shaw Corporation**

Effective April 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Directors Mortgage Loan Corporation, Directors Insurance Company, and Stan-Shaw Corporation (hereinafter, collectively, "Directors") is modified as follows:

If immediately after 11:59 p.m. on March 13, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Directors, the individual's continuous service with Directors prior to 11:59 p.m. on March 13, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Directors Mortgage Loan Corporation 401(k) Salary Savings Plan into this Plan effective April 1, 1995. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

A-63

WFC002695

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to
### BarclaysAmerican/Mortgage Corporation

Effective April 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by BarclaysAmerican/Mortgage Corporation. (hereinafter called "Barclays") is modified as follows:

If immediately after 11:59 p.m. on March 13, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that purchased certain assets of Barclays, the individual's continuous service with Barclays prior to 11:59 p.m. on March 31, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

WFC002696

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Fridley State Bank

Effective May 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Fridley State Bank (hereinafter called "Fridley") is modified as follows:

If immediately after 12:01 a.m. on April 1, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Fridley, the individual's continuous service with Fridley prior to 12:01 a.m. on April 1, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

WFC002697

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Goldenbanks of Colorado, Inc.

Effective July 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Goldenbanks of Colorado, Inc. or its subsidiaries (hereinafter called "Goldenbanks") is modified as follows:

If immediately after 11:59 p.m. on May 1, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Goldenbanks, the individual's continuous service with Goldenbanks prior to 11:59 p.m. on May 1, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Goldenbanks of Colorado, Inc. 401(k) Savings Plan ("Goldenbanks Plan") into this Plan effective July 1, 1995. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Goldenbanks Plan in effect on June 30, 1995 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-66

WFC002698

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to New Braunfels Bancshares, Inc.**

Effective July 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by New Braunfels Bancshares, Inc. or its subsidiaries (hereinafter called "New Braunfels") is modified as follows:

If immediately after 11:59 p.m. on May 10, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of New Braunfels, the individual's continuous service with New Braunfels prior to 11:59 p.m. on May 10, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  July 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the New Braunfels Bancshares, Inc. Employee Stock Ownership Plan into this Plan effective July 1, 1995.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002699

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to
Ryland Mortgage Company - Institutional Financial Services**

Effective July 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Ryland Mortgage Company - Institutional Financial Services (hereinafter called "Ryland") is modified as follows:

If immediately after 11:59 p.m. on June 30, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Ryland, the individual's continuous service with Ryland prior to 11:59 p.m. on June 30, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

WFC002700

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to First National Bank of Tulia**


Effective July 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First National Bank of Tulia (hereinafter called "Tulia") is modified as follows:

If immediately after 12:01 a.m. on June 1, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Tulia, the individual's continuous service with Tulia prior to 12:01 a.m. on June 1, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

WFC002701

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to**
**First American National Bank (Chandler, Arizona)**

Effective August 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First American National Bank (hereinafter called "First American") is modified as follows:

If immediately after 12:01 a.m. on June 1, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of First American, the individual's continuous service with First American prior to 12:01 a.m. on June 1, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the First American National Bank 401(k) Plan ("First American Plan") into this Plan effective August 1, 1995. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the First American Plan in effect on July 31, 1995 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002702

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Comfort State Bank

Effective September 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Comfort State Bank (hereinafter called "Comfort") is modified as follows:

If immediately after 11:59 p.m. on July 10, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Comfort, the individual's continuous service with Comfort prior to 11:59 p.m. on July 10, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. September 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

WFC002703

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Liberty Bank And Trust, N.A. (Dickinson, N.D.)

Effective September 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Liberty Bank and Trust, N.A. (hereinafter called "Liberty Bank") is modified as follows:

If immediately after 11:59 p.m. on August 8, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Liberty Bank, the individual's continuous service with Liberty Bank prior to 11:59 p.m. on August 8, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. September 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Liberty Bank and Trust Profit Sharing Plan ("Liberty Bank Plan") into this Plan effective September 1, 1995. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Liberty Bank Plan in effect on August 31, 1995 for the distribution of benefits for any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-72

WFC002704

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Beacon Business Credit, Inc.

Effective December 1, 1995, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Beacon Business Credit, Inc. (hereinafter called "Beacon") is modified as follows:

If immediately after 11:59 p.m. on November 30, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Beacon, the individual's continuous service with Beacon prior to 11:59 p.m. on November 30, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. December 1, 1995 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

WFC002705

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to State National Bank (El Paso, Texas)**

Effective January 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by State National Bank of El Paso, Texas (hereinafter called "SNB") is modified as follows:

If immediately after 11:59 p.m. on October 2, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of SNB, the individual's continuous service with SNB prior to 11:59 p.m. on October 2, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

If any individual was an employee of SNB on May 16, 1995 and, prior to January 1, 1996, became an employee of Norwest Corporation or any direct or indirect subsidiary of Norwest Corporation (a "Norwest Employee") which was a Participating Employer in the Plan on the date the employee became a Norwest Employee, the individual's continuous service with SNB prior to 11:59 p.m. on October 2, 1995 or the date on which the individual became a Norwest Employee, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  Individuals described in this paragraph shall enter the Plan as a Participant, as of the date which he or she became a Norwest Employee, which date, in any case, shall not be later than January 1, 1996.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the State National Bank 401(k) Plan into this Plan effective January 1, 1996.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002706

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to The Foothill Group, Inc.**

Effective January 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by The Foothill Group, Inc. (hereinafter called "Foothill") is modified as follows:

If immediately after 11:59 p.m. on October 19, 1995, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Foothill, the individual's continuous service with Foothill prior to 11:59 p.m. on October 19, 1995, shall be treated as if it were service for a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Foothill Group, Inc. 401(k) Plan into this Plan effective April 1, 1996. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002707

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to American Federal Savings Bank

Effective February 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by American Federal Savings Bank or its subsidiaries (hereinafter called "AMFED") is modified as follows:

If immediately after 11:59 p.m. on January 18, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of AMFED, the individual's continuous service with AMFED prior to 11:59 p.m. on January 18, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. February 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

If any individual who was an employee of AMFED on July 21, 1995 and who prior to February 1, 1996, became an employee of Norwest Corporation or any direct or indirect subsidiary of Norwest Corporation (a "Norwest Employee") which was a Participating Employer in the Plan on the date the employee became a Norwest Employee, the individual's continuous service with AMFED prior to 11:59 p.m. on January 18, 1996 or the date on which the individual became a Norwest Employee, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. Individuals described in this paragraph shall enter the Plan as a Participant, as of the date which he or she became a Norwest Employee, which date, in any case, shall not be later than the February 1, 1996.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the American Federal Savings Bank Employee Stock Ownership Plan ("American Bank Plan") into this Plan effective February 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the American Bank Plan in effect on January 31, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Home Federal Savings Bank Employee Savings Plan ("Home Federal Plan") into this Plan effective March 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Home Federal Plan in effect on February 28, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the First Western Savings Bank 401(k) Plan into this Plan effective June 1, 1996. Each such transferred Account shall be treated as though

WFC002708

it were the corresponding type of Account under this Plan, except that the Participant or Beneficiary shall always be 100% vested in any such transferred Account.

WFC002709

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to The Bank Of Robstown (TX)

Effective February 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by The Bank of Robstown (hereinafter called "Robstown") is modified as follows:

If immediately after 12:01 a.m. on January 12, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Robstown, the individual's continuous service with Beacon prior to 12:01 a.m. on January 12, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. February 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of The Bank of Robstown Profit Sharing Plan ("Robstown Plan") into this Plan effective February 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the portion of the Frozen Transferred Account comprised of employer profit sharing contributions shall be subject to the vesting schedule in Sec. 9.2(a) and (c) of this Plan, (ii) the portion of the Frozen Transferred Account comprised of employer matching contributions shall be 100% vested, and (iii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Robstown Plan in effect on January 31, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002710

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Canton State Bank (IL)

Effective March 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Canton State Bank (hereinafter called "Canton") is modified as follows:

If immediately after 11:59 p.m. on February 15, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Beacon, the individual's continuous service with Canton prior to 11:59 p.m. on February 15, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. March 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Canton State Bank Profit Sharing Plan ("Canton Bank Plan") into this Plan effective April 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Canton Bank Plan in effect on March 31, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002711

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Farmers State Bank (Irene, S.D.)

Effective March 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Farmers State Bank (hereinafter called "FSB") is modified as follows:

If immediately after 11:59 p.m. on January 31, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of FSB, the individual's continuous service with FSB prior to 11:59 p.m. on January 31, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. March 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

WFC002712

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Henrietta Bancshares, Inc. and Subsidiaries (TX)**

Effective May 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Henrietta Bancshares, Inc. and Subsidiaries. (hereinafter called "Henrietta") is modified as follows:

If immediately after 11:59 p.m. on March 12, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Henrietta, the individual's continuous service with Henrietta prior to 11:59 p.m. on March 12, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. May 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Henrietta Bancshares 401(k) Plan ("Henrietta Plan") into this Plan effective July 1, 1996.  Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Henrietta Plan in effect on June 30, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002713

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Prudential Home Mortgage Corporation

Effective June 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Prudential Home Mortgage Corporation (hereinafter called "Prudential") is modified as follows:

If immediately after 11:59 p.m. on May 7, 1996 an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Prudential, the individual's continuous service with Prudential prior to 11:59 p.m. on May 7, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. June 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan from the Prudential Home Mortgage Corporation 401(k) Plan ("Prudential Plan") effective July 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Prudential Plan in effect on June 30, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002714

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Victoria Bankshares, Inc. and Subsidiaries

Effective July 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Victoria Bankshares, Inc. and its subsidiaries (hereinafter called "Victoria") is modified as follows:

If immediately after 11:59 p.m. on April 12, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Victoria, the individual's continuous service with Victoria prior to 11:59 p.m. on April 12, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

If any individual who was an employee of Victoria on November 21, 1995 and who prior to July 1, 1996, became an employee of Norwest Corporation or any direct or indirect subsidiary of Norwest Corporation (a "Norwest Employee") which was a Participating Employer in the Plan on the date the employee became a Norwest Employee, the individual's continuous service with Victoria prior to 11:59 p.m. on April 12, 1996 or the date on which the individual became a Norwest Employee, shall be treated as if it were service for a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. Individuals described in this paragraph shall enter the Plan as a Participant no earlier than July 1, 1996 due to such individual's continued participation for purposes of profit sharing contributions in the Victoria Bankshares, Inc. 401(k) Savings Plan up to that date.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Victoria Bankshares, Inc. 401(k) Savings Plan ("Victoria Plan") into this Plan effective July 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Victoria Plan in effect on June 30, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002715

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Benson Financial Corporation and Subsidiaries (San Antonio, Texas)**

Effective July 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Benson Financial Corporation and its subsidiaries (hereinafter called "Benson") is modified as follows:

If immediately after 11:59 p.m. on May 31, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Benson, the individual's continuous service with Benson prior to 11:59 p.m. on May 31, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the Benson Financial Corporation Profit Sharing and 401(k) Retirement Savings Plan ("Benson Plan") into this Plan effective July 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the Benson Plan in effect on June 30, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant Accounts is $1,000 or less).

WFC002716

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to AmeriBank (MN)

Effective July 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by AmeriBank is modified as follows:

If immediately after 11:59 p.m. on June 4, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of AmeriBank, the individual's continuous service with AmeriBank prior to 11:59 p.m. on June 4, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant which were transferred to this Plan as a result of the merger of the AmeriBank 401(k) Savings Plan ("AmeriBank Plan") into this Plan effective July 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the AmeriBank Plan in effect on June 30, 1996 for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-85

WFC002717

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Regional Bank of Colorado, N.A.

Effective July 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Regional Bank of Colorado, N.A. (hereinafter called "Regional") is modified as follows:

If immediately after 11:59 p.m. on May 31, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Regional, the individual's continuous service with Regional prior to 11:59 p.m. on May 31, 1996, shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Regional Bank of Colorado, N.A. Profit Sharing Plan into this Plan effective July 1, 1996. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002718

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First State Bank (Bandera, Texas)

Effective August 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First State Bank, Bandera, Texas (hereinafter called "First State") is modified as follows:

If immediately after 12:01 a.m. on July 3, 1996, an individual was an employee of First State, the individual's continuous service with First State prior to July 3, 1996, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 1996 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-87

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to PriMerit Bank, Federal Savings Bank**

Effective August 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by PriMerit Bank, Federal Savings Bank (hereinafter called "PriMerit") is modified as follows:

If immediately after 12:01 a.m. on July 19, 1996, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that purchased the assets of PriMerit, the individual's continuous service with PriMerit, PriMerit Investor Services, BSF Trustee, First Nevada Company, and Home Trustee, Inc. prior to 12;01 a.m. on July 19, 1996 as credited under the Employees' 401(k) Plan of PriMerit Bank, Federal Savings Bank (the "PriMerit Plan") shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  August 1, 1996 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the PriMerit Plan which were transferred to this Plan as a result of the merger of the PriMerit Plan into this Plan effective October 1, 1996.  Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the PriMerit Plan in effect on September 30, 1996, including installment and annuity forms of benefit and withdrawals after age 59½, for the distribution or withdrawal of benefits from any such Frozen Transferred Account (subject however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-88

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Union National Bank of Texas

Effective October 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Union National Bank of Texas (hereinafter called "Union") is modified as follows:

If immediately after 11:59 p.m. on June 27, 1996, an individual was an employee of Union, the individual's continuous service with Union prior to June 28, 1996, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. October 1, 1996 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Union National Bank of Texas Restated Employee Stock Ownership Plan and Trust (the "Union Plan") that were transferred to this Plan as a result of the merger of the Union Plan into this Plan effective as of October 1, 1996. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Union Plan in effect on September 30, 1996, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec.10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002721

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to National Business Finance, Inc.

Effective October 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by National Business Finance, Inc. (hereinafter called "National Business") is modified as follows:

If immediately after September 30, 1996, an individual was an employee of National Business or a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of National Business, October 1, 1996 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.  Service with National Business prior to October 1, 1996, shall not be recognized for purposes of determining the individual's Vesting Service under this Plan.

WFC002722

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to American Bank Moorhead

Effective November 1, 1996, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by American Bank Moorhead (hereinafter called "American") is modified as follows:

If immediately after 12.01 a.m. on October 1, 1996, an individual was an employee of American or a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of American, the individual's continuous service with American prior to October 1 1996, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. November 1, 1996 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002723

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Texas Bancorporation, Inc.

Effective January 1, 1997, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Texas Bancorporation, Inc. and Texas Bank (hereinafter collectively called "Texas") is modified as follows:

If immediately after 12.01 a.m. on November 1, 1996, an individual was an employee of Texas or a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Texas, the individual's continuous service with Texas prior to November 1, 1996, shall be treated as if it were service with a Participating employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1997 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Texas Bank 401(k) Plan (the "Texas Plan") that were transferred to this Plan as a result of the merger of the Texas Plan into this Plan effective as of January 1, 1997. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Texas Plan in effect on December 31, 1996, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

A-92

WFC002724

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Franklin Federal Bankcorp**

Effective January 1, 1997, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Franklin Federal Bankcorp (hereinafter called "Franklin") is modified as follows:

If immediately after 12:01 a.m. on January 1, 1997, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Franklin, the individual's continuous service with Franklin prior to January 1, 1997 shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1997 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002725

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to West Columbia National Bank**

Effective January 1, 1997, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by West Columbia National Bank (hereinafter called "West Columbia") is modified as follows:

If immediately after 12:01 a.m. on December 27, 1996, an individual was an employee of West Columbia or a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of West Columbia, the individual's continuous service with West Columbia prior to December 27, 1996, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1997 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the West Columbia National Bank 401(k) Plan (the "West Columbia Plan") that were transferred to this Plan as a result of the merger of the West Columbia Plan into this Plan effective as of January 1, 1997. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the West Columbia Plan in effect on December 31, 1996, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002726

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Central Bancorporation, Inc.**

Effective April 1, 1997, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Central Bancorporation, Inc. (hereinafter called "Central") is modified as follows:

If immediately after 11:59 p.m. on January 28, 1997, an individual was an employee of Central or a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Central, the individual's continuous service with Central prior to January 29, 1997, as was credited under the Central Bancorporation, Inc. 401(k) Plan (the "Central Plan") shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 1997 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Central Plan that were transferred to this Plan as a result of the merger of the Central Plan into this Plan effective as of April 1, 1997. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002727

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Statewide Mortgage Company

Effective April 1, 1997, the Norwest Corporation Savings Investment Plan, as applicable to persons employed by Statewide Mortgage Company (hereinafter called "Statewide") is modified as follows:

If immediately after 11:59 p.m. on February 26, 1997, an individual was an employee of Statewide, April 1, 1997 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan. Service with Statewide prior to February 27, 1997, shall not be treated as service with a Predecessor Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

WFC002728

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Farmers National Bank of Geneseo

Effective May 1, 1997, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Farmers National Bank of Geneseo (hereinafter called "Farmers") is modified as follows:

If immediately after 11:59 p.m. on March 24, 1997, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Farmers, the individual's continuous service with Farmers prior to March 24, 1997, as was credited under the Farmers National Bank of Geneseo 401(k) Thrift and Savings Plan (the "Farmers Plan") shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. May 1, 1997 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Farmers Plan that were transferred to this Plan as a result of the merger of the Farmers Plan into this Plan effective as of May 1, 1997. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Farmers Plan in effect on April 30, 1997, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002729

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to The First National Bankshares, Inc.

