UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Yvonne Becker,                                  Civil No. 20-2016 (DWF/BRT)

          Plaintiff,

v.                                            **MEMORANDUM OPINION**
                                                                   **AND ORDER**

Wells Fargo & Co.; Employee
Benefit Review Committee;
Wells Fargo Bank, National; and
Galliard Capital Management,

          Defendants.

---

Michelle C. Yau, Esq., Jamie L. Bowers, Esq., Mary J. Bortscheller, Esq., and Scott Michael Lempert, Esq., Cohen Milstein, Sellers & Toll, PLLC; Carolyn G. Anderson, Esq., Charles Richard Toomajian, III., Esq., Ian F. McFarland, Esq., and June Pineda Hoidal, Esq., Zimmerman Reed LLP; counsel for Plaintiff.

Russell Laurence Hirschhorn, Esq., Joseph Emanuel Clark, Esq., Kyle Hansen, Esq., Myron D. Rumeld, Esq., and Tulio D. Chirinos, Esq., Proskauer Rose LLP; Andrew J. Holly, Esq., Kirsten E. Schubert, Esq., Nicholas J. Bullard, Esq., and Stephen P. Lucke, Esq., Dorsey & Whitney LLP, counsel for Defendants.

---

**INTRODUCTION**

      This matter is before the Court on Defendants Wells Fargo & Co. ("Wells Fargo"), Employee Benefit Review Committee and members ("Fiduciary Defendants"), Wells Fargo Bank, National ("Wells Fargo Bank"), and Galliard Capital Management's ("Galliard") (collectively "Defendants") Motion to Dismiss Plaintiff's Class Action Complaint. (Doc. No. 97 ("Motion").)  Plaintiff, Yvonne Becker ("Becker") opposes the

Motion. (Doc. No. 112 ("Pl. Opp.").) For the reasons below, the Court denies Defendants' Motion.

## BACKGROUND

This putative class action arises from Becker's participation in Wells Fargo's 401(k) retirement plan (the "Plan"), which she claims Defendants mismanaged. (Doc. No. 1 ("Compl.") ¶ 1.) The Plan is a defined contribution pension plan subject to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. (*Id.* ¶ 59.) After deferring their compensation to the Plan, employees may decide how to invest their savings by choosing among investment options selected by the Fiduciary Defendants. (*Id.* ¶ 63.) The value of each participant's individual account in the Plan depends on the amount of contributions made by the participant, plus the investment gains earned on those contributions, minus all fees and expenses. (*Id.* ¶ 64.)

Becker claims that during the class period, the Fiduciary Defendants selected and retained for the Plan 17 Wells Fargo proprietary funds (the "Wells Fargo Fund(s)"),[1]

---

[1]  Becker invested in the challenged Wells Fargo/State Street Target Date Collective Trusts ("TD Collective Trusts") funds. (Compl. ¶ 12-16.) The "target date" refers to the date on which the participant intends to retire. A target date fund is an investment option designed for investors that do not want to actively manage their retirement savings. The TD Collective Trusts were established in 2016 and were the default option for Plan participants who did not select a specific investment option. (*Id.* ¶¶ 78, 81, 83.)

Other challenged funds include the Wells Fargo Stable Value Fund ("Stable Value Fund"), an account managed by Defendant Galliard Capital Management ("Galliard") (*id.* ¶ 154); the Wells Fargo 100% Treasury Money Market Fund ("Money Market Fund") (*id.* ¶¶ 121, 152); the Wells Fargo/Causeway International Value Fund-F Class ("Causeway Fund"), a collective trust and subfund of the International Equity Fund (*id.* ¶¶ 99, 102, 152); the Wells Fargo Emerging Growth Fund ("Emerging Growth Fund"), a mutual fund and subfund of the Wells Fargo Small Cap Fund (*id.* ¶¶ 131-32,

many of which underperformed the benchmark that Defendants selected as an appropriate broad-based market index for each Wells Fargo Fund.[2] (*Id.* ¶¶ 93-96, 116-18, 124-25, 146-47.) She further alleges that the Wells Fargo Funds included newly launched funds that lacked a performance history necessary to evaluate them, and that the Wells Fargo Funds charged greater fees than similar non-proprietary funds.[3] (*Id.* ¶¶ 83-88, 104-06, 109-14, 116-17, 152-56.)

