Proskauer Rose LLP  Eleven Times Square  New York, NY 10036-8299

Russell L. Hirschhorn
Member of the Firm
d +1.212.969.3286
f 212.969.2900
rhirschhorn@proskauer.com
www.proskauer.com

June 21, 2021

**By Electronic Case Filing**

The Honorable Becky R. Thorson
U.S. Magistrate Judge
U.S. District Court for the District of Minnesota
316 N. Robert Street
St. Paul, MN 55101

Re:   *Becker v. Wells Fargo & Co.*, Case No. 0:20-cv-02016-DWF-BRT

Dear Judge Thorson:

  We represent Defendants Wells Fargo & Company, Employee Benefit Review Committee, Wells Fargo Bank, National Association, and Galliard Capital Management, Inc. (collectively, "Defendants") in the above-referenced action.  We write pursuant to Your Honor's Order (issued during the June 10, 2021 status conference) requiring the parties to submit simultaneous letter-briefs related to the discovery disputes that the parties have agreed to submit to Your Honor through the Court's informal dispute resolution process.

  As discussed during the June 10th status conference, the parties are at an impasse related to two discovery issues:  the number of custodians from whom electronically stored information ("ESI") should be collected, and the search terms to be applied to the collected ESI.

  First, Defendants should not be compelled to collect ESI from the six custodians demanded by Plaintiffs *in addition* to the seven custodians and numerous non-custodial sources from which Defendants already have agreed to collect ESI because:  (i) Plaintiffs have not made any showing of a deficiency in Defendants' discovery responses; (ii) Defendants are in the best position to know where to locate ESI that may be responsive to Plaintiffs' discovery requests; (iii) the six additional custodians are likely to be duplicative of the ESI already being collected; and (iv) there is a substantial burden associated with collecting, processing, reviewing, and producing the ESI that clearly outweighs the minimal potential benefit to Plaintiffs.

  Second, Defendants should not be compelled to apply nine search terms *in addition* to the 143 search terms that Defendants already have agreed to because:  (i) Plaintiffs have not made any showing of a deficiency in Defendants' discovery; (ii) Defendants' testing of the additional nine search terms has established that the additional documents are not likely to be responsive to

Proskauer»

The Honorable Becky R. Thorson
June 21, 2021
Page 2

Plaintiffs' document requests; and (iii) there is a substantial burden associated with reviewing the ESI that clearly outweighs the minimal potential benefit to Plaintiffs.[1]

Consistent with their obligations under the Federal Rules and Local Rules, Defendants already have agreed to conduct a reasonable search for ESI in response to Plaintiffs' document requests. In fact, as discussed below, Defendants already have agreed to conduct a significantly more than reasonable search in an effort to avoid burdening the Court with the parties' discovery dispute. But Plaintiffs' position on discovery knows no bounds, and that position plainly is not proportional to the needs of this case. If Plaintiffs' motion is granted and the Court requires Defendants to collect ESI from the additional custodians and apply Plaintiffs' nine additional search terms, Defendants estimate that, in addition to their ongoing review of approximately 330,000 documents that will take an estimated 6,600 attorney hours, Defendants would be required to spend an *additional* 1,370 attorney hours reviewing 68,500 documents—virtually all of which are likely duplicative of documents already being reviewed or are not responsive to Plaintiffs' document requests.

Accordingly, Defendants request that the Court deny Plaintiffs' demands for this additional discovery.

I.     **Background**

Plaintiffs commenced this putative class action on behalf of all participants and beneficiaries in the Wells Fargo & Company 401(k) Plan (the "Plan") from March 13, 2014 to the present. Plaintiffs allege that several Wells Fargo-affiliated investments in the Plan charged excessive fees and underperformed comparable investments. They also allege that Wells Fargo inappropriately earned a fee from these investments and that certain investments were added to the Plan despite not having any performance history and to seed them in order to attract other investors. On the basis of these allegations, Plaintiffs claim that the Employee Benefit Review Committee ("EBRC")—the committee charged under the Plan with responsibility for selecting and monitoring the Plan investments—and the other Defendants breached their fiduciary duties

