**Exhibit 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Yvonne Becker, Christopher Nobles, Rosa Ramirez, Valerie Seyler, and Jannien Weiner,<br><br>Plaintiffs,<br><br>v.<br><br>Wells Fargo & Co.; Employee Benefit Review Committee; Wells Fargo Bank, National Association; and John and Jane Does 1-20,<br><br>Defendants. | Case No. 0:20-cv-02016 (KMM/BRT) |

## CLASS ACTION SETTLEMENT AGREEMENT & RELEASE

This CLASS ACTION SETTLEMENT AGREEMENT & RELEASE ("Settlement Agreement") is entered into by and between Named Plaintiffs and the Settlement Class, as defined in Sections 1.23 and 1.38 below, on the one hand, and Defendants, as defined in Section 1.12 below, on the other hand.  Capitalized terms and phrases have the meanings provided in Section 1 below or as specified elsewhere in this Settlement Agreement.

1. **DEFINITIONS**

1.1.    "Action" shall mean: *Becker et al. v. Wells Fargo & Company et al.*, No 0:20-cv-02016 (KMM/BRT), an action pending in the United States District Court for the District of Minnesota, and that was transferred from the United States District Court for the Northern District of California, No. 4:20-cv-01803 (JST).

1.2.    "Agreement Execution Date" shall mean: the date on which this Settlement Agreement is fully executed.

1.3.    "CAFA" shall mean: the Class Action Fairness Act of 2005, as amended.

1.4.    "Case Contribution Award" shall mean: any monetary amount awarded by the Court in recognition of the Named Plaintiffs' assistance in the prosecution of this Action and payable pursuant to Section 11 below.

1.5.    "Challenged Funds" shall mean the:  (1) Wells Fargo/State Street Target Date CITs, including all vintages, *i.e.*, Wells Fargo/State Street Target Today CIT, Wells Fargo/State Street Target 2010 CIT, Wells Fargo/State Street Target 2015 CIT, Wells Fargo/State Street Target 2020 CIT, Wells Fargo/State Street Target 2025 CIT, Wells Fargo/State Street Target 2030 CIT,

Wells Fargo/State Street Target 2035 CIT, Wells Fargo/State Street Target 2040 CIT, Wells Fargo/State Street Target 2045 CIT, Wells Fargo/State Street Target 2050 CIT, Wells Fargo/State Street Target 2055 CIT, Wells Fargo/State Street Target 2060 CIT, Wells Fargo/State Street Target 2065 CIT; (2) Wells Fargo/State Street Global Bond Index CIT; (3) Wells Fargo/SSGA Global Equity Index CIT; (4) Small Cap Fund, including the Wells Fargo Emerging Growth Fund but not including any of its non-Wells Fargo component funds; (5) International Equity Fund, including the Wells Fargo/Causeway International Value CIT but not including any of its non-Wells Fargo component funds; (6) Global Bond Fund, including the Wells Fargo/Federated Total Return Bond CIT but not including any of its non-Wells Fargo component funds; (7) Wells Fargo 100% Treasury Money Market Fund; and (8) Wells Fargo Stable Value Fund, including all of its component funds, *e.g.*, the Wells Fargo/BlackRock Short Term Investment Fund and Wells Fargo Stable Return Fund.

1.6.    "Class Counsel" and/or "Plaintiffs' Counsel" shall mean: (a) Cohen Milstein Sellers & Toll PLLC, (b) Keller Rohrback LLP, and (c) Zimmerman Reed LLP.

1.7.    "Class Settlement Amount" is defined in Section 8.2 below.

1.8.    "Complaint" shall mean: the Second Amended Class Action Complaint filed in the Action on September 28, 2021 (Dkt. 178) and any complaint preceding and thus superseded by the Second Amended Class Action Complaint.

1.9.    "Confidentiality Order" shall mean: the Third Amended Protective Order entered by the Court on October 22, 2021 (Dkt. 191) and any protective order or amendment to a protective order preceding and thus superseded by the Third Amended Protective Order.

1.10.    "Court" shall mean: the United States District Court for the District of Minnesota.

1.11.    "Current Participant" shall mean: Settlement Class members who have a positive balance in their Plan account at the time the Court enters the Final Approval Order.

1.12.    "Defendants" shall mean: Wells Fargo & Company; Employee Benefit Review Committee; and Wells Fargo Bank, National Association.

1.13.     "Defendants' Released Claims" shall mean any and all claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, and causes of action, whether known or unknown, based on facts existing as of the date of the Preliminary Approval Order, which have been, or could have been, asserted in the Action or in any court or forum, by Defendants against any of the Named Plaintiffs, Settlement Class members, or Class Counsel (the "Released Plaintiff Parties"), which arise out of the institution, prosecution or settlement of the Action, except for claims to enforce the Settlement Agreement.

1.14.    "Defense Counsel" shall mean: (1) Proskauer Rose LLP and (2) Dorsey & Whitney LLP.

1.15.    "Effective Date of Settlement" shall mean: the date on which all of the conditions to settlement set forth in Section 3 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

2

1.16.    "ERISA" shall mean: the Employee Retirement Income Security Act of 1974, as amended, including all rules and regulations promulgated thereunder.

1.17.    "Escrow Agent" shall mean the custodian of the Qualified Settlement Fund, which shall be selected by Class Counsel and approved by Defendants.

1.18.    "Final" shall mean, with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and final disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.19.    "Final Individual Dollar Recovery" shall mean the portion of the Net Settlement Fund payable to an individual Settlement Class member, as determined according to the procedures described in the Plan of Allocation.

1.20.    "Former Participants" shall mean: Settlement Class members who have no account balance in the Plan at the time the Court enters the Final Approval Order.

1.21.    "Independent Fiduciary" shall mean: a fiduciary retained pursuant to approval by the Plan Administrator for purposes of Section 3.4 and that has no "relationship to" or "interest in" (as those terms are used in the Class Exemption referred to in Section 3.4) any of the Parties.

1.22.    "Mediator" shall mean: Robert A. Meyer, JAMS.

1.23.    "Named Plaintiffs" shall mean: Yvonne Becker, Christopher Nobles, Rosa Ramirez, Valerie Seyler, and Jannien Weiner.

