# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Yvonne Becker, Christopher Nobles, Rosa Ramirez, Valerie Seyler, and Jannien Weiner,<br><br>                    Plaintiffs,<br><br>     v.<br><br>Wells Fargo & Co.; Employee Benefit Review Committee; Wells Fargo Bank, National Association, and John and Jane Does, 1-20,<br><br>                 Defendants. | Case No. 0:20-cv-02016 (KMM/BRT)<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br><br>**CLASS ACTION** |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................ 2

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 4

    A.    Description of the Action and the Claims ................................................ 4

    B.    Litigation History ................................................................................ 6

    C.    Discovery Undertaken .......................................................................... 7

    D.    Settlement Negotiations ........................................................................ 7

    E.    Settlement Agreement .......................................................................... 8

    F.    Plan of Allocation ............................................................................... 8

III.  PRELIMINARY APPROVAL, NOTICE TO THE CLASS,
    INDEPENDENT FIDUCIARY REPORT, AND ABSENCE OF
    OBJECTIONS ........................................................................................ 10

    A.    Preliminary Approval .......................................................................... 10

    B.    Class Notice And Communications With The Class ................................ 11

    C.    Independent Fiduciary Approval .......................................................... 12

    D.    Objections ......................................................................................... 14

IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE
    SETTLEMENT ...................................................................................... 15

    A.    Legal Standard .................................................................................. 15

    B.    The Settlement Is Fair and Reasonable Under the Eighth
    Circuit's Factors ................................................................................ 17

        1.    *The $32.5 Million Recovery Is an Excellent Outcome,*
        *Especially When Weighed Against the Risks of*
        *Continued Litigation* .................................................................. 17

        2.    *The Defendant's Financial Condition* ......................................... 22

3.  *The Complexity and Expense of Further Litigation Support Final Approval of the Settlement* ..................................... 22

4.  *The Amount of Opposition to the Settlement* ................................ 24

C.  The Settlement Is Fair and Reasonable Under the Rule 23(e) Factors ........................................................................................... 24

1.  *The Settlement Class Was Adequately Represented* .................... 25

2.  *The Settlement Was Negotiated at Arm's Length* ......................... 27

3.  *The Relief Provided by the Settlement Is Adequate* ..................... 27

    a.  Risks, Costs, and Delay of Continued Litigation ............... 28

    b.  Effectiveness of Distribution Method ............................... 28

    c.  Attorneys' Fees ................................................................. 29

    d.  Other Agreements ............................................................ 30

4.  *The Settlement, Including the POA, Treats Class Members Equitably Relative to Each Other* ................................. 30

V.  THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS ................................................................... 31

VI.  CONCLUSION ........................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baird v. BlackRock*,
  No. 17-cv-01892 (N.D. Cal.) .................................................................2, 19

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
  No. 1:17-cv-00563, ECF No. 211 (S.D.N.Y. May 22, 2020) ................................... 19

*Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*,
  2017 WL 2574005 (D. Minn. June 14, 2017) .......................................................... 15

*Becker v. Wells Fargo & Co.*,
  2022 WL 1210948 (Apr. 25, 2022) ........................................................................ 32

*In re Becker*,
  993 F.3d 731(9th Cir. 2021) ...................................................................................... 6

*Braden v. Wal-Mart*,
  588 F.3d 585 (8th Cir. 2009) ...................................................................................... 3

*In re Centurylink Sales Pracs. & Sec. Litig.*,
  2021 WL 3080960 (D. Minn. July 21, 2021) ........................................................... 27

*In re CenturyLink Sales Practices & Securities Litig.*,
  No. 17-md-02795 (D. Minn) ....................................................................................... 3

*City of Farmington Hills Employees Retirement Sys. v. Wells Fargo Bank, N.A.*,
  No. 10-cv-4372 (D. Minn) .......................................................................................... 3

*Cooper v. Integrity Home Care, Inc.*,
  2018 WL 3468372 (W.D. Mo. July 18, 2018) ......................................................... 20

*Dryer v. Nat'l Football League*,
  2013 WL 5888231 (D. Minn. Nov. 1, 2013), *aff'd sub nom.*, *Marshall*,
  787 F.3d .................................................................................................................... 22

*Dupree v. Prudential Ins. Co. of Am.*,
  2007 WL 2263892 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10,
  2007) ......................................................................................................................... 21

*In re Emp. Ben. Plans Secs. Litig.*,
 1993 WL 330595 (D. Minn. June 2, 1993) ........................................................28, 29

*In re Enron Corp. ERISA Litigation*,
 No. 4:02-md-1446 (W.D. Tex.) ............................................................................... 3

*Feinberg v. T Rowe Price*,
 No. 17-cv-00427 (D. Md.)........................................................................................ 2

*Hashw v. Dep't Stores Nat'l Bank*,
 182 F. Supp. 3d 935 (D. Minn. 2016) ................................................................17, 18

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
 2018 WL 2183253 (N.D. Cal. May 11, 2018)......................................................... 19

*Keech v. Sanimax USA, LLC*,
 2020 WL 2903903 (D. Minn. June 3, 2020) ........................................................... 16

*Keil v. Lopez*,
 862 F.3d 685 (8th Cir. 2017) ..............................................................................15, 19

*Khoday v. Symantec Corp.*,
 2016 WL 1637039 (D. Minn. Apr. 5, 2016) ........................................................... 15

*Krueger v. Ameriprise Fin., Inc.*,
 2015 WL 4246879 (D. Minn. July 13, 2015) .......................................................... 22

*Kruger v. Novant Health, Inc.*,
 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) ....................................................... 28

*Marshall v. Nat'l Football League*,
 787 F.3d 502 (8th Cir. 2015) .................................................................................. 17

*Petrovic v. Amoco Oil Co.*,
 200 F.3d 1140 (8th Cir. 1999) ........................................................................15, 17, 22

*Price v. Eaton Vance Corp.*,
 No. 1:18-cv-12098, ECF No. 32 (D. Mass. May 6, 2019)........................................ 19

*Ramos v. Banner Health*,
 461 F. Supp. 3d 1067 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir.
 2021)....................................................................................................................... 21

*Ramsey v. Sprint Comm. Co., L.P.*,
 2012 WL 6018154 (D. Neb. Dec. 3, 2012) ............................................................. 19

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ............................................................15, 17

*Reetz v. Lowe's Cos., Inc.*,
    2021 WL 4771535 (W.D.N.C. Oct. 12, 2021) ........................................ 21

*In re Resideo Techs., Inc., Sec. Litig.*,
    2022 WL 872909 (D. Minn. Mar. 24, 2022) ......................................23, 31

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................... 19

*Sims v. BB&T Corp.*,
    2019 WL 1995314 (M.D.N.C. May 6, 2019) .......................................... 19

*Smith v. Questar Cap. Corp.*,
    2015 WL 1963019 (D. Minn. Apr. 30, 2015) ........................................ 15

*Soular v. Northern Tier Energy, LP*,
    No. 15-cv-00556 (D. Minn.) ................................................................... 3

*In re SunTrust*,
    No. 08-cv-03384 (N.D. Ga.) .................................................................... 2

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ................................................................ 18

*In re Target Corp. Customer Data Sec. Breach Litig.*,
    892 F.3d 968 (8th Cir. 2018) ..............................................16, 17, 22, 24

*Tibble v. Edison Int'l*,
    2017 WL 3523737 (C.D. Cal. Aug. 16, 2017) ....................................... 23