Effective August 1, 1997, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by The First National Bankshares, Inc. (hereinafter called "First National") is modified as follows:

If immediately after 11:59 p.m. on June 17, 1997, an individual was an employee of a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of First National, August 1, 1997 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan. Service with First National prior to June 18, 1997 shall not be treated as service with a Predecessor Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

WFC002730

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to American Bank

Effective December 16, 1997, the Norwest Corporation Savings Investment Plan (the "Plan"), as applicable to persons formerly employed by American Bank (hereinafter called "American") is modified as follows:

If immediately after 12:01 a.m. on December 6, 1997, an individual was an employee of American or a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of American, the individual's continuous service with American prior to December 6, 1997, shall be treated as if it were service with a Participating employer for purposes of Section 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  December 16, 1997 shall be deemed to be an Entry Date for an American Employee and December 16, 1997 shall be the earliest Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002731

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Continental State Bank

Effective January 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Continental State Bank (hereinafter called "Continental") is modified as follows:

If immediately after 11:59 p.m. on November 14, 1997, an individual was an employee of Continental, the individual's continuous service with Continental prior to November 15, 1997, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's Accounts in the Continental State Bank 401(k) Plan (the "Continental Plan") that were transferred to this Plan as a result of the merger of the Continental Plan into this Plan effective as of January 1, 1998. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Continental Plan in effect on December 31, 1997, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002732

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First Valley Bancorporation

Effective January 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Valley Bancorporation (hereinafter called "First") is modified as follows:

If immediately after 11:59 p.m. on December 1, 1997, an individual was an employee of First, the individual's continuous service with First prior to December 2, 1997, shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1998 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the First Valley Bank Group, Inc. Employee Stock Ownership Plan (the "First Plan") that were transferred to this Plan as a result of the merger of the First Plan into this Plan effective as of January 1, 1998. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the First Plan in effect on December 31, 1997, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002733

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Packers Bank**


Effective January 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Packers Bank (hereinafter called "Packers") is modified as follows:

If immediately after 11:59 p.m. on November 25, 1997, an individual was an employee of Packers, or if any employee of Packers was hired directly from Packers during the months of October or November of 1997 in anticipation of the closing date, the individual's continuous service with Packers prior to November 26, 1997, shall be treated as if it were service with a Participating employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1998 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Packers Bank 401(k) Profit Sharing Plan (the "Packers Plan") that were transferred to this Plan as a result of the merger of the Packers Plan into this Plan effective as of January 1, 1998. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Packers Plan in effect on December 31, 1997, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002734

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to International Bancorporation**

Effective January 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by International Bancorporation (hereinafter called "International") is modified as follows:

If immediately after 11:59 p.m. on October 21, 1997, an individual was an employee of International, or if any employee of International was hired directly from International during the month of October of 1997 in anticipation of the closing date, the individual's continuous service with International prior to October 22, 1997, shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1998 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the International Bancorporation 401(k) Plan (the "International Plan") that were transferred to this Plan as a result of the merger of the International Plan into this Plan effective as of January 1, 1998. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the International Plan in effect on December 31, 1997, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002735

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to JLJ Financial Services Corporation**

Effective January 1, 1998, the Norwest Corporation Savings Investment Plan (the "Plan"), as applicable to persons formerly employed by JLJ Financial Services Corporation (hereinafter called "JLJ") is modified as follows:

If immediately after 11:59 p.m. on October 31, 1997, an individual was an employee of JLJ or a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of JLJ, the individual's continuous service with JLJ prior to November 1, 1997, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  January 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-104

WFC002736

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Heritage Trust Company

Effective April 1, 1998, the Norwest Corporation Savings Investment Plan as applicable to persons formerly employed by Heritage Trust Company (hereinafter called "Heritage") is modified as follows:

If immediately after 11:59 p.m. on February 20, 1998, an individual was an employee of Heritage, the individual's continuous service with Heritage prior to February 21, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Heritage Trust and Asset Management, Inc. Profit Sharing Plan (the "Heritage Plan") that were transferred to this Plan as a result of the merger of the Heritage Plan into this Plan effective as of April 1, 1998. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Heritage Plan in effect on March 31, 1998, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts if $1,000 or less).

WFC002737

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Founders Trust Company

Effective April 1, 1998 the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Founders Trust Company (hereinafter called "Founders") is modified as follows:

If immediately after 12:01 a.m. on March 2, 1998 an individual was an employee of Founders, the individual's continuous service with Founders prior to March 2, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 1998 shall be the Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Founders Trust Company 401(k) Plan into this Plan effective April 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-106

WFC002738

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Fidelity Bancshares, Inc.**


Effective April 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Fidelity Bancshares, Inc. or its subsidiaries (hereinafter called "Fidelity") is modified as follows:

If immediately after 11:59 p.m. on January 12, 1998 an individual was an employee of Fidelity, the individual's continuous service with Fidelity prior January 13, 1998 shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 1998 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Fidelity Bank & Trust, N.A. Employees Savings and Profit Sharing Plan into this Plan effective April 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-107

WFC002739

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to WMC Mortgage Company**

Effective May 1, 1998, the Norwest Corporation Savings Investment Plan (the "Plan"), as applicable to persons formerly employed by WMC Mortgage Company (hereinafter called "WMC") is modified as follows:

If immediately after 11:59 p.m. on April 30, 1998 (the "Close Date"), an individual was an employee of WMC, the individual's continuous service with WMC prior to May 1, 1998, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. Employees hired from WMC within 90 days of the Close Date will be eligible to receive prior WMC service credit for purposes of the Plan. May 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002740

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Spring Mountain Escrow Company

Effective June 1, 1998, the Norwest Corporation Saving Investment Plan (the "Plan), as applicable to persons formerly employed by Spring Mountain Escrow Company (hereinafter called "Spring Mountain") is modified as follows:

If immediately after 12:01 a.m. on May 30, 1998, an individual was an employee of Spring Mountain, the individual's continuous service with Spring Mountain prior to May 30, 1998, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. June 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002741

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First Bank Katy, N.A.

Effective July 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Bank Katy, N.A. (hereinafter called "Katy") is modified as follows:

If immediately after 12:01 a.m. on May 22, 1998, an individual was an employee of Katy, the individual's continuous service with Katy prior to May 22, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may because a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the First National Bank of Katy 401(k) Profit Sharing Plan into this Plan effective July 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Transferred Account containing employer contributions.

A-110

WFC002742

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to EMJAY Corporation**

Effective July 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by EMJAY Corporation (hereinafter called "EMJAY") is modified as follows:

If immediately after 11:59 p.m. on June 15, 1998, an individual was an employee of EMJAY, the individual's continuous service with EMJAY prior to June 16, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  July 1, 1998 shall be the first Entry date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the EMJAY Corporation 401(k) Plan (the "EMJAY Plan") that were transferred to this Plan as a result of the merger of the EMJAY Plan into this Plan effective as of July 1, 1998.  Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the EMJAY Plan in effect on June 15, 1998, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).  The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-111

WFC002743

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Maier/Hauswirth Advisors, L.L.C.**

Effective July 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Maier/Hauswirth Investment Advisors (hereinafter called "MHIA") is modified as follows:

If immediately after 12:01 a.m. on June 16, 1998, an individual was an employee of "MHIA", the individual's continuous service with MHIA prior to June 16, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the EMJAY Corporation 401(k) Plan (the "EMJAY Plan") that were transferred to this Plan as a result of the merger of the EMJAY Plan into this Plan effective as of July 1, 1998. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the EMJAY Plan in effect on June 15, 1998, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-112

WFC002744

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First Bank of Grants, N.A.

Effective July 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First National Bank of Grants, N.A. (hereinafter called "Grants") is modified as follows:

If immediately after 12:01 a.m. on May 28, 1998, an individual was an employee of Grants, the individual's continuous service with Grants prior to May 28, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the First Bank of Grants 401(k) Plan (the "Grants Plan") that were transferred to this Plan as a result of the merger of the Grants Plan into this Plan effective as of July 1, 1998. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Grants Plan in effect on June 30, 1998, for the distribution of benefits from any such Frozen Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Account if $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-113

WFC002745

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to The Bank of New Mexico Holding Company and Subsidiaries**

Effective July 2, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by The Bank of New Mexico Holding Company and its Subsidiaries (hereinafter called "NMHC") is modified as follows:

If immediately after 11:59 a.m. on July 2, 1998, an individual was an employee of NMHC, the individual's continuous service with NMHC prior to July 3, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 2, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of The Bank of New Mexico Holding Company 401(k) Plan and Profit Sharing Plan into this Plan effective July 2, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-114

WFC002746

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Charter Bancorporation, Inc. and Subsidiary**

Effective July 2, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Charter Bancorporation, Inc. and its subsidiary (hereinafter called "Charter") is modified as follows:

If immediately after 11:59 a.m. on July 2, 1998, an individual was an employee of Charter, the individual's continuous service with Charter prior to July 3, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 2, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Bankers Consulting Corporation 401(k) Plan and Trust into this Plan effective July 2, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-115

WFC002747

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to MidAmerica Insurance Agency South, Inc.

Effective July 2, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by MidAmerica Insurance Agency South, Inc. and its subsidiary (hereinafter called "MidAmerica") is modified as follows:

If immediately after 11:59 a.m. on July 2, 1998, an individual was an employee of MidAmerica, the individual's continuous service with MidAmerica prior to July 3, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 2, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the MA Holdings, Inc. 401(k) Plan into this Plan effective July 2, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002748

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Minnesota Bancshares, Inc. and Subsidiary

Effective August 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Minnesota Bancshares, Inc. and its subsidiary (hereinafter called "MBI") is modified as follows:

If immediately after 11:59 p.m. on July 2, 1998, an individual was an employee of MBI, the individual's continuous service with MBI prior to July 3, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 2, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the MA Holdings, Inc. 401(k) Plan into this Plan effective July 2, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002749

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First Bancshares of Valley City and Subsidiaries

Effective August 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First Bancshares of Valley City and Subsidiaries (hereinafter called "First") is modified as follows:

If immediately after 11:59 p.m. on July 31, 1998, an individual was an employee of First, the individual's continuous service with First prior to August 1, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 2, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the First National Bank of Valley City Qualified Retirement Plan and Trust into this Plan effective August 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-118

WFC002750

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Bancdata Processing Corporation

Effective August 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Bancdata Processing Corporation (hereinafter called "Bancdata") is modified as follows:

If immediately after 11:59 p.m. on July 23, 1998, an individual was an employee of Bancdata, the individual's continuous service with Bancdata prior to July 24, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 1998 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the MA Holdings, Inc. 401(k) Plan into this Plan effective August 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-119

WFC002751

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to MidAmerica Bancshares, Inc. and Subsidiaries

Effective August 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by MidAmerica Bancshares, Inc. and its subsidiaries (hereinafter called "MidAmerica") is modified as follows:

If immediately after 11:59 p.m. on July 23, 1998, an individual was an employee of MidAmerica, the individual's continuous service with MidAmerica prior to July 24, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 1998 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the MA Holdings, Inc. 401(k) Plan into this Plan effective August 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-120

WFC002752

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Mountain Bancshares, Inc. and Subsidiary

Effective August 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Mountain Bancshares, Inc. and its subsidiary (hereinafter called "Mountain") is modified as follows:

If immediately after 11:59 p.m. on July 23, 1998, an individual was an employee of Mountain, the individual's continuous service with Mountain prior to July 24, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 1998 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the MA Holdings, Inc. 401(k) Plan into this Plan effective August 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002753

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Wisconsin Bancshares, Inc. and Subsidiaries

Effective August 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Wisconsin Bancshares, Inc. and its Subsidiaries (hereinafter called "Wisconsin") is modified as follows:

If immediately after 11:59 p.m. on July 23, 1998, an individual was an employee of Wisconsin, the individual's continuous service with Wisconsin prior to July 24, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 1998 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the MA Holdings, Inc. 401(k) Plan into this Plan effective August 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002754

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First National Bank of Monticello

Effective October 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First National Bank of Monticello (hereinafter called "First National") is modified as follows:

If immediately after 11:59 p.m. on September 8, 1998, an individual was an employee of First National, the individual's continuous service with First National prior to September 9, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. October 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the First National Bank Profit Sharing 401(k) Plan and Trust (the "First National Plan") that were transferred to this Plan as a result of the merger of the First National Plan into this Plan effective as of October 1, 1998. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the First National Plan in effect on September 30, 1998, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts if $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-123

WFC002755

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to First State Bank, Austin, Texas**

Effective October 1, 1998, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First State Bank, Austin, Texas (hereinafter called "FSB") is modified as follows:

If immediately after 11:59 p.m. on August 31, 1998, an individual was an employee of FSB, the individual's continuous service with FSB prior to September 1, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. October 1, 1998 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the First State Bank 401(k) Profit Sharing Plan and Trust (the "FSB Plan") into this Plan effective October 1, 1998. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Accounts containing employer contributions

WFC002756

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Franklin Bancshares Inc.**

Effective January 1, 1999 the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Franklin Bancshares Inc. (hereinafter called "Franklin") is modified as follows:

If immediately after 12:01 a.m. on December 1, 1998, an individual was an employee of Franklin, the individual's continuous service with Franklin prior to December 1, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1999 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the First National Bank Profit Sharing and 401(k) Plan (the "Franklin Plan") that were transferred to this Plan as a result of the merger of the Franklin Plan into this Plan effective as of January 1, 1999. Each such Frozen Transferred Account shall be treated as through it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Franklin Plan in effect on December 31, 1998, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

WFC002757

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First National Bank of Missouri City

Effective January 1, 1999 the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by First National Bank of Missouri City (hereinafter called "Missouri") is modified as follows:

If immediately after 11:59 p.m. on October 30,1998 an individual was an employee of Missouri, the individual's continuous service with Missouri prior to October 31, 1998, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 1999 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the First National Bank of Missouri City Employee Retirement Plan (the "Missouri Plan") that were transferred to this Plan as a result of the merger of the Missouri Plan into this Plan effective as of January 1, 1999. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Missouri Plan in effect on December 31, 1998, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-126

WFC002758

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Community Bank of Parker**


Effective March 1, 1999, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Community Bank of Parker (hereinafter called "Parker") is modified as follows:

If immediately after 11:59 p.m. on February 23, 1999, an individual was an employee of Parker, the individual's continuous service with Parker prior to February 24, 1999, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. March 1, 1999 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Community Bank's 401(k) Plan (the "Parker Plan") that were transferred to this Plan as a result of the merger of the Parker Plan into this Plan effective as March 1, 1999. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Parker Plan in effect on February 28, 1999, for the distribution of benefits for any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-127

WFC002759

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Mercantile Bank

Effective April 1, 1999, the Norwest Corporation Savings Investment Plan, as applicable to persons formerly employed by Mercantile Bank (hereinafter called "Mercantile") is modified as follows:

If immediately after 12:01 a.m. on February 26, 1999, an individual was an employee of Mercantile, the individual's continuous service with Mercantile prior to February 26, 1999, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 1999 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Mercantile Bank National Association Employee's Savings Plan (the "Mercantile Plan") that were transferred to this Plan as a result of the merger of the Mercantile Plan into this Plan effective as of April 1, 1999. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following Participant's death) may elect any method of payment permitted under the provisions of the Mercantile Plan in effect on March 31, 1999, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

WFC002760

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Riverton State Bank

Effective April 1, 1999, the Norwest Corporation Savings Investment Plan (the "Plan"), as applicable to persons formerly employed by Riverton State Bank (hereinafter called "Riverton") is modified as follows:

If immediately after 11:59 p.m. on March 12, 1999, an individual was an employee of Riverton or a direct or indirect subsidiary of Norwest Corporation that succeeded to the operations of Riverton, April 1, 1999 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan. Service with Riverton prior to March 13, 1999, shall not be recognized for purposes of determining the individual's Vesting Service under this Plan.

A-129

WFC002761

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to the Merger of the
Wells Fargo & Company Tax Advantage
and Retirement Plan**

Effective July 1, 1999, the Wells Fargo & Company 401(k) Plan, as applicable to persons who were Participants in the Wells Fargo & Company Tax Advantage and Retirement Plan (hereinafter the "TAP Plan") prior to that date, or persons who were employed prior to that date by a corporation that was an "Employer" participating in the TAP Plan (hereinafter collectively called "Prior Wells Fargo") prior to the effective date of the merger of Norwest Corporation and Wells Fargo & Company (the "Merger Date"), is modified as follows:

Section 1.  **Service Credits for Eligibility and Vesting.**  If an individual is an employee of the Company or another Participating Employer in this Plan on July 1, 1999, the individual's service with Prior Wells Fargo prior to July 1, 1999 shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan, and the individual's Vesting Service for purposes of this Plan including the determination of Vesting Service under Section 3(f)(2) of this Appendix, shall include the "Years of Vesting Service" with Prior Wells Fargo that was credited to the individual under the TAP Plan on June 30, 1999 and all service with the Company or another Participating Employer in this Plan.  July 1, 1999 shall be the first Entry Date on which an individual who is an employee on June 30, 1999 of an Affiliate that is also a Prior Wells Fargo Employer may become a Participant in this Plan.

Section 2.  **Rehired Employees.**  The following rules apply to employees who are rehired after July 1, 1999:

(a)    If an individual who is not described in Section 1 of this Appendix but who was a participant in the TAP Plan prior to July 1, 1999 is rehired as a Qualified Employee after June 30, 1999, the individual shall be deemed to have been a Participant in this Plan for purposes of Sec. 4.1(c)(1).

(b)    If an individual who is not described in Section 1 of this Appendix is rehired by a Participating Employer or an Affiliate after July 1, 1999, the individual's service with Prior Wells Fargo prior to July 1, 1999 shall be included in the individual's Vesting Service for purposes of this Plan.

(c)    Nothing in Section 1 or 2 of this Appendix shall result in duplicate credit being given for any period of service

Section 3.  **Plan Merger and Accounts.**  The TAP Plan is merged into this Plan effective as of July 1, 1999.  If an individual was a participant in the TAP Plan on June 30, 1999, any salary deferral election in effect on that date under the TAP Plan shall continue in effect for the Participant for purposes of this Plan until the Participant files a new election under Sec. 4.3 of this Plan.  In addition, any designation of Beneficiary on file under the TAP Plan shall continue in effect for purposes of this Plan until the Participant files a new election under Sec. 2.4, except as otherwise provided in Sec. 2.4 of this Plan or in Section 4(d) of this Appendix.  As of July 1, 1999, the following Frozen Transferred Accounts shall be

WFC002762

established under Sec. 7.1 to hold any amounts credited to such an Account for the Participant under the TAP Plan on June 30, 1999 and future investment earnings and losses allocable to such amounts:

(a)  Pre-Tax Account.  This Account shall be treated the same as a Before-Tax Account.

(b)  After-Tax Account.  This Account shall be treated the same as an Employee After-Tax Account.

(c)  Rollover Account.  This Account shall be treated the same as a Rollover Account under this Plan.

(d)  Company Match Account.  This Account shall be treated the same as a Discretionary Profit Sharing Account, except that this Account shall be subject to the Participant's investment directions as provided in Sec. 8.4 and Sec. 8.5, and the vested percentage in this Account for purposes of Sec. 9.2 shall be 100%.

(e)  Company Plus Account.  This Account shall be treated the same as a Before-Tax Account, except that no loan under Sec. 9.4 may be made from this Account, and no financial hardship withdrawals under Sec. 10.9 may be made from contributions or earnings credited to this Account after December 31, 1988.

(f)  Retirement Account.  This Account shall be treated the same as an Employer Directable Contribution Account, except as follows:

  (1)  This Account shall be subject to the Participant's investment directions as provided in Sec. 8.4 and Sec. 8.5.

  (2)  No loans under Sec. 9.4 and no in-service withdrawals under Sec. 10.7, Sec. 10.8 or Sec. 10.9 shall ever be made from this Account.