Becker contends that because of the enormous size of the Plan, the Fiduciary Defendants should have been able to obtain superior investment products at very low cost but instead chose proprietary products to bolster their own salaries by increasing fee revenue and providing seed money to newly created Wells Fargo Funds.[4] (*Id.* ¶¶ 66, 77, 85, 101, 108, 114, 205.)

---

135, 152); and the Wells Fargo/Federated Total Return Bond Fund ("Total Return Bond Fund"), a collective trust and subfund of the Global Bond Fund (*id.* ¶¶ 152-53, 158).

[2] Becker alleges that between 2016 and 2019 the TD Collective Trusts underperformed their benchmarks by 2% (Compl. ¶¶ 93-96); the Causeway Fund underperformed by 3.3% (*id.* ¶¶ 116-18); the Market Fund underperformed by 1% (*id.* ¶¶ 124-25, 129); and the Emerging Growth Fund underperformed by 1.1% (*id.* ¶¶ 146-47). She also contends that the Wells Fargo Funds did worse than similar, cheaper, non-affiliated funds. (*See, e.g.*, *id.* at 116-17 (asserting that the Causeway Fund underperformed a materially identical fund that charged half the fees).)

[3] Becker contends that the TD Collective Trusts and Causeway Fund were newly launched funds for which the Plan's assets served as seed money. (Compl. 83-88, 104-08.)

[4] The Plan is one of the largest defined-contribution plans in the country. (*Id.* ¶ 66.) As of December 31, 2018, the Plan had around $40 billion in assets and 344,287 participants. (*Id.* ¶ 67.)

On March 13, 2020, Becker filed this class action lawsuit under ERISA alleging: (1) breach of the duties of loyalty and prudence under 29 U.S.C. § 1104 (Compl. ¶¶ 180-190 ("Count I")); and (2) violations of prohibited transactions rules under 29 U.S.C. §§ 1106 (a)(1)(A) and (D) (Compl. ¶¶ 191-202 ("Count II"); 226-239 ("Count V")) and sections 1106(b)(1) and (3) (Compl. ¶¶ 203-213 ("Count III")).

Defendants contend that Becker has failed to plead allegations necessary to support a viable claim under ERISA and ask the Court to dismiss her Complaint with prejudice.

## DISCUSSION

**I.   Legal Standard**

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint.[5] *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

---

[5]   Defendants submit 30 exhibits, which they claim are embraced by the Complaint, to support their Motion. (*See* Doc. Nos. 100-102 ("Documents").) Becker argues that

4

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.     Standing

Defendants argue that Becker lacks standing with respect to all claims other than those directed at the TD Collective Trusts because she did not invest in the other challenged funds and therefore could not have suffered harm from their inclusion in the plan. (Doc. No. 99 ("Def. Memo.") at 10-12.) Becker contends that she has Article III

---

reliance on the Documents is improper because they are not embraced by the Complaint and are used to contradict her factual allegations. (Pl. Opp. at 13-15.)

At this stage in the proceedings, the Court declines to consider the Documents. As discussed above, a court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *Porous Media Corp.*, 186 F.3d at 1079. The Court finds that the only document clearly embraced by the Complaint is the Plan; however, Defendants' Documents include just excerpts of the Plan which the Court declines to consider because they do not offer complete information. Moreover, Defendants rely on the Documents to create factual disputes which the Court cannot resolve at this stage in the proceedings. *Morin v. Essentia Health*, Civ. No. 16-4397, 2017 WL 4876281, at *1 (D. Minn. Oct. 27, 2017) (declining to consider extrinsic documents that were submitted to undermine Plaintiffs' allegations.); *see also State ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999).