---

[1] During the June 10th status conference before Your Honor, Plaintiffs suggested for the first time that the custodians and search terms that the parties have been negotiating *only* applied to their first set of document requests and did not apply to their second set of document requests, even though: they had never stated that previously; they had served their second set of document requests on April 23, 2021; and the parties represented to the Court on May 3, 2021 that they had met and conferred with respect to both sets of requests (Dkt. No. 132 at ¶ E). As the Court recognized during the June 10th status conference, it would be unduly burdensome to require Defendants to conduct a second round of ESI collection and application of search terms when the parties are fully aware of Plaintiffs' two sets of document requests. In the event Plaintiffs pursue this argument, Defendants reserve any and all of their rights to collect and review ESI in accordance with their obligations under the Federal Rules and Local Rules, without regard to Plaintiffs' input.

**Proskauer**

The Honorable Becky R. Thorson
June 21, 2021
Page 3

under the Employee Retirement Income Security Act of 1974 ("ERISA") and violated ERISA's prohibited transaction rules.

Plaintiffs' first and second set of document requests consist of 27 requests for the production of documents. Their requests seek documents related to the: (i) selection and monitoring of Plan investments; (ii) Plan participant communications; (iii) documents related to persons who provide services to the Plan; (iv) fees and expenses related to the Plan's investments; and (v) ERISA training. Plaintiffs also seek numerous categories of documents related to Wells Fargo-affiliated investments in the Plan, including alleged profits, revenues, and other benefits earned by Wells Fargo from the Plan's investment in them or by having them in the Plan, and their creation, marketing, and use in other Wells Fargo-sponsored plans.

## II.     Applicable Legal Principles

Discovery "is not without bounds." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 635 (D. Minn. 2000). Even when the requested information is relevant, "the Rules recognize that discovery may be limited when the benefits to be obtained are outweighed by the burdens and expenses involved." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 589 (D. Minn. 1999). There is a collective responsibility among the parties and the court "to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018). When determining proportionality, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, *and whether the burden or expense of the proposed discovery outweighs its likely benefit*." *Id.* (emphasis added). Furthermore, "the court must limit the frequency or extent of discovery" if it determines that it is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C).

Plaintiffs' motion to compel is particularly inappropriate here because Plaintiffs have failed to establish that Defendants' discovery responses are deficient. *See In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, No. 16-md-2691, 2016 WL 7336411, at *2 (N.D. Cal. Oct. 14, 2016) ("it is not clear on what basis the Court could compel [the responding party] to use a particular form of ESI" in the absence of any showing of deficiency); *Gregerson v. Vilana Fin., Inc.*, No. 06-cv-1164, 2007 WL 9735028, at *4 (D. Minn. May 3, 2007) (ruling that only after a "strong showing that the responding party has somehow defaulted in [its] obligation" should the Court inject itself into the discovery process by requiring "extreme, expensive, or extraordinary means to guarantee compliance" with those obligations); *Diepenhorst v. City of Battle Creek*, No. 05-cv-734, 2006 WL 1851243, at *3 (W.D. Mich. June 30, 2006) (same).

**Proskauer**

The Honorable Becky R. Thorson
June 21, 2021
Page 4

**III.  Plaintiffs' Demand That Defendants Collect ESI From Six Custodians in Addition to the Seven Custodians and Numerous Non-Custodial Sources Already Collected Is <u>Not Proportional to the Needs of This Action.</u>**

Plaintiffs' demand that Defendants collect ESI from six additional custodians is not proportional to the needs of this action.  Defendants already have agreed to collect ESI from seven custodians as well as numerous non-custodial sources.  These sources collectively are more than sufficient to satisfy Defendants' obligation to conduct a reasonable search for documents.  A requirement that Defendants collect ESI from six additional custodians, none of whom are likely to have unique documents and who will add significant costs to an already expensive discovery process, is clearly unreasonable and not proportional to the needs of this action.