1.24.    "Net Settlement Fund" shall mean: the Qualified Settlement Fund, plus any interest or income earned on the Qualified Settlement Fund, less any: (i) taxes and tax-related expenses; (ii) Settlement Administration Expenses; (iii) reimbursement of expenses incurred by Class Counsel that are awarded by the Court; (iv) attorneys' fees to Class Counsel that are awarded by the Court; (v) Case Contribution Awards awarded by the Court; and (vi) a Court-approved contingency reserve to pay any Settlement Administration Expenses that have not been paid as of the date of distribution of the Final Individual Dollar Recovery and amounts estimated by the Settlement Administrator for adjustments of data or calculation errors and the payment of taxes not yet paid at the time of distribution.

1.25.    "Participant" shall mean: any person who is or was a participant in the Plan at any time from March 13, 2014 through the date on which the Settlement becomes Final, including any beneficiary of a deceased person who was a participant in the Plan.

1.26.    "Party" or "Parties" shall mean the Named Plaintiffs and Defendants, either individually or collectively.

1.27.    "Person" shall mean: an individual, partnership, corporation, or any other form of organization.

1.28.   "Plan" shall mean: the Wells Fargo & Company 401(k) Plan.

1.29.   "Plan Administrator" shall have the meaning ascribed to it in the Plan.

1.30.   "Plan of Allocation" is defined in Section 9.3 below.

1.31.   "Qualified Settlement Fund" is defined in Section 8.1 below.

1.32.   "Released Claims" or "Plaintiffs' Released Claims" shall mean: subject to Section 10 below and the Carved Out Claims, any and all claims, actions, demands, rights, obligations, liabilities, damages, attorneys' fees, expenses, costs, disgorgement, and causes of action, whether arising under federal, state or local law, whether by statute, contract or equity, whether brought in an individual, derivative, or representative capacity, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, for actions during the period March 13, 2014 through the date on which the Settlement becomes Final:

> (a)   That were asserted in the Complaint, or that arise out of the conduct alleged in the Complaint whether or not pleaded in the Complaint;
>
> (b)   That arise out of, relate to, are based on, or have any connection with (1) the selection, oversight, retention, or performance of the Challenged Funds; and (2) fees, costs, or expenses charged to, paid by, or reimbursed by the Plan, or the Plan's Participant, directly or indirectly;
>
> (c)   That would be barred by *res judicata* based on entry of the Final Approval Order;
>
> (d)   That relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Net Settlement Fund to the Plan or any member of the Settlement Class in accordance with the Plan of Allocation; or
>
> (e)   That relate to the approval by the Independent Fiduciary of the Settlement Agreement.

The Parties stipulate and agree that, upon the Effective Date of Settlement, Plaintiffs and Defendants shall expressly waive, and each of the other Settlement Class members and each of the Releasees shall be deemed to have waived, and by operation of the Final Approval Order, shall have waived expressly, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable or equivalent to California Civil Code § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

1.32.1. "Carved Out Claims" are the following rights and/or claims which are specifically excluded from the Released Claims:

> (a)  Any rights or duties arising out of the Settlement Agreement, including the enforcement of the Settlement Agreement;
>
> (b)  Claims of individual denial of benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) that do not fall within sections (a)-(e) above; or
>
> (c)  Claims arising exclusively from conduct after the Settlement becomes Final.

In no event shall any member of the Settlement Class be permitted to recover more than 100% of his or her vested benefits.

1.33.   "Releasees" or "Released Defendant Parties" shall mean: the Defendants, Galliard Capital Management, Inc., the Human Resources Committee of the Board of Directors of Wells Fargo & Company, Ronald L. Sargent, Wayne M. Hewett, Donald M. James, Maria R. Morris, all current and former members of the Employee Benefit Review Committee, the Agent of the Employee Benefit Review Committee as defined in the Wells Fargo & Company 401(k) Plan Investment Policy Statement, and any Person who served or serves as a named or functional fiduciary (including de facto fiduciaries) of the Plan, trustee, investment manager, investment consultant, investment advisor, service provider, or record-keeper, together with, for each of the foregoing, any and all predecessors, Successors-In-Interest, present and former Representatives, direct or indirect parents and subsidiaries, attorneys and any Person that controls, is controlled by, or is under common control with any of the foregoing, including, without limitation, every Person who was a director, officer, governor, management committee member, in-house counsel, employee, or agent of Wells Fargo & Company or Wells Fargo Bank, N.A., and its or their, as applicable, subsidiaries and affiliates, together with, for each of the forgoing, any and all present or former Representatives, insurers, reinsurers, consultants, attorneys, administrators, employee benefit plans, investment advisors, investment underwriters, and spouses.

1.34.   "Representative" shall mean: representatives, attorneys, agents, directors, officers, employees, insurers, and reinsurers.

1.35.   "Settlement" shall mean: the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.36.   "Settlement Administration Expenses" shall mean: the expenses of the implementation of the Settlement and the Plan of Allocation, including the fees and expenses associated with the Independent Fiduciary described herein (not to exceed $25,000), the fees and expenses of the Settlement Administrator and Escrow Agent incurred in (i) providing notice to the Settlement Class, (ii) calculating class member distributions and implementing the Plan of Allocation, (iii) distributing funds to Former Participants, (iv) taxes on the Qualified Settlement Fund and tax related expenses, and (v) generally administering the Settlement.  All Settlement Administration Expenses shall be paid from the Qualified Settlement Fund.  For the avoidance of doubt, Settlement Administration Expenses do not include any costs or expenses for the Plan's recordkeeper or trustee to distribute settlement recoveries to Current Participants based on the instructions of the Settlement Administrator.  The Parties agree that the recordkeeper, trustee,

and Defendants will not be exercising any discretion when distributing Settlement recoveries to Current Participants based on the instructions of Class Counsel and the Settlement Administrator. Further the Parties, Class Counsel and Defense Counsel do not exercise discretion when assisting the Settlement Administrator with the implementation of the Court approved Plan of Allocation.

1.37.   "Settlement Administrator" shall mean: a third party retained by Class Counsel, subject to approval by Wells Fargo and the Court, who will: (i) issue the Class Notice, (ii) calculate Settlement Class members' distributions and implement the Plan of Allocation, (iii) distribute payments to Former Participants; (iv) effectuate the payment of all taxes and tax expenses, including tax reporting, remittance, and/or withholding obligations for distributions to Settlement Class members; and (v) general administration of the Settlement.

1.38.   "Settlement Class" shall mean: all Persons who were Participants of the Plan at any time from March 13, 2014 through the date on which the Settlement becomes Final. Excluded from the Settlement Class are members of the Employee Benefits Review Committee from March 13, 2014 through the date on which the Settlement becomes Final.