*Toomey v. Demoulas Super Markets, Inc.*,
    No. 1:19-cv-11633, ECF No. 95 (D. Mass, Mar. 24, 2021) ..................... 19

*Tussey v. ABB, Inc.*,
    850 F.3d 951 (8th Cir. 2017) ................................................................ 23

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) .......................................... 19

*Wildman v. Am. Century Servs., LLC*,
    362 F. Supp. 3d 685 (W.D. Mo. 2019) .................................................. 21

*In re WorldCom, Inc. ERISA Litigation*,
No. 02-cv-4816 (S.D.N.Y.) ........................................................................ 3

*Yarrington v. Solvay Pharms., Inc.*,
2010 WL 11453553 (D. Minn. Mar. 16, 2010) ........................................ 31

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
2013 WL 716088 (D. Minn. Feb. 27, 2013) ............................................. 27

**Statutes**

29 U.S.C. § 1104(a)(1)(A), (B) ....................................................................... 5

29 U.S.C. § 1106(a)(1)(A) ............................................................................... 5

29 U.S.C. § 1106(a)(1)(D) ............................................................................... 5

29 U.S.C. § 1106(a)(D) .................................................................................... 6

29 U.S.C. § 1106(b) ......................................................................................... 5

**Other Authorities**

68 Fed. Reg. 75,632 ........................................................................................ 13

75 Fed. Reg. 33,830 ........................................................................................ 13

Fed. R. Civ. P. 23(a)(4) ................................................................................... 25

Fed. R. Civ. P. 23(c)(2)(C)(iv) ....................................................................... 30

Fed. R. Civ. P. 23(e) ..................................................................... 16, 24, 27, 32

Fed. R. Civ. P. 23(e)(2) ...................................................................... 24, 25, 27

Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv) .................................................................. 28

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................. 30

Fed. R. Civ. P. 23(e)(3) ................................................................................... 16

*Judges' Class Action Notice and Claims Process Checklist and Plain
Language Guide*, Fed. Justice Ctr. (2010),
https://www.formalu.com/forms/180563/judges-class-action-notice-and-
claims-process-checklist-and-plain-language-guide ................................... 12

Plaintiffs Yvonne Becker, Christopher Nobles, Rosa Ramirez, Valerie Seyler, Jannien Weiner ("Plaintiffs" or "Named Plaintiffs"), and the Class respectfully submit this memorandum in support of their motion for the entry of an order (1) granting final approval of the Class Action Settlement Agreement & Release ("Settlement Agreement")[1] dated March 8, 2022, ECF No. 248-1, (2) certifying the Settlement Class and appointing Named Plaintiffs as Class representatives and their counsel as Class Counsel, (3) finding that the manner and form of giving notice of the Settlement and the Fairness Hearing to the Settlement Class satisfy the requirements of due process and Rule 23, (4) granting approval of the Plan of Allocation ("POA"), and (5) granting such other relief as set forth in the [Proposed] Order Granting Final Approval of Class Action Settlement and Entering Final Judgment and Dismissal ("Proposed Final Approval Order") submitted herewith. While Defendants do not oppose this motion, this memorandum of law explains Plaintiffs' views of the Action and Settlement, and the statements herein should not be attributed to Defendants.[2]

The Settlement was preliminarily approved by the Court on April 25, 2022. ECF No. 256 ("Prelim. Approval Order"). At that time, the Court conditionally certified the

---

[1] The capitalized terms not otherwise defined herein have the meaning ascribed to them in the Settlement Agreement.

[2] The concurrently-filed Memorandum of Law in Support of Plaintiffs' Motion for Attorneys' Fees, Expense Reimbursement, Settlement Administration Expenses, and Case Contribution Awards ("Fee Petition") also contains information pertinent to the Settlement and is incorporated in full with the instant Memorandum of Law.

Settlement Class,[3] and approved the form and manner of notice. *Id.*

## I.     INTRODUCTION

This Settlement represents a substantial benefit for the Class. The Settlement provides for a payment by Defendants of $32,500,000.00 in cash, which will resolve all claims asserted by Plaintiffs in this Action. The Settlement was mediated by Robert A. Meyer, a well-respected JAMS mediator. Based on an evaluation of the facts, governing law, settlements in cases similar to this, and in recognition of the substantial risks of continued litigation, Named Plaintiffs and Class Counsel submit that the proposed Settlement is fair, reasonable, adequate and in the best interest of the proposed Class. The Settlement provides a meaningful recovery now and allows the Parties to avoid the risks of continued litigation of this case and trial, which could result in no recovery for the Class or a judgment less than the $32.5 million recovery provided by the Settlement.

Class Counsel have leveraged considerable experience in achieving this result. Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") has litigated and settled many similar ERISA class actions, including *In re SunTrust*, No. 08-cv-03384 (N.D. Ga.), *Feinberg v. T Rowe Price*, No. 17-cv-00427 (D. Md.), and *Baird v. BlackRock*, No. 17-cv-

---

[3] The Settlement Class is defined as "all Persons who were Participants of the Plan at any time from March 13, 2014 through the date on which the Settlement becomes Final. Excluded from the Settlement Class are members of the Employee Benefits Review Committee from March 13, 2014 through the date on which the Settlement becomes Final." Settlement Agreement § 1.38.

01892 (N.D. Cal.).[4] Keller Rohrback L.L.P. ("Keller Rohrback") also has litigated many ERISA actions, including the first appellate victory in an ERISA fee/performance case of this kind, *Braden v. Wal-Mart*, 588 F.3d 585 (8th Cir. 2009), as well as other ERISA fiduciary breach and prohibited transaction class cases including *In re Enron Corp. ERISA Litigation*, No. 4:02-md-1446 (W.D. Tex.) and *In re WorldCom, Inc. ERISA Litigation*, No. 02-cv-4816 (S.D.N.Y.).[5] Zimmerman Reed LLP ("Zimmerman Reed") has also litigated numerous class actions to resolution in this District, including *City of Farmington Hills Employees Retirement Sys. v. Wells Fargo Bank, N.A.*, No. 10-cv-4372 (D. Minn); *In re CenturyLink Sales Practices & Securities Litig.*, No. 17-md-02795 (D. Minn); and *Soular v. Northern Tier Energy, LP*, No. 15-cv-00556 (D. Minn.).[6] Thus, Class Counsel were well-positioned to realistically evaluate the risks of proceeding to trial, and to negotiate the result that was obtained. Moreover, the Parties agreed to the proposed Settlement only after extensive discovery and vigorous, arm's-length negotiations overseen and mediated by third-party neutral, Robert A. Meyer of JAMS.

Under all relevant standards for evaluating class action settlements in this Circuit,

---

[4] *See* Declaration of Michelle C. Yau in Support of Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Motion for Attorney's Fees, Expense Reimbursements, Settlement Administration Expenses, and Case Contribution Awards ("Yau Decl.") ¶ 74.

[5] *See id.* Ex. 3 (Declaration of Erin M. Riley in Support of Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Motion for Attorney's Fees, Expense Reimbursements, Settlement Administration Expenses, and Case Contribution Awards ("Riley Decl.")) ¶ 18.