  (3)  Notwithstanding anything in Sec. 9.2 to the contrary, the vested percentage of this Account shall be determined from the following schedule:

| Full Years of Vesting Service | Vested Percentage |
| --- | --- |
| Less than 3 | 0% |
| 3 but less than 4 | 20% |
| 4 but less than 5 | 40% |
| 5 but less than 6 | 60% |
| 6 but less than 7 | 80% |
| 7 or more | 100% |

(g)  Prior Plan Account.  This Account shall be treated the same as an Employer Directable Contribution Account, except that the vested percentage in this Account for purposes of Sec. 9.2 shall be 100%.

Section 10.5(b)(7) shall not apply to any Frozen Transferred Account established under this Section 3, and each such Account shall be treated for purposes of the order of priority in Sec. 10.5(b) as if it was the corresponding type of Account specified in this Section 3, subject to the additional rules specified in this Section 3.  If an individual who forfeited part or all of an account under the TAP Plan prior to July 1, 1999 is rehired by a Participating Employer or an Affiliate on or after that date, any reinstatement of the

A-131

WFC002763

forfeiture shall be determined pursuant to Sec. 9.2(e) and (f) of this Plan, except that any amount reinstated under Sec. 9.2(f) shall be reinstated to the applicable Frozen Transferred Account established under this Appendix.

**Section 4.  Additional Distribution Options and Restrictions.**  In addition to the methods of payment permitted under Sec. 10.1(a) and (b), the following methods are available with respect to any Retirement Account established for a Participant under Section 3 of this Appendix which contains any funds that originated from a predecessor money purchase pension plan in effect prior to 1991 (but only such Account), subject to the restrictions described below:

  (a)  A Participant who is not subject to the mandatory cash-out requirements of Sec. 10.1(c) may elect to receive payment of such Retirement Account under any of the following options:

    (1)  Single Life Annuity.
    (2)  Joint and 50% Survivor Annuity, with the Participant's Spouse as the joint annuitant.

  (b)  If the Participant's Retirement Account has not been distributed or applied to purchase an annuity prior to the Participant's death, and if the Beneficiary is the Participant's surviving Spouse who is not subject to the mandatory cash-out requirements of Sec. 10.1(c), the Spouse may elect to receive the remaining Retirement Account by purchase and distribution of a Single Life Annuity.

  (c)  Except as specifically provided to the contrary above, distributions from Retirement Accounts under this Section 4 shall be subject to all the terms and conditions contained in the provisions of the TAP Plan in effect on June 30, 1999, except as such provisions are modified by changes in the Code, ERISA, applicable regulations, or subsequent amendments of this Appendix. Such terms and conditions include requirements for spousal consents, election periods and methods, descriptions of each type of annuity, and procedures for purchasing annuities.

  (d)  If a married Active Participant who is under age 35 has filed a designation of Beneficiary under Sec. 2.4 (or under the TAP Plan) which does not designate his or her Spouse as the sole primary Beneficiary with respect to his or her Retirement Account, such designation shall expire as of the earlier of January 1 of the calendar year in which the Participant will reach age 35 or the date the Participant's Termination of Employment occurs. The Participant's Beneficiary with respect to the Retirement Account shall thereafter be the Participant's Spouse unless the Participant files a new designation under Sec. 2.4 and the Spouse consents to such designation as provided in that Section. This subsection (d) applies solely to Retirement Accounts which are subject to the requirements of this Section 4, and any designation filed under Sec. 2.4 prior to age 35 shall remain fully effective as to the Participant's other Accounts.

  (e)  Distributions commencing on or after July 1, 2001, from any Accounts established for a Participant under Section 3 of this Appendix, other than Retirement Accounts described in this Section 4, shall be distributed only using the methods of payment permitted under Sec. 10.1 (disregarding Sec. 10.1(m)).

**Section 5.  Loans.**  Any loans to Participants under the TAP Plan outstanding on June 30, 1999 shall continue to be held by this Plan thereafter pursuant to the provisions of the TAP Plan in effect on that date and the original note applicable to the loan. Any loans to Participants from Frozen Transferred

A-132

WFC002764

Accounts on or after July 1, 1999 shall be subject to the provisions of Sec. 9.4 except as specifically modified by Section 3 of this Appendix.

      **Section 6.  Investment of Certain Funds.**  Commencing July 1, 1999, any Frozen Transferred Accounts shall be invested pursuant to Article VIII of this Plan in the investment options under this Plan, subject to the following:

      (a)    Any portion of an Account that was invested in the Real Estate Fund or the Guaranteed Income (GIC) Fund under the TAP Plan shall continue to be held, invested and distributed pursuant to the provisions of the TAP Plan in effect on June 30, 1999.

      (b)    Except as provided in subsection (a), if an investment option that was available prior to July 1, 1999 under the TAP Plan will not be available under this Plan on and after that date, the investment shall be liquidated and reinvested according to the Participant's investment directions under Article VIII, or according to procedures established by the Company for this purpose in the event the Participant fails to provide such directions.

      **Section 7.  Contributions Following Merger of Plans.**    Contributions with respect to service and compensation on or after July 1, 1999 shall be determined solely pursuant to the terms of this Plan.  The provisions of the TAP Plan regarding employer and employee contributions, including but not limited to Sections 5.1, 5.2 and 5.3 of that Plan and the transition contributions under Sec. 5.3(b) of the TAP Plan, shall not apply to such service and compensation, and all contributions under those provisions shall cease as of July 1, 1999.

A-133

WFC002765

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Eastern Heights Bank**


Effective July 1, 1999, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Eastern Heights Bank (hereinafter called "Eastern") is modified as follows:

If immediately after 12:01 a.m. on July 1, 1999, an individual was an employee of Eastern, the individual's continuous service with Eastern or any affiliate of Eastern prior to July 1, 1999, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  July 1, 1999 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the transfer of assets from the 3M Voluntary Investment Plan and Employee Stock Ownership Plan into this Plan effective July 7, 1999.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan except that the Participant or Beneficiary shall always be 100% vested in any such transferred Account or Accounts.

WFC002766

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Century Business Credit Corporation

Effective July 1, 1999, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Century Business Credit Corporation (hereinafter called "Century") is modified as follows:

If immediately after 12:01 a.m. on February 1, 1999, an individual was an employee of Century, the individual's continuous service with Century prior to February 1, 1999, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 1999 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Century Business Credit Corporation 401(k) Plan (the "Century Plan") that were transferred to this Plan as a result of the merger of the Century Plan into this Plan effective as of July 1, 1999. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Century Plan in effect on June 30, 1999, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

WFC002767

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Goodson Insurance Agencies

Effective August 1, 1999, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Goodson Insurance Agencies (hereinafter called "Goodson") is modified as follows:

If immediately after 12:01 a.m. on August 1, 1999, an individual was an employee of Goodson or a direct or indirect subsidiary of Wells Fargo & Company that succeeded to the operations of Goodson, the individual's continuous service with Goodson prior to August 1, 1999, shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 1999 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-136

WFC002768

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Greater Midwest Leasing Company

Effective August 1, 1999, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Greater Midwest Leasing Company (hereinafter called "GMLC") is modified as follows:

If immediately after 11:59 p.m. on June 3, 1999, an individual was an employee of GMLC or a direct or indirect subsidiary of Wells Fargo & Company that succeeded to the operations GMLC, the individual's continuous service with GMLC prior to June 4, 1999, shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 1999 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002769

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Mustang Financial Corporation

Effective September 1, 1999 the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Mustang Financial Corporation (hereinafter called "Mustang") is modified as follows:

If immediately after 12:01 a.m. on June 25, 1999 an individual was an employee of Mustang, the individual's continuous service with Mustang prior to June 25, 1999, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. September 1, 1999 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Mustang Financial Corporation Employee Savings Plan and Trust into this Plan effective September 1, 1999. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002770

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Computer Resources, Inc.

Effective as of September 1, 1999, the Wells Fargo & Company 401(k) Plan, as applicable to persons employed on July 31, 1999, by Computer Resources, Inc., a division of Intuit Corporation (hereinafter called "CRI") is modified as follows:

This Appendix applies only to persons who were employed by CRI on July 31, 1999, and who were employed on August 1, 1999, by a direct or indirect subsidiary of Wells Fargo & Company. Each such person is referred to herein as a "CRI Employee."

A CRI Employee's continuous service with CRI or any Affiliate of CRI prior to August 1, 1999, shall be treated as if it were service for a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. September 1, 1999 shall be the first Entry Date on which a CRI Employee may become a Participant in this Plan.

WFC002771

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Texas Bancshares, Inc.

Effective January 1, 2000, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Texas Bancshares, Inc. (hereinafter called "Texas") is modified as follows:

If immediately after 12:01 a.m. on December 16, 1999, an individual was an employee of Texas, the individual's continuous service with Texas prior to December 16, 1999, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Texas Bancshares, Inc. and Subsidiaries Employees' 401(k) Profit Sharing Plan & Trust (the "Texas Plan") that were transferred to this Plan as a result of the merger of the Texas Plan into this Plan effective as of January 1, 2000. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Texas Plan in effect on December 31, 1999, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-140

WFC002772

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Allied Leasing Company**

Effective January 1, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Allied Leasing Company (hereinafter called "Allied") is modified as follows:

If immediately after 12:01 a.m. on November 1, 1999, an individual was an employee of a direct or indirect subsidiary of Wells Fargo & Company that succeeded to the operations of Allied, the individual's continuous service with Allied prior to November 1, 1999, as was credited under the Allied Leasing Company 401(k) Retirement Plan (the "Allied" Plan) shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2000 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Allied Plan that were transferred to this Plan as a result of the merger of the Allied Plan into this Plan effective as of January 1, 2000. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Allied Plan in effect on December 31, 1999, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002773

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to First Place Financial Corporation**

Effective January 18, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by First Place Financial Corporation (hereinafter called "First Place") is modified as follows:

If immediately after 11:59 p.m. on January 18, 2000, an individual was an employee of First Place, the individual's continuous service with First Place prior to January 19, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the First Place Financial Corporation 401(k) Profit Sharing Plan (the "First Place Plan") that were transferred to this Plan as a result of the merger of the First Place Plan into this Plan effective as of April 1, 2000. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the First Place Plan in effect on March 31, 2000, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-142

WFC002774

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to North County Bancorp

Effective January 27, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by North County Bancorp (hereinafter called "North") is modified as follows:

If immediately after 11:59 p.m. on January 27, 2000, an individual was an employee of North, the individual's continuous service with North prior to January 28, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the North County Bancorp and Subsidiaries 401(k) Plan (the "North Plan") that were transferred to this Plan as a result of the merger of the North Plan into this Plan effective as of April 1, 2000. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the North Plan in effect on March 31, 2000, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts if $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-143

WFC002775

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Prime Bancshares, Inc.**

Effective January 28, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Prime Bancshares, Inc. (hereinafter called "Prime") is modified as follows:

If immediately after 11:59 p.m. on January 28, 2000, an individual was an employee of Prime, the individual's continuous service with Prime prior to January 29, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Prime Bank Employees' 401(k) Profit Sharing Plan into this Plan effective April 1, 2000. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002776

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Ragen MacKenzie

Effective March 16, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Ragen MacKenzie (hereinafter called "Ragen") is modified as follows:

If immediately after 11:59 p.m. on March 16, 2000, an individual was an employee of Ragen or a direct or indirect subsidiary of Wells Fargo & Company that succeeded to the operations of Ragen, the individual's continuous service with Ragen prior to March 17, 2000, shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  April 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002777

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Bryan, Pendelton, Swats & McAllister

Effective March 31, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Bryan, Pendelton, Swats & McAllister (hereinafter called "BPS&M") is modified as follows:

If immediately after 11:59 p.m. on March 31, 2000, an individual was an employee of BPS&M, the individual's continuous service with BPS&M prior to April 1, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  April 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Bryan, Pendelton, Swats & McAllister, LLC Profit Sharing Plan into this Plan effective April 1, 2000.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan.  The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002778

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Michigan Financial Corporation**

Effective July 1, 2000, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Michigan Financial Corporation and its subsidiaries (hereinafter called "Michigan") is modified as follows:

If immediately after 12:01 a.m. on March 30, 2000, an individual was an employee of a direct or indirect subsidiary of Wells Fargo & Company that succeeded to the operations of Michigan, the individual's continuous service with Michigan prior to March 30, 2000, as was credited under the Michigan Financial Corporation Employee Savings and Stock Ownership Plan (the "Michigan Plan") shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  July 1, 2000 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Michigan Plan that were transferred to this Plan as a result of the merger of the Michigan Plan into this Plan effective as of July 1, 2000.  Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Michigan Plan in effect June 30, 2000, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less).

WFC002779

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Servus Financial Corporation

Effective July 1, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Servus Financial Corporation (hereinafter called "Servus") is modified as follows:

If immediately after 11:59 p.m. on March 17, 2000, an individual was an employee of Servus, the individual's continuous service with Servus prior to March 18, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Servus Financial Corporation 401(k) Retirement Plan (the "Servus Plan") that were transferred to this Plan as a result of the merger of the Servus Plan into this Plan effective July 1, 2000. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Servus Plan in effect on March 17, 2000, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

A-148

WFC002780

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Napa National Bancorp**

Effective July 1, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Napa National Bancorp (hereinafter called "Napa") is modified as follows:

If immediately after 11:59 p.m. on March 17, 2000, an individual was an employee of Napa, the individual's continuous service with Napa prior to March 18, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 2000 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Napa National Bancorp 401(k) Plan and the Napa National Bancorp Employee Stock Ownership and Savings Plan and Trust into this Plan effective July 1, 2000. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-149

WFC002781

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to 1st Choice Financial Corporation

Effective August 1, 2000 , the Wells & Fargo & Company 401(k) Plan, as applicable to persons formerly employed by 1st Choice Financial Corporation (hereinafter called "1st Choice") is modified as follows:

If immediately after 11:59 p.m. on June 13, 2000, an individual was an employee of 1st Choice, the individual's continuous service with 1st Choice prior to June 14, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the 1st Choice Bank 401(k)/Profit Sharing Plan into this Plan effective August 1, 2000. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002782

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to National Bancorp of Alaska

Effective August 1, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by National Bancorp of Alaska (hereinafter called "Alaska") is modified as follows:

If immediately after 11:59 p.m. on July 14, 2000, an individual was an employee of Alaska, the individual's continuous service with Alaska prior to July 15, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the National Bank of Alaska Profit Sharing 401(k) Plan (the "Alaska Plan") that were transferred to this Plan as a result of the merger of the Alaska Plan into this Plan effective August 1, 2000. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Alaska Plan in effect on July 31, 2000, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the Frozen Transferred Accounts containing employer contributions.

WFC002783

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Eastdil Realty**

Effective September 1, 2000, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Eastdil Realty (hereinafter called "Eastdil") is modified as follows:

If immediately after 12:01 a.m. on November 16, 1999, an individual was an employee of a direct or indirect subsidiary of Wells Fargo & Company that succeeded to the operations of Eastdil, the individual's continuous service with Eastdil prior to November 16, 1999, as was credited under the Eastdil Realty Co., L.L.C. Profit Sharing Plan (the "Eastdil Plan") shall be treated as if it were service for a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. September 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Eastdil Plan that were transferred to this Plan as a result of the merger of the Eastdil Plan into this Plan effective as of September 1, 2000. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that (i) the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account, and (ii) the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provision of the Eastdil Plan in effect on August 31, 2000, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts if $1,000 or less).

WFC002784

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to GE Capital Mortgage Services, Inc.


Effective September 10, 2000, the Well Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by GE Capital Mortgage Services, Inc. (hereinafter called "GE Capital Mortgage") is modified as follows:

If immediately after 12:01 a.m. on September 10, 2000, an individual was an employee of GE Capital Mortgage, the individual's continuous service with GE Capital Mortgage prior to 12:01 a.m. on September 10, 2000, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  November 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002785

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Charter Financial, Inc.

Effective October 1, 2000, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Charter Financial, Inc. (hereinafter called "Charter") is modified as follows:

If immediately after 12:01 a.m. on September 1, 2000, an individual was an employee of Charter, the individual's continuous service with Charter prior to September 1, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. October 1, 2000 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Charter Financial, Inc. Retirement Plan into this Plan effective October 1, 2000. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002786

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Buffalo National Bancshares, Inc.

Effective January 1, 2001, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Buffalo National Bancshares, Inc. and its subsidiaries (hereinafter called "Buffalo") is modified as follows:

If immediately after 11:59 p.m. on September 28, 2000, an individual was an employee of Buffalo, the individual's continuous service with Buffalo prior to September 29, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's Service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2001 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Buffalo National Bank Profit Sharing Plan into this Plan effective January 1, 2001. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002787

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First Security Corporation

Effective January 1, 2001, the Wells Fargo & Company 401(k) Plan, as applicable to persons employed by First Security Corporation and its subsidiaries (hereinafter called "FSC") is modified as follows:

If immediately after 9:00 a.m. on October 25, 2000, an individual was an employee of FSC, the individual's continuous service with FSC prior to 9:00 a.m. on October 25, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2001 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of First Security Incentive Savings Plan and Trust Agreement into this Plan effective January 1, 2001. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

A-156

WFC002788

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to First Commence Bancshares

Effective January 1, 2001, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by First Commerce Bancshares and its subsidiaries (hereinafter called "FCB") is modified as follows:

If immediately after 11:59 p.m. on June 16, 2000, an individual was an employee of FCB, and the individual was an employee of FCB or another subsidiary of Wells Fargo & Company on December 31, 2000, the individual's continuous service with FCB prior to June 17, 2000, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  January 1, 2001 shall be the first Entry Date on which an individual who was an employee of FCB on December 31, 2000 may become a Participant in this Plan.

A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of First Commerce Profit Sharing and Thrift Plan into this Plan effective April 1, 2001.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002789

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Brenton Banks, Inc.

Effective January 1, 2001, the Wells Fargo & Company 401(k) Plan, as applicable to persons employed by Brenton Banks, Inc. is modified as follows:

If immediately after 11:59 p.m. on December 30, 2000, an individual was an employee of Brenton Banks, Inc., the individual's continuous service with Brenton Banks, Inc. prior to December 31, 2000, shall be treated as if it were service for a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  January 1, 2001 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Brenton Banks, Inc. Employees' Retirement Plan into this Plan effective June 1, 2001.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002790

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Paragon Capital LLC.**

Effective February 1, 2001, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly considered leased employees by Paragon Capital LLC (hereinafter called "Paragon") is modified as follows:

If immediately after 5:01 p.m. on December 15, 2000, an individual was a leased employee of Paragon, the individual's continuous service to Paragon prior to 5:01 p.m. on December 15, 2000, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  February 1, 2001 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Paragon Capital LLC 401(k) Profit Sharing Plan into this Plan effective March 1, 2001.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002791

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Chase Bank of Texas and Midland Trust Company

Effective March 1, 2001, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Chase Bank of Texas in Midland, Texas (hereinafter called "Chase") is modified as follows:

If immediately prior to 12:01 a.m. on February 17, 2001, an individual was employed by Chase at certain branches identified in the Purchase and Assumption Agreement entered into between Chase Bank of Texas, National Association and Wells Fargo Bank Texas, National Association on July 21, 2000, and became an employee of a subsidiary of Wells Fargo & Company immediately after 12:01 a.m. on February 17, 2001 as a result of the consummation of the transactions identified in the Purchase and Assumption Agreement, the individual's continuous service with Chase prior to February 17, 2001, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. March 1, 2001 shall be the first Entry Date on which an individual described in this paragraph of this Appendix may become a Participant in this Plan.