5

standing to seek relief on behalf of the Plan as a whole because in addition to plausibly alleging her own Article III standing, she plausibly alleges that Defendants' fiduciary violations are broad-sweeping in nature and caused losses to other Plan investments in which she did not invest. (Pl. Opp. at 9-10.)

The Court declines to dismiss any of Becker's claims for lack of standing. "Constitutional standing is only a threshold inquiry, and 'so long as [Article III] is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of legal rights and interests of others." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) (internal quotation marks and citation omitted). In such a case, "a plaintiff may be able to assert causes of action which are based on conduct that harmed [her], but which sweep more broadly than the injury [she] suffered." *Id.*

Here, Becker is authorized to obtain relief under 29 U.S.C.§ 1132(a)(2) and § 1109. The Court finds that in addition to satisfying the requirements of her own Article III standing (*see* Compl. ¶¶ 12-16, 78-97, 180-90), Becker has plausibly alleged that Defendants' fiduciary violations caused broad-sweeping losses to other Plan investments in which she did not invest that stemmed from Defendants' imprudent or disloyal conduct (*see id.* ¶¶ 3, 67-73, 98-148, 180-90). Accordingly, the Court finds that Becker has Article III standing to seek relief on behalf of the Plan as a whole. *Braden*, 588 F.3d at 592; *see also Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1619-20 (2020) (recognizing that a participant alleging loss to her defined-contribution retirement plan

has both personal and representational standing to pursue § 1132(a)(2) claims on behalf of the entire plan).

### III.   Motion to Dismiss

#### A.   Breach of Fiduciary Duties

"ERISA imposes two primary duties on fiduciaries: loyalty and prudence." *Meiners v. Wells Fargo*, 898 F.3d 820, 822 (8th Cir. 2018) (citing *Braden v. Walmart Stores*, 588 F.3d 585, 595 (8th Cir. 2009). The duty of loyalty requires that the fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The fiduciary must also discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* To evaluate whether a fiduciary has acted prudently, the Court "focus[es] on the process by which it makes its decisions rather than the results of those decisions." *Braden*, 588 F.3d at 595.

To state a claim for breach of fiduciary duty, "a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." *Braden*, 588 F.3d at 594. *See* 29 U.S.C. § 1109.

To properly plead a fiduciary breach, a plaintiff must show that "a prudent fiduciary in like circumstances would have acted differently." *Id.* at 720. To do so, "a plaintiff must provide a sound basis for comparison—a meaningful benchmark."

*Meiners*, 898 F.3d at 822.[6]  This requires "more than a bare allegation that cheaper investments exist in the marketplace." *Id.*

Becker alleges that the Fiduciary Defendants, as defined as fiduciaries under 29 U.S.C. § 1002(21)(A)(i), violated their fiduciary duties by:  (1) selecting the TD Collective Trusts and Causeway Fund without considering the funds' historical performance, the availability of cheaper, better performing alternatives, or their inherent conflict of interest; (2) choosing to maintain Wells Fargo proprietary funds as investment options for the Plan without adequately considering non-proprietary funds with lesser fees and better performance; and (3) failing to monitor the Plan investments and remove Wells-Fargo affiliated funds.  (Compl. ¶184.)  She also alleges that as a result of the fiduciary breaches, the Plan and its participants suffered hundreds of millions of dollars in losses in retirement assets.  (*Id.* ¶ 185.)