**A.  <u>Defendants Agreed to Collect ESI From Seven Custodians.</u>**

The seven custodians that Defendants already have agreed to include: (i) four current or former members of the EBRC whose terms cover the putative class period in this action (and before); (ii) the Agent for the EBRC and an investment professional, both of whom have advised the EBRC concerning the Plan's investments for approximately two decades, and (iii) one individual who works in Wells Fargo's asset management business.[2]

As noted, the EBRC is the committee charged under the Plan with responsibility for selecting and monitoring the Plan's investments—the issues that go to the core of this action.  In addition to having already produced all of the EBRC meeting documents (*e.g.*, Plan documents, minutes, presentations, reports, analyses, training, etc.), Defendants agreed to collect ESI from four individuals who are or were members of the EBRC beginning years before the putative class period and continuing through the present:

- *Suzanne Ramos*.  Ramos has been the Chairwoman of the EBRC since 2019 and has served on the EBRC since December 1, 2010—more than three years before the start of the putative class period in this action.

- *George Wick*.  Wick was a member of the EBRC from March 15, 2015 to December 1, 2018.  Wick served as the Chairman of the EBRC from December 2015 through November 2018.

---

[2] Defendants initially agreed to collect ESI from four custodians (in addition to the numerous non-custodial sources), but, in an effort to reach a resolution without Court intervention, agreed to nearly double the number of custodians to a total of seven.

**Proskauer**

The Honorable Becky R. Thorson
June 21, 2021
Page 5

- *Kara McShane.* McShane is a current member of the EBRC and has served on the EBRC since June 4, 2018.

- *James Steiner.* Steiner was a member of the EBRC from July 1, 2011 through September 22, 2020.

As current and former members of the EBRC, these four individuals—two of whom serve(d) as the Chairperson for the EBRC during almost the entire putative class period— were responsible for attending EBRC meetings and selecting and monitoring the Plan's investment alternatives based on advice and recommendations received from the Plan's advisors.

The Agent for the EBRC and the person with whom he works closely have been advisors to the EBRC concerning the Plan's investments for approximately two decades. In addition to having already produced all of the quarterly presentations since June 2012—18 months before the putative class period begins—that the Agent made to the EBRC, Defendants agreed to collect ESI from these two individuals as well:

- *Thomas Hooley.* Hooley serves as the Agent for the EBRC and is responsible for research of the Plan's investment alternatives, making recommendations to the EBRC, communicating with investment managers for the funds offered in the Plan, and the ongoing review of the Plan's investment alternatives. He prepares for the EBRC detailed quarterly reports about the Plan's investments and overall market updates. Hooley also prepares the annual investment fee analysis report for the Plan and presents the same to the EBRC.

- *Jim Newton.* Newton is an investment professional and has worked with Hooley for approximately two decades. Newton supports Hooley in the fulfillment of his duties, as described above.

Although this action pertains to the EBRC's selection and monitoring of Plan investments, and not the Wells Fargo asset management business, in response to Plaintiffs' search for documents to support their unfounded allegations that Wells Fargo benefited by virtue of the Plan's investments in Wells Fargo-affiliated investments, Defendants agreed to collect ESI from one custodian in the Wells Fargo asset management business:

- *Samuel Kopchick.* Kopchick, in his previous role as Senior Vice President of the Collective Fund Product & Project Management, created and submitted the proposals for newly created funds, including the collective investment funds challenged by Plaintiffs in this action, and signed the declaration of trust. Kopchick has been a primary source of information collected about the Wells Fargo-affiliated collective funds that have been Plan investments.

**Proskauer**

The Honorable Becky R. Thorson
June 21, 2021
Page 6

The ESI collected for these seven custodians alone amounts to approximately 475 gigabytes, or approximately 2.43 million documents.  (Exhibit A, Declaration of Jill Griset ("Griset Decl.") ¶ 10.)  To date, Defendants have processed the ESI for five of the seven custodians in order to test search terms (*see* Part IV, *infra*), and the processing and hosting costs already have exceeded $300,000.[3]  (Griset Decl. ¶ 7.)  Defendants estimate that application of Defendants' compromise list of search terms (*see* Part IV, *infra*) to the ESI of the seven custodians would yield a review population exceeding 330,000 documents, or nearly 2 million pages, and a first pass document review will require well in excess of 6,600 attorney hours.  (Griset Decl. ¶ 10.)  The cost for the review of all of the documents for just the seven custodians is estimated to be $700,000, not including work needed for privilege redactions.  (Griset Decl. ¶ 10.)