1.39.   "Successor-In-Interest" shall mean: a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

1.40.   "Term Sheet" shall mean: the document entitled "Settlement Terms" executed by the Parties on January 5, 2022.

1.41.   "Wells Fargo" shall mean: Wells Fargo & Company and each of its parents, subsidiaries, affiliates, predecessors, and Successors-In-Interest.

2.   **RECITALS**

2.1.   In the Complaint, the Named Plaintiffs allege that Defendants were fiduciaries of the Plan and that they breached fiduciary duties owed to the Plan's Participants (including Named Plaintiffs) and engaged in prohibited transactions as defined by ERISA.

2.2.   Class Counsel has conducted an investigation into the facts, circumstances and legal issues associated with the allegations made in the Action. This investigation has included, *inter alia*: (a) reviewing and analyzing documents produced by or otherwise relating to Defendants, the Plan, and the Challenged Funds; and (b) researching the applicable law with respect to the claims asserted in the Action and the defenses and potential defenses thereto.

2.3.   Releasees deny any and all liability to Named Plaintiffs and the Settlement Class, and deny any and all allegations of wrongdoing made in the Complaint and Action. Releasees deny that some or all of them were fiduciaries under ERISA, or were acting as ERISA fiduciaries at the time of the events complained of, or to the extent that any of them were acting as fiduciaries, that any breach of fiduciary duty or violation of the prohibited transaction rules occurred in connection with the investment, acquisition, oversight, monitoring, or retention of the Challenged Funds in, or any other actions taken with respect to, the Plan. Releasees further

DocuSign Envelope ID: 11BFBFB1-8FFA-4D28-9764-67035950CB39

contend that they acted prudently and loyally at all times and in all respects with regard to the Plan.

2.4.   On May 8, 2020, Judge Jon S. Tigar of the United States District Court for the Northern District of California granted the Parties' joint stipulation to dismiss the Human Resources Committee of the Board of Directors of Wells Fargo & Company, Ronald L. Sargent, Wayne M. Hewett, Donald M. James, Maria R. Morris, and Does 21–30 from the Action.  (Dkt. 40.)

2.5.   On September 21, 2020, Judge Tigar granted Defendants' motion to transfer venue (Dkt. 59) and, on September 22, 2020, transferred the Action to the United States District Court for the District of Minnesota (Dkt. 60).

2.6.   On April 1, 2021, the Ninth Circuit denied Plaintiff Yvonne Becker's request for a writ of mandamus rescinding the district court's order.  *Becker v. United States Dist. Court*, 993 F.3d 731 (9th Cir. 2021).

2.7.   On May 12, 2021, the Court issued an opinion denying Defendants' motion to dismiss. (Dkt. 134.)

2.8.   On August 19, 2021, the Court granted the Parties' joint stipulation to dismiss Galliard Capital Management, Inc. from the Action.  (Dkt. 165.)

2.9.   During the course of the Action, the Parties engaged in extensive discovery, including the production of over one hundred thousand documents by the Parties and third parties, and depositions of defense fact witnesses and all of the Named Plaintiffs.

2.10.   During the course of the Action, the Parties engaged in settlement discussions, including through private mediation with the Mediator.  The Parties signed the Term Sheet on January 5, 2022.  The terms of the Parties' settlement are memorialized in this Settlement Agreement.

2.11.   On January 11, 2022, the Court ordered that all proceedings in the Action be stayed pending execution of the Settlement Agreement and preliminary approval of the Settlement. (Dkt. 241.)

2.12.   Class Counsel believes that the Settlement will provide a benefit to the Settlement Class, and, when that benefit is weighed against the attendant risks of continuing the prosecution of the Action, the Settlement represents a reasonable and fair resolution of the claims of the Settlement Class.  In reaching this conclusion, Class Counsel has considered, among other things: the risks of litigation; the relevant law; the time necessary to achieve a final resolution through litigation; the complexity of the claims set forth in the Complaint; and the benefit accruing to the Plan's Participants under the Settlement.

2.13.   Defendants maintain that the Plan has been managed, operated, and administered at all relevant times in compliance with its terms, ERISA, and all applicable laws and regulations. This Settlement Agreement, and the prior negotiations between the Parties, shall in no event be construed as, or be deemed evidence of, an admission or concession of any wrongdoing, fault or liability of any kind by Defendants.

2.14.    Defendants desire to resolve fully and settle with finality the Action and all of the Released Claims for themselves and the Plan, thereby avoiding the risk, expense, inconvenience, burden, distraction and diversion of their personnel and resources, and uncertainty of outcome that is inherent in any litigation, associated with the Action.

2.15.    The Named Plaintiffs, the Settlement Class and Defendants have thus reached this Settlement by and through their respective counsel on the terms and conditions set forth herein, which is subject to Court approval.

3.    **CONDITIONS TO EFFECTIVENESS OF THE SETTLEMENT**

3.1.    *Effectiveness of Settlement*.  The Settlement provided for in this Settlement Agreement shall not become binding unless and until each and every one of the following conditions in Sections 3.2 through 3.8 shall have been satisfied or waived.

3.2.    *Court Approval*.  The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this Section 3.2.  The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder.  The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

3.2.1.    *Motion for Preliminary Approval of Settlement and of Notices*.  The Court shall have approved the motion for preliminary approval of settlement filed by Named Plaintiffs ("Preliminary Approval Motion") by issuing an order in substantially the same form as attached hereto as Exhibit 1 (the "Preliminary Approval Order"):

(a)   preliminarily approving the Settlement embodied in this Settlement Agreement;

(b)   directing the Settlement Administrator to mail by first class mail or by electronic means the Class Notice to all Settlement Class members;

(c)   finding that: (i) the proposed Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) provides sufficient notice to all members of the Settlement Class of the time and place of the Fairness Hearing (defined below in Section 3.2.5) and (C) describes the rights of all Settlement Class members including that the recipients of the Class Notice may object to approval of the Settlement; and (ii) the proposed manner of distributing the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process;

(d)   setting the Fairness Hearing; setting the deadline for all objections to any aspect of the Settlement Agreement that is at least twenty (20) days prior to the Fairness Hearing; setting the deadline for a notice to be filed by any person who wishes to

8

speak at the Fairness Hearing at least twenty (20) days prior to the Fairness Hearing;

(e) providing that any Party may file a response to an objection by a Settlement Class member at least ten (10) calendar days before the Fairness Hearing;

(f) approving the form of the CAFA Notices attached as Exhibit B (the "CAFA Notices") and order that upon mailing of the CAFA Notices, Defendants will have fulfilled their obligations under CAFA; and

(g) approving class notice substantially in the form attached to the Preliminary Approval Order as Exhibit A (the "Class Notice").