[6] *See id.* Ex. 4 (Declaration of June P. Hoidal in Support of Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Motion for Attorney's Fees, Expense Reimbursements, Settlement Administration Expenses, and Case Contribution Awards ("Hoidal Decl.")) ¶ 2.

the Settlement is fair, reasonable and adequate, and Plaintiffs respectfully ask the Court to approve it. To date, the response of the Settlement Class to the Notice has been overwhelmingly positive, with no Settlement Class members filing an objection to date.[7] In addition, as required by the Settlement, an Independent Fiduciary, Gallagher Fiduciary Advisors, LLC ("Gallagher"), was retained to review the Settlement terms and has concluded that the terms are fair and reasonable to Plan Participants (i.e., Class members). Yau Decl. ¶¶ 44-48; Ex. 1 ("Gallagher Report"). Further, the Plan of Allocation equitably distributes the Settlement proceeds to Class members in proportion to the size of their holdings in the Challenged Funds when compared to all other Class members.[8]

For all of these reasons and the other reasons set forth below, the Settlement represents an outstanding recovery for the Settlement Class, especially in light of the expense and risks of further litigation. Plaintiffs respectfully request that this Court grant Final Approval of the Settlement and enter the Proposed Final Approval Order.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Description of the Action and the Claims

Class representatives Yvonne Becker, Christopher Nobles, Rosa Ramirez, Valerie Seyler, and Jannien Weiner are Participants in the Wells Fargo & Co. ("Wells Fargo") Plan.

---

[7] The deadline for submitting objections to the Settlement is July 21, 2022. Any objections received after this submission will be addressed in a response to be filed (if necessary) on July 31, 2022.

[8] The Challenged Funds are: the Wells Fargo/State Street Target Date CITs, Wells Fargo Emerging Growth Fund, the Wells Fargo/Causeway International Value CIT, the Wells Fargo/Federated Total Return Bond CIT, Wells Fargo 100% Treasury Money Market Fund, and the Wells Fargo Stable Value Fund. Settlement Agreement § 1.5.

ECF No. 178 (Second Am. Compl. ("SAC")) ¶ 15. The Plan is a defined contribution plan under ERISA. (*Id.* ¶ 42). Wells Fargo is the Plan sponsor and, Plaintiffs allege Wells Fargo is a party in interest to the Plan. (*Id.* ¶¶ 22-23).

During the Class period, Plaintiffs invested in at least one of the Challenged Funds. (SAC ¶ 16). The SAC alleges that during the Class period, the Employee Benefit Review Committee and its members (hereinafter the "EBRC" or "Committee Defendants") breached their fiduciary duties of prudence and loyalty under ERISA by, *inter alia*, selecting and retaining several Wells Fargo affiliated funds (the "Challenged Funds") in violation of ERISA.

Specifically, in Count I, Plaintiffs allege that the EBRC breached its fiduciary duties of loyalty and prudence specified in 29 U.S.C. § 1104(a)(1)(A), (B), by causing the Plan to invest in, and failing to remove, the Challenged Funds. (SAC, Count I ¶¶ 168-179). In Count II, Plaintiffs alleged that the Committee Defendants and Wells Fargo Bank engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1)(A), by causing the Plan to engage in multiple party-in-interest transactions and by causing the Plan to invest in Wells Fargo affiliated investment products provided by Wells Fargo and/or Wells Fargo Bank. Additionally, Plaintiffs alleged that the Committee Defendants and Wells Fargo Bank engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1)(D), by causing the repeated transfer of Plan assets directly and/or indirectly to Wells Fargo Bank and Wells Fargo (parties-in-interest) in the form of various direct or indirect fees. (SAC, Count II ¶¶ 180-190). Count III alleged that the Committee Defendants and Wells Fargo Bank engaged in prohibited transactions in violation of 29 U.S.C. § 1106(b) by making decisions

based on Wells Fargo's and their own interest. (SAC, Count III ¶¶ 191-201). Count IV alleged that Wells Fargo engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a)(D) by repeatedly receiving Plan assets into its own account. (SAC, Count IV ¶¶ 202-215).

B.   **Litigation History**

On March 13, 2020, Plaintiff Becker filed this action in the Northern District of California where Wells Fargo is headquartered. ECF No. 1. After the suit was filed, Defendants moved to transfer the litigation to this Court. Their motion was granted on September 22, 2020, and the case was transferred to the District of Minnesota. ECF No. 60. Plaintiff Becker filed a petition for a writ of mandamus in the Ninth Circuit on September 21, 2020, and on October 13, 2020, the Court called for a briefing on the writ of mandamus which was completed on November 2, 2020. Yau Decl. ¶¶ 9-10. On April 1, 2021, the Ninth Circuit denied the writ of mandamus. *In re Becker*, 993 F.3d 731(9th Cir. 2021).

While the mandamus petition was pending, Defendants moved to dismiss the Complaint. The motion to dismiss was fully briefed on April 2, 2021, ECF No. 120, and the Court held oral argument on April 16, 2021. On May 12, 2021, the Court issued a Memorandum Opinion and Order denying Defendants' Motion to Dismiss. ECF No. 134.

On June 2, 2021, Plaintiff Becker, joined by Plaintiffs Christopher Nobles and Rosa Ramirez, filed an Amended Class Action Complaint. ECF No. 143. On September 28, 2021, Plaintiffs Becker, Nobles and Ramirez, joined by Plaintiffs Valerie Seyler and Jannien Weiner, filed the operative Second Amended Class Action Complaint. ECF No.

178.

C.    **Discovery Undertaken**

As discussed in further detail in the Fee Petition, during the last 15 months, the Parties have conducted extensive discovery, including the production of over 100,000 documents (spanning 1.5 million pages) from Parties and third parties. They completed several depositions of defense fact witnesses and all five of the Class representatives. The Court has held numerous conferences and motion arguments with the Parties and, independently, the Parties have met and conferred over sixty times in an attempt to resolve disputes without motion practice (which was indeed achieved for the vast majority of issues). Yau Decl. ¶¶ 17-18.

D.    **Settlement Negotiations**

In November of 2021, the Parties held their first mediation session with Robert A. Meyer, an experienced and well-respected mediator who has successfully resolved numerous ERISA cases and other class actions. *Id*. ¶ 37. The Parties were unable to resolve the case during the Mediation in November, and thereafter discovery continued apace. *Id*. ¶ 38.

On January 5, 2022, the Parties engaged in a second all-day mediation supervised by Mr. Meyer, after which the Parties reached an arm's-length, class-wide resolution of the matter (subject to this Court's approval). *Id*. ¶ 39. The principal terms of the Settlement were memorialized in a term sheet executed late in the evening of January 5, 2022. *Id*. Thereafter, the Parties negotiated the comprehensive Settlement Agreement that is the subject of the present motion. *Id*. The terms of the Settlement are memorialized in the

Settlement Agreement.

E.    **Settlement Agreement**

The Settlement provides for a $32.5 million cash payment to resolve all claims alleged in this Action on behalf of the Settlement Class. Settlement Agreement § 3.7. To effectuate the Settlement, Defendants agreed not to oppose the certification of the Settlement Class. *Id.* § 3.2.2. After deduction of any Court-approved attorneys' fees and expenses, and/or Case Contribution Awards, Settlement Administration Expenses, taxes and tax-related expenses, the Net Settlement Fund will be distributed to Settlement Class members who invested in at least one of the Challenged Funds in accordance with the Plan of Allocation, which is discussed further below. *Id.* § 1.24. Plaintiffs believe that the cash value of the Settlement compares very favorably to other settlements involving similar claims, both as an absolute dollar amount and as a percentage of the total alleged losses.