If immediately prior to 12:01 a.m. on April 7, 2001, an individual was employed by Midland Trust Company, National Association ("Midland"), the individual's continuous service with Midland or Chase prior to April 7, 2001, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. May 1, 2001 shall be the first Entry Date on which an individual described in this paragraph of this Appendix may become a Participant in this Plan.

WFC002792

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to SCI Financial Group, Inc.

Effective April 1, 2001, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons employed by SCI Financial Group, Inc. (hereinafter called "SCI") is modified as follows:

If immediately after 11:59 p.m. on March 29, 2001, an individual was an employee of SCI, the individual's continuous service with SCI prior to March 30, 2001, shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 2001 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

Separate Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the SCI Financial Group, Inc. Salary Reduction Stock Ownership Plan and the SCI Financial Group, Inc. ET AL Savings and Retirement Plan into this Plan effective April 1, 2001. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Accounts containing employer contributions.

WFC002793

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Buffalo Insurance Agency Group, Inc.

Effective April 1, 2001, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Buffalo Insurance Agency Group, Inc. (hereinafter called "Buffalo Insurance") is modified as follows:

If immediately after 11:59 p.m. on March 1, 2001, an individual was an employee of Buffalo Insurance, the individual's continuous service with Buffalo Insurance prior to March 2, 2001, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  April 1, 2001 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002794

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to the Comstock Bank

Effective May 1, 2001, the Comstock Bank 401(k) Plan merged into this Plan. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Comstock Bank 401(k) Plan into this Plan. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002795

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to the Marine National Bank

Effective May 1, 2001, the Marine National Bank 401(k) Plan merged into this Plan.  A separate Account shall be established under Sec. 7.1 to hold assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Marine National Bank 401(k) Plan into this Plan.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002796

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to the Nevada Banking Company

Effective May 1, 2001, the Nevada Banking Company 401(k) Plan merged into this Plan. A separate Account shall be established under Sec. 7.1 to hold assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Nevada Banking Company 401(k) Plan into this Plan. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002797

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to American Commercial Capital

Effective May 1, 2001, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by American Commercial Capital is modified as follows:

If immediately after 11:59 p.m. on March 22, 2001, an individual was an employee of American Commercial Capital, the individual's continuous service with American Commercial Capital prior to March 23, 2001, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the Individual's Vesting Service under this Plan.  May 1, 2001 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-166

WFC002798

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to the California State Bank 401(k) Plan

Effective June 1, 2001, the California State Bank 401(k) Plan merged into this Plan.  A separate Account shall be established under Sec. 7.1 to hold assets allocated to a Participant that were transferred to this Plan as a result of the merger of the California State Bank 401(k) Plan into this Plan.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002799

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to H.D. Vest, Inc.

Effective August 1, 2001, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by H.D. Vest, Inc. (hereinafter called "H.D. Vest") is modified as follows:

If immediately after 9:15 a.m. on July 2, 2001 an individual was an employee of H.D. Vest, the individual's continuous service with H.D. Vest prior to July 2, 2001, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 2001 shall be the first Entry Date on which an individual who was an employee of H.D. Vest on July 2, 2001 may become a Participant in this Plan.

A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the H.D. Vest, Inc. Salary Savings Plan into this Plan effective August 1, 2001. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

Notwithstanding any provision of Sec. 9.2 to the contrary, any Participant who was an employee of H.D. Vest, Inc. on October 3, 2011, when H.D. Vest, Inc. ceased to be a Participating Employer upon ceasing to be under Common Control with the Company, shall be 100% vested in his or her Accounts under the Plan.

WFC002800

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to ACO Brokerage Corporation and its Subsidiaries

Effective January 1, 2002, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by ACO Brokerage Holdings Corporation and its subsidiaries (hereinafter called "Acordia") is modified as follows:

If immediately after 9:15 a.m. on May 1, 2001, an individual was an employee of Acordia, the individual's continuous service with Acordia prior to May 1, 2001, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2002 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

The Acordia 401(k) Long Term Savings Investment Plan shall be merged into this Plan effective January 1, 2002.  A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of said merger.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan.  The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account attributable to nonelective employer contributions made under the Acordia 401(k) Long Term Savings Investment Plan.

The Insurance Risk Managers, Ltd. 401(k) Plan shall be merged into this Plan effective July 1, 2002. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of said merger.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

A-169

WFC002801

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to H & R Phillips, Inc.

Effective January 1, 2002, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by H & R Phillips, Inc. (hereinafter called "H & R Phillips") is modified as follows:

If immediately after 11:59 p.m. on December 6, 2001, an individual was an employee of H & R Phillips, the individual's continuous service with H & R Phillips prior to December 7, 2001, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2002 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

The H & R Phillips 401(k) Plan shall be merged into this Plan effective January 1, 2002. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of said merger. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-170

WFC002802

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Risk Management Services, Inc.

Effective January 1, 2002, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Risk Management Services, Inc. (hereafter called "RMS") is modified as follows:

If immediately after 12:01 a.m. central daylight time on December 1, 2001, an individual was an employee of RMS, the individual's continuous service with RMS prior to December 1, 2001, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2002 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002803

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Marquette Bancshares, Inc. and its Subsidiaries

Effective February 1, 2002, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Marquette Bancshares, Inc. and its subsidiaries (hereinafter called "Marquette") is modified as follows:

If immediately prior to 12:01 a.m. on February 1, 2002, an individual was an employee of Marquette, the individual's continuous service with Marquette prior to February 1, 2002, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. February 1, 2002 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

The Bank of Santa Fe Retirement Savings Plan shall be merged into this Plan effective February 28, 2002. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of said merger. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account. Commencing June 1, 2002, the optional forms of distribution available with respect to any such transferred Account shall be only those forms available under Sec. 10.1 of the Plan (disregarding Sec. 10.1(m)) and any other optional forms that previously were available under The Bank of Santa Fe Retirement Savings Plan shall be disregarded.

Effective May 1, 2002, certain participant accounts under the Marquette Bancshares, Inc. Retirement Savings Plan shall be transferred to this Plan. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the spin off. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

A-172

WFC002804

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to SIFE

Effective March 1, 2002, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by SIFE is modified as follows:

If immediately after 11:59 p.m. on February 22, 2002, an individual was an employee of SIFE, the individual's continuous service with SIFE prior to February 23, 2002, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  March 1, 2002 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002805

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Alcalay, Cohen, Inc. dba General Insurance Consultants

Effective April 1, 2002, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Alcalay, Cohen, Inc. dba General Insurance Consultants ("GIC") is modified as follows:

If immediately after 12:01 a.m. on February 1, 2002, an individual was an employee of GIC, the individual's continuous service with GIC prior to February 1, 2002, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  April 1, 2002 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002806

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Tejas Bancshares, Inc. and its Subsidiaries

Effective June 1, 2002, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Tejas Bancshares, Inc. and its subsidiaries (hereinafter called "Tejas Bancshares") is modified as follows:

If immediately after 12:01 a.m. on April 26, 2002, an individual was an employee of Tejas Bancshares, the individual's continuous service with Tejas Bancshares prior to April 26, 2002, shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  June 1, 2002 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

The First National Bank of Amarillo 401(k) Plan shall be merged into this Plan effective June 1, 2002.  A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of said merger.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

A-175

WFC002807

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to JPMorgan Chase Bank**

Effective June 1, 2002, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by JPMorgan Chase Bank (hereinafter called "JPM") is modified as follows:

If immediately after 12:01 a.m. central daylight time on June 1, 2002, an individual was an employee of JPM, the individual's continuous service with JPM prior to June 1, 2002, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. June 1, 2002 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-176

WFC002808

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to First Allied Securities, Inc.

Effective September 1, 2002, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by First Allied Securities, Inc. (hereinafter called "FAS") is modified as follows:

If immediately after 2:30 p.m. central daylight time on July 22, 2002, an individual was an employee of FAS, the individual's continuous service with FAS prior to July 22, 2002, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. September 1, 2002 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002809

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Towle Financial Services/Midwest, Inc.

Effective January 1, 2003, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Towle Financial Services/Midwest, Inc. (hereinafter called "TFS") is modified as follows:

If immediately after 12:01 a.m. central daylight time on January 1, 2003, an individual was an employee of TFS, the individual's continuous service with TFS prior to January 1, 2003, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2003 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002810

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Nelson Capital Management, Inc.**

Effective January 1, 2003, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Nelson Capital Management, Inc. (hereinafter called "NCM") is modified as follows:

If immediately after 5:00 p.m. central daylight time on October 1, 2002, an individual was an employee of NCM, the individual's continuous service with NCM prior to October 1, 2002, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2003 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

The Nelson Capital Management, Inc. Salary Deferral Plan shall be merged into this Plan effective January 1, 2003. One or more separate Accounts may be established under Sec. 7.1 to hold assets allocated to a Participant that were transferred to this Plan as a result of said merger. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan, and the Participant's vested percentage in such Account shall be determined pursuant to Sec. 9.2 of this Plan in the event of a Termination of Employment occurring on or after January 1, 2003.

A-179

WFC002811

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Montgomery Asset Management, LLC

Effective February 1, 2003, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Montgomery Asset Management, LLC (hereinafter called "MAM") is modified as follows:

If immediately after 12:01 a.m. central daylight time on January 18, 2003, an individual was an employee of MAM, the individual's continuous service with MAM prior to January 18, 2003, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. February 1, 2003 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002812

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Trumbull Associates, LLC

Effective September 1, 2003, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Trumbull Associates, LLC (hereinafter called "Trumbull") is modified as follows:

If immediately after 12:01 a.m. on September 1, 2003, an individual was an employee of Trumbull, the individual's continuous service with Trumbull prior to 12:01 a.m. on September 1, 2003, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. September 1, 2003 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-181

WFC002813

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Bank of Grand Junction (Two Rivers Corporation Acquisition)

Effective November 1, 2003, the Well Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Bank of Grand Junction (Two Rivers Corporation acquisition) (hereinafter called "Grand Junction") is modified as follows:

If immediately after 11:59 p.m. on October 31, 2003, an individual was an employee of Grand Junction, the individual's continuous service with Grand Junction prior to 11:59 p.m. on October 31, 2003, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. November 1, 2003 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002814

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Benson Associates, LLC

Effective November 1, 2003, the Well Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Benson Associates, LLC (hereinafter called "Benson Associates") is modified as follows:

If immediately after the end of the business day on October 31, 2003, an individual was an employee of Benson Associates, the individual's continuous service with Benson Associates prior to the end of the business day on October 31, 2003, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. November 1, 2003 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-183

WFC002815

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Wisenberg, Pozmantier & Co., Inc.

Effective January 1, 2004, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Wisenberg, Pozmantier & Co., Inc. ("Wisenberg") is modified as follows:

If immediately after 12:01 a.m. on September 1, 2003, an individual was an employee of Wisenberg, the individual's continuous service with Wisenberg prior to September 1, 2003, shall be treated as if it were service for a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan, subject to the rules below. January 1, 2004 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

The Wisenberg, Pozmantier & Co., Inc. 401(k) Savings Plan (the "Wisenberg 401(k) Plan") shall be merged into this Plan effective January 1, 2004. Separate Accounts shall be established under Sec. 7.1 to hold any assets allocated to a participant in the Wisenberg 401(k) Plan that were transferred to this Plan as a result of the merger. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. For individuals who were employees of Wisenberg on September 1, 2003 and who continued to be employed by the Company or an Affiliate on January 1, 2004, the vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of any transferred Account containing employer contributions; except that, such a Participant's Vesting Service on and after January 1, 2004 shall equal the sum of the following service:

1. All full years of vesting service credited under the terms of the Wisenberg 401(k) Plan as of December 31, 2003;

2. One additional year of Vesting Service as of January 1, 2004; and

3. All years of Vesting Service on and after January 1, 2004 based on elapsed time pursuant to Sec. 3.3 calculated from January 1, 2004 to the Participant's Termination of Employment.

All other individuals with transferred Accounts who are not employed by the Company or an Affiliate as of January 1, 2004 shall be subject to the terms of the Wisenberg 401(k) Plan in existence at the time of their termination of employment with Wisenberg, except to the extent a provision of this Plan is required to apply to such individuals to maintain the qualified status of this Plan under the Code or applicable regulations.

WFC002816

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Pacific Northwest Bancorp**

Effective January 1, 2004, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Pacific Northwest Bancorp and its subsidiaries ("Pacific") is modified as follows:

If immediately after 11:59 p.m. on October 31, 2003, an individual was an employee of Pacific, the individual's continuous service with Pacific prior to October 31, 2003, shall be treated as if it were service for a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan, subject to the rules below. January 1, 2004 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

The Pacific Northwest Bancorp Salary Deferral 401(k) Plan (the "Pacific 401(k) Plan") shall be merged into this Plan effective January 1, 2004. Separate Accounts shall be established under Sec. 7.1 to hold any assets allocated to a participant in the Pacific 401(k) Plan that were transferred to this Plan as a result of said merger. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. For individuals who were employees of Pacific on October 31, 2003 and who continued to be employed by the Company or an Affiliate on January 1, 2004, the vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of any transferred Account containing employer contributions, except that such a Participant's Vesting Service on and after January 1, 2004 shall equal the sum of the following service:

1. All full years of vesting service credited under the terms of the Pacific 401(k) Plan as of December 31, 2003;

2. One additional year of Vesting Service as of January 1, 2004; and

3. All years of Vesting Service on and after January 1, 2004 based on elapsed time pursuant to Sec. 3.3 calculated from January 1, 2004 to the Participant's Termination of Employment.

Notwithstanding the foregoing, if an individual was employed by Pacific on October 31, 2003, and if the Company determines that the individual's position is to be eliminated after October 31, 2003 but prior to October 1, 2004 as a result of the acquisition of Pacific by Wells Fargo & Company, the individual shall become fully (100%) vested in any such transferred Account effective sixty (60) days after the date that the individual was given formal notice of the position elimination, but only if the individual does not continue in employment in another position with the Company or an Affiliate as of the last day of that 60-day period.

All other individuals with transferred Accounts who are not employed by the Company or an Affiliate as of January 1, 2004 shall be subject to the terms of the Pacific 401(k) Plan in existence at the time of their termination of employment with Pacific, except to the extent a provision of this Plan is required to apply to such individuals to maintain the qualified status of this Plan under the Code or applicable regulations.

A-185

WFC002817

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Feeney, Durler and West Insurance Services

Effective January 16, 2004, the Well Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Feeney, Durler and West Insurance Services (hereinafter called "Feeney") is modified as follows:

If immediately after 11:59 p.m. on January 16, 2004, an individual was an employee of Feeney, the individual's continuous service with Feeney prior to 11:59 p.m. on January 16, 2004, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. March 1, 2004 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002818

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Baldwin & Whitney Insurance**

Effective June 1, 2004, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Baldwin & Whitney Insurance ("B&W") is modified as follows:

If immediately prior to 12:01 a.m. on June 1, 2004, an individual was employed by B&W and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:01 a.m. on June 1, 2004, the individual's continuous service with B&W prior to June 1, 2004 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  June 1, 2004 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-187

WFC002819

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Harris Bank

Effective June 1, 2004, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Harris Bank ("Harris") is modified as follows:

If immediately prior to 12:01 a.m. on June 1, 2004, an individual was employed by Harris and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:01 a.m. on June 1, 2004, the individual's continuous service with Harris prior to June 1, 2004 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. June 1, 2004 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-188

WFC002820

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Pay Day of Minnesota**


Effective July 1, 2004, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Pay Day of Minnesota ("Pay Day") is modified as follows:

If immediately prior to 12:01 a.m. on May 8, 2004, an individual was employed by Pay Day and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:01 a.m. on May 8, 2004, the individual's continuous service with Pay Day prior to May 8, 2004 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 2004 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002821

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Blade Insurance Services, Inc.
### d/b/a Disc Insurance Services and Speare & Company

Effective August 1, 2004, the Wells Fargo & Company 401(k) Plan, as applicable to persons formerly employed by Blade Insurance Services, Inc. d/b/a Disc Insurance Services and Speare & Company ("Blade") is modified as follows:

If immediately after 12:01 a.m. on August 1, 2004, an individual was an employee of Blade, the individual's continuous service with Blade prior to August 1, 2004, shall be treated as if it were service for a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. August 1, 2004 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Speare & Company 401(k) Plan into this Plan effective August 1, 2004. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-190

WFC002822

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Strong Financial Corporation**

Effective January 1, 2005, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons employed by Strong Financial Corporation and its subsidiaries ("Strong") on December 31, 2004, is modified as follows:

If an individual was an employee of Strong immediately before 11:59 p.m. central daylight time on December 31, 2004 (the "Effective Date") and became an employee of Wells Fargo & Company or its subsidiaries ("Wells Fargo") on January 1, 2005, or became an employee of Wells Fargo directly after ending employment with Strong within six months immediately after the Effective Date, the individual's continuous service with Strong prior to the Effective Date shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2005 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan. Any individual described in this Appendix who is not eligible to participate on January 1, 2005, shall become eligible on the first Entry Date following the date the individual satisfies the eligibility requirements under Sec. 4.1 of this Plan.