Defendants argue that Becker's fiduciary breach allegations must be dismissed because they fail to give rise to an inference of imprudence or disloyalty when:  (1) the TD Collective Trusts and Causeway Fund could not have been offered to generate seed money when the TD Collective Trusts were designed exclusively for the Plan and the investment manager of the Causeway Fund was unaffiliated with Wells Fargo; (2) the TD Collective Trusts were modeled after two other substantially similar investments with extensive track records; (3) Becker fails to identify suitable comparators to establish that

---

[6]   In *Meiners*, the Eighth Circuit held that fiduciary breach claims based on excessive fees or underperformance "must provide a sound basis for comparison—a meaningful benchmark." 898 F.3d at 822.  There, the Eighth Circuit found that plaintiff's benchmark was insufficient because it did not provide meaningful comparison. *Id.*

the Wells Fargo Funds charged excessive fees; (4) the fees paid to Wells Fargo affiliates were either entirely paid by Wells Fargo (TD Collective Trusts and Causeway Fund) or substantially offset by a partial fee waiver provided to the Plan (Money Market Fund and Emerging Growth Fund); (5) the fees paid to third parties were lower than fees paid on previous Plan offerings; (6) the funds outperformed their benchmarks at various points and modest periods of underperformance cannot support an inference of imprudence; and (7) the Causeway and Emerging Growth Funds were subfunds of Plan investments and Becker alleges nothing imprudent about the parent funds.[7] (*See* Def. Memo. at 14-19, 25-30.)

Becker argues that her allegations are more than sufficient to support an inference of imprudence and disloyalty. Specifically, she contends that her claims are well-supported with multiple allegations that Defendants' fiduciary process for selecting the Wells Fargo Funds for the Plan failed to satisfy threshold procedural norms needed for a non-conflicted fiduciary to satisfy their duty of loyalty, and that imprudence can be inferred through her allegations that the Wells Fargo Funds underperformed meaningful benchmarks, used the Plan's assets to seed newly launched funds, and charged greater fees than similar non-proprietary funds are more than sufficient to support an inference of imprudence. (*See* Pl. Opp. at 15-29.)

Becker asserts that her benchmarks are sufficiently meaningful to satisfy *Meiners* because they are the same benchmarks that Defendants chose as comparisons for the

---

[7] Defendants' arguments rely heavily on the Documents which, as described above, the Court declines to consider at this stage in the proceedings.

Wells Fargo Funds. She further argues that multi-year periods of underperformance cannot be construed as "modest or temporary" and that Defendants' arguments related to performance, whether it was appropriate to add untested funds to the Plan, the extent to which fee offsets may be available, and whether the funds were seeded to make them marketable to outside investors are questions of fact that are inappropriate at the pleading stage.[8] Finally, Becker contends that Defendants' arguments with respect to subfunds misstates her allegations and that courts have sustained claims against plan fiduciaries for failing to select and monitor all funds in a plan, including subfunds. (*Id.* at 24-25.)

The Court finds that Becker's numerous and specific allegations are sufficient to support an inference of imprudence and disloyalty. Unlike *Meiners*, the Court finds that Becker's benchmarks are sufficiently meaningful to provide proper comparison to the challenged funds with respect to both performance and fees. *See Meiners*, 898 F.3d at 822. Indeed, by using the very benchmarks that Defendants themselves selected for comparison, Becker makes considerably "more than a bare allegation that cheaper investments exist in the marketplace." *Id.*

Taken as true, and considered as a whole, the Court finds that Becker's allegations can be understood to assert that the Plan includes a variety of proprietary funds which were selected by the Fiduciary Defendants despite better performing and cheaper options. (*See, e.g.*, Compl. ¶¶ 83-88, 93-96, 104-06, 116-18, 124-25, 146-47, 152-56.) The Complaint further alleges that these options were chosen to benefit Defendants at the

---

[8]   Becker contends that even if the Court considers the Documents Defendants rely on to create factual disputes, the Documents actually support her allegations.

10

expense of Plan participants. (*Id.* at ¶¶ 66, 77, 85, 101, 108, 114, 205.) The Court finds that these allegations are sufficient to infer that the decision-making process by which the Fiduciary Defendants selected and managed the Wells Fargo Funds was tainted by breach of their fiduciary duties. *Braden*, 588 F.3d at 595-96. Accordingly, the Court finds that Becker has pleaded sufficient facts, when taken as true, to support her fiduciary breach claims.[9]

### B. Prohibited Transactions

ERISA's prohibited transactions provisions, 29 U.S.C. § 1106, protect plan participants by "categorically barring certain transactions 'likely to injure the plan.'" *Braden*, 588 F.3d at 600 (quoting *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000). They prohibit fiduciaries from: (1) engaging in transactions involving parties who are affiliated with the plan's fiduciaries, 29 U.S.C. § 1106(a) ("party-in-interest transactions"); and (2) managing the plan in their own interests ("self-dealing transactions"), 29 U.S.C. § 1106(b).