> **B.   Plaintiffs' Demand for Six Additional Custodians Is Not Proportional to the Needs of This Action.**

The Court should not require Defendants to collect ESI from six additional custodians because Plaintiffs have failed to establish any deficiency to a specific discovery request, and it would impose an undue burden on Defendants that is not proportional to the needs of this action.  As Defendants have repeatedly explained to Plaintiffs:  (i) Plaintiffs' stated reasons for demanding the addition of those custodians has no basis in fact; (ii) it is unlikely that the six additional custodians would produce many, if any, unique documents responsive to Plaintiffs' document requests; and (iii) the significant costs associated with collecting, processing, and reviewing ESI from those custodians clearly outweighs the minimal potential benefit to Plaintiffs.

The six custodians in dispute are:

- *Cynthia Geiwitz.*  Cynthia Geiwitz is an in-house attorney who also serves as the Secretary for the EBRC.  Plaintiffs demand that her ESI be collected because she attended EBRC meetings, signed EBRC meeting minutes, and "likely ma[de] changes" to drafts of meeting minutes and materials.  (Exhibit B, May 2, 2021 email at 5:06 PM EDT from Plaintiffs to Defendants.)  But all of the EBRC meeting minutes—drafts and final forms—already have been produced to Plaintiffs, and the EBRC meeting minutes summarize what, if any, edits were made to the minutes.  The EBRC Charters also have been produced, both drafts in red-line format and final forms, and the EBRC meeting minutes summarize what, if any, edits were made to the Charter.  *See Dryer v. Nat'l Football League*, No. 09-cv-2182, 2012 WL 12895563, at *3–4 (D. Minn. May 21, 2012) (denying plaintiff's motion to compel discovery of an additional custodian because plaintiff

---

[3] The ESI for the five custodians already processed include Ramos, McShane, Steiner, Hooley, and Newton.  (Griset Decl. ¶ 6.)

**Proskauer**

The Honorable Becky R. Thorson
June 21, 2021
Page 7

had an alternative source for the information).  There also is no basis for believing that there was significant, if any, emails regarding edits to these documents. (Exhibit C, Declaration of Cynthia Geiwitz.)  Furthermore, because Geiwitz is an in-house attorney, adding her as a custodian would impose on Defendants the considerable burden of reviewing a significant volume of documents for privilege that far outweighs any benefit to Plaintiffs.  *See Sprint Commc'ns Co. L.P. v. Charter Commc'ns, Inc.*, No. 17-cv-1734, 2019 WL 3369659, at *1 (D. Del. July 15, 2019) (observing that the in-house attorney "may have relevant and discoverable documents," but the special master had properly weighed the potential benefits to the parties against the defendant's burden of "gathering the ESI, filtering through the ESI for what is privileged, and then cataloging it").

- *Joe Ready and Jeff Kletti.*  Joe Ready is Head of Trust and Fiduciary, and Jeff Kletti is the Wealth Management Deputy Chief Investment Officer.  Neither of them are EBRC members.  While Plaintiffs demand that Kletti's ESI be collected because of his alleged role in marketing the collective funds business, as Defendants have explained to Plaintiffs, Wells Fargo does not market its collective funds.  (Exhibit D, Declaration of Samuel Kopchick.)  Thus, the singular reason for demanding Kletti's ESI simply provides no basis for collecting his ESI.  *See Harris v. Union Pac. R.R. Co.*, No. 16-cv-381, 2018 WL 2729131, at *4 (D. Neb. June 6, 2018) (denying plaintiffs' motion to compel the production of ESI from additional custodians where defendant asserted that the custodians were "not directly involved in the creation, implementation, and revision" of the program at issue in the case).