3.2.2. *Class Certification*.

(a) The Court shall have certified the Action as a class action for settlement purposes pursuant to Rule 23(b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure, with Named Plaintiffs as the named Settlement Class representatives, with Cohen Milstein Sellers & Toll PLLC, Keller Rohrback LLP, and Zimmerman Reed LLP as Class Counsel, and with a "Settlement Class" as defined above, except that this condition shall also be deemed satisfied if another member of the Settlement Class is named as Settlement Class representative.

(b) The Parties agree to stipulate to a certification of the Action as a class action for settlement purposes, pursuant to Rule 23(b)(1) and/or (b)(2) of the Federal Rules of Civil Procedure, on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of January 4, 2022, the day immediately prior to the date on which the Term Sheet was executed. In such event, Defendants will not have consented to class certification, the agreements and stipulations in this Settlement Agreement concerning class definition or class certification shall not be used as evidence or argument to support class certification, and Defendants will retain all rights and arguments with respect to any motions for class certification that Named Plaintiffs may make.

3.2.3. *Issuance of Class Notice*. On the date and in the manner set by the Court in its Preliminary Approval Order, the Settlement Administrator shall cause the Class Notice to be sent to members of the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of notice. Defendants shall use their best efforts with respect to the Class Notice, including by providing the last known participant mailing addresses and email addresses in electronic spreadsheet format to the extent Defendants have such information. The Parties agree, and the form of Preliminary Approval Order attached hereto as Exhibit 1 shall provide, that the last known mailing addresses and email addresses for the Settlement Class members in the possession of the Plan's current recordkeeper will suffice for all purposes in connection with this Settlement, including, without limitation, the furnishing of the Class Notice. The Settlement

DocuSign Envelope ID: 41BEDEB4-855A-4D28-9754-6703EBE0C820

Administrator shall enter into a confidentiality agreement and information security agreement, both of which shall be satisfactory to Wells Fargo to adequately protect information provided to the Settlement Administrator relating to the Settlement and the identification of Settlement Class members.

3.2.4.  *Internet Publication of Class Notice*.  Class Counsel also shall have given notice by publication of the Settlement Agreement and Class Notice.

3.2.5.  *The Fairness Hearing*.  On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing"), during or after which the Court will issue the "Final Approval Order."  The Parties further agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing.  The Parties will not do anything inconsistent with obtaining such a Final Approval Order in substantially the same form as attached hereto as Exhibit 2, which is an Order by the Court that:

    (a)    the proposed Settlement between the Parties on the terms and conditions provided for in this Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court;

    (b)    final judgment should be entered ("Judgment");

    (c)    the Settlement Class should be certified as a non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23;

    (d)    the Class Notice distributed to members of the Settlement Class constituted the best notice practicable under the circumstances and sufficient notice of the Fairness Hearing and all rights of members of the Settlement Class was provided consistent with Federal Rule of Civil Procedure 23 and the requirements of due process;

    (e)    the requirements of CAFA have been satisfied;

    (f)    the proposed Plan of Allocation, to be filed with the Court, and described below in Section 9.3, is approved;

    (g)    Settlement Administration Expenses shall be paid from the Qualified Settlement Fund;

    (h)    establishes a contingency reserve to be reasonably determined by the Settlement Administrator and Class Counsel;

    (i)    the Named Plaintiffs shall be awarded Case Contribution Award(s) in the amount(s) approved by the Court;

    (j)    Class Counsel shall receive attorneys' fees and reimbursement of expenses as approved by the Court;

(k)      the Settlement Administrator shall have final authority to determine the amount of the Net Settlement Fund to be allocated to each Current Participant and each Former Participant pursuant to the Plan of Allocation approved by the Court;

(l)      the Settlement Administrator shall distribute the Net Settlement Fund in accordance with the Plan of Allocation that is approved by the Court;

(m)      the payments made from the Net Settlement Fund to effect the Plan of Allocation constitute restorative payments in accordance with Revenue Ruling 2002-45;

(n)      bar and enjoin all Settlement Class members from asserting any of Plaintiffs' Released Claims against any of the Released Defendant Parties, and bar and enjoin all Defendants from asserting any of Defendants' Released Claims against any of the Released Plaintiff Parties;

(o)      the Parties shall take the necessary steps to effectuate the terms of the Settlement Agreement; and

(p)      the Court shall retain jurisdiction to enforce and interpret the Settlement Agreement.

3.2.6.  *Motion for Final Approval of Class Action Settlement*.  On the date set by the Court in its Preliminary Approval Order, Named Plaintiffs shall have filed a motion (the "Final Approval Motion") for Final Approval of the Settlement.  However, such date shall be at least twenty-one (21) days before the deadline for objections.  The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

3.3.    *Finality of Final Approval Order*.  The Final Approval Order shall have become Final.

3.4.    *Determination by Independent Fiduciary*.  At least twenty-one (21) days prior to the deadline for filing the Final Approval Motion, the Independent Fiduciary shall have approved and authorized in writing the Settlement in accordance with Prohibited Transaction Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended by 72 Fed. Reg. 65,597 (the "Class Exemption").  If the Independent Fiduciary disapproves or otherwise does not authorize the Settlement, then the Parties, through their counsel, shall attempt to agree in writing prior to filing the Final Approval Motion to modify the Settlement to satisfy objections by the Independent Fiduciary to the Settlement.  If the Parties are unable to reach agreement on any modification required by the Independent Fiduciary, and at the sole discretion of Defendants, the Settlement Agreement shall terminate and become null and void and the provisions of Section 10.3 shall apply.  Notwithstanding the foregoing, the Parties may agree that Section 3.4 shall not be a condition precedent to the Settlement becoming Final and proceed with the settlement approval process.

3.4.1.  The Independent Fiduciary's fees and expenses up to $25,000 shall be paid from the Qualified Settlement Fund.  Any amount over $25,000 shall be borne by Wells Fargo separate and apart from the Qualified Settlement Fund.  The Independent Fiduciary shall acknowledge in writing that it is a fiduciary with respect to the Settlement of this Action on behalf of the Plan. The Defendants and Class Counsel will comply with reasonable requests for non-privileged

DocuSign Envelope ID: 41BEDEB4-85EA-4D28-9754-6703EBF0C820

information made by the Independent Fiduciary that are for the purpose of reviewing and evaluating the Settlement Agreement and subject to the Confidentiality Order.