F.    **Plan of Allocation[9]**

The Plan of Allocation provides that the Net Settlement Fund will be allocated to Settlement Class members who invested in the Challenged Funds in proportion to (i) the Challenged Fund's percentage of the alleged Total Losses[10] during the Class period and

---

[9] The Plan of Allocation was previously filed with the Court as Exhibit 2 to the Yau Declaration in support of preliminary approval. ECF No. 248-2. It was placed on the Settlement website on May 25, 2022. Analytics, LLC Declaration of Jeffrey Mitchell in Support of Plaintiffs' Motion for Attorneys' Fees, Expense Reimbursement, Settlement Administration Expenses, and Case Contribution Awards ("Analytics Decl.") ¶ 15.

[10] The alleged Total Losses are defined in the Plan of Allocation (¶ 7) and reflect the aggregate value of the alleged fee losses at the Plan level for all Challenged Funds. For the Stable Value Fund, the Plan-level fee losses are assumed to be $100,000 based on the manner in which fees were paid for that fund.

(ii) each Settlement Class member's investment balances in each of the Challenged Funds compared to the total of all Settlement Class members' investment balances in such Challenged Funds. POA ¶ 7. In other words, each Challenged Fund was allocated a percentage of the Net Settlement Fund based on its proportion of alleged Total Losses among all Challenged Funds, and then each Settlement Class member who invested in that particular Challenged Fund received a pro rata share of that Fund's allocated amount based on the respective Settlement Class member's aggregated investment balances in each of the Challenged Funds, compared to all Settlement Class members' aggregated investment balances in such Challenged Funds during the Class period. *Id.*

Each Current Participant's account will be automatically credited their share of the Settlement Fund. POA ¶ 18. Former Participants have the option of receiving their share of the Settlement Fund via check or a tax-free rollover to a qualified retirement account. *Id.* ¶ 21.[11] If, however, the amount of a Former Participant's Settlement recovery (from all Challenged Funds in which they invested) is less than $5.00, it will be considered a de minimis Settlement recovery and will not be distributed; instead, such amount will be reallocated to all other Current and Former Participants (who have recovery of $5.00 or more) on a per capita basis. *Id.* ¶ 8(h). Each Settlement Class member shall then receive their Settlement recovery, which is the "Final Individual Dollar Recovery." *Id.*

Under no circumstances will any monies revert to Wells Fargo. *Id.* ¶ 26. Any checks

---

[11] To elect a rollover, Former Participants must submit a completed Rollover Form by July 21, 2022. If no rollover is elected Former Participants will receive a check with any applicable 1099 taxes withheld. *Id*. ¶ 22(ii).

that are uncashed will revert to the Qualified Settlement Fund and will be paid to the Plan

to be distributed by the Plan's Recordkeeper across Current Participants on a per capita

basis. *Id.* To ensure that checks are received by Settlement Class members who do nothing,

Analytics Consulting, LLC ("Analytics"), the Settlement Administrator, will take the

following additional steps: 1) receive the mailing addresses for all Former Participants

from the recordkeeper; 2) update all mailing addresses using the National Change of

Address Database; 3) for checks that are returned as undeliverable, Analytics shall attempt

to find updated address information and resend the check to the updated address; and 4)

for all checks that have not been returned as undeliverable but were not cashed within

approximately sixty (60) days of the issue date of the check, Analytics will a) send an email

reminder to the Former Participant (if email is available) that all uncashed checks will be

voided one hundred twenty (120) days after the issue date, and b) perform a one-time skip-

trace in order to see if another mailing address is available, and, if appropriate, reissue the

check. *Id.* ¶ 24.

## III.    PRELIMINARY APPROVAL, NOTICE TO THE CLASS, INDEPENDENT FIDUCIARY REPORT, AND ABSENCE OF OBJECTIONS

### A.    Preliminary Approval

On April 25, 2022, the Court entered its Preliminary Approval Order.  The Court

found:

> (i) the Settlement Agreement is fair, reasonable, and adequate to warrant
> sending notice of Settlement to the Settlement Class; (ii) the Settlement
> Agreement resulted from arm's-length negotiations in good faith between
> experienced counsel with the assistance of an experienced mediator
> following substantial discovery; (iii) the proposed Settlement was negotiated
> after document discovery was complete and after several depositions of fact

witnesses and the Named Plaintiffs; (iv) the proposed Settlement eliminates risks to the Parties of continued litigation; (v) the proposed Settlement treats Settlement Class members equitably relative to each other; (vi) the proposed notice program is appropriate; and (vii) the Settlement Agreement and Settlement Class meet all applicable requirements of law, including Federal Rule of Civil Procedure 23 and applicable Eighth Circuit precedents.

Prelim. Approval Order ¶ 2. The Court also set forth a notice plan. *Id.* ¶¶ 5, 7, 9-10. The

Court then scheduled a final Fairness Hearing for August 10, 2022. ECF No. 258.

B.    **Class Notice And Communications With The Class**

Pursuant to the Preliminary Approval Order, Analytics has effectuated the Court-approved notice program. Specifically, Analytics sent direct notice to 575,109 individuals via email or postal mail. Analytics Decl. ¶ 8. In addition, Analytics has taken additional steps to provide notice to the Settlement Class:

- On May 25, 2022, Analytics activated a website, to provide Class Members with information about the Settlement: www.WellsFargoERISAsettlement.com. Information available from the website includes filings from the lawsuit and frequently asked questions with answers. Since then, Analytics has documented a total of 42,588 unique visitors to the website. *Id.* ¶ 15.

- Since May 25, 2022, Analytics has maintained a toll-free number for Class Member inquiries. The toll-free number allows Class Members to receive information about the lawsuit and the Settlement through an Interactive Voice Response System and to speak directly with trained staff at a Call Response Center. To date, the Interactive Voice Response System and Call Response Center have together handled 3,173 calls. *Id.* ¶ 16.

- Additionally, a short-form Class Notice was published in USA Today and distributed to other news outlets via a PR Newswire Press Release on or around May 25, 2022. *Id.* ¶ 14.

Further, the instant motion and Plaintiffs' Motion for Attorneys' Fees, Expense

Reimbursement, Settlement Administration Expenses, and Case Contribution Awards

("Fee Motion") are being filed before objections to the Settlement are due on July 21, 2022.

The Fee Motion and supporting papers, as well as the instant motion and memorandum of law will be posted to the website www.WellsFargoERISASettlement.com on June 30, 2022. Yau Decl. ¶ 79.

Of the 575,109 individuals to whom Analytics sent direct notice, only 1,585 were undeliverable. Analytics Decl. ¶ 13. Through this Notice program, Class notice was successfully transmitted to over 99.5% of Settlement Class members (*id.*), which is well within the targeted 70% to 95% "reach" for class notices.[12]

In sum, the Settlement Class members were provided with adequate and timely notice pursuant to the Court's Preliminary Approval Order and will have had an opportunity to review all filings pertinent to the Settlement before the deadline for objections.

C.     **Independent Fiduciary Approval**

The Settlement Agreement required that the Plan Administrator select and retain an Independent Fiduciary to review and evaluate the Settlement. Settlement Agreement §§ 3.4, 4.1.2. Specifically, Section 3.4 of the Settlement Agreement states the Settlement is not effective unless an Independent Fiduciary approves and authorizes the Settlement in accordance with Department of Labor regulations set forth in Prohibited Transaction Exemption 2003-39 (the "PTE 2003-39"), "Release of Claims and Extensions of Credit in Connection with Litigation." 68 Fed. Reg. 75,632, as amended by 75 Fed. Reg. 33,830. As

---

[12] *See Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, Fed. Justice Ctr. (2010), https://www.formalu.com/forms/180563/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide.

set forth in the regulation, several requirements must be met in order for an ERISA-governed plan to release claims against plan fiduciaries (such as the claims asserted in this Action) in accordance with PTE 2003-39. *Id.* at 33,836-837. Among other things, PTE 2003-39 requires that a settlement be "reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone." *Id.* at 33,836.