Notwithstanding the foregoing, if within 90 days of the Effective Date an individual on a leave of absence authorized by Strong as of the Effective Date is released to return to work within that 90 days and is immediately employed by Wells Fargo within that 90 days, the individual's continuous service with Strong prior to the Effective Date shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. The Effective Date on which an individual described in this paragraph may become a Participant in this Plan is the first Entry Date following the date the individual is hired by Wells Fargo that the individual satisfies the eligibility requirements under Sec. 4.1 of this Plan

WFC002823

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to PlainsCapital Bank

Effective July 23, 2005, the Wells Fargo & Company 401(k) Plan (the "Plan, as applicable to persons employed by PlainsCapital Bank (the "Bank") is modified as follows:

If immediately before 12:01 a.m. central daylight time on July 23, 2005, an individual was an employee of the Bank and the individual became an employee of Wells Fargo & Company or a subsidiary of Wells Fargo & Company on July 23, 2005, the individual's continuous service with the Bank prior to July 23, 2005 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 23, 2005 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002824

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to the Amended and Restated
### Pacific Northwest Bancorp Employee Stock Ownership/
### Money Purchase Pension Plan

Effective August 1, 2005, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to the Amended and Restated Pacific Northwest Bancorp Employee Stock Ownership/Money Purchase Pension Plan, a terminated plan, is modified as follows:

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Amended and Restated Pacific Northwest Bancorp Employee Stock Ownership/Money Purchase Pension Plan (the "Pacific Plan") that were transferred to this Plan as a result of the merger of the Pacific Plan into this Plan effective as of August 1, 2005. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) may elect any method of payment permitted under the provisions of the Pacific Plan in effect on July 31, 2005, for the distribution of benefits from any such Frozen Transferred Account (subject, however, to Sec. 10.1(c) of this Plan if the total value of the Participant's Accounts is $1,000 or less). The portion of the Frozen Transferred Accounts containing employer contributions shall be fully (100%) vested at all times.

A-193

WFC002825

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to the Van Kasper & Company
### Profit Sharing and Salary Deferral Plan

Effective August 1, 2005, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to the Van Kasper & Company Profit Sharing and Salary Deferral Plan, a terminated plan, is modified as follows:

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Van Kasper & Company Profit Sharing and Salary Deferral Plan (the "Van Kasper Plan") that were transferred to this Plan as a result of the merger of the Van Kasper Plan into this Plan effective as of August 1, 2005. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The portion of the Frozen Transferred Accounts containing employer contributions shall be fully (100%) vested effective at all times.

A-194

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to First Community Bank, N.A.**

Effective September 1, 2005, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by First Community Capital Corporation (hereinafter called "First Community") is modified as follows:

If immediately after 11:59 p.m. on July 31, 2005, an individual was an employee of First Community, the individual's continuous service with First Community prior to August 1, 2005 shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. September 1, 2005 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the First Community Bank 401(k) Plan into this Plan effective as of September 1, 2005. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

WFC002827

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Regulus West, LLC

Effective October 1, 2005, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Regulus West, LLC ("Regulus"), is modified as follows:

If immediately prior to 12:01 a.m. on October 1, 2005, an individual was an employee of Regulus, and immediately following became an employee of Wells Fargo Bank, National Association, the individual's continuous service with Regulus prior to October 1, 2005 shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. October 1, 2005 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

Effective November 1, 2005, certain participant accounts under the Regulus Group, LLC Retirement Savings and Investment Plan shall be transferred to this Plan. A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the spin off. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Accounts.

A-196

WFC002828

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Marsh USA Inc.

Effective December 31, 2005, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Marsh USA Inc. ("Marsh") is modified as follows:

If immediately after 11:59 p.m. on December 31, 2005, an individual was an employee of Marsh, and the individual became an employee of Wells Fargo & Company or a subsidiary of Wells Fargo & Company on December 31, 2005, the individual's continuous service with Marsh prior to January 1, 2006 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2006 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002829

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Secured Capital Corp

Effective February 1, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Secured Capital Corp ("Secured Capital"), is modified as follows:

If an individual was an employee of Secured Capital on January 18, 2006 and the individual became an employee of Wells Fargo & Company or a subsidiary of Wells Fargo & Company on January 18, 2006, the individual's continuous service with Secured Capital prior to January 18, 2006 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. February 1, 2006 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002830

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to State Bank of Rogers**

Effective May 1, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by the State Bank of Rogers (the "Bank"), is modified as follows:

If immediately after 12:01 a.m. on March 1, 2006, an individual was an employee of the Bank, the individual's continuous service with the Bank prior to March 1, 2006 shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. April 1, 2006 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the State Bank of Rogers 401(k) Profit Sharing Plan into this Plan effective May 1, 2006.  Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except that the Participant (or Beneficiary following the Participant's death) shall always be 100% vested in any such transferred Account.

WFC002831

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Commerce Funding Corporation**


Effective May 1, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Commerce Funding Corporation ("Commerce"), is modified as follows:

If immediately after 3:00 p.m. Eastern Standard Time on April 17, 2006 an individual was an employee of Commerce, the individual's continuous service with Commerce prior to April 17, 2006 shall be treated as if it were service with a Participating Employer in determining the individual's service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. May 1, 2006 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant that were transferred to this Plan as a result of the merger of the Commerce Funding Corporation 401(k) Plan into this Plan effective May 1, 2006. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The vesting schedule in Sec. 9.2(a) and (c) shall apply to the portion of the transferred Account containing employer contributions.

A-200

WFC002832

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to LaSalle Bank National Association

Effective June 1, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by LaSalle Bank National Association ("LaSalle"), is modified as follows:

If an individual was an employee of LaSalle on June 1, 2006 and the individual became an employee of Wells Fargo & Company or a subsidiary of Wells Fargo & Company immediately after 5:00 p.m., Central Standard Time on June 1, 2006, the individual's continuous service with LaSalle prior to June 1, 2006 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. June 1, 2006 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002833

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Fremont National Bank of Canon City

Effective June 6, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Fremont National Bank of Canon City (the "Bank"), is modified as follows:

If immediately after 12:01 a.m. on June 6, 2006, an individual was an employee of the Bank, the individual's continuous service with the Bank prior to June 6, 2006 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  July 1, 2006 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002834

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Centennial Bank of Pueblo

Effective June 6, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Centennial Bank of Pueblo (the "Bank"), is modified as follows:

If immediately after 12:01 a.m. on June 6, 2006, an individual was an employee of the Bank, the individual's continuous service with the Bank prior to June 6, 2006 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 2006 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002835

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Wells Fargo Financial, Inc. and Subsidiaries
### (Merger of Thrift and Profit Sharing Plan)

Effective July 1, 2006, the Wells Fargo & Company 401(k) Plan, as applicable to employees of Wells Fargo Financial, Inc. and its subsidiaries that were "employers" participating in the Wells Fargo Financial Thrift and Profit Sharing Plan (the "TAPS Plan") on June 30, 2006 (collectively, "Financial"), is modified as follows:

I.

The TAPS Plan is hereby merged into this Plan effective July 1, 2006. Wells Fargo Financial, Inc. and each of its subsidiaries that were "employers" participating in the TAPS Plan on June 30, 2006 shall be Participating Employers in this Plan on July 1, 2006. Each individual who was a "participant" entitled to benefits under the TAPS Plan at 11:59 p.m. on June 30, 2006 shall be a Participant entitled to such benefit under this Plan at 12:01 a.m. on July 1, 2006, and any individual who was entitled to a benefit as a "beneficiary" of a deceased participant or as an "alternate payee" under the TAPS Plan at 11:59 p.m. on June 30, 2006 shall be entitled to such benefit in the same capacity under this Plan at 12:01 a.m. on July 1, 2006.

The accounts held under the TAPS Plan on June 30, 2006 shall become Accounts under this Plan on July 1, 2006. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan, except as otherwise provided in this Appendix. To the extent the Plan Administrator determines to be necessary or appropriate, separate Accounts shall be established under Sec. 7.1 effective July 1, 2006 to hold some or all of the accounts allocated to an individual under the TAPS Plan that were transferred to this Plan as a result of the merger. The Plan Administrator may establish any rules and procedures which the Plan Administrator deems to be necessary or appropriate for the transitioning of the investment of the accounts held in the TAPS Plan to the investment of Accounts under this Plan pursuant to Articles VII and VIII hereof.

II.

If an individual who was an employee of Financial prior to July 1, 2006 is an employee of a Participating Employer in this Plan on or after July 1, 2006, the individual's "eligibility service" credited under the TAPS Plan on June 30, 2006 shall be treated as if it were service for a Participating Employer for purposes of Sec. 4.1 of this Plan; provided, however, that there shall be no duplicate credit for the same period of service. July 1, 2006 shall be the first Entry Date on which an individual who was employed by Financial on June 30, 2006 may become a Participant in this Plan.

III.

If an individual was an employee of Financial on June 30, 2006 and the individual continues to be employed by a Participating Employer in this Plan on July 1, 2006, the following rules shall apply in determining vesting in the individual's Accounts commencing July 1, 2006:

1.    The individual's Vesting Service under this Plan on and after July 1, 2006 shall be equal to the sum of (i) the individual's "vesting service" credited under the TAPS Plan on June 30, 2006,

A-204

WFC002836

and (ii) the individual's Vesting Service determined under Sec. 3.3 of this Plan for periods on or after July 1, 2006; provided, however, that if the individual has a break in service, Sec. 3.3(d) shall apply to the individual's entire period of service.

2. The vested percentage applicable to the portion of any transferred Account from the TAPS Plan containing employer contributions that were subject to the vesting schedule under the TAPS Plan on June 30, 2006 shall be the greater of (i) the percentage determined under the provisions of the TAPS Plan in effect on June 30, 2006, or (ii) the percentage determined under Sec. 9.2(a).

All individuals with transferred Accounts from the TAPS Plan who are not employed by a Participating Employer on July 1, 2006 shall be subject to the provisions of TAPS Plan regarding vesting in effect at the time of their termination of employment with Financial, except to the extent a provision of this Plan is required to apply to such an individual to maintain the qualified status of this Plan under the Code or applicable regulations. However, if such an individual is reemployed by a Participating Employer as a Qualified Employee after July 1, 2006 and before any non-vested portion of a transferred Account from the TAPS Plan has permanently become a forfeiture, the vested percentage of the individual's transferred Accounts from the TAPS Plan shall thereafter be determined under paragraph 2 of this Section III.

IV.

Commencing July 1, 2006, Salary Deferral Contributions by Participants who are employed by Financial, and Employer Matching Contributions on behalf of such Participants under Sec. 5.1, shall be subject to the applicable provisions of this Plan, and the provisions of the TAPS Plan shall cease to apply in determining Plan contributions for periods on or after July 1, 2006. Any deferral election in effect for a participant under the TAPS Plan on June 30, 2006 shall continue to apply to the Participant for purposes of this Plan commencing July 1, 2006 until the Participant changes such election pursuant to the terms of this Plan. The adjustments provided under Sec. 5.1(c) shall apply to Participants who are employees of Financial during the third and fourth quarters of 2006. The limits on contributions under Article VI of this Plan for the 2006 Plan Year shall be applied by taking into account all contributions under the TAPS Plan for the period from January 1, 2006 to June 30, 2006.

For purposes of determining "employer contributions" under the TAPS Plan for the period from January 1 to June 30, 2006, June 30, 2006 shall be deemed to be the last day of a Plan Year.

WFC002837

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Reilly Mortgage Capital Corporation

Effective August 1, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to certain persons formerly employed by Reilly Mortgage Capital Corporation  (hereinafter called "Reilly") is modified as follows:

If immediately prior to 12:01 a.m. on August 1, 2006, an individual was employed by Reilly and the individual became an employee of a subsidiary of Wells Fargo & Company immediately thereafter, the individual's continuous service with Reilly prior to August 1, 2006 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.  August 1, 2006 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002838

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Washington Mutual Bank
### (Transfers Related to Purchase of Certain Assets)

Effective September 6, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to certain persons formerly employed by Washington Mutual Bank (hereinafter called "WaMu") is modified as follows:

This Appendix applies to any individual who was an employee of WaMu, who transfers directly from WaMu to employment with a Participating Employer on or after September 6, 2006 pursuant to the asset purchase agreement between Wells Fargo Bank, N.A. and WaMu dated July 17, 2006, and who accepted the offer of employment with the Participating Employer on or before March 31, 2007. In the case of any individual covered by this Appendix:

(a)    The individual's continuous service with WaMu prior to the date of the transfer (based on the employment date supplied by WaMu to the Plan Administrator) shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan.

(b)    The individual's date of transfer shall be the first Entry Date for such individual on which he or she may become a Participant in the Plan, and the individual shall be eligible to have Salary Deferral Contributions made on his or her behalf as soon as administratively feasible on or after that Entry Date provided the individual has submitted the proper applications to the Plan Administrator or its agent, in accordance with Article IV.

(c)    For purposes of determining the individual's eligibility to receive a Matching Contribution under Sec. 5.1 for the calendar quarter in which the transfer occurs, the individual's service with WaMu recognized under subsection (a), above, will be included in determining whether the individual had at least one year of Vesting Service on the first day of the quarter. Any Matching Contribution for that quarter will be based only on Certified Compensation from Participating Employers and on Salary Deferral Contributions made to this Plan following the transfer.

WFC002839

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Barrington Associates**

Effective October 2, 2006, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Barrington Associates ("Barrington") is modified as follows:

If immediately prior to 12:01 a.m. on October 2, 2006, an individual was employed by Barrington and the individual became an employee of a subsidiary of Wells Fargo & Company immediately thereafter, the individual's continuous service with Barrington prior to October 2, 2006 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. October 2, 2006 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Barrington 401(k) Profit Sharing Plan that were transferred to this Plan as a result of the merger of the Barrington 401(k) Profit Sharing Plan into this Plan effective December 1, 2006. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of account under this Plan, except that the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account.

A-208

WFC002840

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Evergreen Funding Corporation**

Effective January 1, 2007, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Evergreen Funding Corporation ("Evergreen") is modified as follows:

If on December 15, 2006, an individual was an employee of Evergreen and the individual became an employee of a subsidiary of Wells Fargo & Company on that date, the individual's continuous service with Evergreen prior to December 15, 2006 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2007 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-209

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Placer Sierra Bancshares, its Subsidiaries and Previous Acquisitions

Effective July 1, 2007, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Placer Sierra Bancshares and its subsidiaries ("Placer") is modified as follows:

If immediately prior to 11:59 p.m. on June 1, 2007, an individual was an employee of Placer, the individual's continuous service with Placer prior to June 1, 2007, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 2007 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

The Placer Sierra Bank 401(k) Plan shall be merged into this Plan effective July 1, 2007. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant as a result of said merger. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

The Bank of Lodi 401(k) Plan shall be merged into this Plan effective February 1, 2008. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant as a result of said merger. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

The First Financial Bancorp 401(k) Profit Sharing Plan and Trust shall be merged into this Plan effective February 1, 2008. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant as a result of said merger. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

The Southwest Community Bank 401(k) Plan shall be merged into this Plan effective April 1, 2008. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant as a result of said merger. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

The accounts attributable to lost participants under the "Placer Savings Bank Employee Stock Ownership Plan and Trust" shall be transferred into the Plan effective July 25, 2012, and following the transfer, each lost participant in the Placer Savings Bank Employee Stock Ownership Plan and Trust shall be entitled to receive a benefit that is equal to the benefit the lost participant would have been entitled to receive from the Placer Savings Bank Employee Stock Ownership Plan and Trust immediately prior to the effective date of the transfer. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a lost Participant as a result of said transfer. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

WFC002842

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to CIT Group, Inc.**

Effective July 1, 2007, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by CIT Group, Inc. in the construction equipment financing division ("CIT") is modified as follows:

If on June 29, 2007, an individual was an employee of CIT and the individual became an employee of a subsidiary of Wells Fargo & Company on that date, the individual's continuous service with CIT prior to June 29, 2007 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 2007 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002843

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to JSL Administrators

Effective October 1, 2007, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by JSL Administrators ("JSL") is modified as follows:

If on October 1, 2007, an individual was an employee of JSL Administrators and the individual became an employee of a subsidiary of Wells Fargo & Company on that date, the individual's continuous service with JSL Administrators prior to October 1, 2007 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. October 1, 2007 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002844

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Rogers & Belding

Effective December 1, 2007, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Rogers & Belding ("Rogers") is modified as follows:

If on December 1, 2007, an individual was an employee of Rogers and the individual became an employee of a subsidiary of Wells Fargo & Company on that date, the individual's continuous service with Rogers prior to December 1, 2007 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. December 1, 2007 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-213

WFC002845

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to National City Bank

Effective December 8, 2007, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by National City Bank in three Quad City, Iowa branches acquired by Wells Fargo Bank, National Association on December 7, 2007 ("National City") is modified as follows:

If prior to 11:59 p.m. on December 7, 2007, an individual was an employee of National City in the Quad City, Iowa branches acquired by Wells Fargo and the individual became an employee of a subsidiary of Wells Fargo & Company on that date, the individual's continuous service with National City prior to December 8, 2007 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. December 8, 2007 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002846

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Universal Insurance Services, Inc.

Effective January 1, 2008, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Universal Insurance Services, Inc. ("Universal") is modified as follows:

If immediately prior to July 2, 2007, an individual was an employee of Universal, the individual's continuous service with Universal prior to July 2, 2007, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2008 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

The Universal Insurance Services, Inc. 401(k) Plan shall be merged into this Plan effective January 1, 2008. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant as a result of said merger. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

WFC002847

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Greater Bay Bancorp, its Subsidiaries

Effective January 1, 2008, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Greater Bay Bancorp and its subsidiaries ("Greater Bay") is modified as follows:

If immediately prior to 12:01 a.m. on October 1, 2007, an individual was an employee of Greater Bay, the individual's continuous service with Greater Bay prior to October 1, 2007, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2008 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

The Greater Bay Bancorp 401(k) Plan shall be merged into this Plan effective January 1, 2008. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant as a result of said merger. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan except that each transferred Greater Bay Bancorp 401(k) Plan Account shall be fully (100%) vested at all times.

The ABD Insurance and Financial Services Profit Sharing 401(k) Plan and Trust shall be merged into this Plan effective January 1, 2008. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant as a result of said merger. Each transferred Account shall be treated as though it were the corresponding type of Account under this Plan.

WFC002848

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Flatiron Credit Company, Inc.

Effective May 1, 2008, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Flatiron Credit Company, Inc. ("Flatiron") is modified as follows:

If immediately prior to 12:00 a.m. on May 1, 2008, an individual was employed by Flatiron and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:00 a.m. on May 1, 2008, the individual's continuous service with Flatiron prior to May 1, 2008 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. May 1, 2008 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002849

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Transcap Associates, Inc.

Effective June 28, 2008, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Transcap Associates, Inc. ("Transcap") is modified as follows:

If immediately prior to 11:59 a.m. on June 27, 2008, an individual was employed by Transcap and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:00 a.m. on June 28, 2008, the individual's continuous service with Transcap prior to June 28, 2008, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. June 28, 2008 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-218

WFC002850

## WELLS FARGO & COMPANY 401(k) PLAN

**Appendix Applicable to
United Bancorporation of Wyoming, Inc.
The Jackson State Bank & Trust
Shoshone First Bank
Sheridan State Bank
First State Bank of Pinedale
United Bank of Idaho**

Effective at 12:01 a.m. on July 1, 2008, Wells Fargo & Company acquired all of the capital stock of The Jackson State Bank & Trust, Shoshone First Bank, Sheridan State Bank and the First State Bank of Pinedale from United Bancorporation of Wyoming, Inc.