There are certain limited exceptions to ERISA's prohibited transaction rules; however, the burden to establish the applicability of the exemption lies with the one trying to claim it. *Braden*, 588 F.3d at 601. Moreover, even if a prohibited transaction qualifies for an exemption, the fiduciary decision to engage in the transaction must still comport with ERISA's prudence and loyalty standards. 42 Fed. Reg. at 18734.

---

[9] The Court agrees with Becker that Defendants' arguments related to performance, the decision to add untested funds to the Plan, the extent to which fee offsets may be available, and whether the funds were seeded to make them marketable to outside investors are questions of fact that are inappropriate at the pleading stage.

11

Importantly, ERISA's prohibited transaction exemptions are generally affirmative defenses that cannot be resolved on a motion to dismiss. *Braden*, 588 F.3d at 601-02.

In Count II, Becker alleges that the Fiduciary Defendants caused the Plan to engage in multiple party-in-interest transactions by causing the Plan to repeatedly purchase property from Wells Fargo, Wells Fargo Bank, or both, which hold legal title to the Wells Fargo Funds, in violation of 29 U.S.C. § 1106(a)(1)(A). (Compl. ¶ 193.) She further alleges that Wells Fargo Bank and Galliard caused certain funds holding the Plan's assets to engage in multiple party-in-interest transactions, causing the Plan, through the funds, to purchase interests in other Wells Fargo Funds, also in violation of § 1106(a)(1)(A). (*Id.* ¶¶ 194-95.) She also alleges that the Fiduciary Defendants, Wells Fargo Bank, and Galliard caused the Plan to engage in multiple violations of § 1106(a)(1)(D) by causing the repeated transfer of Plan assets directly, indirectly, or both, to the Wells Fargo Bank, Galliard, and Wells Fargo, in the form of various direct or indirect fees. (*Id.* ¶ 197.)

In Count III, Becker alleges that the Fiduciary Defendants made decisions about the Plan's investments that benefited themselves when: (1) Wells Fargo received direct and indirect fees and other compensation from the Plan's investment in Wells Fargo proprietary funds; (2) the commercial viability of the proprietary funds improved with increased assets under management including from the Plan's investments; and (3) Defendants were all Wells Fargo executives whose compensation and promotion levels increased when they acted to increase revenue for Wells Fargo, all in violation of sections 1106(b)(1) and (3). (Compl. ¶ 205.)

She further alleges that by the control and authority granted to them by the Fiduciary Defendants, Wells Fargo Bank and Galliard made decisions about the investment and use of the Plan's assets in ways that were in their own self-interest when both Wells Fargo Bank and Gaillard: (1) transferred Plan assets to themselves as compensation; and (2) invested or otherwise used Plan assets in a manner that earned themselves, Wells Fargo, and/or their affiliates additional compensation, also in violation of sections 1106(b)(1) and (3). (*Id.* ¶ 207.) Becker alleges that as a result of Defendants' self-dealing, the Plan and its participants suffered hundreds of millions of dollars of losses in retirement assets. (*Id.* ¶ 208.).

Finally, Becker alleges in Count V that Wells Fargo, as a party in interest, is liable for knowing participation in a prohibited transaction when the Plan's assets were directly or indirectly transferred into its account as fees or compensation. (*Id.* ¶¶ 226-39.)