    Plaintiffs demand that Ready's ESI be collected because he is head of the collective funds business.  (Exhibit B.)  But, as discussed above, Kopchick has been a source of information collected about the Wells Fargo-affiliated collective funds, including the creation of the collective funds at issue in this case, that have been Plan investments, and there is no reason to believe that Ready would provide unique documents responsive to Plaintiffs' discovery requests.  (Exhibit D.)  *See Assured Guar. Mun. Corp. v. UBS Real Est. Sec. Inc.*, No. 12-cv-1579, 2013 WL 1195545, at *3 (S.D.N.Y. Mar. 25, 2013) (denying plaintiffs' motion to compel because mere speculation that one's position as a senior executive might increase the relevance of his files is not a basis for designating him as a custodian).  As courts have repeatedly recognized, Defendants are in the best position to identify where responsive documents may reside and who may have those documents.  *See Houston v. Papa John's Int'l, Inc.*, No. 18-cv-825, 2020 WL 6588505, at *2 (W.D. Ky. Oct. 30, 2020) ("[T]he responding party is generally in the best position to know and identify those individuals that have information relevant to the case."); *see also The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document*

Proskauer»

The Honorable Becky R. Thorson
June 21, 2021
Page 8

*Production*, 19 Sedona Conf. J. 1, 118, 121 (2018) (principle 6: "Responding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information," and noting that "deference regarding the selection and implementation of the discovery process should be given to the party that will incur the costs").

- *Patricia Callahan and Justin Thornton.*  Patricia Callahan and Justin Thornton are former members of the EBRC.  Callahan served on the EBRC for less than 18 months of the six-year class period, ending in 2015, and Thornton served for just over one year, from August 1, 2018 through August 20, 2019.

  Plaintiffs' demand for ESI from Callahan and Thornton is unreasonably duplicative of the four EBRC members whose terms cover the same period.  *See Mann v. City of Chi.*, Nos. 15-cv-9197, 13-cv-4531, 2017 WL 3970592, at *5 (N.D. Ill. Sept. 8, 2017) (denying motion to add four proposed custodians based on the individuals' short tenure with the organization and limited time in which the individuals held their positions); *Lauris v. Novartis AG*, No. 16-cv-393, 2016 WL 7178602, at *4–5 (E.D. Cal. Dec. 8, 2016) (denying plaintiffs' motion to add custodians because relevant discovery would be obtained from the already agreed upon custodians); *Dryer*, 2012 WL 12895563, at *4 (same).  Defendants have every reason to believe that all material documents relating to the EBRC during the putative class period will be captured in ESI collected from the seven custodians they agreed to, in addition to the EBRC minutes and other related materials already produced.

  Plaintiffs' only stated reason for demanding Callahan's ESI is that she is a former Chairwoman of the EBRC.  Plaintiffs' stated reason for demanding Thornton's ESI is that he attended some EBRC meetings at a time when he was not a member of the EBRC, he is a former Chairman of the EBRC, and he signed some of the Plan's Form 5500s (an annual filing with the U.S. Department of Labor) in certain years.  (Exhibit B.)  But, Defendants already have agreed to collect ESI from the current Chairwoman and a former Chairman of the EBRC (Ramos and Wick), who combined were the chairpersons for almost the entire putative class period, and, based on Defendants' investigation thus far, there is no reason to believe that an individual's role as Chairperson of the EBRC would turn-up unique documents.  (Exhibit E, Declaration of Suzanne Ramos.)

  Plaintiffs also have yet to explain how signing Form 5500s (which are publicly available and already have been produced) could result in the production of relevant information, in proportion to the burden such a search would impose.

Proskauer»

**Proskauer»**

The Honorable Becky R. Thorson
June 21, 2021
Page 9

- *Michael Branca.* Plaintiffs demand that Defendants collect ESI from Michael Branca because he signed some of the Plan's Form 5500s "and many of the Plan agreements," and attended EBRC meetings as a non-member. (Exhibit B.) Branca's ESI is not proportional to the needs of this action for the same reasons that Thornton's ESI related to signing some of the Form 5500s is not proportional to the needs of this action. And, whatever "Plan agreements" are relevant to this action have been or will be produced from non-custodial sources. Finally, Branca's mere attendance at some of the EBRC meetings as a non-member observer hardly establishes proportionality for collecting his ESI.