3.5.     *Compliance with CAFA*.  Defendants will fulfill their obligations under CAFA and the Court shall have determined that Defendants complied with CAFA and its notice obligations therein by providing appropriate federal and state officials with information about the Settlement.

3.6.     *Dismissal of Action With Prejudice*.  The Action shall have been dismissed with prejudice as against Defendants, Galliard Capital Management, Inc., the Human Resources Committee of the Board of Directors of Wells Fargo & Company, Ronald L. Sargent, Wayne M. Hewett, Donald M. James, Maria R. Morris, and all current and former members of the Employee Benefit Review Committee, on the Effective Date of Settlement.

3.7.     *Funding of Class Settlement Amount*.  Wells Fargo shall deposit thirty-two million five hundred thousand U.S. dollars ($32,500,000) into the Qualified Settlement Fund (defined below in Section 8.1) within twenty-one (21) days after the Court issues the Preliminary Approval Order as long as Wells Fargo has been provided wiring instructions and a completed W-9 from the Settlement Administrator.

3.8.     *No Termination*.  The Settlement shall not have terminated pursuant to Section 10 below.

3.9.     *Materiality of Settlement Conditions*.  The Parties expressly acknowledge that this Settlement is specifically conditioned upon the occurrence of each and every one of the foregoing conditions precedent prior to the Effective Date of Settlement, and that a failure of any condition set forth in Sections 3.1 through 3.8 above at any time prior to the Effective Date of Settlement shall make this Settlement Agreement, and any obligation to pay the thirty-two million five hundred thousand U.S. dollars ($32,500,000), or any portion thereof, null, void, and of no force and effect, unless the Parties agree in writing that despite the non-occurrence of one of the above conditions the remainder of the Settlement Agreement shall go forth.

4.     **RELEASES AND COVENANT NOT TO SUE**

4.1.     *Release By Named Plaintiffs, the Settlement Class, Defendants, and the Plan*.

4.1.1.   *Releases of the Releasees*.  Subject to Section 10 below and the Carved Out Claims, upon the Effective Date of Settlement, Named Plaintiffs, on behalf of themselves and on behalf of each member of the Settlement Class and their Successors-In-Interest, absolutely and unconditionally release and forever discharge the Releasees from any and all Released Claims that Named Plaintiffs or the Settlement Class directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have.  Likewise, Defendants release and forever discharge the Released Plaintiff Parties for any and all Defendants' Released Claims that Defendants directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have.

4.1.2.   *Plan Release*.  Subject to Section 10 below, upon the Effective Date of Settlement, the Independent Fiduciary's approval of the Settlement shall constitute a release of any and all Released Claims the Plan may have against any and all Releasees.

4.1.3.  *Covenant Not to Sue*.  Subject to Section 10 below, Named Plaintiffs and each member of the Settlement Class (on behalf of themselves, their Successors-In-Interest, and their Representatives), and the Plan (subject to Independent Fiduciary approval as required by Section 3.4), expressly covenant and agree that they, acting individually, derivatively, or together, or in combination with others, shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims and that the foregoing covenant and agreement shall be a complete defense to any such Released Claims against any of the Releasees. Likewise, Defendants expressly covenant and agree that they shall not sue or seek to institute, maintain, prosecute, argue, or assert in any action or proceeding any cause of action, demand, or claim on the basis of, connected with, or arising out of any of Defendants' Released Claims and that the foregoing covenant and agreement shall be a complete defense to all of Defendants' Released Claims against any of the Released Plaintiff Parties.  Nothing herein shall preclude any action to enforce the terms of this Settlement Agreement.

5.  **COVENANTS**

Named Plaintiffs, on their own behalves and on behalf of the members of the Settlement Class and the Plan, and Defendants, hereby covenant as follows:

5.1.  *Taxation of Qualified Settlement Fund*.  Named Plaintiffs acknowledge that neither the Parties, Releasees, Defense Counsel, Class Counsel nor any of their Representatives or Successors-In-Interest shall have any responsibility for any taxes due on the Qualified Settlement Fund, or on any funds that the Plan, members of the Settlement Class, or Named Plaintiffs receive from the Qualified Settlement Fund.  Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Qualified Settlement Fund or any allocation or distribution therefrom.

5.2.  *Cooperation*.

5.2.1.  Wells Fargo shall use its best efforts to provide Class Counsel with the names, last known addresses, and email addresses of members of the Settlement Class in electronic spreadsheet format (to the extent Wells Fargo has such information) as soon as reasonably possible upon entry of the Preliminary Approval Order.  However, Wells Fargo will not transfer any Settlement Class member information until Wells Fargo has fully approved the Settlement Administrator and the Settlement Administrator has entered into a confidentiality agreement and information security agreement, both of which shall be satisfactory to Wells Fargo to adequately protect information provided to the Settlement Administrator relating to the Settlement and the identification of Settlement Class members.  Such information shall be used by the Settlement Administrator to deliver the Class Notice, and implement the Settlement, including the Plan of Allocation, and for no other purpose.

5.2.2.  Class Counsel anticipates that the Settlement Administrator and Class Counsel will receive inquiries from Plan Participants concerning whether they are members of the Settlement Class.  To the extent that such Persons are not included in the information provided in the paragraph immediately above, Wells Fargo and/or its Representative will reasonably assist the

Settlement Administrator and Class Counsel in determining whether such Persons are or are not members of the Settlement Class.

6. **REPRESENTATIONS AND WARRANTIES**

6.1.   *Parties' Representations and Warranties.*

6.1.1.   Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Released Claims against any Releasee, and further covenant that they will not assign or otherwise transfer any interest in any Released Claims.

6.1.2.   Named Plaintiffs represent and warrant that they shall have no surviving claim or cause of action against any of the Releasees with respect to the Released Claims against them.

6.1.3.   The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; except as expressly stated herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by any other Party or its Representatives; and each Party assumes the risk of mistake as to facts or law.

6.1.4.   The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts pertaining to the Settlement, this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is signed freely by each Person executing this Settlement Agreement on behalf of each of the Parties.

6.2.   *Signatories' Representations and Warranties.*   Each individual executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal which such individual represents or purports to represent.