To meet the requirements of PTE 2003-39 and to satisfy Section 3.4 of the Settlement Agreement, the Plan Administrator retained an Independent Fiduciary—Gallagher—to review and consider whether to approve the Settlement, including (i) the scope of the release of claims, (ii) the Settlement recovery and the amount of any attorneys' fee award or any other sums to be paid from such recovery, (iii) the Plan of Allocation, (iv) whether the Settlement terms are reasonable, and (v) whether the Settlement complied with all relevant requirements set forth in PTE 2003-39. Yau Decl. ¶¶ 44-48. Gallagher has served as an independent fiduciary under ERISA since 1989 on many different engagements involving the ERISA-governed pension plans, including being selected by the Department of Labor and the Pension Benefit Guaranty Corporation in connection with litigation settlements.

As part of its investigation, the team from Gallagher spoke at length with Class Counsel about the litigation, the proposed Settlement and Counsel's evaluation of the risks, and costs of litigation versus the likelihood of full recovery. *Id.* ¶ 46. After conducting a review of the Settlement, Gallagher issued a report dated June 9, 2022, whereby Gallagher acting as an independent fiduciary to the Plan, approved and authorized the Settlement and determined that the Settlement satisfied the requirements of PTE 2003-39. *See* Gallagher

Report. The report found, among other things, that:

1. The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone.

2. The terms and conditions of the Settlement are no less favorable to the Plan than terms that would have been agreed to by parties acting at arm's-length.

3. The Settlement is not part of an agreement, arrangement or understanding designed to benefit a party in interest.

*See id.* at 2, 4. In sum, the review and approval of the Settlement by the Independent Fiduciary with expertise in ERISA provides additional support that the Settlement is fair and reasonable.

D.    **Objections**

To date, Class Counsel has received 20 inquiries by telephone, mail, email, or via the court docket from individuals about the Settlement. Yau Decl. ¶ 76. Some Class members had questions and wanted to gain a clearer understanding about the lawsuit and the Settlement. *Id.* ¶ 77. Class Counsel and/or the Settlement Administrator responded to each inquiry from Class members and answered any questions to the best of their abilities. *Id.* As of the date of this filing, no Class members have filed an objection to the Settlement with the Court. *Id.* ¶ 78. Indeed, no Class member has articulated concerns to Class Counsel or Analytics with any aspect of the Settlement. *Id.*; *see also* Analytics Decl. ¶ 21. However, if any objections are submitted after the Motion for Final Approval is filed, Plaintiffs will submit a response thereto before the Fairness Hearing.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.    Legal Standard

This Court has broad discretion to grant final approval to the Settlement. *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). Public policy favors settlements, *Smith v. Questar Cap. Corp.*, 2015 WL 1963019, at *12 (D. Minn. Apr. 30, 2015), and especially settlements of class actions, *Khoday v. Symantec Corp.*, 2016 WL 1637039, at *5 (D. Minn. Apr. 5, 2016), report and recommendation adopted, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017). For this reason, "courts should approach [class action settlements] with a presumption in their favor." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (citation omitted); Moreover, "there is a presumption of fairness when a settlement is negotiated at arm's length by well informed counsel." *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 2017 WL 2574005, at *2 (D. Minn. June 14, 2017) (citation omitted). In the Eighth Circuit, class action settlements are generally approved so long as they are "not the product of fraud or collusion" and are "fair, adequate, and reasonable." *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017).

In determining whether a class action settlement should be approved as being a fair, reasonable, and adequate resolution of the case, the district courts in the Eighth Circuit should consider (1) the merits of the plaintiff's case, weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement. *In re Target Corp.*

*Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018) (citation omitted).

Consistent with Eighth Circuit precedent, Rule 23(e) of the Federal Rules of Civil Procedure was recently amended to provide for consideration of a similar set of factors.[13] Rule 23(e) of the Federal Rules of Civil Procedure now expressly states that a court may approve a proposed class action settlement only after a hearing and findings that the settlement "is fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

*Keech v. Sanimax USA, LLC*, 2020 WL 2903903, at *2 (D. Minn. June 3, 2020) (quoting Fed. R. Civ. P. 23(e)(2)). The factors provided in the 2018 amendments to Rule 23(e) align with the factors the Eighth Circuit endorses when analyzing a class action settlement. The single important factor in determining whether a settlement is fair, reasonable, and

---

[13] "The goal of [the] amendment is not to displace any [existing] factor, but rather to focus the court . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement. *Rawa*, 934 F.3d at 870; *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015).

Here, the Settlement represents an excellent result for the Class, and when evaluated under any of the applicable legal standards, warrants final approval.

B.    **The Settlement Is Fair and Reasonable Under the Eighth Circuit's Factors**

The Settlement is an excellent outcome for the Settlement Class, and each of the four considerations used in the Eighth Circuit to evaluate the fairness of the Settlement support finally approving the Settlement.

1.    *The $32.5 Million Recovery Is an Excellent Outcome, Especially When Weighed Against the Risks of Continued Litigation*

"'[A] balancing of the strength of the plaintiff's case against the terms of the settlement,' is '[t]he single most important factor'" in evaluating the fairness of a class action settlement. *Target Corp.*, 892 F.3d at 978 (quoting *Keil*, 862 F.3d at 695). "Although a trial court must consider the terms of a class action settlement to the extent necessary to protect the interests of the class, '[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel.'" *Petrovic*, 200 F.3d at 1148–49 (citations omitted). Courts should also weigh the views of the parties and their experienced counsel when considering the fairness of a proposed class action settlement. *See Hashw v. Dep't Stores Nat'l Bank*, 182 F. Supp. 3d 935, 945 (D. Minn. 2016).

Analyzing the strength of the plaintiff's case "is not a simple mathematical exercise

17

with definite outcomes; a 'high degree of precision cannot be expected in valuing a litigation.'" *Hashw*, 182 F. Supp. 3d at 943 (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Given the inability to value the strength of a case with precision, courts perform a "ballpark valuation." *Synfuel Techs.*, 463 F.3d at 653 (citation omitted).