Effective at 12:01 a.m. on July 1, 2008, Wells Fargo Bank, N.A. acquired all of the assets and assumed all of the liabilities of United Bank of Idaho from United Bancorporation of Wyoming, Inc.

Effective July 1, 2008, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by United Bancorporation of Wyoming, Inc., The Jackson State Bank & Trust, Shoshone First Bank, Sheridan State Bank, First State Bank of Pinedale and United Bank of Idaho (collectively referred to as "UBW") is modified as follows:

If immediately prior to 12:01 a.m. on July 1, 2008, an individual was employed by UBW and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:01 a.m. on July 1, 2008, the individual's continuous service with UBW prior to July 1, 2008 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. July 1, 2008 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

The UBW 401(k) Plan shall be merged into this Plan effective July 1, 2008. A separate Account shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the UBW 401(k) Plan that were transferred to this Plan as a result of the merger of the UBW 401(k) Plan into this Plan effective July 1, 2008. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of account under this Plan, except that the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account.

WFC002851

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Lodi Employee Stock Ownership Plan
### (Merger of ESOP Into 401(k) Plan)

Placer Sierra Bank, a California corporation, acquired the Bank of Lodi, which sponsored two retirement plans known as the "Bank of Lodi 401(k) Plan" (the "Lodi 401(k) Plan") and the "Bank of Lodi Employee Stock Ownership Plan" (the "Lodi ESOP").

Placer Sierra Bank and its affiliates were acquired by Wells Fargo & Company on July 1, 2007.

Placer Sierra Bank consolidated with Wells Fargo Bank, N.A., on September 22, 2007, with the result that Wells Fargo Bank, N.A. became the successor sponsor of the Lodi ESOP.

Effective November 1, 2008, the Lodi ESOP shall be merged into the Wells Fargo & Company 401(k) Plan, following which merger each participant in the Lodi ESOP shall be entitled to receive a benefit that is equal to the benefit the participant would have been entitled to receive from the Lodi ESOP immediately prior to the effective date of the merger and which merger shall not result in any loss or reduction of any accrued benefits or optional forms of benefit to any participant in the Lodi ESOP except as permitted under the Internal Revenue code and the regulations thereunder.

WFC002852

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Farmers State Bank

Effective December 6, 2008, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Farmers State Bank ("Farmers") is modified as follows:

If immediately prior to 12:01 a.m. on December 6, 2008, an individual was employed by Farmers and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:01 a.m. on December 6, 2008, the individual's continuous service with Farmers prior to December 6, 2008 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. December 6, 2008 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002853

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to EMAR Group, Inc.

Effective January 1, 2009, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by EMAR Group, Inc. ("EMAR") is modified as follows:

If immediately prior to 12:01 a.m. on December 10, 2008, an individual was employed by EMAR and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:00 a.m. on December 10, 2008, the individual's continuous service with EMAR prior to December 10, 2008 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2009 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002854

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Century Bancshares, Inc.

Effective January 1, 2009, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Century Bancshares, Inc. ("Century") and its subsidiary, Century Bank, N.A., is modified as follows:

If immediately prior to 11:59 p.m. on December 31, 2008, an individual was employed by Century and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:00 a.m. on January 1, 2009, the individual's continuous service with Century prior to January 1, 2009 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2009 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

One or more Frozen Transferred Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's accounts in the Century Bank, N.A. Retirement Savings Plan that were transferred to this Plan as a result of the merger of the Century Bank, N.A. Retirement Savings Plan into this Plan effective January 1, 2009. Each such Frozen Transferred Account shall be treated as though it were the corresponding type of account under this Plan; except that the Participant or Beneficiary shall always be 100% vested in any such Frozen Transferred Account.

WFC002855

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to BridgeStreet Consulting Group

Effective March 1, 2009, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by BridgeStreet Consulting Group ("BridgeStreet") is modified as follows:

If immediately prior to 11:59 p.m. on February 28, 2009, an individual was employed by BridgeStreet and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 11:59 p.m. on February 29, 2009, the individual's continuous service with BridgeStreet prior to 11:59 p.m. on February 28, 2009, shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. March 1, 2009 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002856

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Capital TempFunds Consulting Group

Effective March 1, 2009, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Capital TempFunds ("Capital") is modified as follows:

If immediately prior to 11:59 p.m. on February 28, 2009, an individual was employed by Capital and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 11:59 p.m. on February 28, 2009, the individual's continuous service with Capital prior to February 28, 2009 shall be treated as if it were service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. March 1, 2009 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002857

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Wachovia Corporation

Effective December 31, 2009, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Wachovia Corporation or one of its subsidiaries (hereinafter called "Wachovia") is modified as follows:

If immediately prior to 11:59 p.m. on December 31, 2008, an individual was an employee of Wachovia and the individual became an employee of Wells Fargo & Company or a subsidiary thereof immediately after 12:00 a.m. on January 1, 2009, the individual's continuous service with Wachovia prior to December 31, 2008 shall be treated as if it were service with a Participating Employer in determining the individual's Service with a Participating Employer for purposes of Sec. 4.1 of this Plan and in determining the individual's Vesting Service under this Plan. January 1, 2010 shall be the first Entry Date on which an individual described in this paragraph may become a Participant in this Plan.

A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's Accounts in the Wachovia Savings Plan that were transferred to this Plan as a result of the merger of the Wachovia Savings Plan into this Plan effective December 31, 2009. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan; provided, however, that the Participant or Beneficiary shall always be 100% vested in any such transferred Account.

If an individual who is not described in the second paragraph of this Appendix but who was a participant in the Wachovia Savings Plan prior to January 1, 2010 is rehired as a Qualified Employee after December 31, 2009, the individual shall be deemed to have been a Participant in this Plan for purposes of Sec. 4.1(c)(1). If an individual who is not described in the second paragraph of this Appendix is rehired by a Participating Employer or an Affiliate on or after January 1, 2010, the individual's service with Wachovia prior to December 31, 2008 shall be included in the individual's Vesting Service for purposes of this Plan. Nothing in this paragraph of this Appendix shall result in duplicate credit being given for any period of service.

WFC002858

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to GMAC Commercial Finance**

Effective May 1, 2010, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by GMAC Commercial Finance ("GMACCF") is modified as follows:

If immediately prior to 12:01 a.m. on May 1, 2010, an individual was employed by GMACCF and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:01 a.m. on May 1, 2010, the individual's continuous service with GMACCF prior to May 1, 2010 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of this Plan, matching contribution, discretionary contribution and in determining the individual's Vesting Service under this Plan. May 1, 2010 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

WFC002859

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Kinney Agency, Inc.

Effective July 1, 2010, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Kinney Agency, Inc. ("Kinney Agency") is modified as follows:

If immediately prior to 12:01 a.m. on July 1, 2010, an individual was employed by Kinney Agency and the individual became an employee of a subsidiary of Wells Fargo & Company immediately after 12:01 a.m. on July 1, 2010, the individual's continuous service with Kinney Agency prior to July 1, 2010 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of this Plan, matching contribution, discretionary contribution and in determining the individual's Vesting Service under this Plan.  July 1, 2010 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

A-228

WFC002860

## WELLS FARGO & COMPANY 401(K) PLAN

### Appendix Applicable to Britt/Paulk Insurance Agency, Inc.

Effective January 1, 2011, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons employed by Britt/Paulk Insurance Agency, Inc. ("Britt Paulk") is modified as follows:

If immediately prior to 12:01 a.m. on January 1, 2011, an individual was employed by Britt Paulk and the individual continued in employment with Britt Paulk immediately after 12:01 a.m. on January 1, 2011, the individual's continuous service with Britt Paulk prior to January 1, 2011 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of this Plan, matching contribution, discretionary contribution and in determining the individual's Vesting Service under this Plan. January 1, 2011 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in this Plan.

The Britt/Paulk Insurance Agency, Inc. 401k Plan shall be merged into this Plan effective April 1, 2010. A separate Account or Accounts shall be established under Sec. 7.1 to hold any assets allocated to a Participant's Accounts in the Britt/Paulk Insurance Agency, Inc. 401k Plan that are transferred to this Plan as a result of the merger of the Britt/Paulk Insurance Agency, Inc. 401k Plan into this Plan. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan; provided, however, that the Participant or Beneficiary shall always be 100% vested in any such transferred Account.

WFC002861

# WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to merger of the A.G. Edwards, Inc.
### Retirement and Profit Sharing Plan

The A.G. Edwards, Inc. Retirement and Profit Sharing Plan ("A.G. Plan") shall be merged into this Plan effective July 1, 2011. Separate Accounts shall be established under Sec. 7.1 to hold any assets allocated to a participant in the A.G. Plan that were transferred to this Plan as a result of said merger. Each such transferred Account shall be treated as though it were the corresponding type of Account under this Plan. The participant (or Beneficiary following the death of the participant) shall always be 100% vested in any such transferred Account. A.G. Plan participants who commenced installment distributions prior to July 1, 2011, may continue to receive installment distributions from this Plan in accordance with the terms of the A.G. Plan that related to payment of installments which were in existence at the time the installments commenced, except to the extent a provision in this Plan is required to apply to such individual in order to maintain the qualified status of this Plan under the Code or applicable regulations. Any A.G. Plan participant who had not commenced installment distributions prior to July 1, 2011, shall be subject to the distribution rules under this Plan. The transferred Accounts shall be subject to the provisions of this Plan, except with respect to the terms of any installment distributions, which commenced prior to July 1, 2011.

Any outstanding participant loans in the A.G. Plan shall be transferred to this Plan. The transferred loans shall be subject to their original terms, except default of a transferred loan shall only occur in accordance with Sec. 9.4 of this Plan. For purposes of Sec. 9.4(e) of this Plan, the transferred loans will count toward the maximum three outstanding loans under this Plan, however, if an A.G. Plan participant has both transferred loans and loans from this Plan that were taken out prior to July 1, 2011 and the total of the loans exceeded three as of July 1, 2011, the participant will be entitled to continue to pay back the total loans but the participant will not be able to receive any new loans until the total loans are less than three. Effective January 1, 2019, such a participant will not be able to receive any new loans until the total loans are less than two.

WFC002862

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Castle Pines Capital LLC

Effective July 1, 2011, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Castle Pines Capital LLC ("Castle Pines") is modified as follows:

If immediately prior to 12:01 a.m. on July 1, 2011, an individual was employed by Castle Pines, the individual's continuous service with Castle Pines prior to July 1, 2011 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. July 1, 2011 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002863

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Edify, LLC

Effective July 1, 2011, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Edify, LLC ("Edify") is modified as follows:

If immediately prior to 12:01 a.m. on July 1, 2011, an individual was employed by Edify, the individual's continuous service with Edify prior to July 1, 2011 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. July 1, 2011 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002864

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to Foreign Currency Exchange Corporation

Effective August 1, 2011, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Foreign Currency Exchange Corporation ("FCE") is modified as follows:

If immediately prior to 12:01 a.m. on August 1, 2011, an individual was employed by FCE, the individual's continuous service with FCE prior to August 1, 2011 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. August 1, 2011 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002865

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Stetson - Beemer & Co.**

Effective September 1, 2011, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Stetson - Beemer & Co. ("Stetson-Beemer") is modified as follows:

If immediately prior to 12:01 a.m. on September 1, 2011, an individual was employed by Stetson-Beemer, the individual's continuous service with Stetson-Beemer prior to September 1, 2011 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. September 1, 2011 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

A-234

WFC002866

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to LaCrosse Global Fund Services, LLC**

Effective December 1, 2011, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by LaCrosse Global Fund Services, LLC ("LaCrosse") is modified as follows:

If immediately prior to 11:59 p.m. on November 30, 2011, an individual was employed by LaCrosse, the individual's continuous service with LaCrosse prior to December 1, 2011 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. December 1, 2011 shall be the first Entry Date on which an individual described in the Appendix may become a Participant in the Plan.

A-235

WFC002867

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to EverKey Global Management LLC**

Effective January 1, 2012, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by EverKey Global Management LLC ("EverKey") is modified as follows:

If immediately prior to 12:01 a.m. on January 1, 2012, an individual was employed by EverKey, the individual's continuous service with EverKey prior to January 1, 2012 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. January 1, 2012 shall be the first Entry Date on which an individual described in the Appendix may become a Participant in the Plan.

WFC002868

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to BNP Paribas

Effective April 21, 2012, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by BNP Paribas ("BNP") is modified as follows:

If immediately prior to 12:01 a.m. on April 21, 2012, an individual was employed by BNP, the individual's continuous service with BNP prior to April 21, 2012 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. April 21, 2012 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002869

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Merlin Securities, LLC**

Effective August 1, 2012, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Merlin Securities, LLC ("Merlin") is modified as follows:

If immediately prior to 12:01 a.m. on August 1, 2012, an individual was employed by Merlin, the individual's continuous service with Merlin prior to August 1, 2012 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. August 1, 2012 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002870

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Doherty Employment Group, Inc.**

Effective January 1, 2013, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Doherty Employment Group, Inc. ("Doherty") is modified as follows:

If immediately prior to 12:01 a.m. on January 1, 2013, an individual was employed by Doherty, the individual's continuous service with Doherty prior to January 1, 2013 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. January 1, 2013 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002871

# WELLS FARGO & COMPANY 401(k) PLAN

## Appendix Applicable to Helm Financial Corporation

Effective April 16, 2014, the Wells Fargo & Company 401(k) Plan ("Plan"), as applicable to persons employed by Helm Financial Corporation ("Helm") is modified as follows:

If immediately on or before 12:01 a.m. on April 16, 2014, an individual was employed by Helm, the individual's continuous service with Helm prior to April 16, 2014 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. April 16, 2014 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002872

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to General Electric Capital Corporation (GE Rail)**

     Effective January 1, 2016, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to certain persons formerly employed by General Electric Capital Corporation ("GE") and its affiliates is modified as follows:

     If an individual was a "Transferred Employee" or "Inactive Business Employee" as of the "Expiration Date" or, if later, the "Employment Commencement Date" for a person who was an "Inactive Business Employee" (as communicated by the Participating Employer to the Plan Administrator), the individual's continuous service with GE, its affiliates and their respective predecessors prior to the Expiration Date or Employment Commencement Date (as applicable) shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan..  The Expiration Date or an individual's Employment Commencement Date (as applicable) shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

A-241

WFC002873

## WELLS FARGO & COMPANY 401(k) PLAN

### Appendix Applicable to General Electric Capital Corporation

Effective January 1, 2016, the Wells Fargo & Company 40l (k) Plan (the "Plan"), as applicable to persons formerly employed by General Electric Capital Corporation ("GE") and its affiliates is modified as follows:

If an individual was a "U.S. Transferred DLL Employee" or a "U.S. Transferred CDF/Vendor Employee" as of that person's "Employment Commencement Date" (as communicated by the Participating Employer to the Plan Administrator), the individual's continuous service with GE and its affiliates prior to that individual's Employment Commencement Date shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. An individual's Employment Commencement Date shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002874

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Analytic Investors, LLC**

     Effective October 1, 2016, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Analytic Investors, LLC ("Analytic Investors ") is modified as follows:

     If immediately prior to 12:01 a.m. on October 1, 2016 an individual was employed by Analytic Investors, the individual's continuous service with Analytic Investors prior to October 1, 2016 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. October 1, 2016 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002875

**WELLS FARGO & COMPANY 401(k) PLAN**

**Appendix Applicable to Golden Capital Management, LLC**

Effective July 1, 2017, the Wells Fargo & Company 401(k) Plan (the "Plan"), as applicable to persons formerly employed by Golden Capital Management, LLC ("Golden Capital") is modified as follows:

If immediately prior to 12:01 a.m. on July 1, 2017 an individual was employed by Golden Capital, the individual's continuous service with Golden Capital prior to July 1, 2017 shall be treated as if it were service with a Participating Employer for purposes of Section 4.1 of the Plan and in determining the individual's Vesting Service under the Plan. July 1, 2017 shall be the first Entry Date on which an individual described in this Appendix may become a Participant in the Plan.

WFC002876

**Exhibit I**

**WELLS FARGO & COMPANY 401(k) PLAN**

**Procedures Regarding Domestic Relations Orders**
**(Effective January 1, 2020)**

This Exhibit I constitutes the Procedures that are to be used to (1) determine whether domestic relations orders submitted to the Wells Fargo & Company 401(k) Plan ("Plan") meet the requirements of a qualified domestic relations order (QDRO), as defined within the meaning of ERISA section 206(d)(3) and Code section 414(p) and (2) administer distributions under such qualified orders.

For purposes of these Procedures, a final domestic relations order ("Order") is defined as any final judgment, decree, or order (including approval of a property settlement agreement) issued or approved by a court or other state authority pursuant to state domestic relations or community property law, which relates to the provision of child support, alimony payments, or marital property rights of a Spouse, former Spouse, child, or other dependent of a Participant.

All domestic relations orders should be directed to the Plan Administrator at the following address:

> Wells Fargo & Company 401(k) Plan Administrator
> Wells Fargo & Company
> MAC N9310-110
> 550 South 4th Street
> Minneapolis, MN 55415-1529

1.  Receipt of a proposed or draft DRO

    1.1  The Plan Administrator may, in its discretion, review proposed or draft domestic relations orders (DROs) presented to it by a party before the DRO has been executed by the court or other relevant authority, and respond advising as to whether the DRO would be acceptable. However, any such DRO is not a final Order, and there is no requirement or deadline to review these DROs, and no advice given by the Plan Administrator regarding the potential acceptability of the DRO is binding on the Plan.

    Upon receipt of a proposed or draft DRO, the Plan Administrator may, in its discretion, place an administrative hold on the Participant's Plan Accounts so that no distributions, withdrawals or loans can be made until after the Plan Administrator receives a final Order and has determined in accordance with these Procedures whether the Order is or is not a QDRO. If the Plan Administrator does not receive a final Order within 12 months from the date that the Plan Administrator reviewed and responded to the proposed or draft DRO, or received written communication within the 12-month period described above that a final Order will be submitted to the Plan Administrator within a reasonable time, the administrative hold on the Participant's Accounts may be removed.

2.  Receipt of an Order

    2.1  Upon receipt of a final Order, as defined above for the purposes of these Procedures, the Plan Administrator will promptly notify the Participant with respect to whom the Order is made and any "alternate payee" of the Participant's Accounts as specified in the current Order or in any previous Order, of the receipt of the Order; see section 2.3 for additional information.

E.I-1

WFC002877

2.2    The notice will be sent to the Participant and alternate payee at their respective addresses, as specified in the Order, and will include a copy of the Order and these Procedures. The notice will provide the Participant and alternate payee 30 days from the date of the notice to furnish to the Plan Administrator any additional information that could be relevant to the determination of whether the Order meets the requirements of a QDRO. The 30-day period may be waived if both the Participant and the alternate payee provide written, signed and notarized statements that waive or disclaim their rights to this comment period and their statements are approved by the Plan Administrator.