Defendants argue that Becker's prohibited transaction claims should be dismissed because she fails to plead plausible allegations of self-dealing or party-in-interests transaction when: (1) there was no gain to be had from seeding the TD Collective Trusts or Causeway Fund because those investments were designed exclusively for the Plan; (2) fees paid to Wells Fargo affiliates related to the TD Collective Trusts were paid by Wells Fargo, not Plan participants; (3) other fees paid to a Wells Fargo affiliate were from mutual funds (Money Market Fund and Emerging Growth Fund) and not considered assets of the Plan; (4) Becker does not plead that Defendants had a subjective intent to benefit a party-in-interest or to engage in self-dealing; (5) there were no transactions with

13

a party-in-interest;[10] and (6) the challenged funds are exempt from prohibited transactions rules.[11] (Def. Memo. at 20-24, 30-33.)

Defendants further argue that Becker's claim against Wells Fargo for knowingly participating in a prohibited transaction fails as well because she: (1) lacks a viable claim for any underlying violation of ERISA's prohibited transactions rules; (2) has not plausibly pled that Wells Fargo had actual or constructive knowledge of the prohibited transactions; and (3) has not pled a claim to recover "appropriate equitable relief" as required under ERISA section 502(a)(3).[12] (*Id.* at 34-35.)

Becker argues that Defendants' reliance on the Documents to contradict her factual allegations is improper at the pleading stage.[13] Becker further argues that subjective intent is not an element of a prohibited transaction claim, and that Defendants' arguments related to parties-in-interest and the mutual fund assets misconstrues what the Complaint actually says.[14] Becker also argues that even if exemptions are available, they

---

[10] Defendants argue that because the TD Collective Trusts, Money Market Fund, and Emerging Growth Fund are not subsidiaries or affiliates of Wells Fargo, they do not qualify as parties-in-interest.

[11] Defendants rely on the Documents to support their arguments.

[12] Defendants argue that because Becker is only entitled to be restored through particular funds or property in Wells Fargo's possession, her claim fails because her conclusory allegations do not identify any *res* from which ill-gotten profit or assets could be returned.

[13] Becker contends that even if the Court were to consider the Documents, they do not show that the Plan paid no fees to Wells Fargo.

[14] Becker argues that she properly alleges that the Plan purchased property from Wells Fargo and Wells Fargo Bank, which hold the title to the Wells Fargo Funds, and both of which are indisputably parties-in-interest. She also contends that her allegations

14

are affirmative defenses that she need not plead around and which may not be adjudicated at the pleading stage.[15]  (Pl. Opp. at 31-37.)

Becker also argues the adequacy of her allegations against Wells Fargo for knowing participation in prohibited transactions by pointing out that the Complaint references specific government filings which convey Wells Fargo's actual or constructive knowledge that the Plan engages in party-in-interest transactions, and that she has stated an appropriate equitable claim for disgorgement of the fees paid by the Plan to Wells Fargo because she alleges entitlement to particular funds in Wells Fargo's possession.

The Court finds that Becker has plausibly pled that Defendants engaged in transactions prohibited under ERISA.  Becker alleges that the Fiduciary Defendants caused the Plan to purchase property in Wells Fargo affiliated funds from Wells Fargo and Wells Fargo Bank, which are parties-in-interest, in violation of 29 U.S.C. § 1106(a)(1)(A).[16]  (Compl. ¶¶ 152, 195.)  She further alleges that the Fiduciary Defendants, Wells Fargo Bank, and Galliard violated § 1106(a)(1)(D) by causing the transfer of Plan assets to Wells Fargo and its affiliates through fees associated with the Wells Fargo Funds.  (*Id.* ¶¶ 153-56 (describing fees paid to Wells Fargo); 159-69

---

challenge the Fiduciary Defendants' decision to purchase interest in the Wells Fargo mutual funds with the Plan's assets rather than challenge management of the mutual funds themselves.

[15]     Becker argues that even if the Court were to evaluate whether exemptions apply, it must conclude that they are not.

[16]     The Court is unpersuaded by Defendants' construction of Becker's allegations, insofar as they assert that Becker fails to properly plead transactions with parties-in-interest.