Despite months of meet-and-confer discussions regarding custodians, Plaintiffs have failed to put forth any legitimate basis for compelling Defendants to conduct such extensive and burdensome collections, when the custodians are not likely to have any unique information. The significant burden that would be imposed on Defendants as a result of having to collect, process, review, and potentially produce ESI from these six custodians is clearly disproportional to the needs of this action and certainly not merited at this time when there has been no showing of a deficiency in any of the responses to the discovery requests. As noted, Defendants have tested five custodians' ESI for responsiveness and, for these five custodians, Defendants have identified the volume of ESI; the documents that would need to be reviewed, *i.e.*, the review population; and estimated the total costs and time it would take for such a review. Defendants also have estimated these data points for the seven custodians they have agreed to as well as for the additional six custodians that Plaintiffs are demanding. A review of these data points reveals the substantial burden associated with Plaintiffs' demands:

**Proskauer**

The Honorable Becky R. Thorson
June 21, 2021
Page 10

|  | **Actual Data For Five Tested Custodians** | **Estimated Data For Defendants' Seven Agreed Custodians** | **Estimated Data For Plaintiffs' Demanded Thirteen Custodians** |
|---|---|---|---|
| Est. ESI Volume | 385 GB<br>1.98 MM documents<br>11.88 MM pages | 475 GB<br>2.43 MM documents<br>14.58 MM pages | 540 GB<br>2.77 MM documents<br>16.62 MM pages |
| Est. Total Costs | Exceeds $620,000 | Exceeds $700,000 | Exceeds $765,000 |
| Est. Review Population | 269,000 documents<br>1.6 MM pages | 330,000 documents<br>1.98 MM pages | 377,000 documents<br>2.26 MM pages |
| Est. Review Time for First Pass | 5,400 hours | 6,600 hours | 7,540 hours |
| Est. Completion | N/A | September 2021 | October 2021 |

(Griset Decl. ¶¶ 6–7, 10, 13.)

In short, having failed to establish any deficiency in Defendants' responses, the likely duplicity of the ESI from the additional custodians, along with the burden and expense of collecting, processing, reviewing, and potentially producing ESI for the six additional custodians demanded by Plaintiffs clearly outweighs the minimal potential benefit to Plaintiffs. Defendants thus request that the Court deny Plaintiffs' demand that the ESI from the six additional custodians be collected.[4]

---

[4] In the event that the Court has concerns about whether the ESI sought from the six additional custodians would in fact be duplicative, Defendants submit the prudent course of action would be to proceed with the seven custodians that Defendants agree to and if, after review of Defendants' production from these seven custodians, Plaintiffs can make a showing of good cause as to why the ESI from any of the six additional custodians is warranted, the parties should meet and confer and, if necessary, seek the Court's intervention at a later date. *See Houston*, 2020 WL 6588505, at *3 (denying the plaintiff's request to add additional custodians and holding that if, after the plaintiff's review of the produced ESI, ESI produced from the other custodians revealed that additional custodians had unique and relevant information, the plaintiffs may seek to add them); *Hyles v. New York City*, No. 10-cv-3119, 2016 WL 4077114, at *1 (S.D.N.Y. Aug. 1, 2016) (Peck, J.) (same). Defendants' suggestion to Plaintiffs to proceed along these lines has been repeatedly rebuffed by Plaintiffs.

### IV. Plaintiffs' Demand That Defendants Apply Nine Additional Search Terms to Search ESI Is Not Proportional to the Needs of This Action.