7. **NO ADMISSION OF LIABILITY**

The Parties understand and agree that this Settlement Agreement embodies a compromise and settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding of fiduciary status under ERISA or wrongdoing by any of the Releasees, or give rise to any inference of fiduciary status under ERISA or wrongdoing or admission of wrongdoing or liability in this or any other proceeding.  This Settlement Agreement and the payment made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal or factual.  Moreover, the Releasees specifically deny any such liability or wrongdoing.  Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or

proceeding to enforce this Settlement Agreement or arising out of or relating to the Final Approval Order.

8.      **THE QUALIFIED SETTLEMENT FUND; DELIVERIES INTO THE QUALIFIED SETTLEMENT FUND ACCOUNT**

8.1.    *The Qualified Settlement Fund.*

8.1.1.   As noted above in Section 3.7, Wells Fargo shall deposit thirty-two million five hundred thousand U.S. dollars ($32,500,000) into the Qualified Settlement Fund within twenty-one (21) days after the Court issues the Preliminary Approval Order as long as Wells Fargo has been provided wiring instructions and a completed W-9 from the Settlement Administrator.  The Qualified Settlement Fund is an interest-bearing escrow account, trusteed by the Escrow Agent.

8.1.2.   The Qualified Settlement Fund shall:  (1) bear interest for the benefit of the Settlement Class, (2) be structured and managed to qualify as a Qualified Settlement Fund under Section 468B-1 of the Internal Revenue Code and Treasury regulations promulgated thereunder, and (3) contain customary provisions for such funds, including obligations of the Qualified Settlement Fund to make tax filings and to provide reports to the Parties concerning taxes.  The Escrow Agent timely shall make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to prepare and deliver, in a timely and proper manner, the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.  The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

8.1.3.   Class Counsel agrees to use best efforts to attempt to have the Escrow Agent structure the Qualified Settlement Fund to the extent possible to preserve for the Settlement Class the tax benefits associated with retirement plans.

8.1.4.   The Parties acknowledge and agree that neither the Parties, Defense Counsel, nor Class Counsel shall have authority or liability in connection with the management, investment, maintenance or control of the Qualified Settlement Fund.

8.2.    *The Class Settlement Amount*.  The thirty-two million five hundred thousand U.S. dollars ($32,500,000) deposited in the Qualified Settlement Fund pursuant to Section 8.1 above, plus all interest income earned thereon and less expenditures authorized under this Settlement Agreement, shall constitute the "Class Settlement Amount."

8.3.    *Sole Monetary Contribution*.  The thirty-two million five hundred thousand U.S. dollars ($32,500,000) shall be the full and sole monetary contribution and consideration made by or on behalf of Releasees in connection with the Action and Settlement.  The thirty-two million five hundred thousand U.S. dollars ($32,500,000) specifically satisfies any and all claims for costs and attorneys' fees by Class Counsel, claims for Case Contribution Awards to Named Plaintiffs, any costs or expenses of the Class Notice, the cost of the Independent Fiduciary (up to $25,000), and all taxes on the Qualified Settlement Fund, in addition to any amounts to be distributed to

15

Current Participants and Former Participants pursuant to this Settlement. Except as set forth in Section 11 below, as otherwise specified in this Settlement Agreement, or as provided for in any applicable contract of insurance or other written agreement between the Parties, the Parties shall bear their own costs and expenses (including attorneys' fees) in connection with effectuating the Settlement and securing all necessary court orders and approvals with respect to same.

9.      **EFFECTIVE DATE OF SETTLEMENT; DISBURSEMENT FROM QUALIFIED SETTLEMENT FUND; PLAN OF ALLOCATION**

9.1.    *Establishment of Effective Date of Settlement.* If Named Plaintiffs and Defendants disagree as to whether each and every condition set forth in Section 3 has been satisfied or waived, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to the Court, which shall retain jurisdiction for this purpose. No portion of the Class Settlement Amount shall be distributed in the event of such a dispute pending the Court's ruling. Disbursement shall thereafter be made by the Escrow Agent pursuant to the Court's order.

9.2.    *Disbursement from Qualified Settlement Fund.*

9.2.1.   Except as provided in Section 9.2.2 below, no other distribution of part, or all, of the Class Settlement Amount shall be made from the Qualified Settlement Fund until the expiration of the time to appeal the Settlement and/or the final resolution of any appeals of the Settlement and the Escrow Agent has received: (a) a notice by Class Counsel and by Defense Counsel, directing that the Class Settlement Amount be disbursed and designating the appropriate recipient(s); or (b) a Court Order, directing that the Class Settlement Amount be disbursed and designating the appropriate recipient(s).

9.2.2.   Notwithstanding the language in Section 9.2.1, within fourteen (14) business days of the Final Approval Order, the Escrow Agent shall disburse all Court-approved attorneys' fees and expense reimbursements to Class Counsel from the Qualified Settlement Fund even if timely appeals of such Final Approval Order are not yet resolved. However, Class Counsel remains bound by the provisions set forth in Section 11 below.

9.2.3.   After the Final Approval Order is Final and non-appealable, the Settlement Administrator or Class Counsel may direct the Escrow Agent to pay from the Qualified Settlement Fund the following: (i) taxes; (ii) Settlement Administration Expenses; and (iii) Case Contribution Awards.

9.2.4.   The Settlement Administrator in consultation with Class Counsel may retain a contingency reserve in the Qualified Settlement Fund to pay any Settlement Administration Expenses that have not been paid as of the date of distribution of the Final Individual Dollar Recovery and amounts estimated for adjustments of data or calculation errors and the payment of taxes not yet paid at the time of distribution.

9.2.5.   The Settlement Administrator and/or the Escrow Agent shall discharge their duties under Class Counsel's supervision and subject to the jurisdiction of the Court. Except as otherwise expressly provided herein, the Releasees, Named Plaintiffs, Defense Counsel, and Class Counsel shall have no responsibility whatsoever for the administration of the Settlement, and shall have

no liability whatsoever to any Person, including, but not limited to, the Settlement Class members, in connection with any such administration. The Settlement Administrator shall send the Class Notice to all Settlement Class members.

9.2.6.   The Settlement Administrator shall have sole and final discretion to determine the amounts to be paid to Settlement Class members in accordance with the Plan of Allocation set forth in this Article 9 and as ordered by the Court.

9.3.   *Plan of Allocation.*

9.3.1.   Prior to submission to the Court along with the Preliminary Approval Order, Class Counsel shall provide a copy of the Plan of Allocation to Defendants for review and comment.