Here, Plaintiffs hired a damages expert to estimate and quantify the alleged damages associated with their claims. *See* Yau Decl. ¶ 30. To calculate alleged fee damages, the damages expert calculated the amount of fees paid by the Plan on a quarterly basis for each Challenged Fund and then assumed that fee was reinvested in the Challenged Funds (meaning if the fees were not charged, those Plan assets would grow based on the historical returns of each Challenged Fund). *Id.* This methodology resulted in total alleged fee damages of approximately $81 million. *Id.* Plaintiffs' damages expert also measured alleged damages for each Challenged Fund by comparing the Fund's performance (i.e., investment returns) to the performance of the benchmark reported to Plan Participants. *Id.* Under this methodology, some Funds outperformed their benchmark and other Funds underperformed. *Id.* Depending on whether excess performance of some Challenged Funds is netted against underperformance of others, the total alleged underperformance damages ranged between $11 million and $136 million. *Id.* The midpoint between $11 and $136 million is $74 million and thus comparable to the $81 million of alleged damages using the fee methodology. *Id.*

The proposed Settlement recovery of $32.5 million is substantial and *recovers 40%* of all alleged fee damages estimated by Plaintiffs' damages expert. *Id.* The Settlement is

therefore an exceptional outcome for the Settlement Class both as an absolute dollar recovery and as a percentage of the total value of claims. *See, e.g.*, *Keil*, 862 F.3d at 696 (finding 27% recovery of maximum possible verdict at trial to be reasonable); *Baird*, 2021 WL 5113030, at *7 (approving $9.65 million settlement that recovered approximately 30% of the class's estimated damages); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *4 (C.D. Cal. Feb. 6, 2018) (granting approval of $12 million settlement that represented 25.5% of plaintiffs' estimated losses). Under both metrics, this Settlement compares very favorably to other class action settlements in similar cases. *See, e.g.*, *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *5 (N.D. Cal. May 11, 2018) (approving a $14 million ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages.").[14]

Moreover, in considering the Settlement's fairness, the Court must consider the challenges that Plaintiffs would face in prevailing on their claims. *See, e.g.*, *Ramsey v. Sprint Comm. Co., L.P.*, 2012 WL 6018154, at *3 (D. Neb. Dec. 3, 2012). For example,

---

[14] *See also Toomey v. Demoulas Super Markets, Inc.*, No. 1:19-cv-11633, ECF No. 95 at 10 (D. Mass, Mar. 24, 2021), approved at ECF No. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 1:17-cv-00563, ECF No. 211 (S.D.N.Y. May 22, 2020), approved 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 1:18-cv-12098, ECF No. 32 at 12 (D. Mass. May 6, 2019), approved at ECF No. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin*, 2018 WL 8334858, at *7 (25% of estimated losses). *See also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses") (citation omitted).

throughout the litigation, Defendants staunchly maintained that the process by which the EBRC selected and maintained the Challenged Funds was prudent and non-conflicted. Defendants pointed to the involvement of an independent co-fiduciary (Rocaton) who attended every EBRC meeting and provided independent advice concerning the Challenged Funds. Yau Decl. ¶ 31. Defendants also produced hundreds of thousands of pages of reports created for the EBRC as part of its ongoing monitoring of the Plan's investments. *Id.* ¶ 32. While Plaintiffs disagree with Defendants' views of the evidentiary record, these factual issues (which would have had to be parsed through at summary judgment and weighed at trial) support the Settlement's approval. *See, e.g.*, *Cooper v. Integrity Home Care, Inc.*, 2018 WL 3468372, at *2 (W.D. Mo. July 18, 2018) ("A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute.").

Further, Defendants maintain that, even if Plaintiffs prevailed on their claims, Plaintiffs are not entitled to $81 million in fee damages because it is inappropriate to award fees paid by the Plan but to third parties (not retained by Wells Fargo). *See* Yau Decl. ¶¶ 33-34. Defendants argue that, for the following Challenged Funds, the Plan paid no fees to Wells Fargo: Wells Fargo State Street Target CITs,[15] Wells Fargo Causeway CIT, Wells Fargo Federated CIT, and Wells Fargo Stable Value Fund. Thus, in Defendants' view, there are zero fee damages for those CITs. *Id.* With respect to the Wells Fargo Emerging Growth and Wells Fargo Money Market Fund fees, Defendants argue that, even if Plaintiffs

---

[15] "CIT(s)" refers to Collective Investment Trust(s).

prevailed on their claims, Plaintiffs are only entitled to the profits Wells Fargo obtained from these fees, not the entire fee. *Id.* If both of these arguments were credited, then Plaintiffs' damages expert estimated that the value of the alleged fee damages would be just $15 million. *Id.* While Plaintiffs believe their damages expert's analysis that the alleged fee damages are indeed $81 million, there were substantial risks that Defendants' damages theories could have prevailed, which would have resulted in alleged damages as low as $15 million. In the face of a potential recovery as low as $15 million—assuming Plaintiffs first prevailed on liability—a Settlement of $32.5 million represents a truly remarkable recovery.

In summary, in light of the many uncertainties and risks of continued litigation and ultimately trial, the Settlement recovery of $32.5 million is an excellent outcome. Yau Decl. ¶ 35. The strength of the Settlement is underscored by many similar cases where ERISA plaintiffs survived motions to dismiss only to lose at trial. *See, e.g.*, *Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685, 690 (W.D. Mo. 2019) (post trial judgment in favor of Defendants on all claims); *Reetz v. Lowe's Cos., Inc.*, 2021 WL 4771535, at *1 (W.D.N.C. Oct. 12, 2021) (post trial judgment in favor of Defendant Aon Hewitt on all claims); *Dupree v. Prudential Ins. Co. of Am.*, 2007 WL 2263892, at *55 (S.D. Fla. Aug. 7, 2007), *as amended* (Aug. 10, 2007) (judgment entered against plaintiffs and in favor of defendants on all claims). *Ramos v. Banner Health*, 461 F. Supp. 3d 1067 (D. Colo. 2020) (post trial judgment in favor of defendants on all counts except failure to monitor recordkeeping costs, but rejecting plaintiffs' expert's damages estimate of $19.4 million and awarding just $1.7 million in damages), *aff'd*, 1 F.4th 769, 774 (10th Cir. 2021).

21

### 2.    *The Defendant's Financial Condition*

The second fairness factor considers the defendant's ability to pay. *See Target Corp.*, 892 F.3d at 978. Wells Fargo has the financial ability to pay whatever judgment might be entered against it (or against the EBRC members who would be indemnified by Wells Fargo). Accordingly, Plaintiffs did not discount the amount they sought in settlement negotiations based on Defendants' ability to pay. Yau Decl. ¶ 40. As the Eighth Circuit held in *Petrovic*, while Wells Fargo could "pay more than it is paying in this settlement, this fact, standing alone, does not render the settlement inadequate." 200 F.3d at 1152.

### 3.    *The Complexity and Expense of Further Litigation Support Final Approval of the Settlement*

The third fairness factor requires the Court to evaluate whether the expense and complexity of further litigation weigh in favor of approving the Settlement. *See Target Corp.*, 892 F.3d at 978. In applying this factor, courts have approved settlements where "[t]here is no doubt that further litigation in this matter would be both complex and extraordinarily expensive"; "[t]he class certification process would undoubtedly be hard-fought and would also require a detailed analysis of the claims of the class members"; "Plaintiffs' claims themselves are complex"; and damages determinations would be "exceedingly time-consuming and complex." *Dryer v. Nat'l Football League*, 2013 WL 5888231, at *3 (D. Minn. Nov. 1, 2013), *aff'd sub nom.*, *Marshall*, 787 F.3d.

Courts have repeatedly recognized that ERISA 401(k) cases "often lead [ ] to lengthy litigation." *Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015). Cases involving fiduciary breach claims concerning several 401(k)

investment options can extend for a decade or longer before final resolution, and sometimes go through multiple appellate proceedings. *See Tussey v. ABB, Inc*., 850 F.3d 951 (8th Cir. 2017) (recounting lengthy procedural history of case that was initially filed in 2006 and remanding for district court to re-examine the issue of loss); *see also Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining issues for trial in case filed a decade earlier). The potential for protracted litigation further supports the Settlement's approval. *See In re Resideo Techs., Inc., Sec. Litig*., 2022 WL 872909, at *3 (D. Minn. Mar. 24, 2022) ("The Settlement also allows the Settlement Class to avoid the risks, costs, uncertainties and delays of continued litigation[.]").