2.3    Both the Participant and alternate payee have the right to designate authorized representatives to receive copies of notices that are sent by the Plan Administrator with respect to an Order. If representatives for the parties are designated in the Order, copies of notices will be provided to those representatives. If the Plan Administrator receives an Order that does not specify authorized representatives, but is received from a representative, i.e., an attorney who has prepared the Order on behalf of the parties, that representative will be provided copies of notices related to the Order. Notwithstanding the above, either party may designate a representative to receive copies of notices by providing the Plan Administrator the name and contact information of the authorized representative.

2.4    A copy of any Order and all correspondence relating to an Order, including name and address changes for the Participant, alternate payee, and their authorized representatives for the purposes of this Order, should be directed to the Plan Administrator at the following address:

> Wells Fargo & Company 401(k) Plan Administrator
> Wells Fargo & Company
> MAC N9310-110
> 550 South 4th Street
> Minneapolis, MN  55415-1529

2.5    Administrative holds on the Participant's benefit under the Plan will be administered as described below:

(a)    Upon receipt of an Order, the Plan Administrator will put an administrative hold on the Participant's Accounts so that no distributions, withdrawals or loans can be made from the Plan. Such administrative hold shall serve as an indication of an alternate payee's potential interest in the Plan. Distribution of benefits not currently in payment status shall be restricted. The Participant will, however, be entitled to change investment elections, investment fund allocations, deferral percentages, and designate or change their beneficiary while the administrative hold is in effect. Upon receipt of any of the additional documents referred to below (the "Additional Documents"), the Plan Administrator may, in its discretion, place an administrative hold on the Participant's Accounts:

(1)    Written notification of a potential claim on the Participant's Plan Account submitted by a potential alternate payee, the Participant or their respective representatives.

(2)    Receipt of a proposed or draft DRO, a decree of divorce, a property settlement agreement or other document that indicates an ex-spouse, spouse, or child was or may be awarded an interest in the Plan.

WFC002878

     (b)     Upon the Plan Administrator's receipt of one of the following documents, any administrative hold that has been placed on a Participant's Plan Accounts shall be removed:

          (1)     A divorce decree, judgment, or property settlement agreement that unambiguously provides that the Participant be awarded all of his or her interest in the Plan.

          (2)     An Order that determines that a QDRO and a separate account or benefit has been established for the alternate payee.

          (3)     A subsequent court order that has vacated or terminated the QDRO.

          (4)     A written, signed and notarized statement from the alternate payee that waives or disclaims, in a manner satisfactory to the Plan Administrator, his/her interest in the Participant's benefit under the Plan. Waiver or disclaimer by an alternate payee or potential alternate payee in accordance with the preceding sentence shall only be accepted if a QDRO has not been received by the Plan. If a QDRO exists, the QDRO must be vacated or terminated before the hold will be released.

          (5)     Such other notices, documents, or information that the Plan Administrator determines are acceptable.

In addition, any administrative hold that has been placed on a Participant's Accounts upon receipt of one of the Additional Documents referred to in Section 2.5(a) above may be removed if the Plan Administrator does not receive a final Order or any of the documents listed above within 12 months from the date that the Plan Administrator reviewed and responded to the Additional Document.

3.    <u>Determination of qualified status of Order</u>

3.1    Within a reasonable period after the 30-day period indicated in section 2.2, the Plan Administrator will determine whether the Order is a QDRO within the meaning of ERISA section 206(d)(3) and Code section 414(p). Until otherwise prescribed by Treasury or Department of Labor (DOL) regulations, such reasonable period will ordinarily be the 90-day period immediately following the 30-day period (a total of 120 days). During this period, while the Plan Administrator is determining whether the Order is a QDRO, the Plan Administrator will separately account for the amounts that would be payable to an alternate payee under the terms of the Order during such period as if the Order had been determined to be a QDRO. If special circumstances require an extension of the time necessary to determine whether the Order is a QDRO, the 120-day period can be extended. This will be done by notifying the Participant, any alternate payee, and any representative of an alternate payee designated to receive notices, of the extension and the special circumstances requiring the extension at the respective addresses included in the Order. The total period within which the Plan Administrator will process the Order, inclusive of the preceding activities in this section, will not exceed 18 months from the first date that the Order would require payment to the alternate payee ("18-month review period").

3.2    The Plan Administrator will determine whether an Order is a QDRO in accordance with the following:

WFC002879

(a)    To be a QDRO, the Order must award an alternate payee all or a portion of a Participant's Accounts under the Plan. The "alternate payee" may be the Spouse, former Spouse, child, or other dependent of the Participant. No party other than a Spouse, former Spouse, child, or other dependent of the Participant may be an alternate payee. (For example, a state welfare agency or a divorce attorney cannot be an alternate payee.) However, for clarity, the Order may name a state child support enforcement agency and others as the guardian or agent of the alternate payee with authority to receive payments on behalf of the alternate payee.

(b)    To be a QDRO, the Order must also specify all of the following:

   (1)    Name and address of the Participant and of each alternate payee covered by the Order. However, if the Plan Administrator has reason to know any such address, failure of the Order to provide such address will not prevent the Order from being determined to be a QDRO. The Plan Administrator will also require the Social Security numbers and birthdates of the Participant and each alternate payee to segregate each alternate payee's Plan Account once the Plan Administrator determines that the Order is a QDRO. The only exception is where the alternate payee is a minor child. The Participant and each alternate payee in that case can provide the information to the Plan Administrator in writing, such as in an addendum that is not filed with the court or in a cover letter.

   (2)    The amount or percentage of the Participant's Accounts to be paid by the Plan to each alternate payee, or the manner in which such amount or percentage is to be determined. Any award amount that is based on a percentage of the Participant's Accounts must be provided in whole numbers, (i.e., 50.8% would not be acceptable).

   (3)    The full name of the Plan to which the Order applies: Wells Fargo & Company 401(k) Plan.

(c)    An Order is not a QDRO if it does any of the following:

   (1)    Requires the Plan to provide any type or form of benefit, or any option, not otherwise provided under the Plan.

   (2)    Requires the Plan to provide increased benefits. For example, a QDRO may not require payment of benefits that are not vested at the time of distribution.

   (3)    Requires the payment of benefits to an alternate payee that is required to be paid to another alternate payee under another Order previously determined to be a QDRO.

(d)    To be a QDRO, the Order should provide for the following matters, where applicable:

   (1)    If the Participant's Plan Accounts are to be divided, the date as of which the value of the Participant's Plan Account is determined for division should be specified as the "Division Date". The Division Date cannot be

WFC002880

earlier than two years prior to the date the Plan Administrator receives the Order. If no date is specified, the Plan Administrator will not disqualify the Order and the Division Date shall be the date the Plan Administrator receives the Order.

(2)     The Order must provide whether or not the alternate payee's Account should be credited with earnings (gains or losses) between the Division Date and the date the alternate payee's Account is segregated ("Segregation Date") from the Participant's Plan Account. If the Order is silent, the alternate payee's Account will be adjusted to reflect a pro rata share of the earnings (gains or losses) on the Participant's Accounts from the Division Date to the Segregation Date.

(3)     If the Participant has several Plan Accounts (contribution sources, i.e., pre-tax, Roth, etc.), the Order should provide that the alternate payee will receive a pro rata portion of each of the Participant's Plan Accounts. The alternate payee's pro rata share of contribution sources is determined on the Segregation Date. If the Order is silent with regards to this provision, the Plan Administrator will not disqualify the Order, and the alternate payee will receive a pro rata portion of each of the Participant's Plan Accounts as of the Segregation Date. The only exception allowed will be the treatment of any outstanding loans, as described in section (5) below.

(4)     The Order should provide that the investments held in the Participant's Plan Accounts that are to be segregated must be divided between the Participant and the alternate payee on a pro rata basis. The alternate payee's pro rata share of investments is determined on the Segregation Date. If the Order is silent with regard to this provision, the Plan Administrator will not disqualify the Order, and the pro rata division of the investments on the Segregation Date will be used. The only exception allowed will be the treatment of any outstanding loans, as described in section (5) below.

(5)     If the Participant has an outstanding loan from the Plan, the Order should indicate whether or not the Participant's vested Accounts should be reduced by the outstanding loan balance as of the Division Date in order to determine the amount of the alternate payee's segregated Account. If the Order is silent, the Participant's Accounts will not be reduced by the outstanding loan balance as of the Division Date in order to determine the amount of the alternate payee's segregated Account. Notwithstanding the foregoing, the amount of the award to the alternate payee shall not exceed 100% of the Participant's vested Accounts minus the value of any outstanding loan as of the Division Date ("net vested account"). If the amount awarded to the alternate payee exceeds 100% of the Participant's net vested account as of the Division Date, the amount of the award to the alternate payee shall be automatically reduced to not exceed that amount. In addition, any outstanding loan on or after the Division Date shall be allocated solely to the Participant, and payments of principal and interest on any such loan after the Division Date shall be allocated to the Participant's remaining benefit under the Plan.

WFC002881

(6)    Prior to the segregation of the alternate payee's Account, the Participant retains the right to direct the investments in their Plan Account. Upon segregation and establishment of the alternate payee's Plan Account, the alternate payee's award will be initially invested according to the Participant's investment elections on the Segregation Date. Once the segregation has been completed, the alternate payee will receive instructions to access their Plan Account. The alternate payee will be solely responsible for directing the investments of their Plan Account. Notwithstanding the aforementioned, if the alternate payee is a minor child or is not legally capable of entering into agreements, the Order must specify a person or child support agency as responsible to exercise the right of the minor child or provide a procedure for determining who will direct these rights.

(7)    The Order may require that the alternate payee will receive their Account in the form of a lump sum distribution, as soon as administratively feasible after the Plan Administrator has determined that the Order is a QDRO, in accordance with Plan procedures. However the alternate payee is required to initiate any distribution from their Plan Account, unless the alternate payee is a minor child. In that instance, the distribution to the minor is required to be initiated by the child support agency or a person designated in the Order as being responsible to exercise the rights of the minor child, as described in section (6) above.

(8)    The Order may require that payment be made to an alternate payee in any benefit form otherwise available under the Plan to the Participant with the exception of certain annuities. A lump sum distribution is always allowed. If the alternate payee's total Account balance is less than the minimum Account balance allowed under the Plan, then the alternate payee's total Account balance will be distributed to the alternate payee in a lump sum automatically, according to Plan procedures at that time, after the Order is determined to be a QDRO and the segregation of the Participant's Plan Account is completed.

(e)    If deemed necessary by the Plan Administrator in determining the qualified status of an Order, the Plan Administrator may refer the matter to legal counsel for the Plan to render advice as to whether or not the Order is a QDRO. Such referral may be a special circumstance requiring an extension of time pursuant to section 3.1.

3.3    Upon determining whether or not an Order is a QDRO, the Plan Administrator will notify the Participant, the alternate payee, and any authorized representative designated by either party to receive notices of the determination at the respective addresses indicated in the Order.

3.4    If it is determined that the Order is not a QDRO, the notice will include the reasons for the determination. The Plan Administrator will issue a tentative, adverse determination regarding the status of the Order to give the parties additional time to address the deficiencies in the Order. If the parties do not submit a revised Order within 90 days following the tentative, adverse determination, the Plan Administrator's tentative, adverse determination of the Order will become final and the administrative hold on the Participant's Account will be lifted. Any payments otherwise due and payable to the Participant will not be delayed and the Participant

WFC002882

may request a distribution or loan based on the Participant's Account (to the extent distributions or loans are available under the Plan). For clarity, the DOL provides the Plan Administrator a maximum of 18 months from the first date after the Plan received the Order to determine if an Order is a QDRO. However, the maximum 18-month review period ends when the Plan Administrator makes its final determination on the status of the Order, even if the 18-month period has not yet expired. If another Order is received after the earlier of 90 days immediately following adverse determination or the original 18-month review period, it will be treated as a new Order. (See DOL publication; "QDROs: The Division of Retirement Benefits Through Qualified Domestic Relations Orders" Q&A 2-13.)

3.5    If deemed appropriate by the Plan Administrator, the Plan Administrator may give the notice described in section 3.3 or 3.4 at the same time as the notice described in section 2.

3.6    If an Order is determined to be a QDRO, the Participant or the alternate payee can submit a new Order amending the previous QDRO, as long as such amended Order is provided to the Plan Administrator prior to the Segregation Date of the Participant's Plan Account to the alternate payee under the original QDRO. If an amended Order is submitted prior to the Segregation Date under the original QDRO, the Plan Administrator will complete its review of the subsequently filed Order, in accordance with this Procedure.

4.    <u>Benefits payable while qualified status is being determined</u>

4.1    During any period in which the decision as to whether or not an Order is a QDRO is being determined by the Plan Administrator, any amount that would be payable to the alternate payee during such period if the Order had been determined to be QDRO ("segregated amounts") will be separately accounted for and will not be made available to the Participant.

4.2    If the Order is determined to be a QDRO within 18 months after the date on which the first payment would be allowed under the QDRO, the segregated amounts, including any earnings (gains or losses) thereon, will be paid to the person or persons entitled to receive them under the QDRO.

4.3    If the Order is not determined to be a QDRO within the 18-month period, the segregated amounts, including any earnings (gains or losses) thereon, will be paid to the person or persons who would have received the amounts if the Order had not been issued, if any, and otherwise shall remain in the Participant's Accounts. If after the 18-month period the Order is determined to be a QDRO, the Plan will not be liable for payments to the alternate payee for the period before the Order was determined to be a QDRO, or for any amounts that have been paid to anyone else during that period.

4.4    Notwithstanding sections 3.2, 4.1, 4.2 and 4.3, once an administrative hold is placed on the Participant's Account as a result of a pending Order, and the Participant had elected to receive cash payment of dividends on shares of Company Stock pursuant to Section 10.18 of the Plan, the election will be automatically changed to dividend reinvestment until after the alternate payee's Account has been established. If the Order provides or is deemed to provide that the alternate payee's Account shall be credited with earnings (gains or losses), dividends reinvested that are attributable to the portion of Company Stock held in the Participant's Account that is to be segregated under Sections 4.1 through 4.3, shall be credited to the alternate payee's Account.

E.I-7

WFC002883

5.    Administration after QDRO segregation

    5.1    If an Order is determined to be a QDRO, any alternate payee under the QDRO is considered a "beneficiary" under the Plan for purposes of ERISA. The Plan Administrator will provide the alternate payee with any notices or statements to which a beneficiary is entitled under ERISA. Reference to "beneficiary" in this section pertains to the alternate payee as a beneficiary of the QDRO and does not indicate the beneficiary (i.e. person(s), charity, trust or estate) to receive the Plan benefits in case of death of the Participant or alternate payee.

    5.2    If a new proposed/draft DRO or an amended Order for the original Participant and Alternate Payee is received after the Segregation Date of a QDRO, the Plan Administrator will complete its review of the subsequently filed Order, in accordance with this Procedure. However the administrative holds described in sections 1.1 and 2.5 would apply to both the Participant and alternate payee's Accounts.

E.I-8

WFC002884

**Exhibit II**

**WELLS FARGO & COMPANY 401(k) PLAN**

**Claims Procedure**
**(Effective January 1, 2019, except where otherwise specified)**

The following procedures will be used to review claims for benefits and any other claims filed by Participants or other individuals under ERISA with respect to the Plan:

1.  Participant's Duty to Review Information

    1.1   The Participant will receive periodic information regarding his or her Plan benefits (benefit statements, etc.). After the Participant's Termination of Employment, the Participant will receive information about his or her vested benefit and the time and manner in which it can be paid.

    1.2   The Participant is responsible for promptly reviewing any information he or she receives regarding the Plan. If the Participant has any questions, or if the Participant believes the information is incorrect in any way, the Participant must notify the Plan Administrator within 60 days after receiving the information. Most such inquiries will be resolved informally, and the initial inquiry is not considered to be a formal claim under the terms of the Plan.

2.  Claims and Appeals

    2.1   If the Participant believes there is an error in his or her Account or in a distribution, believes he or she is entitled to different benefits from the Plan, or disagrees with any determination that has been made reflecting the Participant's benefits under the Plan, the Participant (or the Participant's authorized representative) may present a claim in writing for a review. The Participant's written claim should explain, as best he or she can, what the Participant wants and why the Participant believes he or she is entitled to it, and should include copies of any relevant documents. The Participant should specifically designate the claim as a "claim for benefits." The Participant should sign and submit the claim by mail or in person to the following address:

    > Wells Fargo & Company 401(k) Plan Administrator
    > Wells Fargo & Company
    > MAC N9310-110
    > 550 South 4th Street
    > Minneapolis, MN  55415

3.  Initial Review

    3.1   Ordinarily, the Plan Administrator will respond to a claim within 90 days after receiving it. The Participant will receive either:
    - A decision; or
    - A notice describing special circumstances requiring a specified amount of additional time (but no more than 180 days from the day the Participant delivered the claim) to reach a decision.

E.II-1

WFC002885

3.2   If the Participant's claim is fully or partially denied, the Participant will receive a written notice specifying:

- The reasons for the denial;
- The Plan provisions on which the denial is based; and
- Any additional information needed from the Participant in connection with the claim and the reason such information is needed.

The Participant will also receive information about his or her right to request a review.

4.   <u>Appealing a Decision</u>

4.1   If the Participant does not agree with the Plan Administrator's decision and the Participant wants to pursue the matter further, the Participant (or the Participant's authorized representative) must request that the decision be reviewed by the Plan Administrator by filing a written request for review within 60 days after receiving the notice that the claim has been denied. The Plan Administrator reserves the right to delegate its authority to review appeals.

4.2   The Participant's written appeal should describe all reasons why he or she believes the claim denial was in error, and should include copies of any documents the Participant wants considered in support of the appeal. The appeal will be decided based on the information in the file, so the Participant should make sure that the submission is complete. The Participant may request copies of (or reasonable access to) all pertinent Plan documents and other information relevant to the claim for benefits, free of charge. The Participant (or the Participant's authorized representative) may also present written statements explaining why the Participant believes he or she is entitled to the benefits claimed and any other information that supports the claim.

4.3   Generally, appeals will be reviewed within 60 days of receipt. However, if special circumstances require a delay, the review may take up to 120 days. The Participant will receive written notice of any delay. A decision regarding the appeal will be in writing and will specify the Plan provisions on which the decision is based.

4.4   All decisions of the Plan Administrator are binding and conclusive on all parties. The Participant does, however, have the right to bring a civil action under Section 502(a) of ERISA following an adverse decision on an appeal. If the Participant does not receive a decision within the specified time, the Participant should assume that the claim or appeal was denied on the date the specified time expired. The Participant may, at his or her own expense, have an attorney or other representative act on the Participant's behalf, but the Plan Administrator reserves the right to require a written authorization.