(describing how Wells Fargo and its affiliates have discretion to invest in funds or instruments that pay fees to Wells Fargo), 197, 229 (describing the transfer of Plan assets to Wells Fargo and its affiliates in the form of fees).) Finally, Becker plausibly alleges violations of secions1106(b)(1) and (3) against the Fiduciary Defendants, Wells Fargo Bank, and Galliard for seeding newly launched funds and directing revenue to Wells Fargo from the Plan's assets through fees. (*Id.* ¶¶ 77, 87, 107-08, 203-08.)

The Court finds that Becker's allegations are far more than general assertions, and that accepted as true, show that Defendants engaged in prohibited transactions. *Krueger v. Ameriprise Fin., Inc.*, Civ. No. 11-02781, 2012 WL 5873825, at *15-16 (D. Minn. Nov. 20, 2012); *Gipson v. Wells Fargo*, Civ. No. 08-4546, 2009 WL 702004, at *4-5 (D. Minn. Mar. 13, 2009). As discussed above, the Court finds that Defendants' reliance on the Documents to create factual disputes is improper at this stage. The Court similarly finds that whether any prohibited transaction exemption applies to Becker's claims is an affirmative defense that cannot be resolved on a motion to dismiss. *Braden*, 588 F.3d at 601-02. Finally, the Court notes that Becker need not plead subjective intent to plausibly state her claims. *See* 29 U.S.C. 1106; *see also Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 441 n.12 (6th Cir. 2002).

The Court similarly finds that Becker has sufficiently pled that Wells Fargo knowingly participated in ERISA violations by other fiduciaries. ERISA permits a participant to obtain "appropriate equitable relief" from a nonfiduciary party-in-interest who knowingly participates in a fiduciary violation. *Harris Tr.*, 530 U.S. at 250; 29 U.S.C. § 1132(a)(3). Becker alleges that Wells Fargo is a party-in-interest and that the

16

Plan's benefits were "repeatedly transferred to [it] as fees or compensation for the Wells Fargo affiliated funds in the Plan." (Compl. ¶¶ 227, 229.) The Court finds that she also alleges sufficient facts to establish Wells Fargo's actual or constructive knowledge of the circumstances that rendered the transactions unlawful. (*See id.* ¶ 233.) Moreover, the Court finds that Becker seeks appropriate equitable relief when she seeks the return of fees that Wells Fargo allegedly improperly accepted as part of prohibited transactions. (*See* Compl. ¶¶ 235-237.)

At this stage in the proceedings, Becker need not trace the specific path of the fees; it is sufficient to allege that the path is traceable. *See Zavala v. Kruse-Western, Inc.*, 398 F. Supp. 3d 731, 742 n.3 (E.D. Cal. 2019) (while plaintiff must allege defendants possess the funds, those allegations need not be pled with specificity). Here, Becker alleges that the fees remain in the Wells Fargo account that originally received the fees (Compl. ¶ 235), or if the fees were deposited in a comingled account, that account has at all times maintained a balance over the value of the alleged illegal transfers (*id.* ¶ 236). She also alleges that Wells Fargo maintains detailed financial recording records that will allow her to trace the transfer of the fees from the Plan to Wells Fargo. (*Id.* ¶ 237.) In short, the Court finds that these allegations are sufficient to support Becker's allegations that Wells Fargo knowingly participated in prohibited transactions.

## CONCLUSION

For the reasons set forth above, the Court denies Defendants' motion to dismiss. The Court finds that Becker has Article III standing to seek relief on behalf of the Plan as a whole, declines to rely on extrinsic documents at this stage in the proceedings, and

17

finds that Becker has adequately pled ERISA fiduciary breach and prohibited transactions claims against Defendants.

## ORDER

Based on the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. No. [97]) is respectfully **DENIED**.

Dated:  May 12, 2021                             s/Donovan W. Frank
                                                 DONOVAN W. FRANK
                                                 United States District Judge