At the time the parties reached an impasse related to the issue of search terms, the parties had agreed to 133 search terms. There are nine additional search terms in dispute, five of which Defendants agreed to with modifications, and four of which Defendants declined to apply to the ESI. Defendants' compromise list of search terms totaled 143 search terms (the 133 search terms agreed to by the parties plus 10 additional search terms proposed by Defendants in lieu of the nine proposed by Plaintiffs and rejected by Defendants), which generated hits on 14% of the documents in the review population, *i.e.*, across the five custodians tested (Ramos, McShane, Hooley, Newton, and Steiner). (Griset Decl. ¶ 16.) As noted above, Defendants estimate that their compromise list of search terms would identify a review set of approximately 330,000 documents across the seven custodians for whom they agreed to collect ESI, in addition to all of the non-custodial sources collected.[5]

Defendants do not agree to nine of Plaintiffs' proposed search terms because testing concluded that they were too broad and, based upon Defendants' testing of the nine search terms, those additional documents are not likely to be responsive to Plaintiffs' requests. (Griset Decl. ¶ 19.)

Attached as Exhibit 1 to the Griset Declaration is a list of the nine search terms proposed by Plaintiffs that Defendants declined to apply to the collected ESI, and Defendants' rationale for declining to apply them.

If Plaintiffs' nine additional proposed search terms were added to the agreed-upon list of 133 search terms in lieu of using Defendants' 10 search terms that are included in Defendants' compromise list, it would add nearly 19,000 additional documents to the review set for just Defendants' seven proposed custodians and require an estimated over 380 additional attorney hours in just the first pass review of the documents. (Griset Decl. ¶ 17.) If the nine additional search terms were applied to Plaintiffs' 13 proposed custodians, it would add approximately

---

[5] On the afternoon of June 16th, Plaintiffs proposed four additional search terms. Defendants' preliminary testing of those search terms revealed that they too were overbroad and would likely result in thousands of non-responsive documents being added to the review population. Plaintiffs' untimely proposal did not allow Defendants appropriate time to fully evaluate the terms and address them in this letter-brief. In the event Plaintiffs pursue their request that Defendants apply these four additional search terms, Defendants reserve their right to address them more completely in their reply brief.

Earlier today, Plaintiffs agreed to Defendants' modification to search term 4 and agreed to abandon their request for search term 8. (*See* Griset Decl. Exhibit 1.) These day-of-filing concessions are of little consequence, particularly if Plaintiffs pursue their June 16th demand for four additional search terms.

**Proskauer**

The Honorable Becky R. Thorson
June 21, 2021
Page 12

21,500 documents to the review set requiring 430 attorney hours to review and produce.  (Griset Decl. ¶ 18.)

In short, Defendants' testing shows that adding Plaintiffs' additional terms will yield few, if any, additional responsive documents while simultaneously imposing on Defendants the burden of reviewing tens of thousands of non-responsive documents.  (Griset Decl. ¶¶ 18-19.)  Defendants thus request that the Court deny Plaintiffs' demand that they be required to apply Plaintiffs' nine additional search terms to the collected ESI.

V.     **Conclusion**

For the foregoing reasons, Defendants request that the Court deny Plaintiffs' demands and hold that:  (i) Defendants are not required to collect ESI from the six additional custodians in dispute; and (ii) Defendants are not required to apply the nine additional search terms to the collected ESI.

In the event that the Court concludes that Defendants should collect and review ESI from any or all of the additional custodians or search terms, Defendants request that the Court allocate the costs of the additional discovery to Plaintiffs in an amount equal to the excessive costs incurred.  See *Lawson v. Spirit AeroSystems, Inc.*, No. 18-cv-1100, 2020 WL 3288058, at *21–22 (D. Kan. June 18, 2020) (allocating a portion of the costs to the plaintiff after the plaintiff pushed for a review that was disproportional to the needs of the case); *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, No. 06-cv-547, 2016 WL 7365195, at *2–3 (N.D. Ga. May 26, 2016) (recognizing that "a party may seek to share reasonable costs related to reviewing documents prior to their production," and ordering sharing for expenses related to the "significant electronic discovery and document production costs that Wells Fargo will incur from an outside vendor"); *Boeynaems v. LA Fitness Int'l, LLC*, 285 F.R.D. 331, 341 (E.D. Pa. 2012) ("Where the burden of discovery expense is almost entirely on the defendant, principally because the plaintiffs seek class certification, then the plaintiffs should share the costs.").

Respectfully submitted,

*/s/ Russell L. Hirschhorn*


Russell L. Hirschhorn