9.3.2.   The distribution of the Net Settlement Fund to the Settlement Class members shall be made in accordance with the Plan of Allocation to be proposed by Class Counsel, reviewed by Defendants, and approved by the Court. Defendants, Named Plaintiffs, Defense Counsel, and Class Counsel shall have no responsibility or liability for calculating the amounts payable to the Settlement Class members, and Defendants, Named Plaintiffs, Defense Counsel, and Class Counsel shall have no responsibility or liability for distributing the Net Settlement Fund to the Settlement Class members in accordance with the Court approved Plan of Allocation.

9.3.3.   To effectuate the distribution of the Net Settlement Fund to Settlement Class members, the Settlement Administrator shall calculate each Settlement Class member's settlement recovery amount based on the Plan of Allocation approved by the Court and shall provide to the Plan's recordkeeper and trustee the total amount of the aggregate recoveries for Current Participants.

9.3.4.   All inquiries by the Settlement Class members concerning the amount distributed to a particular Settlement Class member shall be handled in the first instance by the Settlement Administrator. Thereafter, Class Counsel and Defense Counsel shall work cooperatively to resolve any such inquiries.

9.3.5.   Neither the Parties, Defense Counsel, Class Counsel, nor the Released Parties shall have any responsibility for or liability whatsoever with respect to any tax advice given to the Former Participants or the Current Participants. Deductions will be made, and reporting will be performed by the Settlement Administrator, as required by law in respect of all payments made under the Settlement Agreement. Payments from the Qualified Settlement Fund shall not be treated as wages by the Parties.

9.3.6.   Any and all Settlement Administration Expenses, incurred for the implementation of the Settlement and of the Plan of Allocation shall be paid from the Qualified Settlement Fund.

9.3.7.   In the event that Defense Counsel or Class Counsel determine that it is necessary to modify the Plan of Allocation, Class Counsel and Defense Counsel shall jointly discuss such modification and determine whether the modification is reasonable and appropriate under the circumstances. The Parties will jointly petition the Court for approval of any such material modification.

9.3.8.   Notwithstanding anything in this Settlement Agreement to the contrary, the Plan of Allocation is a matter separate and apart from the Settlement between the Parties, and no decision by the Court concerning the Plan of Allocation shall affect the validity of the Settlement Agreement or finality of the proposed Settlement in any manner.

9.3.9.   The determination of "Current Participants" and "Former Participants" will be based on those who have a positive balance in their Plan account as of the date the Court enters the Final Approval Order, as long as the "Current Participant" and "Former Participants" data is available at that time.  Wells Fargo shall use its best efforts to provide Class Counsel with updated information on the names, last known addresses, and email addresses of "Current Participants" and "Former Participants" (to the extent Wells Fargo has such information) within fourteen (14) business days of the Final Approval Order.

## 10.    <u>TERMINATION OF THE SETTLEMENT AGREEMENT</u>

10.1.   *Termination By Defendants*.  Defendants may terminate this Settlement Agreement if, before the issuance of the Final Approval Order, the U.S. Department of Labor files any objection to the Settlement Agreement or Settlement in any court, brings a claim against any of the Releasees, or notifies any Releasee that it intends to bring such a claim.

10.2.   *Automatic Termination*.  This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

10.2.1. If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary Approval Motion and/or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Settlement Class representative.

10.2.2. If the Court issues an order in the Action modifying the Settlement Agreement,  and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by   the Parties, then, provided that no appeal, petition for writ of certiorari, or any other request for review is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first (31st) day after issuance of the order referenced in this Section.

10.2.3. If the Eighth Circuit reverses the Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in   writing to proceed with all or part of the Settlement Agreement as modified by the Eighth Circuit or by the Parties, then, provided that no appeal, petition for writ of certiorari, or any other request for review is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first (91st) day after issuance of the Eighth Circuit order referenced in this Section.

10.2.4. If the Supreme Court of the United States reverses or remands an Eighth Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first (31st) day after issuance of the Supreme Court order referenced in this Section.

10.2.5. If an appeal or petition for writ of certiorari to the Supreme Court is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until final resolution or dismissal of any such appeal, except by written agreement of the Parties.

10.3.    *Consequences of Termination of the Settlement Agreement*.  If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

10.3.1. Within three (3) days after the date of termination of the Settlement Agreement, Class Counsel shall notify the Escrow Agent in writing to return to Defendants the Qualified Settlement Fund and all net income earned thereon, after deduction of the amount earlier disbursed for the Class Notice, and direct the Escrow Agent to effect such return as soon as possible.

10.3.2. The Action shall for all purposes with respect to the Parties revert to its status as of January 4, 2022, the day immediately prior to the execution of the Term Sheet.  The Parties will cooperate in trying to return the Action to the Court for decision on the matters pending before the Court at the time of execution of the Term Sheet.

10.3.3. All releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable, except those provisions providing for reimbursement of costs as set forth in Section 10.3.1; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in this Action or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

11.    **ATTORNEYS' FEES AND EXPENSES; NAMED PLAINTIFFS' CASE CONTRIBUTION AWARDS**

11.1.    *Application for Fees, Expenses, and Case Contribution Awards*.  As provided in Section 3.2.5 above, and pursuant to the common fund doctrine, Class Counsel shall petition the Court no later than twenty-one (21) days prior to the deadline for objections for an award of attorneys' fees and Case Contribution Awards, and for reimbursement of expenses, to be paid from the Qualified Settlement Fund.  The Case Contribution Awards and attorneys' fees and reimbursed expenses, if any are awarded by the Court, shall be paid from the Qualified Settlement Fund. Defendants, their Representatives and Successors-In-Interest expressly agree not to take any position with respect to any application for attorneys' fees and expenses incurred by Class Counsel with respect to this Settlement, and acknowledge that these matters are left to the sound discretion of the Court.  Defendants, their Representatives, and Successors-in-Interests also

expressly agree not to contest or take any position with respect to the Case Contribution Awards and will leave this matter to the sound discretion of the Court.

11.2.   *Disbursement of Fees, Costs, Expenses, and Case Contribution Awards*.

11.2.1.   Attorneys' fees, costs, and expenses shall be payable to Class Counsel out of the Qualified Settlement Fund within fourteen (14) business days of the Final Approval Order by the Court, subject to immediate repayment to Defendants in the event of a successful challenge of the Settlement via appeal, petition for writ of certiorari to the Supreme Court, or any other request for review.