As previously noted, the Parties have already completed significant discovery and motion practice. While nine depositions of fact witnesses and a 30(b)(6) deposition on certain noticed topics had already been completed by the second mediation session, had the parties not reached a settlement on January 5, 2022, another five depositions were on the horizon. Yau Decl. ¶¶ 23-24. The parties were also preparing to file motions on several issues before the Honorable Magistrate Judge Becky R. Thorson. *Id.* ¶ 27. In addition, Class Counsel had already prepared a motion for class certification and brief in support thereof, which was to be filed the day after the second mediation. *Id.* ¶ 28. Thereafter, expert discovery would have proceeded and would have involved four to six expert witnesses offering expert and rebuttal reports, the production of substantial work papers, the depositions of all expert witnesses, and likely *Daubert* motions. *Id.* The parties would then brief, and the Court would decide cross motions for summary judgment. *Id.* ¶ 36. The parties would ultimately prepare for and conduct a bench trial, should the case make it that

far. *Id.*

In sum, continuing the litigation would result in complex, costly, and lengthy proceedings before this Court, and potentially the Eighth Circuit, which would have significantly delayed any relief to Settlement Class members (and might have resulted in no relief at all). By contrast, the proposed Settlement provides $32.5 million to the Settlement Class now, as opposed to the mere chance of an eventual recovery after trial and appeals. The certain and expeditious recovery offered by the Settlement contrasted with the uncertainty and delay associated with further litigation, militate in favor of approval of the settlement.

### 4.     *The Amount of Opposition to the Settlement*

The final element of this Circuit's four-factor fairness test considers the amount of opposition to the Settlement. *See Target Corp.*, 892 F.3d at 978. While no objections have been filed to date, the deadline to object has not passed. Thus, this factor is best addressed at the Final Approval Hearing when the Settlement Class has had an opportunity to object or raise concerns to the Settlement, and Plaintiffs and their counsel have had the opportunity to respond in writing to any concerns Class members might raise. The absence of objections to date is encouraging. Indeed, no Settlement Class members have expressed any concerns about the Settlement nor about the requested attorneys' fees. Yau Decl. ¶ 78; Analytics Decl. ¶ 21.

### C.     **The Settlement Is Fair and Reasonable Under the Rule 23(e) Factors**

As noted previously, many of the Fed. R. Civ. P. 23(e)(2) factors that a Court must consider before finally approving a class action settlement overlap with the Eighth

Circuit's four factors discussed above. Nonetheless, Plaintiffs address each of the Rule 23(e)(2) factors below, all of which support final approval of the Settlement.

### 1. *The Settlement Class Was Adequately Represented*

Consistent with Fed. R. Civ. P. 23(a)(4), the Settlement Class was adequately represented in this case. As this Court has already held, the Named Plaintiffs and Class Counsel have adequately represented the Class. Prelim. Approval Order ¶ 4. In fact, all five Named Plaintiffs take their role very seriously and directly participated in the discovery process by turning over their own financial documents and sitting for in-person depositions. As explained in the Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval ("Prelim. Approval Mem."), ECF No. 247, they are adequate Class representatives as they have no interests that are antagonistic with other Settlement Class members, and because they have actively participated in the litigation. *See id.* at 22-23.[16]

Additionally, Class Counsel vigorously represented the Settlement Class throughout the litigation, and all three firms are well-respected for their class action work and ERISA expertise. Cohen Milstein is a national leader in class action litigation generally and has been named by Law360 as one of the ten "Most Feared Plaintiffs Firms." *See* Yau Decl. ¶¶ 72-73; ECF No. 248-3 (Cohen Milstein resume). For over 20 years, Cohen Milstein has had a dedicated group of ERISA class action specialists, which has been named Employee Benefits Practice Group of the Year two of the last three years by Law360. *Id.* ¶ 72. Lead counsel in this action, Michelle C. Yau, chairs the ERISA practice group and was named

---

[16] *See also* Declarations of Named Plaintiffs Yvonne Becker, Christopher Nobles, Rosa Ramirez, Valerie Seyler and Jannien Weiner filed contemporaneously herewith.

an MVP in the area of Employee Benefits by Law360. *See id.* ¶ 73; Ex. 2 (Law360 article entitled *MVP: Cohen Milstein's Michelle C. Yau*). Ms. Yau began her career as an Honors attorney at the Department of Labor and has specialized in ERISA fiduciary breach cases involving complex financial transactions or investments for the last two decades. *Id.*

Keller Rohrback has played a major role in developing the law and recovering hundreds of millions of dollars for retirement plan participants nationwide through ERISA class actions. In addition to litigating ERISA cases, lawyers at Keller Rohrback have testified before Congress, served as editors of numerous employee benefits books and manuals, and written ERISA articles, amicus briefs, and comments to regulatory agencies overseeing ERISA plans. Erin Riley, the lead partner from Keller Rohrback in this Action, has been practicing ERISA for over 20 years. She has worked on numerous ERISA-related articles and amicus briefs, frequently speaks at employee benefits conferences, is the lead editor (employee/retiree-side) of the principal ERISA treatise (Employee Benefits Law), and was elected by the Board of Governors of the American College of Employee Benefits Counsel, one of the highest honors for ERISA counsel. Riley Decl. ¶ 16; ECF No. 248-4 (Keller Rohrback resume).

Zimmerman Reed is a nationally recognized leader in complex and class action litigation, including ERISA cases, and has been appointed as lead counsel in some of the largest and most complex cases in the District of Minnesota and in federal courts across the country. June Hoidal is the lead partner from Zimmerman Reed in this Action and is the co-chair of the firm's Public Client practice group. She brings a depth of experience representing individuals who suffer losses as a result of securities, consumer protection,

and antitrust violations, including previously securing a settlement for investors alleging losses due to Wells Fargo's securities lending program. Hoidal Decl. ¶¶ 2-3; ECF No. 248-5 (Zimmerman Reed resume).

### 2.    *The Settlement Was Negotiated at Arm's Length*

As discussed above, the Settlement meets the requirements of Rule 23(e)(2) because it was negotiated by sophisticated counsel over the course of two mediations occurring between November 2021 until January 2022, and presided over by a well-known JAMS mediator with ERISA expertise, Robert A. Meyer. *See In re Centurylink Sales Pracs. & Sec. Litig.*, 2021 WL 3080960, at *6 (D. Minn. July 21, 2021) ("Settlement was negotiated over many months by experienced counsel and sophisticated parties using an experienced mediator"). *See supra* Section II.D. In fact, Gallagher expressly found "the Settlement was the product of arms-length negotiations" after speaking with counsel for all parties and with Mr. Meyer. Gallagher Report at 4.

Further indication that the Settlement is reasonable is that it was reached after the motion to dismiss was fully briefed and ruled upon, all document discovery was complete, and numerous depositions had occurred. *See* Advisory Committee's Notes to 2018 amendment to Rule 23(e) (noting that amendment recognized that the fact that "counsel negotiating on behalf of the class had an adequate information base" was indicative of a fair settlement); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 WL 716088, at *6 (D. Minn. Feb. 27, 2013).