5.   <u>Claims Based on Disability</u>

5.1   In general, the foregoing rules that apply to claims for benefits and review of claims also apply to claims for benefits and the review of claims for benefits based on disability. There are, however, certain different time frames and rules that apply to claims for benefits based on disability (other than disability determinations that have been made by the Social Security Administration):

E.II-2

WFC002886

- The time period for responding to a claim is shortened from 90 days to 45 days. The time to respond may be extended by 30 days and then an additional 30 days.

- The Participant must file the request for review within 180 days after the date the Participant received notice that the claim had been denied. The time period for responding to the claim is shortened from 60 to 45 days. The time to respond may be extended by 45 days.

- If a claim decision involving disability is based on medical judgment, when an appeal is filed, the Plan will consult with a health care professional who was not involved in the original decision and is not subordinate to the original decision maker.

- Effective April 1, 2018, before the Plan issues an adverse benefit determination on review on a disability benefit claim, the Plan Administrator shall provide the Participant, free of charge, with any new or additional evidence considered, relied upon, or generated by the Plan, insurer, or other person making the benefit determination (or at the direction of the Plan, insurer or such other person) in connection with the claim. Such evidence will be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided to give the Participant a reasonable opportunity to respond prior to that date.

- Effective April 1, 2018, before the Plan issues an adverse benefit determination on review on a disability benefit claim based on a new or additional rationale, the Plan Administrator shall provide the Participant, free of charge, with the rationale; the rationale will be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided to give the Participant a reasonable opportunity to respond prior to that date.

- Responses to claims for disability benefits under this Plan will conform to the applicable content and timing requirements in 29 CFR 2560.503-1.

If a claim for benefits relates to a disability, the Participant should contact the Plan Administrator for more information.

6. <u>Deadline for Legal Action</u>

6.1    Any lawsuit challenging a claim denial must be commenced within six months after the date on the denial letter. In addition to that six month deadline, there is an additional "catch-all" limitation that applies to all lawsuits involving Plan benefits. Any such lawsuit must be commenced no later than two years after the Participant or other claimant first receives information that constitutes a clear repudiation of the rights the individual seeking to assert. This two-year limitation period will not run during the period of time, if any, when the claim is in the claims procedure process. Once that process is completed, however, the two year period will continue running where it left off.

E.II-3

WFC002887

**Exhibit III**

**WELLS FARGO & COMPANY 401(k) PLAN**

**Vesting Modifications**

<u>2016 Modifications</u>

Rural Community Insurance Agency, Inc. -- divestiture closed, and Participants employed by this entity were 100% vested in their Plan Accounts, on March 31, 2016.

Peregrine Capital Management, LLC -- divestiture closed, and Participants employed by this entity were 100% vested in their Plan Accounts, on August 31, 2016.

Bryan, Pendleton, Swats & McAllister, LLC -- divestiture closed, and Participants employed by this entity were 100% vested in their Plan Accounts, on September 30, 2016.

Wells Fargo Global Fund Services, LLC -- divestiture closed, and Participants employed by this entity were 100% vested in their Plan Accounts, on December 1, 2016.

<u>2017 Modifications</u>

Wells Fargo Insurance Services USA, Inc. -- divestiture closed, and Participants employed by this entity were 100% vested in their Plan Accounts, on November 30, 2017.

Safehold Special Risk, Inc. -- divestiture closed, and Participants employed by this entity were 100% vested in their Plan Accounts, on November 30, 2017.

<u>2019 Modifications</u>

Eastdil Secured, L.L.C. – divestiture closed on October 1, 2019 and Participants employed by this legal entity became 100% vested in their Plan Accounts on October 1, 2019.

E.II-1

WFC002888

**WELLS FARGO & COMPANY**
**401(k) PLAN**

**(As Amended and Restated Effective January 1, 2020)**

WFC002889

# WELLS FARGO & COMPANY
## 401(k) PLAN

## TABLE OF CONTENTS

**ARTICLE I  GENERAL**................................................................................................................1

Sec. 1.1  Name of Plan.................................................................................................................1
Sec. 1.2  Purpose...........................................................................................................................1
Sec. 1.3  History of Plan..............................................................................................................1
Sec. 1.4  Construction and Applicable Law............................................................................1
Sec. 1.5  Benefits Determined Under Provisions in Effect at Termination of Employment.....1
Sec. 1.6  Effective Date of Document.......................................................................................1

**ARTICLE II  MISCELLANEOUS DEFINITIONS**.......................................................................3

Sec. 2.1  Account...........................................................................................................................3
Sec. 2.2  Active Participant.........................................................................................................3
Sec. 2.3  Affiliate..........................................................................................................................3
Sec. 2.4  Alternate Payee............................................................................................................3
Sec. 2.5  Before-Tax Contributions..........................................................................................3
Sec. 2.6  Beneficiary....................................................................................................................3
Sec. 2.7  Board..............................................................................................................................5
Sec. 2.8  Catch-up Contributions..............................................................................................5
Sec. 2.9  Certified Compensation..............................................................................................5
Sec. 2.10  Code..............................................................................................................................7
Sec. 2.11  Common Control........................................................................................................7
Sec. 2.12  Company.......................................................................................................................8
Sec. 2.13  Company Representative...........................................................................................8
Sec. 2.14  Company Stock............................................................................................................8
Sec. 2.15  Disabled or Disability................................................................................................8
Sec. 2.16  Domestic Partner........................................................................................................8
Sec. 2.17  Early Participant.........................................................................................................9
Sec. 2.18  Effective Date.............................................................................................................9
Sec. 2.19  Employee Benefit Review Committee....................................................................9
Sec. 2.20  Employer Discretionary Contributions..................................................................9
Sec. 2.21  Employer Matching Contributions.........................................................................9
Sec. 2.22  Employment Commencement Date.........................................................................9
Sec. 2.23  Entry Date.................................................................................................................10
Sec. 2.24  ERISA.........................................................................................................................10
Sec. 2.25  Excess Deferrals.......................................................................................................10
Sec. 2.26  Exempt Loan.............................................................................................................10
Sec. 2.27  Frozen Transferred Account...................................................................................10
Sec. 2.28  Highly Compensated Employee.............................................................................10
Sec. 2.29  Hours of Service.......................................................................................................10
Sec. 2.30  Investment Fund.......................................................................................................10
Sec. 2.31  Leased Employee......................................................................................................10
Sec. 2.32  Named Fiduciary.......................................................................................................11
Sec. 2.33  Non-Highly Compensated Employee....................................................................11
Sec. 2.34  Normal Retirement Age...........................................................................................11
Sec. 2.35  Participant..................................................................................................................11
Sec. 2.36  Participating Employer............................................................................................11
Sec. 2.37  Plan Administrator....................................................................................................11
Sec. 2.38  Plan Year....................................................................................................................11
Sec. 2.39  Predecessor Employer.............................................................................................11
Sec. 2.40  Prior Plan Document................................................................................................12
Sec. 2.41  QDRO.........................................................................................................................12
Sec. 2.42  Qualified Employee..................................................................................................12
Sec. 2.43  Rollover Contributions............................................................................................13
Sec. 2.44  Roth Catch-up Contributions.................................................................................13

WFC002890

SEC. 2.45 ROTH CONTRIBUTIONS...................................................................................................13
SEC. 2.46 SALARY DEFERRAL CONTRIBUTIONS..................................................................13
SEC. 2.47 SPOUSE....................................................................................................................13
SEC. 2.48 SUCCESSOR EMPLOYER.........................................................................................14
SEC. 2.49 TERMINATION OF EMPLOYMENT..........................................................................14
SEC. 2.50 TRUST AGREEMENT................................................................................................14
SEC. 2.51 TRUST FUND............................................................................................................14
SEC. 2.52 TRUSTEE...................................................................................................................14
SEC. 2.53 UNALLOCATED RESERVE.......................................................................................14
SEC. 2.54 VALUATION DATE...................................................................................................14
SEC. 2.55 VESTING SERVICE...................................................................................................14

**ARTICLE III  SERVICE DEFINITIONS...........................................................................16**

SEC. 3.1 EMPLOYMENT COMMENCEMENT DATE...................................................................16
SEC. 3.2 HOURS OF SERVICE..................................................................................................16
SEC. 3.3 VESTING SERVICE....................................................................................................17
SEC. 3.4 SERVICE WITH WELLS FARGO FINANCIAL............................................................18
SEC. 3.5 PERIODS OF MILITARY SERVICE.............................................................................18

**ARTICLE IV  SALARY DEFERRALS AND OTHER EMPLOYEE CONTRIBUTIONS...........19**

SEC. 4.1 ELIGIBILITY FOR PARTICIPATION IN SALARY DEFERRAL CONTRIBUTIONS.........19
SEC. 4.2 DURATION OF PARTICIPATION.................................................................................20
SEC. 4.3 AMOUNT OF SALARY DEFERRAL CONTRIBUTIONS...............................................20

**ARTICLE V  EMPLOYER CONTRIBUTIONS..................................................................23**

SEC. 5.1 EMPLOYER MATCHING CONTRIBUTIONS................................................................23
SEC. 5.2 EMPLOYER DISCRETIONARY PROFIT SHARING CONTRIBUTION............................24
SEC. 5.3 QUALIFIED NONELECTIVE CONTRIBUTIONS...........................................................25

**ARTICLE VI  CONTRIBUTION ADJUSTMENTS AND LIMITATIONS.............................27**

SEC. 6.1 ADJUSTMENT OF SALARY DEFERRAL CONTRIBUTIONS.........................................27
SEC. 6.2 DISTRIBUTION OF EXCESS DEFERRALS..................................................................30
SEC. 6.3 LIMITATION ON ALLOCATIONS................................................................................31
SEC. 6.4 FORFEITURES CREDITED AGAINST EMPLOYER CONTRIBUTIONS..........................34

**ARTICLE VII  INDIVIDUAL ACCOUNTS........................................................................35**

SEC. 7.1 ACCOUNTS FOR PARTICIPANTS..............................................................................35
SEC. 7.2 VALUATION OF ACCOUNTS.....................................................................................37
SEC. 7.3 ROLLOVER CONTRIBUTIONS...................................................................................38
SEC. 7.4 TRANSFERS FROM OTHER PLANS...........................................................................39

**ARTICLE VIII  INVESTMENT OF FUNDS.......................................................................40**

SEC. 8.1 INVESTMENT FUNDS................................................................................................40
SEC. 8.2 REINVESTMENT.........................................................................................................41
SEC. 8.3 UNINVESTED CASH...................................................................................................41
SEC. 8.4 INVESTMENT FUND DESIGNATIONS........................................................................41
SEC. 8.5 CHANGE IN INVESTMENT FUND DESIGNATION......................................................42
SEC. 8.6 ESOP DIVERSIFICATION..........................................................................................42
SEC. 8.7 VOTING OF COMPANY COMMON STOCK.................................................................42
SEC. 8.8 TENDER OR EXCHANGE OFFERS REGARDING COMPANY STOCK...........................43
SEC. 8.9 CERTAIN ADMINISTRATIVE MATTERS.....................................................................44
SEC. 8.10 BLACKOUT NOTICE.................................................................................................44
SEC. 8.11 RIGHTS OF BENEFICIARIES AND ALTERNATE PAYEES........................................44

**ARTICLE IX  BENEFIT REQUIREMENTS.......................................................................45**

SEC. 9.1 BENEFIT UPON RETIREMENT OR DISABILITY.........................................................45
SEC. 9.2 OTHER TERMINATION OF EMPLOYMENT................................................................45
SEC. 9.3 DEATH.......................................................................................................................48
SEC. 9.4 LOANS TO PARTICIPANTS........................................................................................48

WFC002891

**ARTICLE X  DISTRIBUTION OF BENEFITS**..................................................................................**50**

SEC. 10.1  TIME AND METHOD OF PAYMENT................................................................................50
SEC. 10.2  FORM OF PAYMENT....................................................................................................58
SEC. 10.3  ACCOUNTING FOLLOWING TERMINATION OF EMPLOYMENT.......................................59
SEC. 10.4  REEMPLOYMENT; CESSATION OF DISABILITY..............................................................59
SEC. 10.5  WITHDRAWALS FROM ACCOUNTS WHILE EMPLOYED—GENERAL RULES......................59
SEC. 10.6  WITHDRAWALS WHILE EMPLOYED—AFTER-TAX.........................................................61
SEC. 10.7  WITHDRAWALS WHILE EMPLOYED—REGULAR IN-SERVICE WITHDRAWALS.................61
SEC. 10.8  WITHDRAWALS WHILE EMPLOYED—AFTER AGE 59½..................................................62
SEC. 10.9  WITHDRAWALS WHILE EMPLOYED—FINANCIAL HARDSHIP..........................................63
SEC. 10.10  SOURCE OF BENEFITS...............................................................................................66
SEC. 10.11  INCOMPETENT PAYEE...............................................................................................66
SEC. 10.12  BENEFITS MAY NOT BE ASSIGNED OR ALIENATED.....................................................66
SEC. 10.13  PAYMENT OF TAXES.................................................................................................67
SEC. 10.14  CONDITIONS PRECEDENT..........................................................................................67
SEC. 10.15  PLAN ADMINISTRATOR DIRECTIONS TO TRUSTEE.....................................................67
SEC. 10.16  EFFECT ON UNEMPLOYMENT COMPENSATION...........................................................67
SEC. 10.17  TRANSFERS AND DIRECT ROLLOVERS TO OTHER PLANS.............................................67
SEC. 10.18  PAYMENT OF DIVIDENDS ON COMPANY STOCK TO PARTICIPANTS..............................69
SEC. 10.19  UNCASHED CHECKS OR INABILITY TO LOCATE DISTRIBUTEE......................................70
SEC. 10.20  HURRICANE AND OTHER DISASTER RELIEF PROVISIONS..............................................72

**ARTICLE XI  MANAGEMENT OF FUNDS**....................................................................................**73**

SEC. 11.1  TRUST FUND..............................................................................................................73
SEC. 11.2  TRUSTEE AND TRUST AGREEMENT..............................................................................73
SEC. 11.3  COMPENSATION AND EXPENSES OF TRUSTEE...............................................................73
SEC. 11.4  FUNDING POLICY........................................................................................................73
SEC. 11.5  NO DIVERSION...........................................................................................................73

**ARTICLE XII  ADMINISTRATION OF PLAN**................................................................................**75**

SEC. 12.1  PLAN ADMINISTRATION..............................................................................................75
SEC. 12.2  CERTAIN FIDUCIARY PROVISIONS................................................................................75
SEC. 12.3  SPECIFIC POWERS AND DUTIES OF THE PLAN ADMINISTRATOR.....................................76
SEC. 12.4  DISCRIMINATION PROHIBITED.....................................................................................77
SEC. 12.5  EVIDENCE..................................................................................................................77
SEC. 12.6  CORRECTION OF ERRORS............................................................................................77
SEC. 12.7  RECORDS...................................................................................................................77
SEC. 12.8  GENERAL FIDUCIARY STANDARD................................................................................77
SEC. 12.9  PROHIBITED TRANSACTIONS........................................................................................77
SEC. 12.10  CLAIMS PROCEDURE.................................................................................................77
SEC. 12.11  BONDING.................................................................................................................77
SEC. 12.12  WAIVER OF NOTICE..................................................................................................77
SEC. 12.13  AGENT FOR LEGAL PROCESS.....................................................................................78
SEC. 12.14  INDEMNIFICATION....................................................................................................78
SEC. 12.15  NO ADDITIONAL BENEFIT..........................................................................................78

**ARTICLE XIII  AMENDMENT, TERMINATION, MERGER**..........................................................**79**

SEC. 13.1  AMENDMENT.............................................................................................................79
SEC. 13.2  DISCONTINUANCE OF JOINT PARTICIPATION IN PLAN BY A PARTICIPATING EMPLOYER....79
SEC. 13.3  REORGANIZATIONS OF PARTICIPATING EMPLOYERS.....................................................80
SEC. 13.4  PERMANENT DISCONTINUANCE OF CONTRIBUTIONS.....................................................80
SEC. 13.5  TERMINATION............................................................................................................80
SEC. 13.6  PARTIAL TERMINATION..............................................................................................80
SEC. 13.7  MERGER, CONSOLIDATION, OR TRANSFER OF PLAN ASSETS..........................................80
SEC. 13.8  DEFERRAL OF DISTRIBUTIONS....................................................................................81

**ARTICLE XIV  MISCELLANEOUS PROVISIONS**.........................................................................**82**

SEC. 14.1  DISCONTINUANCE OF EMPLOYMENT...........................................................................82

WFC002892

SEC. 14.2  INSURANCE COMPANY NOT RESPONSIBLE FOR VALIDITY OF PLAN................................82
SEC. 14.3  HEADINGS.........................................................................................................82
SEC. 14.4  CAPITALIZED DEFINITIONS..................................................................................82
SEC. 14.5  GENDER...........................................................................................................82
SEC. 14.6  USE OF COMPOUNDS OF WORD "HERE"...............................................................82
SEC. 14.7  CONSTRUED AS A WHOLE...................................................................................82
SEC. 14.8  RELIANCE ON DATA AND CONSENTS....................................................................82
SEC. 14.9  ADDRESS FOR MAILING.....................................................................................83
SEC. 14.10  BENEFITS UNDER CERTAIN APPENDICES.............................................................83

ARTICLE XV  TOP-HEAVY PLAN PROVISIONS......................................................... 89

SEC. 15.1  KEY EMPLOYEE DEFINED...................................................................................89
SEC. 15.2  DETERMINATION OF TOP-HEAVY STATUS.............................................................89
SEC. 15.3  MINIMUM CONTRIBUTION REQUIREMENT..............................................................90
SEC. 15.4  EXCEPTION FOR COLLECTIVE BARGAINING UNIT...................................................91

ARTICLE XVI  EMPLOYEE STOCK OWNERSHIP PROVISIONS............................................. 92

SEC. 16.1  EXEMPT LOAN..................................................................................................92
SEC. 16.2  UNALLOCATED RESERVE....................................................................................93
SEC. 16.3  LEVERAGED ACQUISITIONS.................................................................................93
SEC. 16.4  REPAYMENT OF EXEMPT LOANS..........................................................................94
SEC. 16.5  ALLOCATION OF COMPANY STOCK.......................................................................94

EXHIBIT I  PROCEDURES REGARDING DOMESTIC RELATIONS ORDERS................................. E.I-1

EXHIBIT II  CLAIMS PROCEDURE.............................................................................. E.II-1

EXHIBIT III  VESTING MODIFICATIONS........................................................................ E.III-1

WFC002893