11.2.2.   If the Settlement Agreement is terminated pursuant to Section 10 above, or if there is a Final order reversing the award of attorneys' fees, costs, and expenses, Class Counsel shall immediately redeposit into the Qualified Settlement Fund the attorneys' fees, costs, and expenses originally paid out of the Qualified Settlement Fund, plus interest accrued thereon, at a rate equal to the rate of interest earned by the Qualified Settlement Fund during the same period

11.2.3.   The Case Contribution Awards shall be payable from the Qualified Settlement Fund and shall be in addition to any portion of the Qualified Settlement Fund the Named Plaintiffs would otherwise be entitled to receive as members of the Settlement Class.  The Case Contribution Awards will only be distributed upon the expiration of the time to appeal the Settlement and/or the final resolution of any appeals of the Settlement and subject to Section 9.2.1.

12.   **NONDISPARAGEMENT**

The Parties agree to take no action in connection with the Settlement that is intended to, or that would reasonably be expected to, harm the reputation of any other Party (including a Party's officers, directors, employees, agents, or attorneys), or that would reasonably be expected to lead to unfavorable publicity for any other Party.

13.   **STATEMENTS TO THE PUBLIC**

The Parties agree that there will be no public announcements regarding the Settlement until Wells Fargo has announced or disclosed it.  Once disclosure has been made by Wells Fargo, the Parties agree that any public comments from the Parties and their counsel regarding this resolution, other than any disclosures required by law, will not substantially deviate from words to the effect that the Parties have reached a mutually acceptable resolution by way of a mediated settlement and both sides are satisfied with this resolution.

14.   **MISCELLANEOUS PROVISIONS**

14.1.   *Jurisdiction*.  The Court shall retain jurisdiction over all Parties to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in Section 3 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement.

14.2.   *Disputes*.  If any disputes arise out of this Settlement Agreement, including but not limited to disputes concerning the meaning of any express or implied terms of the Settlement

DocuSign Envelope ID: 11BEDEB4-85EA-4D28-9754-6703EBE0C820

Agreement, the Mediator will resolve them.  The Parties will split any Mediator costs necessary to resolve any disputes arising out of the Settlement Agreement.

14.3.   *Governing Law*.  This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Minnesota law will apply without regard to conflict of law principles.

14.4.   *Severability*.  The provisions of this Settlement Agreement are not severable.

14.5.   *Amendment*.  Before entry of a Final Approval Order, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties.  Following entry of a Final Approval Order, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

14.6.   *Waiver*.  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party.  The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

14.7.   *Construction*.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

14.8.   *Principles of Interpretation*.  The following principles of interpretation apply to this Settlement Agreement:

14.8.1. *Headings*.  The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

14.8.2. *Singular and Plural*.  Definitions apply to the singular and plural forms of each term defined.

14.8.3. *Gender*.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

14.8.4. *References to a Person*.  References to a Person are also to the Person's permitted successors and assigns.

14.8.5. *Terms of Inclusion*.  Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.9.   *Further Assurances*.  Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

DocuSign Envelope ID: 41BEDEB4-85EA-4D28-9F54-6703EBF0C820

14.10. *Survival*. All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

14.11. *Notices*. Any notice, demand or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given upon receipt if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed email, or delivered by reputable express overnight courier:

A.   IF TO NAMED PLAINTIFFS:

Michelle C. Yau
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
myau@cohenmilstein.com
rwheeler@cohenmilstein.com

June P. Hoidal
ZIMMERMAN REED LLP
1100 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 341-0400
June.Hoidal@zimmreed.com
charles.toomajian@zimmreed.com

Erin Riley
KELLER ROHRBACK, LLP
1201 Third Ave, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
ERiley@KellerRohrback.com

B.     IF TO DEFENDANTS:

Russell L. Hirschhorn
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3286
RHirschhorn@proskauer.com

Kirsten Schubert
DORSEY & WHITNEY LLP
50 South 6th Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600
schubert.kirsten@dorsey.com

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

14.12.  *Entire Agreement*.  This Settlement Agreement contains the entire agreement among the Parties relating to this Settlement.  It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet.

14.13.  *Counterparts*.  This Settlement Agreement may be executed by exchange of faxed or scanned executed signature pages, and any signature transmitted by facsimile or by email attachment for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement.  This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

14.14.  *Binding Effect*.  This Settlement Agreement binds and inures to the benefit of the Parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

*FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS*

Dated this ___ day of March, 2022.

By: _____
    Michelle C. Yau
    Ryan A. Wheeler
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Phone: (202) 408-4600

By: _____
    Erin M. Riley
    Ron Kilgard
KELLER ROHRBACK LLP
1201 Third Ave, Suite 3200
Seattle, WA 98101
Phone: (206) 623-1900

By: _____
    June P. Hoidal
    Charles R. Toomajian
ZIMMERMAN REED LLP
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Phone: (612) 341-0400

***FOR ALL DEFENDANTS***

Dated this ___ day of March, 2022.
          7

By: _____
    Craig Baldauf
    Wells Fargo & Company

By: _____
    Russell L. Hirschhorn
    Myron D. Rumeld
    Joseph E. Clark
    Deidre A. Grossman
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3286

Tulio D. Chirinos
PROSKAUER ROSE LLP
2255 Glades Road
Suite 421 Atrium
Boca Raton, FL 33431-7360
Telephone: (561) 995-4737

By: _____
    Stephen P. Lucke
    Kirsten Schubert
    Nicholas J. Bullard
    Andrew J. Holly
DORSEY & WHITNEY LLP
50 South 6th Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600

DocuSign Envelope ID: 11BFDFB1-8FEA-4D28-9754-6703EBF0CB30

**FOR ALL DEFENDANTS**

Dated this 7 ___ day of March, 2022.

By: _____
Craig Baldauf
Wells Fargo & Company

By: _____
Russell L. Hirschhorn
Myron D. Rumeld
Joseph E. Clark
Deidre A. Grossman
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3286

Tulio D. Chirinos
PROSKAUER ROSE LLP
2255 Glades Road
Suite 421 Atrium
Boca Raton, FL 33431-7360
Telephone: (561) 995-4737

By: _____
Stephen P. Lucke
Kirsten Schubert
Nicholas J. Bullard
Andrew J. Holly
DORSEY & WHITNEY LLP
50 South 6th Street, Suite 1500
Minneapolis, Minnesota 55402
Telephone: (612) 340-2600

25