### 3.    *The Relief Provided by the Settlement Is Adequate*

As explained above in Section IV.B.1, the proposed Settlement recovery of $32.5

million is not only adequate; it is an exceptional outcome. Additionally, each of the adequacy factors enumerated in Rule 23(e)(2)(C)(i)-(iv), which largely overlap with the Eighth Circuit's factors discussed above, support approval of the Settlement.

### a.    Risks, Costs, and Delay of Continued Litigation

For the reasons previously discussed, Plaintiffs would have faced substantial litigation risks and inevitable delay of any potential recovery in the absence of a settlement. *See supra* Sections IV.B.1 & 3. Accordingly, it was prudent to secure a certain and immediate recovery for the class on the favorable terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) ("settlement of a 401(k) excessive fee case benefits the employees and retirees in multiple ways"); *In re Emp. Ben. Plans Secs. Litig.*, 1993 WL 330595, at *4 (D. Minn. June 2, 1993) ("it is proper to take the bird in hand instead of a prospective flock in the bush.") (brackets and citation omitted).

### b.    Effectiveness of Distribution Method.

The proposed method for distributing the Settlement proceeds to Settlement Class, including the method of processing the recoveries, is fair, convenient, and effective. In particular, the Plan of Allocation does not require any affected Settlement Class members to file claim forms to receive their recoveries. POA ¶¶ 16-23. If Settlement Class members invested in the Challenged Funds, they will receive their recoveries directly in their 401(k) account. If they have an active account in the Plan, or if they do not have an active Plan account, they will automatically receive their recoveries via check (or

alternatively, via a rollover to another retirement account if they so elect).[17] *Id.* The Plan of Allocation treats all Settlement Class members equitably given the administration costs of transmitting their Settlement payments to them and does not require them to do anything to receive their payments.

The method of calculating Settlement Class members' recoveries, as detailed in the discussion of the Plan of Allocation below, is also fair and equitable. The allocation method divides the Net Settlement Fund in proportion to the losses suffered by each Class member who invested in the Challenged Funds based on their relative holdings when compared to the total holdings of all Class members who invested in the Challenged Funds. *See infra* Section IV.C.4.

  **c.**  <u>Attorneys' Fees</u>

The Settlement terms relating to attorneys' fees are also fair and reasonable. The amount of any fee award is reserved to the Court in its discretion and will be addressed in Plaintiffs' concurrent Motion for Attorneys' Fees, Expense Reimbursement, Settlement Administrator Expenses, and Case Contribution Awards. However, it is worth noting that one of the requirements for the Department of Labor regulations applicable to the release of ERISA claims is that "the proposed attorney's fee award of one third of the Settlement;

---

[17] If the amount of a Former Participant's Settlement recovery (from all Challenged Funds in which they invested) is less than $5.00, it will be considered a *de minimis* Settlement recovery and will not be distributed; instead, such amount will be reallocated to all other Current and Former Participants (who have recoveries of $5.00 or more) on a per capita basis. POA ¶ 8(h). The reason for the *de minimis* threshold is that the costs of administering the payment via check outweighs the value of the payment for *de minimis* payments.

and any other sums to be paid from the recoveries, are reasonable in light of the [P]lan's likelihood of full recovery, the value of claims foregone and the risks and costs of litigation." Gallagher Report at 2. Gallagher, which acted as the Independent Fiduciary approving this settlement for purposes of the applicable Department of Labor regulations, expressly found that "[t]he fee request is also reasonable in light of the effort expended by Plaintiffs' counsel in the Litigation and the amount of the recovery." *Id.* at 4.

### d.    Other Agreements

The Settlement Agreement expressly states that "[t]his Settlement Agreement contains the entire agreement among the Parties relating to this Settlement." Settlement Agreement ¶ 14.12. There are no separate agreements bearing on the adequacy of relief to the Class, which was confirmed by Gallagher in its report. Gallagher Report at 8-9 ("All the terms of the settlement are specifically described in a written settlement agreement or consent decree. The condition has been met."). Accordingly, the Settlement should be approved based on Fed. R. Civ. P. 23(c)(2)(C)(iv).

### 4.    *The Settlement, Including the POA, Treats Class Members Equitably Relative to Each Other*

Rule 23(e)(2)(D) "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others." Fed. R. Civ P. 23(e)(2)(D) advisory committee's note to 2018 amendment. There are no such concerns here because the Plan of Allocation will result in equitable treatment of all members of the Settlement Class using a consistent and reasonable formula. Specifically, the Plan of Allocation provides that the Net Settlement Fund will be allocated to Settlement Class

members who invested in the Challenged Funds in proportion to (i) the Challenged Fund's percentage of the alleged Total Losses during the Class period and (ii) each Settlement Class member's investment balances in each of the Challenged Funds compared to the total of all Settlement Class members' investment balances in such Challenged Funds. POA ¶¶ 7-8. *See supra* Section II.F; *see also* Prelim. Approval Mem. at 8-10.

"A district court's principal obligation in approving a plan of allocation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund." *Resideo Techs.*, 2022 WL 872909, at *4 (citations omitted). "A plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'" *Yarrington v. Solvay Pharms., Inc.*, 2010 WL 11453553, at *10 (D. Minn. Mar. 16, 2010) (citations omitted). Here, the Plan of Allocation reasonably apportions the Net Settlement Fund among investors in the Challenged Funds based on each Fund's percentage of alleged Fee Losses when compared to all Challenged Funds' Total Fee Losses. Then, the recovery for each Challenged Fund is apportioned among the participant investors based on their individual holdings when compared to the holdings of all investors in that Fund.

Because the Settlement treats all Class members equitably and the Plan of Allocation divides the Net Settlement Fund in proportion to the losses suffered by Class members who invested in the Challenged Funds based on the relative size of their holdings, this factor, too, supports granting final approval.

## V.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

Lastly, the Court should certify the Settlement Class for settlement purposes

pursuant to Rule 23(e). Certification of the Settlement Class is appropriate for the reasons set forth at pages 19-26 of Plaintiffs' Prelim. Approval Mem. As was the case when the Court preliminarily certified the Settlement Class, *see Becker v. Wells Fargo & Co*., 2022 WL 1210948, at *1 (Apr. 25, 2022), all of the requirements for class certification are met, and no party opposes certification of the Settlement Class.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court grant their Motion for Final Approval of Settlement, certify the Settlement Class, approve the proposed Plan of Allocation, and enter an order consistent with the Proposed Final Approval Order submitted herewith.

Dated: June 30, 2022                By:  /s/ Erin Riley
                                    **KELLER ROHRBACK L.L.P.**
                                    Erin Riley, *pro hac vice*
                                    1201 Third Ave, Suite 3200
                                    Seattle, WA 98101
                                    Tel: (206) 623-1900
                                    eriley@kellerrohrback.com

                                    **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                    Michelle C. Yau, *pro hac vice*
                                    Ryan A. Wheeler, *pro hac vice*
                                    1100 New York Ave. NW, Suite 500
                                    Washington, DC 20005
                                    Tel: (202) 408-4600
                                    myau@cohenmilstein.com
                                    rwheeler@cohenmilstein.com

                                    **ZIMMERMAN REED LLP**
                                    June P. Hoidal (MN No. 033330X)
                                    Charles R. Toomajian (MN No. 0397879)
                                    1100 IDS Center, 80 South 8th Street

Minneapolis, Minnesota 55402
Tel: (612) 341-0400
June.Hoidal@zimmreed.com
Charles.Toomajian@zimmreed.com

***Counsel for Plaintiffs and the Preliminary
Approved Settlement Class***